**THE LAW OFFICE OF**
**PAUL K. JOSEPH, PC**
PAUL K. JOSEPH (SBN 287057)
*paul@pauljosephlaw.com*
3150 Cabrillo Bay Ln.
San Diego, California 92110
Phone: (619) 767-0356
Fax: (619) 331-2943

**THE LAW OFFICE OF**
**JACK FITZGERALD, PC**
JACK FITZGERALD (SBN 257370)
*jack@jackfitzgeraldlaw.com*
TREVOR M. FLYNN (SBN 253362)
*trevor@jackfitzgeraldlaw.com*
MELANIE PERSINGER (SBN 275423)
*melanie@jackfitzgeraldlaw.com*
Hillcrest Professional Building
3636 Fourth Avenue, Suite 202
San Diego, California 92103
Phone: (619) 692-3840
Fax: (619) 353-0404

***Counsel for Plaintiffs***

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL TESTONE, COLLIN SHANKS, and LAMARTINE PIERRE, on behalf of themselves, all others similarly situated, and the general public,<br><br>        Plaintiffs,<br><br>vs.<br><br>BARLEAN'S ORGANIC OILS, LLC,<br><br>        Defendant. | Case No: 3:19-cv-00169-JLS-BGS<br><br>**PLAINTIFFS' RULE 11 MOTION FOR SANCTIONS**<br><br>Judge:    Hon. Janis L. Sammartino<br>Date:     July 30, 1:30 p.m.<br><br>NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT |

# <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ...................................................................................ii

INTRODUCTION..................................................................................................1

LEGAL STANDARD ...........................................................................................1

ARGUMENT ........................................................................................................1

I.    BARLEAN'S MOTION TO DISQUALIFY IS FRIVOLOUS ........................1

    A.    Barlean's Motion is Not Well-Grounded in Fact.....................................1

        1.    Barlean's Factual Contentions Regarding Plaintiffs'
            Supposed Perjury are Baseless and Were Made Without
            Reasonable Inquiry ........................................................................2

            a.    Colin Shanks................................................................2

            b.    Michael Testone ..........................................................5

            c.    LaMartine Pierre..........................................................7

        2.    Barlean's Factual Assertions Regarding Supposed
            Wrongdoing by Plaintiffs' Counsel are Baseless and
            Lack Reasonable Inquiry .............................................................10

    B.    Barlean's Motion has No Colorable Basis in Law Because the
        Legal Underpinnings of Barlean's Motion are Erroneous.....................14

II.    BARLEAN'S DISQUALIFICATION MOTION WAS BROUGHT
    FOR IMPROPER PURPOSES ....................................................................19

    A.    Barlean's Lacks Standing to Seek Disqualification of Counsel ............19

    B.    Barlean's "Disqualification" Motion is Really a Thinly-
        Disguised, Premature Opposition to Class Certification .......................20

III.    BARLEAN'S AND MS. JENKINS SHOULD BE SANCTIONED................24

CONCLUSION ....................................................................................................25

i

# **TABLE OF AUTHORITIES**

## Cases

*Astiana v. Ben & Jerry's Homemade, Inc.*,
  2014 WL 60097 (N.D. Cal. Jan. 7, 2014) ........................................................ 17

*Astiana v. Kashi Co.*,
  291 F.R.D. 493 (S.D. Cal. 2013) ..................................................................... 15

*Bernal v. All Am. Invest. Realty, Inc.*,
  479 F. Supp. 2d 1291 (S.D. Fla. 2007) ..................................................... 13, 24

*Bogdan v. Eggers*,
  2000 WL 1847608 (N.D. Ill. Dec. 14, 2000) ............................................. 1, 24

*Brandt v. Schal Assocs., Inc.*,
  960 F.2d 640 (7th Cir. 1992) ........................................................................... 24

*Bruno v. Quten Research Inst., LLC*,
  280 F.R.D. 524 (C.D. Cal. 2011) ..................................................................... 17

*Castillo v. Norton*,
  219 F.R.D. 155 (D. Ariz. 2003) ....................................................................... 23

*Christian v. Mattel, Inc.*,
  286 F.3d 1118 (9th Cir. 2002) ......................................................................... 24

*Colyer v. Smith*,
  50 F. Supp. 2d 966 (C.D. Cal. 1999) ......................................................... 19, 20

*Donaldson v. Clark*,
  819 F.2d 1551 (11th Cir. 1987) ....................................................................... 24

*Ehret v. Uber Techs., Inc.*,
  148 F. Supp. 3d. 884 (N.D. Cal. 2015) ........................................................... 17

*Estate of Blue v. County of Los Angeles*,
  120 F.3d 982 (9th Cir. 1997) ............................................................................. 2

*Ewing v. GoNow Travel Club, LLC*,
  2019 WL 4688760 (S.D. Cal. Sept. 26, 2019) ................................................ 13

ii

*Fed. Deposit Ins. Co. v. Isham*,
   782 F. Supp. 524 (D. Colo. 1992)...................................................................20

*Frantz v. United States Powerlifting Federation*,
   836 F.2d 1063 (7th Cir. 1987) ...................................................................24

*Fred A. Smith Lumber Co. v. Edidin*,
   845 F.2d 750 (7th Cir. 1988) .....................................................................1

*Gordon v. Virtumundo, Inc.*,
   575 F.3d 1040 (9th Cir. 2009) ...................................................................17

*Great Lakes Const., Inc. v. Burman*,
   186 Cal. App. 4th 1347 (2010) ............................................................19, 20

*Hadley v. Kellogg Sales Co.*,
   324 F. Supp. 3d 1084 (N.D. Cal. 2018) .........................................................9

*Hannon v. Dataproducts Corp.*,
   976 F.2d 497 (9th Cir. 1992) ...................................................................17

*Harris v. Vector Mktg. Corp.*,
   753 F. Supp. 2d 996 (N.D. Cal. 2010) .........................................................18

*In re Coca-Cola Prods. Mktg. & Sales Practices Litig. No. II*,
   2015 WL 5043846 (N.D. Cal. Aug. 26, 2015) ...............................................15

*In re Hubbard*,
   2013 WL 435945 (S.D. Cal. Feb. 4, 2013).....................................................11

*In re Tobacco II Cases*,
   46 Cal. 4th 298 (2009) ......................................................................15, 16

*Krommenhock v. Post Foods, LLC*,
   --- F.R.D. ----, ----, 2020 WL 1139582 (N.D. Cal. Mar. 9, 2020)........................16

*Krzesniak v. Cendant Corp.*,
   2007 WL 640594 (N.D. Cal. Feb. 27, 2007) .........................................21, 22, 23

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992).............................................................................20

*McPhearson v. Michaels Co.*,
   96 Cal. App. 4th 843 (2002) ..................................................................20

*McVicar v. Goodman Global, Inc.*,
   2015 WL 4945730 (C.D. Cal. Aug. 20, 2015)........................................17

*Murray v. GMAC Mortg. Corp.*,
   434 F.3d 948 (7th Cir. 2006) ..................................................................17

*Nault's Auto Sales, Inc. v. Am. Honda Motor Co., Inc.*,
   148 F.R.D. 25 (D.N.H. 1993) .............................................................passim

*Neiman v. Grange Mut. Ins. Co.*,
   2012 WL 3779090 (C.D. Ill. Aug. 31, 2012).............................................2

*Nevarez v. Forty Niners Football Co., LLC*,
   326 F.R.D. 562 (N.D. Cal. 2018)............................................................17

*Nunez v. BAE Sys. San Diego Ship Repair Inc.*,
   2017 WL 5446086 (S.D. Cal. Nov. 14, 2017) .........................................18

*Optyl Eyewear Fashion Int'l Corp. v. Style Cos., Ltd.*,
   760 F.2d 1045 (9th Cir. 1985) ................................................................19

*Park Assist, LLC v. San Diego County Regional Airport Auth.*,
   2020 WL 520900 (S.D. Cal. Jan. 31, 2020)........................................1, 24

*Preminger v. Shinseki*,
   2009 WL 2706037 (N.D. Cal. Aug. 25, 2009) ..........................................1

*Red v. Kraft Foods, Inc.*,
   2011 WL 4599833 (C.D. Cal. Sept. 29, 2011) ........................................18

*Reiner v. Graiwer*,
   2015 WL 9999191 (C.D. Cal. Nov. 25, 2015)..........................................25

*Ross v. RBS Citizens, N.A.*,
   2010 WL 3980113 (N.D. Ill. Oct. 8, 2010) .............................................18

*Sharp v. Next Entm't, Inc.*,
   163 Cal. App. 4th 410 (2008) .................................................................19

iv

*Sherman v. CLP Res., Inc.*,
    2015 WL 13542762 (C.D. Cal. Feb. 4, 2015) ...........................................................19, 20

*Simpson v. Cal. Pizza Kitchen, Inc.*,
    2013 WL 12114487 (S.D. Cal. Oct. 23, 2013) ...................................................24

*Uyeda v. J.A. Cambece Law Office, P.C.*,
    2005 WL 1168421 (N.D. Cal. 2005) ...................................................23

*Valentino v. Carter-Wallace, Inc.*,
    97 F.3d 1227 (9th Cir. 1996) ...................................................22

*Visa U.S.A., Inc. v. First Data Corp.*,
    241 F. Supp. 2d 1100 (N.D. Cal. 2003) ...................................................19

*Zakaria v. Gerber Prods. Co.*,
    2016 WL 6662723 (C.D. Cal. Mar. 23, 2016) ...................................................18

**Rules**

Fed. R. Civ. P. 11(a) ...................................................3

Fed. R. Civ. P. 11(b) ...................................................1

Fed. R. Civ. P. 11(b)(1) ...................................................1

Fed. R. Civ. P. 11(c)(1) ...................................................24

Fed. R. Civ. P. 11(c)(4) ...................................................25

Fed. R. Civ. P. 23(d)(1)(A) ...................................................21

**Other Authorities**

5 Charles Alan Wright & Arthur R. Miller, 7B Fed. Prac. & Proc. Civ. 3d ...................23

Rule 23(d), Advisory Committee Note (1966 Amendment) ...................................................21

## INTRODUCTION

Barlean's Motion to Disqualify (Dkt. No. 50) accuses Plaintiffs of perjury and their counsel of suborning perjury, but in violation of Rule 11, rests on misrepresentations of the record and rank speculation following inadequate investigation. Barlean's arguments concerning Plaintiffs' inadequacy under Rule 23(a)(4) and concurrent request for a stay of discovery further belies the motion's "improper purpose" to gain tactical advantage and "cause unnecessary delay" in violation of Rule 11. *See* Fed. R. Civ. P. 11(b)(1). As a result, Barlean's and its counsel signing the motion, Marylin Jenkins,[1] should be sanctioned.

## LEGAL STANDARD

"Rule 11 imposes upon attorneys a duty to certify by signature that they have read any pleadings or motions they file with the court and that such pleadings and motions are well-grounded in fact, have a colorable basis in law, and are not filed for an improper purpose." *Park Assist, LLC v. San Diego County Regional Airport Auth.*, 2020 WL 520900, at *1 (S.D. Cal. Jan. 31, 2020) (citing Fed. R. Civ. P. 11(b)). "The frivolousness clause requires that the party, or the attorney, conduct a reasonable inquiry into the facts and the law relevant to the case, while the improper purpose clause ensures that a 'motion, pleading or other document may not be interposed for purposes of delay, harassment, or increasing the cost of litigation.'" *Bogdan v. Eggers*, 2000 WL 1847608, at *10 (N.D. Ill. Dec. 14, 2000) (quoting *Fred A. Smith Lumber Co. v. Edidin*, 845 F.2d 750, 752 (7th Cir. 1988) (citation omitted)).

## ARGUMENT

### I.    BARLEAN'S MOTION TO DISQUALIFY IS FRIVOLOUS

#### A.    Barlean's Motion is Not Well-Grounded in Fact

"A factual contention gives rise to sanctions under Rule 11 when it is without foundation or is frivolous, that is, 'both baseless and made without reasonable and competent inquiry.'" *Preminger v. Shinseki*, 2009 WL 2706037, at *11 (N.D. Cal. Aug. 25, 2009)

---

[1] Ms. Jenkins submitted an unsigned declaration in support of the motion. Dkt. No. 50-2. Barlean's variously refers to the document as "Jenkins Decl." or "Jenkins Aff." Plaintiffs refer to the amended, signed version as the "Jenkins Decl." *See* Dkt. No. 51-1.

(quoting *Estate of Blue v. County of Los Angeles*, 120 F.3d 982, 985 (9th Cir. 1997)). Here, there are five categories of frivolous factual contentions forming the basis of Barlean's disqualification motion:

(A)   General assertions of wrongdoing.

(B)   Assertions that Plaintiff Collin Shanks testified in another case that Jarrow was the only brand of coconut oil he had ever purchased.

(C)   Assertions that Plaintiffs LaMartine Pierre and Michael Testone denied participating in the *Cumming v. BetterBody* settlement by making a claim.

(D)   Assertions that Plaintiffs could not recall other brands of coconut oil they had purchased

(E)   Assertions that Plaintiffs' inability to recall other brands of coconut oil they had purchased were false.

*See* Fitzgerald Decl. ¶ 3 (setting forth each frivolous factual contention).

### 1.   Barlean's Factual Contentions Regarding Plaintiffs' Supposed Perjury are Baseless and Were Made Without Reasonable Inquiry

The lynchpin of Barlean's disqualification motion is its assertion that each Plaintiff perjured himself. "It is a very serious matter to accuse a witness of committing perjury," *Neiman v. Grange Mut. Ins. Co.*, 2012 WL 3779090, at *5 (C.D. Ill. Aug. 31, 2012). "When making serious charges of unprofessional and criminal conduct against an individual in pleadings filed with the Court, the certitude of suspicion alone is not enough. . . . Rule 11 demands objectively reasonable conduct, including a reasonable inquiry into the facts." *See Nault's Auto Sales, Inc. v. Am. Honda Motor Co., Inc.*, 148 F.R.D. 25, 37 (D.N.H. 1993) ["*Nault*"]. Nevertheless, in violation of Rule 11, Barlean's egregiously mischaracterizes the testimony on which its baseless accusations rely.

### a.   Colin Shanks

Barlean's accuses Mr. Shanks of having lied while testifying during a deposition in *Shanks v. Jarrow Formulas, Inc.*, No. 18-cv-9437 (C.D. Cal.) ("*Jarrow*"). Mot. at 6. According to Barlean's, in *Jarrow*, Mr. Shanks "testified that Jarrow brand coconut oil was

2

the only coconut oil he purchased," whereas "in this case, Mr. Shanks testified that he purchased both Jarrow brand coconut oil and Barlean's brand coconut oil." *Id.* (citing Jenkins Decl. ¶¶ 9 & 11 (erroneously cited as ¶¶ 7 & 9)). Contrary to Barlean's, however, Mr. Shanks testified during his deposition in *Jarrow* that he had purchased Barlean's coconut oil:

> Q.    Right. I mean, you've purchased other kinds of coconut oil; right?
>
> A.    I have.
>
> Q.    What other kinds of coconut oil have you purchased?
>
> A.    Barlean's.

Fitzgerald Decl. Ex. 1, Shanks' *Jarrow* Dep. Tr. at 89:11-17.

Because Barlean's assertion that, during his *Jarrow* deposition, Mr. Shanks "testified that Jarrow brand coconut oil was the only coconut oil he purchased," is demonstrably false, it is without factual basis, in violation of Rule 11(b)(3). *See* Mot. at 6.[2]

Nor did Barlean's or its counsel make this false assertion of fact, false accusation of perjury, and false accusation of Mr. Shanks' counsel suborning perjury "after an inquiry [that was] reasonable under the circumstances," *see* Fed. R. Civ. P. 11(a). Rather than request from Mr. Shanks or Jarrow his full deposition transcript to ensure its accusations of perjury had evidentiary support, Barlean's relied on a *single-page excerpt* that Jarrow's counsel had filed in that case. *See* Jenkins Decl. ¶ 7 (Ms. Jenkins averring that she obtained Exhibit H to her declaration—page 52 of Mr. Shanks' *Jarrow* deposition transcript—from Pacer). Barlean's did not even point out the seeming inconsistency and ask Plaintiffs' counsel for an explanation before reducing its suspicions to a disqualification motion.

Barlean's failure to request and review Mr. Shanks' full *Jarrow* deposition transcript before accusing him of perjury is especially egregious given how it mischaracterizes the testimony on which it relies. Rather than testifying that "Jarrow brand coconut oil was the

---

[2] Barlean's and Ms. Jenkins made the same misrepresentation to secure from a Minnesota District Court an order compelling Dahl to produce documents in response to Barlean's subpoena. *See* Fitzgerald Decl. Ex. 2, Barlean's Mem. in Support of Mot. to Compel at 3 (citing Jenkins Aff. ¶¶ 9 & 11).

only coconut oil he purchased," Mot. at 6 (quoting Jenkins Decl. ¶ 7 (erroneously cited as ¶ 9)), Mr. Shanks testified only that he could "[n]ot . . . recall right now" the names of other brands. *See* Jenkins Decl. H, Tr. of Shanks' *Jarrow* Dep. at 52:9. Moreover, the question Barlean's cites was limited in context, asking only whether Mr. Shanks recalled buying coconut oil "in one of those types of stores," *id.* at 52:2-4. Had Barlean's performed a reasonable investigation, it would have known that the reference to "those types of stores" was to "independent[]" "health food stores . . . with . . . weird little names." *See* Fitzgerald Decl. Ex. 1 at 51:3-9. Mr. Shanks being unable to "recall right now" other coconut oils he may have purchased years earlier at independent health food stores is a far cry from Barlean's claim that he "testified that Jarrow brand coconut oil was the only coconut oil he purchased," Mot. at 6; Jenkins Decl. ¶ 7.

Barlean's also accuses Mr. Shanks of perjury by virtue of having supposedly testified that "he could not recall the name of any other coconut oil which he had purchased," including based on this same *Jarrow* testimony. *See* Mot. at 5 (citing Jenkins Decl. ¶¶ 7 & 9[3]). However, the *Jarrow* testimony replicated in paragraph 7 of Ms. Jenkins' declaration was limited in scope, as just described. The same is true of the question-and-answer replicated in paragraph 9 of Ms. Jenkins' declaration, which refers to certain "occasions" Mr. Shanks was purchasing coconut oil and "alternating among brands," *see* Jenkins Decl. ¶ 9 (citing Jenkins Decl. Ex. I, Shanks Dep. Tr. at 23:16-24:5). Moreover, Mr. Shanks only stated that he did not remember alternating with any brands other than Jarrow and Barlean's; he did not testify, as Barlean's suggests, that he could not recall other brands he was using.

Even if Barlean's had characterized Mr. Shanks' testimony fairly, his lack of a perfect memory is not tantamount to perjury: Mr. Shanks having made a claim in 2016 relating to the BetterBody settlement is not logically "contrary to [an] assertion[] in [his 2019] deposition[] that . . . [he] could not recall what other brands of coconut oil [he] had purchased," Jenkins

---

[3] The statement actually relates to all three Plaintiffs, with paragraphs 11 and 13 of Ms. Jenkins' declaration also cited; but only paragraphs 7 and 9 refer to Mr. Shanks' testimony.

Decl. ¶ 37; *see also* Mot. at 5 (asserting that Plaintiffs' counsel "heard [Plaintiffs] testify that they could not recall the name of any other brand of coconut oil they had purchased" and "did not intervene to correct this false testimony"); Jenkins Decl. ¶¶ 41 & 42 (same).

### b.    Michael Testone

Barlean's accuses Mr. Testone of committing perjury by having "participated in the settlement fund in the *Cumming v. BetterBody* case," but "den[ying] such participation in his deposition in this case." Mot. at 7; *see also* Jenkins Decl. ¶ 37 (averring that Mr. Testone "assert[ed] in [his] deposition[] that [he] had not participated in [the BetterBody] settlement classes [sic]"). Barlean's provides no record citation for this accusation, but in paragraph 14 of her declaration, Ms. Jenkins represents that "two of the three plaintiffs in this case testified in deposition that they had not participated in class settlements for any other coconut oil brands," and replicates the following question-and-answer from Mr. Testone's deposition:

Q.    Have you been a member of a class in any other coconut oil litigations?

A.    No.

*See* Jenkins Decl. ¶ 14(b) (citing Jenkins Decl. Ex. O, Testone Dep. Tr. at 13:16-18).

On its face, this testimony does not support Ms. Jenkin's assertion that Mr. Testone "testified . . . that [he] had not participated in class settlements for any other coconut oil brands," Jenkins Decl. ¶ 14, or that he "assert[ed] in [his] deposition[] that [he] had not participated in such settlement classes," *id.* ¶ 37, nor Barlean's representation that he "den[ied] . . . participati[ng]" in "the settlement fund in the *Cumming v. BetterBody* case," Mot. at 7. Instead, Barlean's argument rests on an unstated premise—that Mr. Testone understood the question to call for the disclosure of his having made a claim in a settled class action three years earlier in which he otherwise had no involvement.

Mr. Testone, however, is a layperson, not an attorney with a nuanced understanding of Rule 23. Asking if he has "been a member of a class in any other coconut oil litigations," not only called for a legal conclusion, but was unlikely to cause him to think of having made a claim relating to a settlement years earlier. Indeed, when asked a short while later, "Do you know anyone or the names of anyone who was a California class member in this case?," Mr.

Testone's answer—and thus his understanding—was limited to the *named Plaintiffs* in this lawsuit. *See* Fitzgerald Decl. Ex. 3, Testone Dep. Tr. at 16:17-17:6.

For this reason, Mr. Testone's counsel objected that the question on which Barlean's relies was vague. Jenkins Decl. Ex. O, Testone Dep. Tr. at 13:19. The Court should sustain the objection. But if the Court considers the testimony, the speciousness of Barlean's reliance on it becomes even more apparent when considered in its full context. Ms. Jenkins' declaration cut off some of the introduction to her question. The full exchange was as follows:

> Q. So to your recollection -- And, again, I'm not trying to badger you. I just want to make sure of your answer. This is the first communication you received about joining a coconut oil litigation; is that correct?
>
> A. I think so.
>
> Q. Have you been a member of a class in any other coconut oil litigations?
>
> A. No.
>
> MR. FIZGERALD:        Objection, vague.
>
> THE WITNESS:         No, I have not.

Jenkins Decl. Ex. O, Testone Dep. Tr. at 13:10-20. This exchange followed several questions in which Ms. Jenkins had asked Mr. Testone about how he initially came into contact with Plaintiffs' counsel so as to become a named plaintiff in this case. *See* Jenkins Decl. Ex. T, Testone Dep. Tr. at 11:13-12:23. Thus, when Ms. Jenkins repeated her question to "make sure of [Testone's] answer," about his "joining a coconut oil litigation," the context was his participation as a named plaintiff in this lawsuit. When she asked her follow-up question, "Have you been a member of a class in any other coconut oil litigations?," Mr. Testone therefore reasonably assumed the same context, and responded "no" because he is not a named plaintiff in any other such litigation. When the testimony is fairly read, there is simply no indicia of intentional deceit in his response.

Contrary to Barlean's characterization, *see* Mot. at 4 (suggesting Mr. Testone was asked a "direct question" about "participat[ing] in a class settlement for any other coconut oil case"); Jenkins Decl. ¶ 14, Ms. Jenkins failed to ask Mr. Testone directly about participating

6

1  in class action "settlements," or about "BetterBody," which she easily could have done.
2  Instead, she and Barlean's rely on a layperson response to an ambiguous question, presented
3  in a context that would not reasonably have suggested Ms. Jenkins was really calling for Mr.
4  Testone's disclosure of making a claim relating to the BetterBody lawsuit. Because the
5  testimony on which Barlean's relies to accuse Mr. Testone of perjury, and his counsel of
6  suborning perjury, taken out of context and mischaracterized by Barlean's, provides not even
7  the thinnest of reeds on which Barlean's could reasonably base accusations of Mr. Testone's
8  perjury and counsel's ethical violations, Barlean's and Ms. Jenkins violated Rule 11(b)(3).

9      As with Mr. Shanks, Barlean's also contends Mr. Testone "testified in his deposition
10 that he had bought other brands of coconut oil besides Barlean's, but that he could not recall
11 the names of those other brands," Jenkins Decl. ¶ 13; *see also id.* ¶ 19 ("[P]laintiffs [Pierre
12 and Testone] have stated that they have no recollection of the other brands they purchased."),
13 and argues that because he made a claim in the BetterBody matter, this is perjury, *see id.* ¶¶
14 37, 42; Mot. at 5. As with Mr. Shanks, Barlean's premise and conclusion are both wrong.

15     The premise is wrong because the testimony Barlean's cites only shows Mr. Testone
16 did not "recall the brand of the *first* coconut oil that [he] bought," *see* Jenkins Decl. ¶ 13
17 (citing Jenkins Decl. Ex. M, Testone Dep. Tr. 23:17-24:24). That is materially narrower
18 testimony than Barlean's represents it to be. Moreover, even if Mr. Testone had testified "he
19 had bought other brands of coconut oil besides Barlean's, but . . . could not recall the names
20 of those other brands," *id.*, as a matter of logic, having submitted a claim relating to the
21 BetterBody settlement three years earlier does not render his testimony false, as Barlean's
22 contends. *See* Mot. at 5; Jenkins Decl. ¶ 42.

### c.    LaMartine Pierre

24     Observing that Mr. Pierre "participated in the settlement fund in the BetterBody Case,"
25 Barlean's asserts that he perjured himself because he testified "he could not recall the names
26 of those other brands" of coconut oil he purchased. Mot. at 7 (citing Jenkins Aff. ¶ 11
27 (erroneously cited as ¶ 13)). However, Mr. Pierre's making a claim in 2016 with respect to
28 the BetterBody settlement is *consistent with* his testimony in this case that he purchased other

7

brands of coconut oil, and, as with Messrs. Shanks and Testone, there is no indication he was lying when he testified in 2019 that he did not recall the names of other brands—just Barlean's naked supposition.

Even if Mr. Pierre could not recall during his late 2019 deposition the names of other coconut oil brands he had bought as far back as 2014, there is nothing inconsistent between that and his participating in the BetterBody settlement in 2016. But in the testimony Barlean's cites, *see* Jenkins Decl. ¶ 11 (citing Jenkins Decl. Exs. K & L, Pierre Dep. Tr. 13:4-20, 16:3-18:2), Mr. Pierre did not, as Barlean's claims, state without qualification that "he could not recall the names of those other brands" that he purchased. *See* Mot. at 7. Rather, the only times Mr. Pierre testified that he did not recall something about brands during these exchanges were (a) in response to a question about what brand he *first* purchased, *see* Jenkins Decl. Ex. K, Pierre Dep. Tr. 13:12-14, and (b) in response to questions linking brands with locations: "*When you bought coconut oil at the Vitamin Shoppe at Valley Stream* do you recall what brand or brands you bought?," and "What brands of coconut oil did you buy *from Amazon*?" *See* Jenkins Decl. Ex. L, Pierre Dep. Tr. at 17:8-11, 15-17 (emphasis added).

Barlean's also accuses Mr. Pierre of perjury because he testified he purchased the product at Walmart whereas, according to Barlean's CEO, the company "has never sold any of these coconut oil products to Wal-Mart," and they "cannot be purchased by the public at Wal-Mart,"[4] so that "[a]nyone who claims that he purchased any of Barlean's coconut oil products at Wal-Mart is being untruthful." Dkt. No. 50-42, Barlean Decl. ¶ 6. Mr. Barlean's testimony, however, is undermined by Defendant's prior pleadings. Mr. Pierre alleged that, "[t]o the best of his recollection," he "purchased the 32 oz size of Barlean's Organic Virgin Coconut Oil approximately 3-5 times beginning in 2014, with his last purchase in late 2016, which to the best of his recollection was purchased at Walmart . . . in the Green Acres Mall in Valley Stream, New York." Dkt. No. 1, Compl. ¶ 133. In its February 2019 Answer,

---

[4] Mr. Barlean could not testify to this from personal knowledge unless he had monitored the inventory of every Wal-Mart during all relevant times; the statement is just his assumption, based on Barlean's not selling coconut oil to Wal-Mart directly.

Barlean's did not deny that this was possible, as it purports to do now, but instead represented that it "lack[ed] sufficient information or knowledge to admit or deny the allegations" in paragraph 133. Dkt. No. 10, Answer ¶ 133.

In any event, at worst, the record only indicates Mr. Pierre may have misremembered *where* he purchased the Barlean's coconut oil because he had purchased *other* coconut oils at a variety of locations. *See generally* Jenkins Decl. Ex. L, Pierre Dep. Tr. at 16:3-17:11 (testifying he purchased multiple brands of coconut oil on between 10 – 20 occasions at a variety of brick-and-mortar and online locations). That Mr. Pierre may have conflated *where* he purchased Barlean's coconut oil and other coconut oil products is not perjury. When fairly read and considered as a whole, the record leaves no real doubt Mr. Pierre is a *bona fide* purchaser. *See* Fitzgerald Decl. Ex. 4, Pierre Dep. Tr. at 18:3-19:22, 21:13-23:15, 27:18-28:14, 30:16-31:3, 31:8-12, 32:23-33:4, 33:11-12, 39:3-14, 39:25-40:6; *cf. Hadley v. Kellogg Sales Co.*, 324 F. Supp. 3d 1084, 1119 (N.D. Cal. 2018) (plaintiff not inadequate where "the Court cannot conclude that the absence of Kellogg products from Plaintiff's Safeway purchase records creates a concern about Plaintiff's credibility," despite the plaintiff testifying that Safeway was his "go-to" grocery store, because "the record leaves no doubt about the most critical fact regarding Plaintiff's adequacy as a class representative in this lawsuit: that Plaintiff 'was an avid cereal eater who regularly bought and consumed the products at issue here.'" (internal quotation marks and record citation omitted)).

Finally, Barlean's accuses Mr. Pierre of perjury, representing that he "participated in the settlement fund in the BetterBody Case," but "*specifically denied* in his deposition that he had participated in a *settlement class* for any other brand of coconut oil." Mot. at 7 (emphasis added).[5] Although the assertion is without citation, Barlean's appears to base it on the testimony set forth in paragraph 14(a) of Ms. Jenkin's declaration. *See* Jenkins Decl. ¶

---

[5] *See also* Mot. at 4 ("Pierre[] previously testified in his deposition that he had never participated in a class settlement for any other coconut oil case," after being "asked this direct question during his deposition."); Jenkins Decl. ¶ 41 ("Pierre testif[ied] that he had never participated in a class settlement for any other brand of coconut oil.").

14(a) (citing Jenkins Decl. Ex. N, Pierre Dep. Tr. at 35:19-24). But that testimony does not support Barlean's assertion, which is instead a wild mischaracterization.

Rather than "specifically" asking Mr. Pierre whether he "participated in the settlement fund in the BetterBody Case," Mot. at 7—which Ms. Jenkins easily could have done—in the testimony Barlean's cites, Ms. Jenkins only asked whether Mr. Pierre was "participating"— in the present tense—"in any class actions concerning coconut oil," *see* Jenkins Decl. Ex. N, Pierre Dep. Tr. at 35:19-20. The question simply did not inquire about Mr. Pierre's *past* participation in class actions, much less by making a claim years ago in a settled class action in which he was not otherwise involved. The same is true of Ms. Jenkins' next question, "Are you aware that there are other class actions concerning other brands of coconut oil?" Phrased in the present tense, it would not lead a reasonable person in October 2019 to identify, in response, a class action in which judgment had been entered and the case completed in 2016.

Moreover, as with Mr. Testone, Ms. Jenkins' questions would appear to any layperson to concern his direct participation in a class action *lawsuit* as a *named Plaintiff*, and would not appear to pertain to merely submitting a claim relating to a class action settlement in which he otherwise had no involvement. As with Mr. Testone, if Ms. Jenkins had wanted to ask Mr. Pierre if he had made a claim relating to the BetterBody settlement, she easily could have done so directly and expressly. Instead, she *avoided* asking the question directly, and now she and Barlean's have egregiously overstated and thereby misrepresented the testimony in an effort to paint Mr. Pierre as a liar, and his counsel as suborning his perjury.

In reality, Barlean's assertion that Mr. Pierre "*specifically denied* in his deposition that he had participated *in a settlement class* for any other brand of coconut oil," Mot. at 7 (emphasis added), after being "asked this direct question," *see id.* at 4, is without evidentiary support, in violation of Rule 11(b)(3).

### 2. Barlean's Factual Assertions Regarding Supposed Wrongdoing by Plaintiffs' Counsel are Baseless and Lack Reasonable Inquiry

Barlean's accuses Plaintiffs' counsel of violating California Rules of Professional Responsibility 1.2 and 3.3 by assisting Plaintiffs to engage in criminal or fraudulent conduct.

10

*See* Not. of Mot. at 2; Mot. at 6, 12-14, 22. It asserts counsel "had a continuing duty to reveal fraud committed by their clients," but "chose to take their chances that Barlean's would never discover their failure to disclose the falsehoods told by their clients." Mot. at 15-16. Barlean's asserts this conduct was "knowing" within the meaning of Rule 3.3. *Id.* at 14; *see also* Not. of Mot. at 2 ("Plaintiffs' counsel, knowing that plaintiffs' statements were false, failed to correct or otherwise remedy those false statements[] or . . . resign from the representation of plaintiffs."); Jenkins Decl. ¶¶ 41-42 (averring that counsel "did not intervene to correct" testimony Ms. Jenkins suggests counsel knew was "false"); *id.* ¶ 43 ("I have never been approached by Joseph or Fitzgerald to correct plaintiffs' false testimony").

Barlean's analogizes the conduct of Plaintiffs' counsel to that of an attorney sanctioned because he "misled the judge and opposing counsel" into believing a forged signature was genuine, with "[t]he court f[inding] that the attorney had engaged in 'intentionally deceptive and misleading conduct' in violation of" multiple rules of professional conduct. *See* Mot. at 17 (discussing *In re Hubbard*, 2013 WL 435945 (S.D. Cal. Feb. 4, 2013)). And although Ms. Jenkins avers she believes Plaintiffs' counsel should have "resign[ed] from this case," Jenkins Decl. ¶ 43; *see also* Mot. at 22 (Plaintiffs' counsel's "disqualification will only serve to accomplish the resignation they should have submitted themselves."), Barlean's asserts it is being generous by "not seeking the suspension of Joseph and Fitzgerald" despite "their activities in misleading opposing counsel and the Court," *id.* at 18.

Finally, Barlean's asserts that "the conduct of Joseph and Fitzgerald in this case" "'taints' the trial or legal system," by having "allow[ed] [the] case to proceed with knowledge that plaintiffs have testified falsely," which "goes to the very heart of the judicial system." *Id.* (citation omitted). Thus, Barlean's argues, Messrs. Joseph and Fitzgerald "cannot be trusted to do their duty under the rules of professional conduct to bring this falsity to the attention of the Court and opposing counsel," thereby threatening to cause "the entire basis of our judicial system [to] collapse[]." *Id.*

Barlean's attacks on Plaintiffs' counsel for suborning perjury are based on its false claim that Plaintiffs perjured themselves. Because the premise is baseless, so too are Barlean's contentions about counsel's wrongdoing, in violation of Rule 11(b)(3).

Barlean's assertions of fact regarding Plaintiffs' counsel are not just lacking evidentiary support, but its assertion that Messrs. Joseph and Fitzgerald each "heard [a Plaintiff] testify that he had never participated in a class settlement for any other brand of coconut oil," Mot. at 5, is demonstrably false, since Barlean's mischaracterizes the testimony.

In addition, Barlean's assertions of fact regarding counsel are frequently rhetorical, based on rank speculation, rather than supported by evidence as Rule 11(b)(3) requires:

- "Joseph would have been able to obtain the emails of all three plaintiffs from this or other prior coconut oil class action settlements," *id.* (citation omitted).

- "Barlean's contends that the circumstances outlined [in its motion] compel the conclusion that Fitzgerald and Joseph were aware of plaintiffs' false testimony at the time of their depositions." *Id.* at 6.

- "It is more likely than not that Joseph obtained [Plaintiffs'] email addresses from prior coconut oil settlement class list(s). It beggars the imagination that Joseph did not advise plaintiffs that he knew of them from their participation in, at least, the BetterBody class action settlement." *Id.* at 7.

- "Joseph and Fitzgerald will undoubtedly contend that they did not know that plaintiffs had participated in the class settlement for the BetterBody case, or any other case. But when defendant's counsel served the subpoenas on Dahl Administration, Joseph and Fitzgerald immediately stepped in to represent Dahl . . . . If they had not injected themselves into the Dahl subpoena process, as counsel for Dahl, their ignorance might be believable. But what purpose could they have had by representing Dahl in that process other than to do all they could to prevent the class membership lists from being produced to Barlean's? And that effort reveals that they must have known that the three plaintiffs were in fact members of the settlement class in the BetterBody case. It is inconceivable that Joseph and Fitzgerald represented Dahl from December 2019 until April 2020, including at least one conference call with Dahl, without inquiring of Dahl whether the three plaintiffs in this case were on the BetterBody list." *Id.* at 15.

- "Even if Joseph and Fitzgerald, giving them the benefit of the doubt, did not know at the time of plaintiffs' depositions in this case, that all of their

12

plaintiffs were lying about their previous participation in the BetterBody settlement, they clearly knew by December of 2019, when they began the process of attempting to block production of those records by Dahl. If they did not, it is difficult to understand why they would have fought the subpoenas so urgently." *Id.*

Accordingly, Barlean's motion to disqualify is not just baseless, it is reckless. The subornation of perjury is "serious criminal conduct under any circumstance," but such an accusation is an "extraordinary charge[] in the context of otherwise ordinary litigation. . . . Charges such as these can ruin one's reputation[ and] livelihood . . . . An officer of the court is expected to know that such accusations must not be casually made." *Bernal v. All Am. Invest. Realty, Inc.*, 479 F. Supp. 2d 1291, 1327 (S.D. Fla. 2007) (citation omitted); *cf. Ewing v. GoNow Travel Club, LLC*, 2019 WL 4688760, at *2-3 (S.D. Cal. Sept. 26, 2019) (addressing party's improper disparagement of opposing counsel's ethics).

As one court that imposed Rule 11 sanctions under similar circumstances explained:

> When presented with evidence which is consistent with two possible and equally plausible, but inconsistent, interpretations of how opposing counsel have conducted themselves, professional courtesy and dignity militate in favor of adopting that which is consistent with ethical and professional conduct, at least until the contrary is demonstrated beyond mere suspicion. When publishing allegations relating to misconduct by opposing counsel in pleadings filed with a court even more circumspection is expected from an attorney as a matter of professionalism.

*Nault*, 148 F.R.D. at 34. Here, Barlean's "choice of words is unjustified by the facts as proven and was unjustified by the facts known to counsel when the choice was made." *See id.* at 33.

Noting that even defense counsel's "provocative and suspicious history" relating to discovery did not "justif[y] the unsubstantiated and extreme attacks on their personal integrity, ethics, and character," *id.* at 34-35, the *Nault* court held that the moving party and its counsel were "not free to indiscriminately bludgeon the professional reputations of opposing counsel out of frustration, or in angry overreaction, or on mere suspicion alone," and imposed Rule 11 sanctions. *Id.* at 36, 37. Despite the plaintiff's frustrations, the court said:

13

> the appropriate response . . . is hardly Nault's deluge of *ad hominem* assaults and insupportable accusations of contempt, perjury and criminal activity. . . . Given the absence of facts demonstrating the objective reasonableness of the serious charges which they have leveled against Honda and [defense counsel], Nault's counsel would have been well advised to exercise a modicum of restraint, make a reasonable inquiry, or raise the matter with the Court in language more consistent with the facts and the presumption of integrity to which every member of the bar and every litigant is entitled.

*Id.* at 36-37. The *Nault* court's admonition rings equally true in this case. Barlean's and its counsel have made serious accusations, even suggesting Plaintiffs' counsel should be suspended from the practice of law—their careers destroyed—based only on speculation and self-serving mischaracterizations of the record. Such irresponsible conduct violates Rule 11.

### B.    Barlean's Motion has No Colorable Basis in Law Because the Legal Underpinnings of Barlean's Motion are Erroneous

The whole premise to Barlean's misguided speculation about Plaintiffs' perjury is that their participation in the BetterBody settlement renders them inadequate class representatives in this case. That premise, however, is unwarranted by the law. The record thus shows no reason why Plaintiffs or their counsel should lie about Plaintiffs' making a claim in the BetterBody class action settlement.

Barlean's argues that Plaintiffs' alleged "[m]isrepresentations" about their purchases of other coconut oil products "[a]re [m]aterial" because "[t]he fact that plaintiffs . . . relied on the BetterBody label . . . affects the degree to which each can claim reliance on the Barlean's label," since "the BetterBody label which was at issue in that case contains statements very similar to the Barlean's statements in this case," Mot. at 8 (citation omitted); *see also* Jenkins Decl. ¶ 25 ("to the extent plaintiffs in this case had relied on label or advertising information by other manufacturers when they purchased Barlean's coconut oil products, that would have an impact on their alleged reliance on the statements on the Barlean's labels"); *id.* ¶ 40 ("To the extent that a given plaintiff or class member purchased more than one of these brands, his or her reliance on the label claims on any particular brand would necessarily have been diluted . . . .").

According to Barlean's, to be adequate class representatives, Plaintiffs must "testify that, based solely on the Barlean's labels, they believed that coconut oil was 'the best oil in the world,'" Mot. at 12 (no citation given for quote). Thus, it contends, Plaintiffs' "'prior reliance' distinguishes them from other potential class members who did not rely upon the labels of other brands of coconut oil," creating a conflict of interest so that Plaintiffs "cannot adequately represent the other members of their respective putative classes." Mot. at 12.

Barlean's arguments are meritless. First, Barlean's assumes that because Plaintiffs submitted claims in the BetterBody matter, they necessarily relied on the labeling claims of the BetterBody product. But, as absent class members, they were not required to rely on the BetterBody label to submit a claim. *See In re Tobacco II Cases*, 46 Cal. 4th 298, 320 (2009) ("[T]o hold that the absent class members on whose behalf a private UCL action is prosecuted must show on an individualized basis that they have 'lost money or property as a result of the unfair competition' (§ 17204) would conflict with the language in section 17203").

Second, even if Plaintiffs "relied on the BetterBody label" this does not, as Barlean's claims, "affect[] the degree to which each can claim reliance on the Barlean's label[.]" Mot. at 8 (citation omitted). To the contrary, courts routinely hold that purchases of products not at issue are irrelevant. *See*, *e.g.*, *In re Coca-Cola Prods. Mktg. & Sales Practices Litig. No. II*, 2015 WL 5043846, at *3 (N.D. Cal. Aug. 26, 2015) ("Defendant[] ha[s] not shown how Plaintiff['s] potential purchases and consumption of *other* foods or beverages with artificial flavors or chemical preservatives are relevant to the determination about whether Plaintiffs relied on [defendant's] alleged misrepresentations."); *Astiana v. Kashi Co.*, 291 F.R.D. 493, 503 (S.D. Cal. 2013) ("[T]he fact that Plaintiffs may also purchase unhealthy or otherwise artificial foods says nothing about whether they purchased Kashi products specifically because they were supposedly healthy and natural.").

Third, even if Plaintiffs relied on the BetterBody label, and even if it "diluted" their reliance, *see* Jenkins Decl. ¶ 40, "dilution" of reliance is legally irrelevant:

> While a [named] plaintiff must show that the misrepresentation was an immediate cause of the injury-producing conduct, the plaintiff need not

15

demonstrate it was the only cause. "'It is not . . . necessary that [the plaintiff's] reliance upon the truth of the fraudulent misrepresentation be the sole or even the predominant or decisive factor in influencing his conduct. . . . It is enough that the representation has played a substantial part, and so has been a substantial factor, in influencing his decision.' [Citation.]"

*In re Tobacco II Cases*, 46 Cal. 4th at 326 (alterations in original); *cf. Krommenhock v. Post Foods, LLC*, --- F.R.D. ----, ----, 2020 WL 1139582, at *6 (N.D. Cal. Mar. 9, 2020) (That an "unchallenged statement might be material to a reasonable consumer . . . does not mean that a Challenged Statement cannot *also* be material, and, therefore, actionable."

In sum, Plaintiffs are not inadequate class representatives by virtue of having purchased other coconut oils, because a plaintiff purchasing one coconut oil in reliance on its health and wellness labeling claims does not undermine his purchasing a different coconut oil in reliance on that other product's health and wellness labeling claims, even if the claims are similar or identical. Rather, it only demonstrates that both coconut oil manufacturers misled Plaintiffs.

Even if Barlean's had been "entitled to discover what other coconut oil brand labels plaintiffs reviewed and/or relied upon," Mot. at 8 (citing nothing); Jenkins Decl. ¶ 18 (same), Plaintiffs did nothing to impede that discovery. By contrast, despite having "receiv[ed] a total of *eleven months* to complete fact discovery," Dkt. No. 43, Order at 2, Barlean's inexplicably failed to serve any interrogatories or requests for admission, and served only a small number of invalid document requests on Plaintiffs. *See* Fitzgerald Decl. ¶ 8 & Ex. 5.

Barlean's failure to serve any interrogatories or requests for admission—which would have quickly and efficiently gotten Barlean's the information it claims it wanted[6]—and its failure to ask direct, concrete, unambiguous questions during Plaintiffs' depositions, belies

---

[6] For example, through a straightforward request for admission like, "Admit that you submitted a claim relating to a class action settlement in *Cumming v. BetterBody*," or a straightforward interrogatory like "identify all class action settlements regarding coconut oil for which you made a claim." Instead, Ms. Jenkins asked vague questions during Plaintiffs' depositions—a time when they could only rely on their memory as they sat there, without the aid of their own or their counsel's investigation, as would have been the case with written discovery requests.

its assertion it "needed this information to properly defend its case," and that Plaintiffs' supposed "misrepresentations denied that information to Barlean's." Mot. at 8-9.[7]

Even if Barlean's had developed evidence tending to call into question Plaintiffs' reliance on the challenged labeling claims, that is not even a legally cognizable basis for finding a class representative inadequate. The Ninth Circuit has "emphasize[d] that the defense of non-reliance is not a basis for denial of class certification," because "lack of reliance is a defense" that "goes to the merits of the case and cannot be considered in a certification motion," *Hannon v. Dataproducts Corp.*, 976 F.2d 497, 509 (9th Cir. 1992) (citations omitted). Since a standing challenge "goes to the merits . . . not whether common issues predominate," *Ehret v. Uber Techs., Inc.*, 148 F. Supp. 3d 884, 902 n.8 (N.D. Cal. 2015), even where "evidence [of non-reliance] is compelling," standing challenges should not scuttle certification unless the defendant "conclusively establish[es] . . . that [the plaintiff] lacks standing." *See McVicar v. Goodman Global, Inc.*, 2015 WL 4945730, at *8 (C.D. Cal. Aug. 20, 2015); *accord Astiana v. Ben & Jerry's Homemade, Inc.*, 2014 WL 60097, at *4 (N.D. Cal. Jan. 7, 2014) (standing is "more properly . . . addressed in the context of a

---

[7] Ms. Jenkins' declaration avers that Barlean's also "needed the information from the class lists to determine whether or not any of the plaintiffs in the Testone Case was a serial plaintiff in these coconut oil cases." Jenkins Decl. ¶ 27. However, the complaints in those cases, including the plaintiffs' identities, are public record, as Ms. Jenkins' declaration demonstrates by attaching most of them. Further, being "a serial" plaintiff has no legal relevance: "the Ninth Circuit has said that 'the term "professional," as in "professional plaintiff," is not a "dirty word" and should not itself undermine one's ability to seek redress for injuries suffered . . . .'" *Nevarez v. Forty Niners Football Co., LLC*, 326 F.R.D. 562, 582-83 (N.D. Cal. 2018) (quoting *Gordon v. Virtumundo, Inc.*, 575 F.3d 1040, 1056 (9th Cir. 2009) (internal citation omitted)). Instead, "repeat litigants may be better able to monitor the conduct of counsel, who as a practical matter are the class's real champions," *Bruno v. Quten Research Inst., LLC*, 280 F.R.D. 524, 534 (C.D. Cal. 2011) (quotation omitted) (noting court was "troubled that Defendants have devoted valuable pages in their Opposition to an apparent smear campaign that paints Plaintiff as a 'serial plaintiff' because she is litigating two class actions"); *see also Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 954 (7th Cir. 2006) ("Nothing about the frequency of Murray's litigation implies that she is less suited to represent others than is a person who received and sued on but a single offer.").

dispositive motion, rather than . . . a motion for class certification"); *cf. Red v. Kraft Foods, Inc.*, 2011 WL 4599833, at *6 (C.D. Cal. Sept. 29, 2011) (even where deposition statements were "obviously problematic," defendant's "cherry-picked testimony" was "insufficient to demonstrate that . . . Plaintiff[] lack[s] standing"); *Zakaria v. Gerber Prods. Co.*, 2016 WL 6662723, at *5-6 (C.D. Cal. Mar. 23, 2016) (similar discussion).

Likewise, "[c]redibility problems do not automatically render a proposed class representative inadequate . . . and some courts in this district have found credibility to be irrelevant." *Ross v. RBS Citizens, N.A.*, 2010 WL 3980113, at *4 (N.D. Ill. Oct. 8, 2010), *vacated on other grounds*, 569 U.S. 901 (2013); *see also Harris v. Vector Mktg. Corp.*, 753 F. Supp. 2d 996, 1015 (N.D. Cal. 2010) ("Only when attacks on the credibility of the representative are so sharp as to jeopardize the interests of absent class members should such attacks render a putative class representative inadequate."); *accord Nunez v. BAE Sys. San Diego Ship Repair Inc.*, 2017 WL 5446086, at *7 (S.D. Cal. Nov. 14, 2017) (Even where an "inconsistency" is "disquieting," courts are reluctant to find representatives inadequate.).

Barlean's "doubt" about "the veracity of all three of the plaintiffs," *see* Jenkins Decl. ¶ 19—which is the basis of its disqualification motion—is based on its belief that Plaintiffs hid their participation in the BetterBody settlement because that information would be damaging to their effort to represent the class here. But that is contrary to the law. *Compare* Jenkins Decl. Ex. Z at 1 (Dahl objecting to Barlean's subpoenas on the basis "lists of 'all class members participating in the settlement common fund' from unrelated cases, unrelated products, and unrelated parties is not relevant to any claim or defense in the *Testone* matter.")

Moreover, regardless of his participation in the BetterBody settlement, Mr. Shanks' involvement in *Jarrow* as a named plaintiff was public information known to Ms. Jenkins. *See* Jenkins Decl. ¶ 10 (quoting Jenkins Decl. Ex. J, Shanks Dep. Tr. at 14:14-15:11). If his purchasing other coconut oils was truly problematic, his lying about making a claim relating to BetterBody would not have helped. This demonstrates Plaintiffs' counsel never believed this was a problem that needed to be covered up through suborned perjury. Rather, if that were the law, they would not have included Mr. Shanks as a third named plaintiff in this case.

18

Plaintiffs' counsel practice frequently before the judges in this District, and their standing and reputations with the District's judges matter to them. Fitzgerald Decl. ¶ 9. In contrast to the criminal behavior in which Barlean's accuses Plaintiffs' counsel of engaging, federal courts and opposing counsel have publicly noted counsel's ethics and candor. *See id.* ¶¶ 10-11 & Exs. 6-7. In light of its misplaced legal theory, Barlean's "has demonstrated no benefit that [Plaintiffs'] Attorney[s] or [their] client[s] might hope to obtain as a result of th[e] alleged lie[s]," especially "one for which an attorney in [Fitzgerald and Joseph's] position would be willing to risk [their] integrity and [their] professional career[s]." *See Nault*, 148 F.R.D. at 33. Because Barlean's disqualification motion is based on legal contentions that are not "warranted by existing law," its motion violates Rule 11(b)(2).

## II.    BARLEAN'S DISQUALIFICATION MOTION WAS BROUGHT FOR IMPROPER PURPOSES

### A.    Barlean's Lacks Standing to Seek Disqualification of Counsel

"[D]isqualification motions are 'especially prone to tactical abuse,'" . . . and 'strongly disfavored,'" *Sherman v. CLP Res., Inc.*, 2015 WL 13542762, at *2 (C.D. Cal. Feb. 4, 2015) (quoting *Sharp v. Next Entm't, Inc.*, 163 Cal. App. 4th 410, 424 (2008), and *Visa U.S.A., Inc. v. First Data Corp.*, 241 F. Supp. 2d 1100, 1104 (N.D. Cal. 2003)). As a result, "the court must subject their evidence and arguments to 'particularly strict judicial scrutiny,'" *id.* (quoting *Optyl Eyewear Fashion Int'l Corp. v. Style Cos., Ltd.*, 760 F.2d 1045, 1050 (9th Cir. 1985) (citations omitted)). To "protect[] against the strategic exploitation of the rules of ethics and guard[] against improper use of disqualification as a litigation tactic," *id.*, at *3 (quoting *Great Lakes Const., Inc. v. Burman*, 186 Cal. App. 4th 1347, 1358 (2010) ["*Great Lakes*"]), "[a] standing requirement is implicit in disqualification motions," *id.*, at *2.

"For a conflict-based disqualification motion, the general rule . . . is that the party seeking disqualification must have had an attorney-client relationship with the attorney he or she seeks to disqualify." *Id.* (citing *Colyer v. Smith*, 50 F. Supp. 2d 966, 968 (C.D. Cal. 1999); *Great Lakes*, 186 Cal. App. 4th at 1356). Barlean's does not assert this is the case. "Thus, under the general rule, [Barlean's] lacks standing to bring this motion." *See id.*

19

Nevertheless, "in a case where the ethical breach so infects the litigation in which disqualification is sought that it impacts the moving party's interest in a just and lawful determination of her claims, she may have the constitutional standing needed to bring a motion to disqualify based on . . . [an] ethical violation." *Colyer*, 50 F. Supp. 2d at 971-72. However, "standing *does not* arise from a supposed desire to 'ensure the integrity of the process and the fair administration of justice.'" *See Sherman*, 2015 WL 13542762, at *3 (quoting *Great Lakes*, 186 Cal. App. 4th at 1358). "Were this rule not enforced, opponents in every case could assert a boilerplate 'interest in a just and binding adjudication' on the way to seeking adversary counsel's exclusion. Or, perhaps more relevant, they could seek disqualification to improperly achieve delay, intimidation, or some other strategic end." *Id.*, at *4 (citing *McPhearson v. Michaels Co.*, 96 Cal. App. 4th 843, 849-50 (2002) (

> [W]here . . . disqualification is sought by a litigation adversary who is not personally interested in the alleged conflict, courts must be skeptical. This is so because motions to disqualify counsel often pose the very threat to the integrity of the judicial process that they purport to prevent. They can be used to harass opposing counsel, to delay the litigation, to intimidate an adversary into accepting settlement on otherwise unacceptable terms, or for other strategic purposes." (citations omitted))).

"The burden of establishing standing always rests with the party asserting it." *Id.* (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 562 (1992)). Here, Barlean's does not even attempt to demonstrate standing. Instead, it only "suggests that the conduct of" Plaintiffs' counsel "'in some way "taints" the trial or legal system,'" and "goes to the very heart of the judicial system." Mot. at 18 (quoting *Fed. Deposit Ins. Co. v. Isham*, 782 F. Supp. 524, 528 (D. Colo. 1992)). Barlean's suggestion is insufficient to establish its standing. *See Sherman*, 2015 WL 13542762, at *3-4 ("neither a general interest in a just adjudication nor an interest in winning case is enough").

**B.    Barlean's "Disqualification" Motion is Really a Thinly-Disguised, Premature Opposition to Class Certification**

Although Barlean's styled its motion as one to "disqualify" Plaintiffs as class representatives, there is no authority permitting such relief against named plaintiffs, and

Barlean's lacks standing to seek counsel's disqualification based on supposed wrongdoing. Instead, Barlean's argument is really that Plaintiffs and their counsel do not satisfy Rule 23(a)(4)'s adequacy requirement. *See* Mot. at 21 ("the same arguments concerning adequacy of plaintiffs and plaintiffs' counsel will be made in Barlean's opposition to the motion for class certification"). That is premature. Plaintiffs have not yet filed their class certification motion, and nothing even requires all three to move to be appointed as class representatives.

"Under FRCP 23, the party seeking class certification bears the burden of demonstrating that she has met each of the four requirements of FRCP 23(a) and at least one of the requirements of FRCP 23(b)." *Krzesniak v. Cendant Corp.*, 2007 WL 640594, at \*3 (N.D. Cal. Feb. 27, 2007) (citation omitted). Rule 23(d) provides that, "[i]n conducting an action under this rule, the court may issues orders that," among other things, "determine the course of proceedings or prescribe measures to prevent undue repetition or complication in presenting evidence or argument[.]" Fed. R. Civ. P. 23(d)(1)(A). The objective of this rule is "the fair and efficient conduct of the action . . . ." Rule 23(d), Advisory Committee Note (1966 Amendment). Pursuant to Rule 23(d), the Court initially ordered that "[a]ll fact discovery . . . be completed by all parties by January 24, 2020," and that "[a]ny motion for class certification . . . be filed by February 24, 2020." *See* Dkt. No. 27 at 2 (emphasis omitted).

Eight days before the discovery cut-off, on January 16, 2020, Ms. Jenkins revealed that Barlean's "IT employee had searched on the titles, or subject lines of each document for the specified terms, rather than searching both the title and body of each document," so that Barlean's document production was incomplete. *See* Dkt. No. 39 at 3. As a result, the parties requested an additional three months of discovery. *See id.* at 3-4. The Court granted the request, with "the fact discovery deadline . . . CONTINUED until March 24, 2020, and "the deadline for filing a motion for class certification . . . CONTINUED until April 24, 2020[.]" Dkt. No. 40 at 2 (emphasis omitted). However, despite its representations that it would complete its document search and production within three months, Barlean's was unable to do so. *See* Dkt. No. 42 at 4-5, ¶¶ 19-24. Accordingly, the parties again requested an extension of the discovery cut-off date and class certification motion deadline. *See id.* at 5-6.

Admonishing that "[c]arelessness is not compatible with a finding of diligence and offers no reason for a grant of relief," Judge Skomal, "[i]n an effort to move this matter forward," nevertheless granted the parties' request, stating that the "extension should provide the parties enough time to complete outstanding class related document production and Rule 30(b)(6) deposition," and "caution[ed] that no further extensions are likely to be granted." Dkt. No. 43 at 2 (emphasis omitted). The Court then set forth a specific schedule, ordering Barlean's to "complete production of documents by May 25, 2020," and to "produce a Rule 30(b)(6) witness no later than June 17, 2020 on such newly documents produced [sic]." *Id.* at 2-3. The Court also ordered that "the deadline for filing a motion for class certification is CONTINUED until July 24, 2020." *Id.* at 3.

"The determination of whether to certify a class has enormous implications for all participants," and "[w]ithout a complete record, [a] [c]ourt is unable to conduct the rigorous analysis required by Rule 23." *Krzesniak*, 2007 WL 640594, at *3 (citing *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1233 (9th Cir. 1996) (citation omitted)). Moreover, "fairness" requires that a plaintiff have "ample opportunity to establish his qualifications as a class representative." *See id.*, at *4. Where a "[p]laintiff has not yet filed his motion, he has not been afforded the opportunity to bear his burden and the record before the [c]ourt is incomplete and ill-suited to the task of informing its judgment." *See id.*, at *3.

Barlean's admits that "the same arguments [it makes] concerning adequacy of plaintiffs and plaintiffs' counsel will be made in Barlean's opposition to the motion for class certification," and that "the Court will have to determine those issues in the context of class certification, even if it has not yet ruled on the instant motion." Mot. at 21.[8] Thus, Barlean's highlights the inefficiency of its invitation to the court to consider Rule 23's criteria piecemeal and outside the context of a certification motion.

"[I]n evaluating the pleading process in class actions the court and the parties always

---

[8] Barlean's even filed an emergency motion, providing this as grounds to stay the entire case. *See* Dkt. No. 52, Not. of Mot. at 2; Dkt. No. 52-1, Mot. at 2, 5, 7-8.

should keep in mind two of the basic philosophies of the federal rules-simplicity of procedure and a desire for the speedy determination of litigation on its merits." *Krzesniak*, 2007 WL 640594, at \*4 (quoting *Castillo v. Norton*, 219 F.R.D. 155, 159 (D. Ariz. 2003) (quoting 5 Charles Alan Wright & Arthur R. Miller, 7B Fed. Prac. & Proc. Civ. 3d § 1798)). "Here, adhering to the normal and accepted procedural course will best ensure that the proposed class action is conducted in a simple and speedy manner." *See id.*

In sum, "if the defendant chooses to attack a proposed class's ability to meet the prerequisites of FRCP 23(a) or (b), the defendant should do so by opposing the plaintiff's motion for class certification." *Id.* Attempting to undercut Rule 23(a) requirements in other pleadings is "not proper," *see Uyeda v. J.A. Cambece Law Office, P.C.*, 2005 WL 1168421, at \*6 (N.D. Cal. 2005). Barlean's motion, though, is especially abusive because it attempts to paint Plaintiffs and their counsel in a poor light and thereby prejudice the Court against them.

In addition, the timing of Barlean's motion suggests it was brought to distract Plaintiffs' counsel from reviewing and preparing to depose Barlean's on the "approximately 50,000 . . . documents" the Court ordered it to "produce[] to plaintiffs on May 25, 2020," *see* Jenkins Decl. ¶ 45,[9] and from preparing Plaintiffs' class certification motion by "jamming up" counsel with the need to oppose the disqualification motion—and an emergency motion for stay seeking duplicative relief—during this critical time.

Barlean's *ex parte* motion for a stay filed shortly after its disqualification motion also demonstrates Barlean's is using the disqualification motion to avoid expense associated with properly opposing a full class certification motion. It argues that "the Motion to Disqualify does not require additional discovery for a ruling" since it was "filed, and scheduled to proceed" before Plaintiffs' class certification motion was due, whereas if Barlean's has to wait to make "[t]he same arguments . . . concerning adequacy of plaintiffs as class representatives . . . in Barlean's opposition to the motion for class certification," this means

---

[9] Like other assertions in her declaration, this estimate, one week before Barlean's made its supplemental production, was significantly overstated. *See* Dkt. No. 52-2, Jenkins Decl. ¶ 7 (admitting Barlean's produced only "25,000 new documents").

it "will have to . .. ret[ain] and prepar[e] [ ] expert witnesses . . . ." Dkt. No. 52-1 at 5; *see also id.* at 7 ("If [the Court] grants the Motion to Disqualify, it will not have to consider the class certification at all . . . ."). But if Barlean's had really believed that a Plaintiff's purchase of another coconut oil provided reasonable grounds to move for his disqualification prior to the filing of a class certification motion, it could have done so long ago with respect to Mr. Shanks, who Barlean's and Ms. Jenkins have long known was a named plaintiff in *Jarrow*.

Finally, Barlean's motion improperly seeks a procedural advantage: to have Plaintiffs' claims dismissed on the basis that they lack standing, Barlean's would have to move for summary judgment, but it could not do so prior to Plaintiffs filing a class certification motion without waiving the protection it is afforded under the one-way intervention rule.

## III.    BARLEAN'S AND MS. JENKINS SHOULD BE SANCTIONED

"One of the fundamental purposes of Rule 11 is to reduce frivolous . . . motions and to deter costly meritless maneuvers thereby avoiding delay and unnecessary expense in litigation." *Park Assist*, 2020 WL 520900, at *1 (quoting *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1127 (9th Cir. 2002) (internal quotation marks and citations omitted)); *see also Bogdan*, 2000 WL 1847608, at *10 ("Rule 11 'enables the court to protect itself, and the litigants in other cases, from the burdens of frivolous or vexatious filings,'" which "'injure[] the judicial system and other litigants, whose day in court is postponed as judges must devote time to needless motions and heedless litigants.'" (quoting *Frantz v. United States Powerlifting Federation*, 836 F.2d 1063, 1066 (7th Cir. 1987))).

Under Rule 11, "[t]he court 'may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation.'" *Simpson v. Cal. Pizza Kitchen, Inc.*, 2013 WL 12114487, at *2 (S.D. Cal. Oct. 23, 2013) (Sammartino, J.) (quoting Fed. R. Civ. P. 11(c)(1)). "Sanctions under Rule 11 have been recognized to serve the multiple purposes of punishment, compensation and deterrence." *Bernal*, 479 F. Supp. 2d at 1330 (citing *Donaldson v. Clark*, 819 F.2d 1551, 1556 (11th Cir. 1987); *Brandt v. Schal Assocs., Inc.*, 960 F.2d 640, 645-46 (7th Cir. 1992)).

In *Nault*, the court struck the offensive pleading and ordered the plaintiff's attorney to

24

"write formal letters of apology to [defense] counsel . . . for his and his firm's unacceptable written outbursts in this matter," with the letters to "be courteous in tone, specific in retracting the unfounded charges stricken by the Court, and acceptable to the Court," and with "[a] copy . . . made a permanent part of the record," since "[o]ffended counsel are entitled to no less." 148 F.R.D. at 37. It further ordered that "*all* future pleadings . . . be reviewed by a 'Rule 11 committee'" of lawyers "not directly involved in the conduct of this case," with a certification of the review accompanying every filing. *Id.* at 37-38. Finally, the court ordered the offending attorney's law firm to "pay $1,000.00 to [defense counsel] in payment of a portion of the attorneys' fees incurred in addressing these issues." *Id.* at 38.

Barlean's brief and Ms. Jenkin's declaration contain "numerous unprofessional and inappropriate remarks and accusations concerning [Plaintiffs] and [their] counsel." *See Reiner v. Graiwer*, 2015 WL 9999191, at *13 (C.D. Cal. Nov. 25, 2015) (citation omitted). Moreover, Barlean's accusations are part of an unfortunate pattern of unprofessional behavior by its counsel. *See*, *e.g.*, Fitzgerald Decl. ¶¶ 12-13 & Exs. 8-9 (email communications with sarcastic responses, *ad hominem* attacks, and refusals to meet and confer).

Plaintiffs believe sanctions along the lines of those imposed by the *Nault* court—striking the disqualification motion, imposing monetary sanctions against both Barlean's and Ms. Jenkins, requiring Barlean's and Ms. Jenkins to file letters of apology addressed to Messrs. Joseph and Fitzgerald, and requiring all future filings to be specifically certified to comply with Rule 11—are necessary "to deter repetition of the conduct or comparable conduct by others similarly situated." *See* Fed. R. Civ. P. 11(c)(4).

For monetary sanctions, Plaintiffs request that Barlean's be sanctioned in the amount of Plaintiffs' counsel's reasonable fees incurred in connection with this Rule 11 Motion and opposing Barlean's disqualification motion, payable to counsel to reimburse counsel for the expenses unreasonably incurred *see* Fitzgerald Decl. ¶¶ 14-15, and that Ms. Jenkins be sanctioned in the amount of $1,000, payable to the Court.

## **CONCLUSION**

The Court should grant the motion and impose sanctions.

Dated: May 28, 2020                   Respectfully submitted,

                                       /s/ Jack Fitzgerald
                                       **THE LAW OFFICE OF JACK FITZGERALD, PC**
                                       JACK FITZGERALD
                                       *jack@jackfitzgeraldlaw.com*
                                       TREVOR M. FLYNN
                                       *trevor@jackfitzgeraldlaw.com*
                                       MELANIE PERSINGER
                                       *melanie@jackfitzgeraldlaw.com*
                                       Hillcrest Professional Building
                                       3636 Fourth Avenue, Suite 202
                                       San Diego, California 92103
                                       Phone: (619) 692-3840
                                       Fax: (619) 353-0404

                                       **THE LAW OFFICE OF PAUL K. JOSEPH, PC**
                                       PAUL K. JOSEPH
                                       *paul@pauljosephlaw.com*
                                       3150 Cabrillo Bay Ln.
                                       San Diego, CA 92110
                                       Phone: (619) 767-0356
                                       Fax: (619) 331-2943

                                       ***Counsel for Plaintiffs***