1

2

**THE LAW OFFICE OF**
**PAUL K. JOSEPH, PC**
PAUL K. JOSEPH (SBN 287057)

3
*paul@pauljosephlaw.com*
3150 Cabrillo Bay Ln.

4
San Diego, California 92110

5
Phone: (619) 767-0356
Fax: (619) 331-2943

6

7
**THE LAW OFFICE OF**
**JACK FITZGERALD, PC**

8
JACK FITZGERALD (SBN 257370)
*jack@jackfitzgeraldlaw.com*

9
TREVOR M. FLYNN (SBN 253362)

10
*trevor@jackfitzgeraldlaw.com*
MELANIE PERSINGER (SBN 275423)

11
*melanie@jackfitzgeraldlaw.com*

12
Hillcrest Professional Building
3636 Fourth Avenue, Suite 202

13
San Diego, California 92103

14
Phone: (619) 692-3840
Fax: (619) 353-0404

15
***Counsel for Plaintiffs***

16

17
**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

18

19

20
MICHAEL TESTONE, COLLIN SHANKS, and LAMARTINE PIERRE, on behalf of themselves, all others similarly situated, and the general public,

Case No: 3:19-cv-00169-JLS-BGS

21

22
            Plaintiffs,

**MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

23

24
vs.

25
BARLEAN'S ORGANIC OILS, LLC,

26
            Defendant.

Judge:   Hon. Janis L. Sammartino
Date:    May 20, 2021
Time:    1:30 p.m.
Court:   4D – 4th Floor

27

28

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. iii

INTRODUCTION.............................................................................1

FACTS & EVIDENCE SUPPORTING THE CLASSES' CLAIMS ....................................2

    I.    BARLEAN'S MARKETS THE COCONUT OILS AS HEALHTY ................2

    II.   THE COCONUT OILS BORE UNAUTHORIZED NUTRIENT CONTENT CLAIMS ....................................................................6

    III.  PLAINTIFFS PURCHASED BARLEAN'S COCONUT OILS BELIEVING THEY WERE HEALHTY ......................................6

    IV.  THE BARLEAN'S COCONUT OILS ARE NOT HEALTHY .........................7

    V.   BARLEAN'S KNOWS BUT INTENTIONALLY FAILS TO DISCLOSE THAT ITS COCONUT OILS ARE NOT HEALTHY.................8

LEGAL STANDARD.........................................................................9

ARGUMENT ................................................................................10

    I.    THE REQUIREMENTS OF RULE 23(A) ARE SATISFIED .........................10

        A.    Numerosity ....................................................................10

        B.    Commonality .................................................................10

        C.    Typicality ......................................................................12

        D.    Adequacy......................................................................13

    II.   THE REQUIREMENTS OF RULE 23(B)(3) ARE SATISFIED....................14

        A.    Predominance ................................................................14

1.   The Classes' Claims will be Resolved through Objective Standards and Common Evidence that Apply Classwide ............15

    a.   Consumer Fraud: Affirmative Misrepresentation .............15

    b.   Consumer Fraud: Deceptive Omission ..............................19

    c.   Breach of Warranty ...........................................................20

    d.   "Unlawful" Misbranding ...................................................21

2.   The Classes' Damages Models are Consistent with its Theories of Liability, and Capable of Measuring Classwide Damages ........................................................................21

    a.   The Class's Price Premium Damages Model is Consistent with Plaintiffs' Affirmative Misrepresentation, Deceptive Omission, and Breach of Warranty Claims ..................................................22

    b.   The New York Class's Statutory Damages Model is Consistent with Plaintiffs' Claims Under N.Y. Gen. Bus. L. §§ 349 & 350 .................................................24

B.   Superiority .........................................................................................25

CONCLUSION ...................................................................................................25

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# **TABLE OF AUTHORITIES**

**Cases**

*Ackerman v. Coca-Cola Co.*,
 2010 WL 2925955 (E.D.N.Y. July 21, 2010) .................................................21

*Ackerman v. Coca-Cola Co.*,
 2013 WL 7044866 (E.D.N.Y. July 18, 2013) .................................................18

*Allen v. ConAgra Foods, Inc.*,
 331 F.R.D. 641 (N.D. Cal. 2019) ..................................................................12

*Allen v. Similasan Corp.*,
 306 F.R.D. 635 (S.D. Cal. 2015) ...................................................................11

*Amchem Prods., Inc. v. Windsor*,
 521 U.S. 591 (1997) ......................................................................................14

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
 568 U.S. 455 (2013) ..........................................................................9, 11, 17

*Ang v. Bimbo Bakeries USA, Inc.*,
 2014 WL 1024182 (N.D. Cal. Mar. 13, 2014) ...............................................21

*Ang v. Bimbo Bakeries USA, Inc.*,
 2018 WL 4181896 (N.D. Cal. Aug. 31, 2018) ...............................................13

*Arroyo v. United States Dep't of Homeland Sec.*,
 2019 WL 2912848 (C.D. Cal. 2019) .............................................................10

*Banh v. Am. Honda Motor Co., Inc.*,
 2020 WL 4390371 (C.D. Cal. July 28, 2020) ................................................23

*Bee, Denning, Inc. v. Capital All. Grp.*,
 310 F.R.D. 614 (S.D. Cal. 2015) ...................................................................10

*Blackie v. Barrack*,
 524 F.2d 891 (9th Cir. 1975) .........................................................................16

*Bradach v. Pharmavite, LLC*,
 735 Fed. Appx. 251 (9th Cir. 2018) ..............................................................18

*Testone v. Barlean's Organic Oils, LLC*, No. 19-cv-00169-JLS-BGS
MOTION FOR CLASS CERTIFICATION

*Brazil v. Dole Packaged Foods, LLC,*
 2014 WL 2466559 (N.D. Cal. May 30, 2014) .................................................................13

*Briseno v. ConAgra Foods, Inc.,*
 844 F. 3d 1121 (9th Cir. Jan. 3, 2017) ............................................................................9

*Brockey v. Moore,*
 107 Cal. App. 4th 86 (2003) ............................................................................................16

*Bruton v. Gerber Prods. Co.,* --- Fed. Appx. ----,
 2017 WL 1396221 (9th Cir. Apr. 19, 2017) ...................................................................21

*Butler v. Porsche Cars N. Am., Inc.,*
 2017 WL 1398316 (N.D. Cal. Apr. 19, 2017) ................................................................20

*Campbell v. Whole Foods Market Group, Inc.,*
 2021 WL 355405 (S.D.N.Y. Feb. 2, 2021) .....................................................................16

*Castro v. Paragon Indus., Inc.,*
 2020 WL 1984240 (E.D. Cal. Apr. 27, 2020) .................................................................15

*Chacanaca v. Quaker Oats Co.,*
 752 F. Supp. 2d 1111 (N.D. Cal. 2010) ..........................................................................17

*Chapman v. Skype, Inc.,*
 220 Cal. App. 4th 217 (2013) ..........................................................................................15

*Colgan v. Leatherman Tool Group, Inc.,*
 135 Cal. App. 4th 663 (2006) ....................................................................................16, 22

*Comcast Corp. v. Behrend,*
 133 S. Ct. 1426 (2013) .....................................................................................................22

*Daly v. Capital Mgmt. Servs., LP,*
 2015 WL 4662759 (W.D.N.Y. Aug. 6, 2015) .................................................................20

*Daniel v. Ford Motor Co.,*
 806 F.3d 1217 (9th Cir. 2015) .........................................................................................20

*Des Roches v. California Physicians' Serv.,*
 320 F.R.D. 486 (N.D. Cal. 2017) ....................................................................................13

*Erica P. John Fund, Inc. v. Halliburton Co.*,
   563 U.S. 804 (2011) ..............................................................................................15

*Falk v. Gen. Motors Corp.*,
   496 F. Supp. 2d 1088 (N.D. Cal. 2007) ..............................................................19

*Famular v. Whirlpool Corp.*,
   2019 WL 1254882 (S.D.N.Y. Mar. 19, 2019) ..............................................24, 25

*Fitzhenry-Russell v. Pepper Snapple Grp. Inc.*,
   326 F.R.D. 592 (N.D. Cal. 2018) ........................................................................23

*Fitzpatrick v. Gen. Mills, Inc.*,
   263 F.R.D. 687 (S.D. Fla. 2010) ........................................................................11

*Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*,
   317 F.R.D. 374 (S.D.N.Y. 2016) ..................................................................11, 15

*Guido v. L'Oreal USA, Inc.*,
   2013 WL 454861 (C.D. Cal. Feb. 6, 2013) ........................................................19

*Guido v. L'Oreal, USA, Inc.*,
   2013 WL 3353857 (C.D. Cal. July 1, 2013) ......................................................24

*Hadley v. Kellogg Sales Co.*,
   324 F. Supp. 3d 1084 (N.D. Cal. 2018) ........................................................passim

*Harte v. Ocwen Fin. Corp.*,
   2018 WL 1830811 (E.D.N.Y. Feb. 8, 2018) ......................................................18

*Hasemann v. Gerber Prods. Co.*,
   2019 WL 2250687 (E.D.N.Y. Feb. 20, 2019) ..............................................16, 19

*Hasemann v. Gerber Prods. Co.*,
   331 F.R.D. 239 (E.D.N.Y. 2019) ..................................................................15, 16

*Hawkins v. Kroger Co.*,
   --- F.R.D. ----, ----, 2020 WL 7421754 (S.D. Cal. Nov. 9, 2020) ....................15

*Hilsley v. Ocean Spray Cranberries, Inc.*,
   2018 WL 6300479 (S.D. Cal. Nov. 29, 2018) ..............................................21, 23

*Hilsley v. Ocean Spray Cranberries, Inc.*,
  2020 WL 520616 (S.D. Cal. Jan. 31, 2020)................................................................19

*Hinojos v. Kohl's Corp.*,
  718 F.3d 1098 (9th Cir. 2013)...................................................................................17

*Hudock v. LG Elecs. U.S.A., Inc.*,
  2020 WL 4676285 (D. Minn. Aug. 12, 2020) ...........................................................23

*In re Amla Litig.*,
  320 F. Supp. 3d 578 (S.D.N.Y. 2018)........................................................................19

*In re Coca-Cola Prods. Mktg. & Sales Practices Litig.*,
  2020 WL 759388 (N.D. Cal. Feb. 14, 2020) .............................................................11

*In re ConAgra Foods, Inc.*,
  90 F. Supp. 3d 919 (C.D. Cal. 2015) .........................................................................20

*In re Ferrero Litig.*,
  278 F.R.D. 552 (S.D. Cal. 2011).................................................................................18

*In re First Alliance Mortg. Co.*,
  471 F.3d 977 (9th Cir. 2006).......................................................................................13

*In re NJOY, Inc. Consumer Class Action Litig.*,
  120 F. Supp. 3d 1050 (C.D. Cal. Aug. 14, 2015) .....................................................20

*In re Qualcomm Antitrust Litig.*,
  328 F.R.D. 280 (N.D. Cal. 2018)..................................................................................9

*In re Scotts EZ Seed Litig.*,
  2017 WL 3396433 (S.D.N.Y. Aug. 8, 2017).............................................................25

*In re Scotts EZ Seed Litig.*,
  304 F.R.D. 397 (S.D.N.Y. 2015) ..........................................................................16, 21

*Jefferson v. Chase Home Fin.*,
  2008 WL 1883484 (N.D. Cal. Dec. 14, 2007)...........................................................16

*Jimenez v. Allstate Ins. Co.*,
  765 F.3d 1161 (9th Cir. 2014).....................................................................................10

*Johannessohn v. Polaris Indus., Inc.*,
   2020 WL 1536416 (D. Minn. Mar. 31, 2020) ..................................................23

*Johns v. Bayer Corp.*,
   280 F.R.D. 551 (S.D. Cal. 2012)........................................................15, 18

*Kasky v. Nike, Inc.*,
   27 Cal. 4th 939 (2002) ..................................................................15

*Krueger v. Wyeth, Inc.*,
   310 F.R.D. 468 (S.D. Cal. 2015)........................................................13

*Kurtz v. Kimberly-Clark Corp.*,
   321 F.R.D. 482 (E.D.N.Y. 2017) ........................................................11

*Kutzman v. Derrel's Mini Storage, Inc.*,
   2020 WL 406768 (E.D. Cal. Jan. 24, 2020) ...............................................15

*Lambert v. Nutraceutical Corp.*,
   870 F.3d 1170 (9th Cir. 2017)..........................................................22

*Lilly v. Jamba Juice Co.*,
   308 F.R.D. 231 (N.D. Cal. 2014)....................................................13, 21

*Local Joint Exec. Bd. Of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*,
   244 F.3d 1152 (9th Cir. 2001)..........................................................14

*Lovette v. Zale Del., Inc.*,
   2019 WL 2492503 (S.D. Cal. June 13, 2019) .............................................15

*Martin v. Monsanto Co.*,
   2017 WL 1115167 (C.D. Cal. Mar. 24, 2017) ............................................21

*Martinelli v. Johnson & Johnson*,
   2019 WL 1429653 (E.D. Cal. Mar. 29, 2019) ............................................24

*Mass. Mut. Life Ins. Co. v. Super. Ct.*,
   97 Cal. App. 4th 1282 (2002) ..........................................................16

*Miller v. Fuhu Inc.*,
   2015 WL 7776794 (C.D. Cal. Dec. 1, 2015) .............................................22

vii

*Mullins v. Premier Nutrition*,
2016 WL 1535057 (N.D. Cal. Apr. 15, 2016) .................................................. 17

*Nunez v. BAE Sys. San Diego Ship Repair Inc.*,
292 F. Supp. 3d 1018 (S.D. Cal. 2017) .................................................. 10, 14

*Ogden v. Bumble Bee Foods, LLC*,
292 F.R.D. 620 (N.D. Cal. 2013) .................................................. 13

*Park v. Cytodyne Techs, Inc.*,
2003 WL 21283814 (Cal. Super. Ct. May 30, 2003) .................................................. 16

*Rodman v. Safeway, Inc.*,
2014 WL 988992 (N.D. Cal. Mar. 10, 2014) .................................................. 18

*Rodriguez v. Hayes*,
591 F.3d 1105 (9th Cir. 2010) .................................................. 12

*Rodriguez v. It's Just Lunch Int'l*,
2018 WL 3733944 (S.D.N.Y. Aug. 6, 2018) .................................................. 24

*Salvagne v. Fairfield Ford Inc.*,
254 F.R.D. 321 (S.D. Ohio 2009) .................................................. 12

*Schneider v. Chipotle Mexican Grill, Inc.*,
328 F.R.D. 520 (N.D. Cal. 2018) .................................................. 15

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
559 U.S. 393 (2010) .................................................. 9

*Spagnola v. Chubb Corp.*,
574 F.3d 64 (2d Cir. 2009) .................................................. 20

*State Farm Fire & Casualty Co. v. Super. Ct.*,
45 Cal. App. 4th 1093 (1996) .................................................. 16

*Staton v. Boeing Co.*,
327 F.3d 938 (9th Cir. 2003) .................................................. 10

*Steroid Hormone Prod. Cases*,
181 Cal. App. 4th 145 (2010) .................................................. 16

*Tait v. BSH Home Appliances Corp.*,
   289 F.R.D. 466 (C.D. Cal. 2012) ................................................................18, 25

*Tran v. Sioux Honey Ass'n, Coop.*,
   2020 WL 905571 (C.D. Cal. Feb. 24, 2020) ..........................................11, 12

*Tyson Foods, Inc. v. Bouaphakeo*,
   --- U.S. ----, ----, 136 S. Ct. 1036 (2016) ................................................14

*Valentino v. Carter-Wallace, Inc.*,
   97 F.3d 1227 (9th Cir. 1996) ..........................................................................25

*Vasquez v. Super. Ct.*,
   4 Cal. 3d 800 (1971) ......................................................................................17

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) ...................................................................................9, 10

*Wang v. Massey Chevrolet*,
   97 Cal. App. 4th 856 (2002) ..........................................................................21

*Williams v. Gerber Prods. Co.*,
   552 F.3d 934 (9th Cir. 2008) ..........................................................................15

*Wilson v. Hewlett-Packard Co.*,
   668 F.3d 1136 (9th Cir. 2012) ........................................................................19

*Woods v. Maytag Co.*,
   807 F. Supp. 2d 112 (E.D.N.Y. 2011) ............................................................19

*Zakaria v. Gerber Prods. Co.*,
   755 Fed. App'x 623 (9th Cir. 2018) ................................................................23

**Statutes**

Cal. Bus. & Prof. Code § 17203 ..........................................................................22

Cal. Bus. & Prof. Code § 17535 ..........................................................................22

Cal. Bus. & Prof. Code §§ 17200 *et seq.* ............................................................1

Cal. Bus. & Prof. Code §§ 17500 *et seq* .............................................................1

Cal. Civ. Code § 1780(a)(3) ................................................................................22

Cal. Civ. Code §§ 1750 *et seq* ........................................................................1

Cal. Com. Code § 2313(1)(a) .......................................................................21

Cal. Com. Code § 2313(1)(b) ........................................................................21

Fed. R. Civ. P. 23(a)(2) ................................................................................10

Fed. R. Civ. P. 23(a)(4) ................................................................................13

N.Y. Gen. Bus. L. § 349 .................................................................................1

N.Y. Gen. Bus. L. § 350 .................................................................................1

**Other Authorities**

56 Fed. Reg. at 60422 ...................................................................................18

64 Fed. Reg. 62746 (Nov. 17, 1999) ...............................................................6

**Rules**

Fed. R. Civ. P. 23(a)(1) ................................................................................10

Fed. R. Civ. P. 23(b)(3) ................................................................................25

**Regulations**

21 C.F.R. § 101.13 ..........................................................................................6

21 C.F.R. § 101.54 ..........................................................................................6

21 C.F.R. § 101.62 ..........................................................................................6

21 C.F.R. § 101.65 ..........................................................................................6

# __INTRODUCTION__

Plaintiffs Michael Testone, Collin Shanks, and Lamartine Pierre brought this action on January 24, 2019, asserting class claims under California and New York law for consumer fraud relating to Defendant Barlean's Organic Oils, LLC's ("Barlean's") labeling of its 16-, 32-, and 60-ounce sizes of its Virgin, Culinary, and Butter Flavored Coconut Oils (the "Coconut Oils"). Plaintiffs now seek class certification of the following two Classes:

> **The California Class:** All persons in California who, between January 24, 2015 and the date the Class is notified of certification, purchased any of the Barlean's Coconut Oils for household use and not for resale.

> **The New York Class:** All persons in New York who, between January 24, 2016 and the date the Class is notified of certification, purchased any of the Barlean's Coconut Oils for household use and not for resale.

On behalf of the California Class, Testone and Shanks bring claims under California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.* ("UCL"), False Advertising Law, *id.* §§ 17500 *et seq.* ("FAL"), and Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.* ("CLRA"), and for breach of express and implied warranties. On behalf of the New York Class, Pierre brings claims under New York's Unfair and Deceptive Business Practices Law, N.Y. Gen. Bus. L. § 349 ("NY UDBP"), and False Advertising Law, N.Y. Gen. Bus. L. § 350 ("NY FAL").

To show violations of these statutes, Plaintiffs advance three theories of liability. First, Plaintiffs allege that each Coconut Oil bears statements conveying a health message (the "Challenged Claims") that is misleading in light of scientific evidence concerning the detrimental health effects of consuming coconut oil. *See* Dkt. No. 35, First Am. Compl. ("FAC") ¶¶ 1, 37-47. Second, Plaintiffs allege Barlean's was obligated, but failed to disclose material information about the dangers of consuming the Coconut Oils. *See id.* ¶¶ 76-77. Third, Plaintiffs allege Barlean's labeled the Coconut Oils with unauthorized nutrient content claims, rendering them misbranded. *See id.* ¶¶ 78-123.

The Court should certify each Class because Plaintiffs demonstrate below that all the

1

requirements of Rules 23(a) and 23(b)(3) are satisfied. First, to show Rule 23(a)(1)'s numerosity requirement is satisfied, Plaintiffs provide evidence of thousands of units sold. For Rule 23(a)(2) commonality, Plaintiffs show each class member was exposed to the same messaging, and that determining whether it is misleading, unlawful, or in breach of warranty will be answered the same for all class members. For typicality, Plaintiffs show all Class Members share the same legal theories, challenge the same conduct, and suffered the same injury, paying a premium for the Coconut Oils due to the Challenged Claims. And for adequacy, Plaintiffs demonstrates they and their counsel have no conflicts with the Class, and will continue vigorously prosecuting the case on its behalf.

Plaintiffs also demonstrate that Rule 23(b)(3)'s requirements are satisfied. They show that the predominating common questions are whether the Challenged Claims and omissions are misleading to the reasonable consumer or in violation of FDA regulations, rendering the products misbranded. These questions can be answered through common evidence and objective standards that do not depend on the situations of any individual Class Member. If Barlean's is liable, what it owes each Class can be calculated based on the price premium associated with the Challenged Claims and omissions, whether unlawful or misleading. To calculate this premium, the Classes will use a widely-accepted damages model, conjoint analysis, to ensure any damages awarded are attributable only to Barlean's conduct creating the legal liability. Finally, Plaintiffs show class treatment is superior because adjudicating the Class Members' claims individually is economically infeasible.

## **FACTS & EVIDENCE SUPPORTING THE CLASSES' CLAIMS**

### I.   **BARLEAN'S MARKETS THE COCONUT OILS AS HEALHTY**

Barlean's considers itself "a health and wellness company," with that positioning being a "core" part of its brand "identity." *See* Ex. 1,[1] Puckett 30(b)(6) Dep. Tr. at 96:7-18. It has been selling its 16 oz. Virgin Coconut Oil since at least 2012, and introduced the other Coconut Oil sizes and varieties at different times from 2014 to 2017. Ex. 2, Barlean's Third

---

[1] All Exhibit references are to the concurrently-filed Declaration of Paul K. Joseph.

Suppl. Response to Interrogatory No. 1; *see generally* Ex. 3 (label proofs). Knowing its customers are particularly interested in health and wellness, *see* Ex. 1, Puckett 30(b)(6) Dep. Tr. at 96:3-6, Barlean's sells its Coconut Oils primarily in the "natural" channel, which includes retailers like Sprouts, and in health-food stores, *see id.* at 149:21.

There are three varieties of Barlean's Coconut Oils at issue in this case: Virgin, Culinary or Gourmet, and Butter Flavored. Although they bear different names, their composition is materially the same, each comprised almost entirely of organic coconut oil. The only differences among the products is that the Culinary and Butter Flavored Coconut Oils undergo a refining process that includes steaming to remove the coconut smell and taste,[2] which the Virgin does not; and butter flavoring is added to the Butter Flavored Coconut Oil. That refining or flavoring does not, however, change the product's nutritional profile: all three varieties contain 14 grams of total fat, and 12 grams of saturated fat, in a 14-gram (1 tablespoon) serving. Thus, the Coconut Oils' nutritional composition is materially the same.

Barleans knows consumers "WANT—AND PAY MORE FOR—HEALTHIER SNACK CHOICES." *See* Ex. 4 at BAR26867; *see also* Ex. 1, Puckett 30(b)(6) Dep. Tr. at 96:23-97:3 ("Are the health properties of the Barlean's coconut oils important to its purchase[r]s?" A. "Yes."). It "consider[s] the labeling of [its] products to be part of [its] marketing strategy," and tries to "communicate messages that appeal to consumers," thereby "inspir[ing] them . . . [to] purchase it," Ex. 1, Puckett 30(b)(6) Dep. Tr. at 120:17-121:1. Thus, throughout the Class Period, Barlean's intentionally labeled each Coconut Oil with statements that "convey the message that the product is healthy." *See id.* at 165:2-13.

Barlean's conveys that the Coconut Oils are healthy in three main ways. Sometimes the message is express. For example, each Culinary label claims to be the "ultimate" or

---

[2] The 60-fluid ounce sized "Culinary" label produced by Barlean's actually bears the descriptor "Gourmet," *see* Ex. 3 at p. 44 (BAR27184), but like Barlean's Culinary Coconut Oil in 16- and 32-ounce sizes, it is refined to remove the coconut taste and smell, and bears the same claim that it is "for health-conscious gourmets." For simplicity, this brief refers to this product, regardless of size, as Barlean's "Culinary Coconut Oil."

3

"ideal" cooking oil "for health-conscious gourmets." *See* Ex. 3 at pp. 40-44. Barlean's chose this phrase "to appeal to consumers that are interested in health and wellness," and "to convey the message that the product is healthy." *See* Ex. 1, Puckett 30(b)(6) Dep. Tr. at 165:2-13. The Butter Flavored Coconut Oil label similarly claimed it was "a healthy alternative to butter," Ex. 3 at pp. 46, 47, 48, 50, or provided "The Health Benefits of Coconut Oil" with the taste of butter, *id.* at pp. 46, 49. Claims like "SUPERFOOD," "Harvested at peak of . . . nutrition," and "SMART FAT" on some Coconut Oils, also convey an express health message. *See* Ex. 1, Puckett 30(b)(6) Dep. Tr. at 128:21-24 ("Q: Does the -- does the term 'superfood' convey the message that the product is healthy? A. Yes."); *id.* at 148:13-149:8 ("Harvested at peak of . . . nutrition" or "nutritional value" is intended to convey that the coconuts are "being picked at [their] healthiest point."); *id.* at 157:7-17 (admitting "SMART FAT" is "intended to convey the message that the product is healthy").

Barlean's also suggests the Coconut Oils are healthy by highlighting their medium-chain triglycerides (MCT) content, claiming MCTs "are teeming with health benefits." *See* Ex. 5 at BAR53605; *see also* Ex. 3 at p. 49 (MCT claims include "The Health Benefits of Coconut Oil," and "All the Healthy MCTs of our Regular Coconut Oil" on Butter Flavored Coconut Oil). Barlean's testified that "the term 'MCT,' absolutely" "appeals to consumers," *see* Ex. 1, Puckett 30(b)(6) Dep. Tr. at 134:19-22, especially "those that shop in the natural channel" who "tend to be better educated and . . . more sophisticated and . . . would understand what those claims mean and the implications of those claims," *id.* at 150:12-20.

Barlean's also conveys a health message by highlighting the *absence* of nutrients consumers consider unhealthy, with labeling claims like "Non-Hydrogenated," "No Trans Fat," and "No Cholesterol." *See* Ex. 3 at pp. 31-50 (exemplary labels). Asked "why it is important to point out that" the Coconut Oils have "No Cholesterol," Barlean's testified it is "for obvious reasons," namely "people don't want to be intaking cholesterol," and are "watching it. So us calling out no cholesterol, they don't even have to think about it anymore." *See* Ex. 1, Puckett 30(b)(6) Dep. Tr. at 133:19-134:8. As Barlean's knows, these claims appeal to consumers. *See id.* at 135:2-6 ("Q. Do the terms 'no trans fat' and no cholesterol . .

4

. appeal to consumers? A. [Y]es. It would appeal to me.").[3]

In marketing its Coconut Oils as healthy, Barlean's was intentionally consistent in its messaging across the products and their labels. *See* Ex. 1, Puckett 30(b)(6) Dep. Tr. at 123:21-124:4 (it is "important to Barlean's that its marketing messages for its coconut oils are consistent," because "you would confuse the consumer if it's not consistent"). Barlean's even has "processes or systems in place to ensure that the marketing strategy and . . . the key selling points for its coconut oil products is consistent between the products." *Id.* at 122:4-10. Thus, although Barlean's utilized different background colors to distinguish the labels for the Virgin (black), Culinary (off-white), and Butter Flavored (yellow) Coconut Oils, all labels bear terms and phrases that Barlean's intended to convey the same key message—that the Coconut Oils are healthy. *See, e.g., id.* at 159:19-23 ("Q. Does this label of the organic virgin coconut oil, . . . essentially convey the same health message as the butter coconut oil labels? A. Yes."); *see also id.* at 160:22-25 (agreeing the "32-fluid-ounce Virgin Coconut Oil] label conveys essentially the same health message as the 16-ounce version").

Similarly, when certain Coconut Oil labels were refreshed, the messaging remained consistent. *See id.* at 143:8-12 ("Q. Was Barlean's trying to convey the same message regarding the health benefits of the products with this [Butter Flavored] label as with the previous [Butter Flavored] label? A. Yes."); *id.* at 161:16-20 ("Q. You weren't intending to change the messages conveyed between the third and fourth version of the virgin coconut oil, 32-ounce labels, were you? A. No."); *id.* at 164:9-13 ("Q. Okay. As with the . . . 16-ounce, ['Cholesterol-free' and 'non-hydrogenated'] are essentially the same changes that occurred on the 16-ounce; is that correct? A. As far as I know.").

Based on this consistent messaging, Barlean's sometimes promotes its Coconut Oils together. One promotional flyer, for example, promoted Barlean's Virgin and Culinary Coconut Oil together as a "Superfood," that is "IDEAL FOR THE HEALTH CONSCIOUS

---

[3] "Non-Hydrogenated" and "No Trans Fat" mean essentially the same thing, since artificial trans fat is created through the process of partial hydrogenation.

GOURMET" and has "Lauric Acid" and other "MCTs for Brain Health," along with "No Trans Fat." Ex. 6, at BAR340; *see also* Ex. 5 at BAR53603 ("this all-star ingredient is packed with healthy fat"); *id.* at BAR053605 ("One tablespoon contains . . . •14 grams healthy fat • 6,200 mg lauric acid to support healthy metabolism • 640 mg caprylic acid, which is an antifungal • 550 mg capric acid to support healthy inflammation response" and "Cholesterol free," "Non hydrogenated," "No trans fat."); Ex. 7, at BAR3090 ("BENEFITS of MCTs in COCONUT OIL" include, *inter alia*, "cardiovascular benefits" and "cellular metabolism").

## II.   THE COCONUT OILS BORE UNAUTHORIZED NUTRIENT CONTENT CLAIMS

During the entire Class Period, each of the Coconut Oils' labels bore unauthorized nutrient content claims, rendering each misbranded. *See* FAC ¶¶ 89-123 (alleging violations of 21 C.F.R. §§ 101.13(h)(1), 101.54, 101.62, 101.65). For example, "No Trans Fat" and "Non-Hydrogenated" are nutrient content claims under FDA regulations because they "characterize[] the level of a nutrient," 21 C.F.R. § 101.13(b), namely trans fat. *See* 64 Fed. Reg. 62746, 62762 (Nov. 17, 1999) (FDA "considers statements such as 'no hydrogenated oils' or 'hydrogenated fat free' to be implied [nutrient content] claims that a product is free of trans fatty acids"). But they are *unauthorized* nutrient content claims because foods that contain more than 13 grams of total fat or 4 grams of saturated fat per serving—like each of the Coconut Oils—may only bear nutrient content claims if they also bear the disclosure statement, "See nutrition information for total fat and saturated fat content." *See* FAC ¶¶ 99-101 (quoting 21 C.F.R. § 101.13(h)), which the Coconut Oils do not. Similarly, foods must "contain less than 2 grams of saturated fat" to make "Cholesterol Free" claims. *See* 21 C.F.R. § 101.62(d)(1). And to "use the term 'healthy' or related terms," a food must be low in total and saturated fat, which is defined as "3g or less" total fat and "1 g or less" saturated fat. *See id.* § 101.65(d)(2). No Coconut Oils qualify to make "Cholesterol Free" or "healthy" claims.

## III.   PLAINTIFFS PURCHASED BARLEAN'S COCONUT OILS BELIEVING THEY WERE HEALHTY

California Plaintiff Collin Shanks purchased Barlean's Virgin and Butter Flavored

Coconut Oils during the Class Period in reliance on the labeling message, that "this is a very healthy fat," Ex. 8, Shanks Dep. Tr. at 57:3-9, and "a healthy oil," *id.* at 81:14-82:5; *see also id.* at 39:17-19, 43:17-22, 44:8-10, 48-3-5, 51:6-25, 54:15-55:3, 57:3-9, 69:4-70:22, 82:6-83:10; Shanks Decl. ¶¶ 2-12. California Plaintiff Michael Testone also purchased Barlean's Virgin Coconut Oil during the Class Period relying on the Challenged Claims that positioned it as providing "a positive health benefit," Ex. 9, Testone Dep. Tr. at 31:4-17, 32:3-8; *see also id.* at 25:9-12, 26:16-27:5, 27:23-28:5, 38:14-16, 38:25-39:6; 29:21-31:17, 32:3-8 36:6-10, 36:17-19; Testone Decl. ¶¶ 2-6. Likewise, New York Plaintiff Lamartine Pierre purchased Barlean's Virgin Coconut Oil "relying on the health benefits on the packaging label," Ex. 10, Pierre Dep. Tr. at 19:4-8; *see also id.* at 17:21-18:5, 21:13-16, 18:15-23, 19:9-13, 19:20-22, 21:21-22:1, 22:24-23:15, 27:21-28:3, 31:10-12; Pierre Decl. ¶¶ 2-4. Had Plaintiffs known about the health detriments of consuming the Coconut Oils, they would not have purchased them. *See* Shanks Decl. ¶ 12; Testone Decl. ¶ 6; Pierre Decl. ¶ 5.

## IV.   THE BARLEAN'S COCONUT OILS ARE NOT HEALTHY

On behalf of Plaintiffs, Dr. Michael Greger performed a comprehensive literary review, *see* Greger Decl. at 3-6, confirming what leading experts have known for decades: consuming coconut oil—which is over 90 percent saturated fat—consistently and unequivocally increases LDL-cholesterol, total cholesterol, inflammation, and impairs critical arterial function. These physiological effects are well understood, and there is scientific consensus that they directly increase risk of cardiovascular disease, stroke, and other serious illnesses.

Decades of research establishes with medical certainty that "total and LDL cholesterol blood levels are two of the most important risk factors in predicting coronary heart disease (CHD), with higher total and LDL cholesterol levels associated with increased risk of CHD." *Id.* at 8. And studies on coconut oil consumption "consistently" show it causes "a pronounced negative physiological impact that increases risk of cardiovascular disease." *Id.* Because the increased risk of cardiovascular disease for a given increase in LDL-cholesterol level is so well established, researchers performing a year-long study were able to demonstrate that

7

reducing coconut oil consumption to 0.75 tablespoons, from 2.75 tablespoons per day, lowered participants' LDL cholesterol by 21.8% and total cholesterol by 11.9%, reducing coronary morbidity and mortality risky by 6-8%. *See id.* at 9-10 (citation omitted).

Coconut oil also significantly increases CHD risk by increasing inflammation, and impairing both arterial endothelial function and the anti-inflammatory properties of "good" HDL cholesterol. *Id.* at 8, 14-15. And coconut oil's detrimental health effects are not limited to long-term consumption, but are *immediate*. Studies show eating a single meal containing coconut oil can, within hours, "significantly raise cholesterol levels and inhibit arterial endothelial function," both "key risk factors," *id.* at 8-9 (citations omitted).

The evidence of coconut oil's harmful effects continues to grow. An intervention trial published this March found participants who consumed 2 tablespoons daily suffered, within a month, an average 14% increase in LDL cholesterol compared to a control group, signifying an even greater risk of coronary death or heart attack." *Id.* at 11 (citation omitted). "[U]sing the best available estimate of a 23% change in risk of major vascular events for each mmol/L change in LDL, daily incorporation of under 3 tablespoons of coconut oil in the diet for a period of just six months might be expected to raise the risk of coronary death or heart attack 7%." *Id.* at 13 (citations omitted).

In sum, "scientific literature demonstrates that coconut oil consumption substantially increases cardiovascular and metabolic disease risk by adversely affecting blood lipids, artery function, and insulin sensitivity." *Id.* at 1. Thus, "consuming coconut oil is unhealthy as coconut oil consumption causes significant harm to health[.]" *Id.*

## V.   BARLEAN'S KNOWS BUT INTENTIONALLY FAILS TO DISCLOSE THAT ITS COCONUT OILS ARE NOT HEALTHY

During the Class Period, Barlean's was well-aware that consuming coconut oil is harmful to health. For example, in June of 2017, the American Heart Association warned that "because coconut oil increases LDL cholesterol, a cause of [cardiovascular disease], and *has no known offsetting favorable effects*, we advise against the use of coconut oil." *See* FAC ¶ 68 (quoting AHA, *Dietary Fats and Cardiovascular Disease*, Circulation (June 15, 2017)).

8

The very next day, an email was sent to Barlean's then-CEO, John Puckett, among other executives, noting the "statement from the American Heart Association that Coconut Oil is NOT good for you." Ex. 11, at BAR19184. Less than 15 minutes later, Ms. Nielson, wrote "Ohhhhhhh! Not good!," and inquired whether "there is a chance [Barlean's former Director of Education] could write a rebuttal to this?" *Id.* at BAR19183.

On June 23, 2017, a link to an article titled, "Why Coconut Oil Won't Kill You, But Listening to the American Heart Association Might!" was circulated to Barlean's customer service team, noting that "this site would be a good referral to give the customer *as we have to be careful what* we say in regards to the recent 'study,' but *still need to remain positive as coconut oil is a part of our bread and butter*." Ex. 12, at BAR3121 (emphasis added). Privately, though, Barlean's knows that it "can't have 'healthy' associated with coconut oil." *See* Ex. 13, at BAR53783.

## **LEGAL STANDARD**

Under Federal Rule of Civil Procedure 23, "'[a] class action may be maintained' if two conditions are met: The suit must satisfy the criteria set forth in subdivision (a) (*i.e.*, numerosity, commonality, typicality, and adequacy of representation), and it also must fit into one of the three categories described in subdivision (b)." *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010). But these are the *only* criteria that must be met. *Briseno v. ConAgra Foods, Inc.*, 844 F. 3d 1121, 1124-26 (9th Cir. 2017). This is because "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." *In re Qualcomm Antitrust Litig.*, 328 F.R.D. 280, 294 (N.D. Cal. 2018) (quoting *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013) ["*Amgen*"]). Although a certification motion requires a district court to conduct a "rigorous analysis" that "[f]requently . . . will entail some overlap with the merits," *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011) ["*Dukes*"], the merits may be considered "only" to "determin[e] whether the Rule 23 prerequisites to class certification are satisfied." *Amgen*, 568 U.S. at 466.

1

# ARGUMENT

2 **I.    THE REQUIREMENTS OF RULE 23(A) ARE SATISFIED**

3     **A.    Numerosity**

4         Rule 23(a)(1) is satisfied if "the class is so numerous that joinder of all members is

5 impracticable," Fed. R. Civ. P. 23(a)(1). Here, according to Barlean's, it has sold thousands

6 of units of the Coconut Oils in both California and New York, Ex. 2, Barlean's Third Suppl.

7 Response to Interrogatory No. 5, easily satisfying numerosity. *See Nunez v. BAE Sys. San*

8 *Diego Ship Repair Inc*., 292 F. Supp. 3d 1018, 1032 (S.D. Cal. 2017) (Sammartino, J.).

9     **B.    Commonality**

10         Rule 23(a)(2) is satisfied if "there are questions of law or fact common to the class,"

11 Fed. R. Civ. P. 23(a)(2), which means that "the class members have suffered the same injury,"

12 so that their claims "depend upon a common contention . . . . [whose] truth or falsity will

13 resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*,

14 564 U.S. at 350. "What matters to class certification . . . is not the raising of common

15 questions . . . but, rather, the capacity of a classwide proceeding to generate common answers

16 apt to drive the resolution of the litigation." *Arroyo v. United States Dep't of Homeland Sec.*,

17 2019 WL 2912848, at *9 (C.D. Cal. 2019) (citing *Dukes*, 564 U.S. at 350). Questions "have

18 that capacity" when they have a "close relationship with the . . . underlying substantive legal

19 test." *Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1165 (9th Cir. 2014).

20         In the Ninth Circuit, "Rule 23(a)(2) has been construed permissively . . . . The existence

21 of shared legal issues with divergent factual predicates is sufficient, as is a common core of

22 salient facts coupled with disparate legal remedies within the class." *Arroyo*, 2019 WL

23 2912848 at *9 (citing *Staton v. Boeing Co.*, 327 F.3d 938, 953 (9th Cir. 2003)). Common

24 exposure to the same violations creates a "common nucleus of operative facts" sufficient to

25 find commonality. *Bee, Denning, Inc. v. Capital All. Grp.*, 310 F.R.D. 614, 626 (S.D. Cal.

26 2015). Therefore, "[n]umerous courts have recognized that a claim concerning alleged

27 misrepresentations on packaging to which all consumers were exposed is sufficient to satisfy

28 the commonality requirement because it raises the common question of whether the

10

packaging would mislead a reasonable consumer." *Broomfield v. Craft Brew All., Inc.*, 2018 WL 4952519, at *5 (N.D. Cal. Sep. 25, 2018) (collecting cases). Here, the Coconut Oils were labeled with statements that Plaintiffs allege convey a deceptive health message and render them misbranded. Under California and New York's consumer protection statutes, which apply an objective reasonable consumer standard, common questions include "what does the marketing combination mean to a reasonable consumer[,]" *Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*, 317 F.R.D. 374, 399 (S.D.N.Y. 2016), and whether that message "would be deceptive to a reasonable consumer," *In re Coca-Cola Prods. Mktg. & Sales Practices Litig.*, 2020 WL 759388, at *10 (N.D. Cal. Feb. 14, 2020).

This is true even though Barlean's conveyed the health message through various combinations of words and phrases. *See  Allen v. Similasan Corp.*, 306 F.R.D. 635, 647-48 (S.D. Cal. 2015) ("Given the uniformity of the efficacy representations, the Court is not persuaded that the small differences in labeling would cause individual issues to predominate."); *cf. Fitzpatrick v. Gen. Mills, Inc.*, 263 F.R.D. 687, 693-94 (S.D. Fla. 2010) (predominance met where "each plaintiff was likely exposed to a unique array of advertising statements," but defendant nevertheless "convey[ed] the *common message* that eating Yo-Plus aids in . . . digestive health" (emphasis added)), *vacated on other grounds*, 635 F.3d 1279 (11th Cir. 2011). Because all Class Members were exposed the challenged labeling, and "because deception and materiality are objective questions, they are '"common question[s]" for purposes of Rule 23(b)(3).'" *Hadley v. Kellogg Sales Co.*, 324 F. Supp. 3d 1084, 1115 (N.D. Cal. 2018) (alteration in original) (quoting *Amgen*, 568 U.S. at 467). Thus, as courts routinely find in similar mislabeling cases with classwide exposure to a challenged product label, commonality is satisfied here. *See Tran v. Sioux Honey Ass'n, Coop.*, 2020 WL 905571, at *4 (C.D. Cal. Feb. 24, 2020) ("By definition, all class members were exposed to such representations and purchased [Sioux] products, creating a 'common core of salient facts.'" (quotation omitted)); *Kurtz v. Kimberly-Clark Corp.*, 321 F.R.D. 482, 531 (E.D.N.Y. 2017) ("The proposed classes present common questions seeking common answers: (1) What do defendants' 'flushable' representations mean to a reasonable consumer?").

11

## C.   Typicality

"Typicality is satisfied 'when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendants' liability.'" *Hadley*, 324 F. Supp. 3d at 1118 (quoting *Rodriguez v. Hayes*, 591 F.3d 1105, 1122 (9th Cir. 2010)). "This requirement is 'permissive and requires only that the representative's claims are reasonably co-extensive with those of the absent class members; they need not be substantially identical.'" *Id*. (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998)). Where "it is alleged that the defendant[] engaged in a common scheme relative to all members of the class, there is a strong assumption that the claims of the representative parties will be typical of the absent members." *Salvagne v. Fairfield Ford Inc.*, 264 F.R.D. 321, 328 (S.D. Ohio 2009).

That is the case here. Barlean's labeled all Coconut Oils with claims it intended to convey that they are healthy, which constitutes a common scheme. All Class Members were necessarily exposed to this challenged messaging on the labeling of the Coconut Oils and injured in the same manner when they purchased the oils at a price higher than what they would have paid had the labeling not been misleading and unlawful. Plaintiffs' "claims are typical of the proposed class because they focus on [Barlean's] acts in labeling its products, which is conduct that applies equally across the Class and not specifically to [plaintiffs]." *See Tran*, 2020 WL 905571, at *6; *accord Allen v. ConAgra Foods, Inc.*, 331 F.R.D. 641, 655 (N.D. Cal. 2019) ("plaintiffs' legal theory centers on mislabeling and premium pricing, which are typical of the class members' claims"); *Chavez v. Blue Sky Natural Beverage Co.*, 268 F.R.D. 365, 378 (N.D. Cal. 2010) (claim that product label was misleading arose from the same facts and legal theory as other class members and therefore was typical).

That Plaintiffs have not purchased every size of every Coconut Oil does not defeat typicality because, "[w]here the challenged conduct is a policy or practice that affects all class members," the court should "not insist that the named plaintiffs' injuries be identical with those of the other class members, only that the unnamed class members have injuries similar to those of the named plaintiffs and that the injuries result from the same, injurious course of

12

conduct." *Des Roches v. Cal. Physicians' Serv.*, 320 F.R.D. 486, 504 (N.D. Cal. 2017) (internal quotes and citations omitted). Here, "Plaintiffs' claims are 'reasonably co-extensive' with those of the proposed class because they are alleging the same injury based on their purchase of similar products," which "is sufficient, even though Plaintiffs did not purchase all (or even most) of the challenged products." *Ang v. Bimbo Bakeries USA, Inc.*, 2018 WL 4181896, at *9 (N.D. Cal. Aug. 31, 2018); *see also Lilly v. Jamba Juice Co.*, 308 F.R.D. 231, 240 (N.D. Cal. 2014) ("Plaintiffs . . . clearly have a similar alleged injury as the rest of the proposed class, since they purchased products that are the same as, or very similar to, the products challenged by the rest of the proposed class."); *Ogden v. Bumble Bee Foods, LLC*, 292 F.R.D. 620, 626 (N.D. Cal. 2013) (typicality met "as to products with similar or identical claims about Omega-3 content, as those labels may have misled class members in the same way that they allegedly misled [the plaintiff] even if the products are not the same").

Because each Coconut Oil conveys the message that it is healthy, differences in the words used convey the message do not defeat typicality: the "false and deceptive packaging and marketing of [a product] need not be absolutely uniform or 'consist of . . . specifically-worded false statement[s] repeated to each and every [member] of the plaintiff class.'" *Krueger v. Wyeth, Inc*., 310 F.R.D. 468, 479 (S.D. Cal. 2015) (quoting *In re First Alliance Mortg. Co.*, 471 F.3d 977, 992 (9th Cir. 2006)). It is sufficient to show that consumers "were exposed to defendants' overriding and material misrepresentations of the" products." *Id.*; *see also Ang*, 2018 WL 4181896, at *9 ("class allegations all aver[ing] injury based on" Defendant's use of one of a variety of labeling claims—the AHA's Heart-Check Mark, "'good' or 'excellent source of whole grain,'" "bread," and "'100% Whole Wheat'"—were "sufficient, even though Plaintiffs did not purchase all (or even most) of the challenged products"); *Brazil v. Dole Packaged Foods, LLC*, 2014 WL 2466559, at *9 (N.D. Cal. May 30, 2014) (typicality met where plaintiff purchased three of ten products).

### D.     Adequacy

Rule 23(a)(4) is satisfied if "the representative parties will fairly and adequately protect the interests of the class," Fed. R. Civ. P. 23(a)(4). "Resolution of two questions determines

13

legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020 (citation omitted); *see also Nunez*, 292 F. Supp. 3d at 1033.

Plaintiffs are adequate representatives because they are *bona fide* purchasers with standing who relied on the challenged claims in purchasing the Coconut Oils, have no conflicts, are aware of their obligations, and will continue to vigorously prosecute the case for the Class. *See* Testone Decl. ¶¶ 2-13; Shanks Decl. ¶¶ 2-19; Pierre Decl. ¶¶ 2-12; *see also In re Brazilian Blowout Litig.*, 2011 WL 10962891, at *5 (C.D. Cal. Apr. 12, 2011) (class representatives adequate where they "submitted declarations" stating "they understand their responsibilities as class representatives, that no conflicts exist between their interests and other members of the Class, and that they intend to vigorously pursue all claims asserted in this lawsuit"); *Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc*., 244 F.3d 1152, 1162 (9th Cir. 2001) (A plaintiff is adequate if he "understands his duties and is currently willing and able to perform them. The Rule does not require more.").

Plaintiffs have also retained counsel with no conflicts and significant experience prosecuting consumer fraud class actions, including several similar actions involving deceptive healthy labeling practices on coconut oils that resulted in nationwide class settlements providing the classes both injunctive and monetary relief. *See* Joseph Decl. ¶¶ 15-20 & Exs. 14-15. Thus, Plaintiffs' counsel is adequate. *See Nunez*, 292 F. Supp. 3d at 1035.

## II.     THE REQUIREMENTS OF RULE 23(B)(3) ARE SATISFIED

### A.     Predominance

"The 'predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997)). "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than an individual basis." *Hanlon*, 150 F.3d at 1022

14

(quotation omitted). Evaluating predominance "begins . . . with the elements of the underlying cause[s] of action." *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011). "[C]ourts look to whether the focus of the proposed class action will be on the words and conduct of the defendants rather than on the behavior of the individual class members." *Kutzman v. Derrel's Mini Storage, Inc.*, 2020 WL 406768, at *7 (E.D. Cal. Jan. 24, 2020) (citation omitted). "Class actions in which a defendant's uniform policies are challenged generally satisfy the predominance requirement of Rule 23(b)(3)." *Castro v. Paragon Indus., Inc.*, 2020 WL 1984240, at *10 (E.D. Cal. Apr. 27, 2020) (citations omitted). Thus, "[i]n cases alleging misrepresentation, common issues predominate when plaintiffs are exposed to [a] common set of representations about a product." *Schneider v. Chipotle Mexican Grill, Inc.*, 328 F.R.D. 520, 539-40 (N.D. Cal. 2018) (quotation and quotation marks omitted).

### 1.     The Classes' Claims will be Resolved through Objective Standards and Common Evidence that Apply Classwide

#### a.     Consumer Fraud: Affirmative Misrepresentation

"[T]he false advertising standard under the UCL, FAL and CLRA is the same." *Lovette v. Zale Del., Inc.*, 2019 WL 2492503, at *2 (S.D. Cal. June 13, 2019). "[T]hese laws prohibit 'not only advertising which is false, but also advertising which[,] although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public,'" *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (quoting *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 951 (2002)). Thus, they "take an objective approach of the reasonable consumer, not the particular consumer." *Hawkins v. Kroger Co.*, --- F.R.D. ----, -----, 2020 WL 7421754, at *18 (S.D. Cal. Nov. 9, 2020) (quoting *Johns v. Bayer Corp.*, 280 F.R.D. 551, 557 (S.D. Cal. 2012)).

Claims under the NY UDBP and NY FAL also use "an objective definition of 'misleading,' under which the alleged act must be 'likely to mislead a reasonable consumer acting reasonably under the circumstances.'" *Hasemann v. Gerber Prods. Co.*, 331 F.R.D. 239, 257-58 (E.D.N.Y. 2019) ["*Hasemann II*"] (quoting *Goldemberg*, 317 F.R.D. at 389); *see also Mantikas v. Kellogg Co.*, 910 F.3d 633, 637 (2d Cir. 2018). "To successfully assert a

15

claim under either section of the statute, 'a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice.'" *Campbell v. Whole Foods Market Group, Inc.*, 2021 WL 355405, at \*4 (S.D.N.Y. Feb. 2, 2021) (quotation omitted). Whether conduct is "consumer-oriented [ ] [does] not vary from plaintiff to plaintiff" when each purchaser was exposed to the challenged claims via a product's packaging. *Hasemann v. Gerber Prods. Co.*, 2019 WL 2250687, at \*13 (E.D.N.Y. Feb. 20, 2019) ["*Hasemann I*"].

"The primary evidence in a false advertising case is the advertising itself," *Brockey v. Moore*, 107 Cal. App. 4th 86, 100 (2003), and "[t]he 'misleading character' of a given representation 'appears on applying its words to the facts.'" *Jefferson v. Chase Home Fin.*, 2008 WL 1883484, at \*17 (N.D. Cal. Dec. 14, 2007) (quoting *Colgan v. Leatherman Tool Group, Inc.*, 135 Cal. App. 4th 663, 679 (2006)). This means a violation under the UCL and FAL "can be shown even if no one was actually deceived, relied upon the fraudulent practice, or sustained any damage." *See State Farm Fire & Casualty Co.v. Super. Ct.*, 45 Cal. App. 4th 1093, 1105 (1996); *see also Steroid Hormone Prod. Cases*, 181 Cal. App. 4th 145, 154 (2010) ("once the named plaintiff" shows injury, "no further individualized proof of injury or causation is required"). Similarly, under New York law, "[n]either section 349 nor section 350 contains a reliance requirement, and a proper claim under section 349 or 350 does not require proof that a consumer actually relied on the misrepresentation." *Hasemann II*, 331 F.R.D. at 257 (citing *In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 409 (S.D.N.Y. 2015)).

"Materiality is part of the 'reasonable consumer' standard . . . in that reasonable consumers are not deceived by immaterial claims." *Park v. Cytodyne Techs., Inc.*, 2003 WL 21283814, at \*2 (Cal. Super. Ct. May 30, 2003). Moreover, although the CLRA "requires that plaintiffs . . . show not only that a defendant's conduct was deceptive but that the deception caused them harm," at trial, this element "is commonly proved [classwide] more likely than not by materiality," *Mass. Mut. Life Ins. Co. v. Super. Ct.*, 97 Cal. App. 4th 1282, 1292 (2002) (quoting *Blackie v. Barrack*, 524 F.2d 891, 907 n.2 (9th Cir. 1975)), since, "if .

16

. . . material misrepresentations were made to the class members, at least an inference of reliance would arise as to the entire class," *Vasquez v. Super. Ct.*, 4 Cal. 3d 800, 814 (1971).

A "representation is 'material' . . . if a reasonable consumer would attach importance to it *or* if 'the maker of the representation knows or has reason to know that its recipient regards or is likely to regard the matter as important in determining his choice of action.'" *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1107 (9th Cir. 2013) (quoting *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 333 (2011)); *see also Mullins v. Premier Nutrition*, 2016 WL 1535057, at *5 (N.D. Cal. Apr. 15, 2016) ("[M]ateriality may be established by common proof '[b]ecause materiality is judged according to an objective standard,' and so '[t]he alleged misrepresentations and omissions, whether material or immaterial, would be so equally for all [consumers] composing the class.'" (quoting *Amgen*, 568 U.S. at 459)).

While Plaintiffs don't need to prove materiality at certification, *see Hadley*, 324 F. Supp. 3d at 1115, here, as described above, the record is ripe with evidence of materiality, including Barlean's testimony, *see* Puckett 30(b)(6) Dep. Tr. at 96:3-6, 96:19-22, 96:23-97:3, 120:17-121:1, 128:21-24, 133:24-134:1, 134:19-22, 135:2-6, 148:14-149:8, 157:8-17, 160:3-10, 165:2-13, showing that it "knows or has reason to know that [a coconut oil purchaser] regards or is likely to regard [the message that the Coconut Oils are healthy] as important in determining his choice of action." *See Hinojos*, 718 F.3d at 1107 (quoting *Kwikset Corp.*, 51 Cal. 4th at 333). Moreover, the FDA's regulations prohibiting Barlean's use of the challenged nutrient content claims establishes materiality as a matter of law because "the legislature's decision to prohibit a particular misleading advertising practice is evidence that the legislature has deemed that the practice constitutes a 'material' misrepresentation, and courts must defer to that determination." *Rahman v. Mott's LLP*, 2014 WL 6815779, at *7 (N.D. Cal. Dec. 3, 2014) (quotation and citation omitted).[4]

Because "deception and materiality under the FAL, CLRA, and UCL are objective

---

[4] A primary purpose of the FDA in regulating nutrient content claims was "[t]o ensure that consumers are not misled and are given reliable information." 56 Fed. Reg. 60045, 60422 (Nov. 27, 1991).

questions," *Hadley*, 324 F. Supp. 3d at 1115, such claims are "ideal for class certification because they will not require the court to investigate class members' individual interaction with the product." *Bradach v. Pharmavite, LLC*, 735 Fed. App'x 251, 254-55 (9th Cir. 2018) (quoting *Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 480 (C.D. Cal. 2012)). The same is true under N.Y. Gen. Bus. L. §§ 349 & 350—they "are considered ideal for class certification because they allow the court to adopt classwide presumptions of reliance and do not require an investigation into class members' individual interaction with the product." *Ackerman v. Coca-Cola Co.*, 2013 WL 7044866, at *10 (E.D.N.Y. July 18, 2013).

Here, because each Class Member was exposed to the challenged conduct, "the predominating common issues include whether [defendant] misrepresented" that the Coconut Oils are healthy, "and whether the misrepresentations were likely to deceive a reasonable consumer." *See Johns*, 280 F.R.D. at 557 ; *cf. Krommenhock*, 334 F.R.D. at 563-66; *Hadley III*, 324 F. Supp. 3d at 1094-103; *In re Ferrero Litig.*, 278 F.R.D. 552, 560 (S.D. Cal. 2011). The answers to these objective questions will apply to all Class Members equally, such that their claims will rise or fall together. *See Rodman v. Safeway, Inc.*, 2014 WL 988992, at *9 (N.D. Cal. Mar. 10, 2014) ("The scope and proper interpretation of the objective words of the parties' agreement is a common question that applies commonly to all members of the class, is an issue whose resolution will drive resolution of the litigation, and will predominate over any individualized issues."); *Harte v. Ocwen Fin. Corp.*, 2018 WL 1830811, at *34 (E.D.N.Y. Feb. 8, 2018) (whether conduct is consumer-oriented under GBL § 349 "is ultimately a matter of law that would apply equally to all members across the board," "[r]egardless of the class members' individual circumstances").

Further, whether the health message is likely to mislead the reasonable consumer can be proven through common evidence, like the scientific literature as explained by Dr. Greger, that applies equally to all Class Members. *See Hadley*, 324 F. Supp. 3d at 1101 ("the falsity or deceptiveness of the challenged health statements . . . will be determined based solely on whether the health statements are likely to deceive or mislead a hypothetical reasonable consumer in light of the amount of added sugar . . . [in] those products." ); *id.* at 1115 ("With

18

regards to deception . . . Plaintiff has offered evidence of the nutritional content of the challenged products, as well as the testimony of two scientific experts, Drs. Lustig and Greger, explaining the physiological effects of consuming the products and opining as to the veracity of their health and wellness claims . . . ."); *Krommenhock*, 334 F.R.D. at 569.

In sum, because each Class Member was exposed to the challenged labeling, whether Barlean's labeling practices are misleading under the reasonable consumer standard will apply equally to all. *See Hilsley v. Ocean Spray Cranberries, Inc.*, 2020 WL 520616, at *2 (S.D. Cal. Jan. 31, 2020) ("common questions of law and fact" that "predominate over individual questions" included, "whether Ocean Spray's representations . . . were false and misleading or reasonably likely to deceive consumers"); *Hasemann I*, 2019 WL 2250687, at *13 ("Because the individual consumer's expectations and experience have no bearing on liability or damages, 'courts regularly certify classes alleging § 349 violations when the injury was payment of a price premium.'" (quoting *In re Amla Litig.*, 320 F. Supp. 3d 578, 592-93 (S.D.N.Y. 2018) (collecting cases)))

### b.     Consumer Fraud: Deceptive Omission

Under California law, a duty to disclose material facts arises, *inter alia*, when the defendant "had exclusive knowledge of material facts not known to the plaintiff[] . . . actively conceal[ed] a material fact from the plaintiff[, or] . . . ma[de] partial representations but also suppresse[d] some material fact." *Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1095 (N.D. Cal. 2007) (quotation omitted). Similarly, under New York law, "when a defendant exclusively possesses information that a reasonable consumer would want to know and could not discover without difficulty, failure to disclose can constitute a deceptive or misleading practice." *Woods v. Maytag Co.*, 807 F. Supp. 2d 112, 129 (E.D.N.Y. 2011) (quotation and citations omitted). Further, under California's and New York's consumer protection statutes, manufacturers are obligated to disclose safety concerns. *See Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1141-43 (9th Cir. 2012); *Guido v. L'Oreal USA, Inc.*, 2013 WL 454861, at *7 (C.D. Cal. Feb. 6, 2013) ("New York also accepts the rule of thumb that nondisclosures about the safety of a consumer product are material." (citation omitted)).

"To prove reliance on an omission, a plaintiff must show that the defendant's nondisclosure was an immediate cause of the plaintiff's injury-producing conduct," which he may do "by simply proving 'that, had the omitted information been disclosed, one would have been aware of it and behaved differently.'" *Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1225 (9th Cir. 2015) (quotation omitted); *see also Daly v. Capital Mgmt. Servs., LP*, 2015 WL 4662759, at *4 (W.D.N.Y. Aug. 6, 2015) (materiality standard is "an objective one, requiring a plaintiff to show the act [or omission] was 'likely to mislead a reasonable consumer acting reasonably under the circumstances.'" (quoting *Spagnola v. Chubb Corp.*, 574 F.3d 64, 74 (2d Cir. 2009))). "That one would have behaved differently can be presumed, or at least inferred, when the omission is material." *Daniel*, 806 F.3d at 1225  (citation omitted). Accordingly, "courts have found exposure and reliance suitable for class-wide resolution in cases where," as here, "the class was defined as all purchasers of a product and the plaintiffs' CLRA and UCL claims were based on information omitted from the product's packaging." *Butler v. Porsche Cras N. Am., Inc.*, 2017 WL 1398316, at *10 (N.D. Cal. Apr. 19, 2017). "In these cases, all class members were 'necessarily exposed' to the defendant's omissions on the package prior to purchase, and all class members would have been aware of a disclosure on the packaging had a disclosure been made." *Id.* (citing *In re NJOY, Inc. Consumer Class Action Litig.*, 120 F. Supp. 3d 1050, 1105 (C.D. Cal. 2015) (collecting cases)). Thus, whether Barlean's had a duty to disclose, and whether its omissions were material and deceptive, are predominating common questions.

### c.    Breach of Warranty

California Plaintiffs seek certification of their warranty claims, which requires showing that "(1) the seller's statements constitute an affirmation of fact or promise or a description of the goods; (2) the statement was part of the basis of the bargain; and (3) the warranty was breached." *In re ConAgra Foods*, 90 F. Supp. 3d 919, 984 (C.D. Cal. 2015) (quotation omitted); *see also* Cal. Com. Code §§ 2313(1)(a)-(b). Because each members were exposed to the misleading message that the Products are healthy, "[w]hether such [] statement[s] constitute[] an express warranty, [and] whether that warranty was breached . . . are issues

20

subject to common and generalized proof." *Martin v. Monsanto Co.*, 2017 WL 1115167, at *7 (C.D. Cal. Mar. 24, 2017). And "[b]ecause reliance is not an element of express warranty claims under California law, common questions predominate and class action treatment is appropriate." *In re Scotts EZ Seed Litig.*, 304 F.R.D. at 411 (citations omitted); *see also Hadley*, 324 F. Supp. 3d at 1117-18.

### d.   "Unlawful" Misbranding

The Class alleges predicate violations of California's Sherman Law and New York's Agriculture and Marketing law, which have adopted FDA and FDCA regulations as their own. *See* FAC. ¶¶ 78-123 (alleging violations of 21 C.F.R. §§ 1.21, 101.13(h)(1), 101.54, 101.62, 101.65); *Wang v. Massey Chevrolet*, 97 Cal. App. 4th 856, 871 (2002); *Ackerman v. Coca-Cola Co.*, 2010 WL 2925955, at *4 (E.D.N.Y. July 21, 2010) ("California, [and] New York . . . broadly prohibit the misbranding of food in language largely identical to that found in the FDCA."). UCL liability for such misbranding violations does "no[t] require[] that the public be likely to experience deception." *Bruton v. Gerber Prods. Co.*, 703 Fed. App'x 468, 472 (9th Cir. 2017). Rather, "[t]he label is either illegal or it is not," *Ang v. Bimbo Bakeries USA, Inc.*, 2014 WL 1024182, at *8 (N.D. Cal. Mar. 13, 2014). Accordingly, resolving Plaintiffs' misbranding claims requires only applying the regulations to the labels to determine their compliance. Barlean's liability is thus a predominating common question because misbranding "do[es] not depend upon any issues specific to individual consumers," *Lilly v. Jamba Juice Co.*, 308 F.R.D. 231, 242 (N.D. Cal. 2014), and a determination of its liability for misbranding will apply to all Class Members equally. *See Rahman*, 2014 WL 6815779, at *5 (common questions included "whether the challenged statement violates relevant FDA regulations"); *Hadley*, 324 F. Supp. 3d at 1095-96, 1117 (predominance satisfied for misbranding claims); *Hilsley v. Ocean Spray Cranberries, Inc.*, 2018 WL 6300479, at *11-12 (S.D. Cal. Nov. 29, 2018) (same).

### 2.   The Classes' Damages Models are Consistent with its Theories of Liability, and Capable of Measuring Classwide Damages

At certification, a plaintiff must show "damages are capable of measurement on a

21

classwide basis," in a manner "consistent with [the] liability case," *Comcast Corp. v. Behrend*, 569 U.S. 27, 34-35 (2013) ["*Comcast*"] (quotation omitted). "The first step in a damages study is the translation of the legal theory of the harmful event into an analysis of the economic impact of that event." *Id.* at 38 (citation and emphasis omitted). Here, Plaintiffs allege Barlean's misrepresentations, omissions, and breaches of warranty increased the products' market price relative to their true value, and each New York Class further alleges statutory damages are available upon a showing of injury.

### a. The Class's Price Premium Damages Model is Consistent with Plaintiffs' Affirmative Misrepresentation, Deceptive Omission, and Breach of Warranty Claims

The UCL, FAL, and CLRA all "authorize a trial court to grant restitution to private litigants asserting claims under those statutes." *Colgan*, 135 Cal. App. 4th at 694 (citations omitted); *see also* Cal. Bus. & Prof. Code §§ 17203, 17535; Cal. Civ. Code § 1780(a)(3). "Class wide damages calculations under the UCL, FAL, and CLRA are particularly forgiving. California requires only that some reasonable basis of computation of damages be used, and the damages may be computed even if the result reached is an approximation.'" *Lambert v. Nutraceutical Corp.*, 870 F.3d 1170, 1183 (9th Cir. 2017) (quotation omitted).

"It is well-established that the price premium attributable to an alleged misrepresentation on product labeling or packaging is a valid measure of damages in a mislabeling case," *Hadley*, 324 F. Supp. 3d at 1104 (internal quotation marks and citations omitted). Conjoint analysis is "widely-accepted as a reliable economic tool for isolating price premia," *id.* at 1110; *see also Odyssey Wireless, Inc. v. Apple Inc.*, 2016 WL 7644790, at *9 (S.D. Cal. Sept. 14, 2017) (conjoint is "a generally accepted method for valuing the individual characteristics of a product"); *Miller v. Fuhu Inc.*, 2015 WL 7776794, at *21 (C.D. Cal. Dec. 1, 2015).

The Ninth Circuit recently confirmed that "plaintiffs can measure class-wide damages using methods that evaluate what a consumer would have been willing to pay for the product had it been labeled accurately," so long as those methods "reflect supply-side considerations

22

and marketplace realities that would affect product pricing." *Zakaria v. Gerber Prods. Co.*, 755 Fed. App'x 623, 624 (9th Cir. 2018). In mislabeling cases, like this, courts have:

> found that conjoint analyses can adequately account for supply-side factors—and can therefore be utilized to estimate price premia without running afoul of *Comcast*—when (1) the prices used in the surveys underlying the analyses reflect the actual market prices that prevailed during the class period; and (2) the quantities used (or assumed) in the statistical calculations reflect the actual quantities of products sold during the class period.

*See Hadley*, 324 F. Supp. 3d at 1105; *accord Hudock v. LG Elecs. U.S.A., Inc.*, 2020 WL 4676285, at *8 (D. Minn. Aug. 12, 2020) ("[T]wo factors—(1) real-world market prices and (2) holding the quantity supply fixed—adequately account for supply-side factors in CBC analyses." (citation omitted)); *Fitzhenry-Russell v. Pepper Snapple Grp. Inc.*, 326 F.R.D. 592, 606 (N.D. Cal. 2018) (proposed conjoint analysis "calculated the price premium consumers paid for the [challenged] claim," because the conjoint survey (1) "used actual market-clearing prices"; and "(2) took into account the fixed quantity of supply of [the product]").[5]

Here, survey expert Dr. Dennis has designed and will conduct a conjoint analysis to isolate and quantify the market price premium associated with the Challenged Claims, which then can be used to calculate the amount of restitution and damages owed to the Classes. *See* Dennis Decl. ¶¶ 7-17, 34-64, 90-94 (explaining nature of conjoint surveys, summarizing the steps he will follow to implement the conjoint survey and analysis, obtaining an appropriate sample of respondents, and engaging in pretesting). Dr. Dennis also identifies the product attributes that will be included in the survey (Brand, Nutrition Facts, Container Type, Label Claims on Products, and Price), and the reasons for selecting these attributes. *Id*. ¶¶ 76-89.

In addition to following accepted conjoint survey design principles, *id.* ¶¶ 65-75, Dr. Dennis will account for supply-side factors both in the survey and in his market simulation. First, the price attribute in the survey will reflect real-world prices paid by actual purchasers.

---

[5] *See also Banh v. Am. Honda Motor Co., Inc.*, 2020 WL 4390371, at *18-19 (C.D. Cal. July 28, 2020); *Johannessohn v. Polaris Indus., Inc.*, 2020 WL 1536416, at *19, *22-23 (D. Minn. Mar. 31, 2020); *Hilsley*, 2018 WL 6300479, at *15-16.

*Testone v. Barlean's Organic Oils, LLC*, No. 19-cv-00169-JLS-BGS

MOTION FOR CLASS CERTIFICATION

*See id.* ¶¶ 16, 68, 86-88, 101. Second, "the quantity used" in the market simulator will "reflect the actual quantity of products supplied during the Class Period," *id.* ¶¶ 16, 67, 69.

Because Dr. Dennis's survey incorporates real market prices and uses the same quantity of products in his market simulation as were sold in the real world (i.e., holding quantity fixed), his survey properly accounts for supply-side factors. *See Martinelli v. Johnson & Johnson*, 2019 WL 1429653, at *4 (E.D. Cal. Mar. 29, 2019) (declining to strike testimony of Dr. Dennis and Colin B. Weir where "the conjoint analysis . . . factored supply-side data into its design"). Once the conjoint analysis reveals the price premia attributable to the Challenged Claims, those premia "can then be multiplied by the number of units purchased by each class member to determine both total and individual damages." *Zakaria*, 2016 WL 6662723, at *16; *see also* Weir Decl. ¶¶ 59-61. Thus, Plaintiffs have adequately provided a model for measuring classwide damages.

      **b.**     **The New York Class's Statutory Damages Model is Consistent with Plaintiffs' Claims Under N.Y. Gen. Bus. L. §§ 349 & 350.**

Conjoint can be used to measure actual damages for claims under NY GBL §§ 349 & 350. *See Kurtz*, 321 F.R.D. at 551 (conjoint is a "reliable method[] available for calculating the price premium attributable to a product characteristic"); *Hasemann I*, 2019 WL 2250687, at *11 ("Courts across the country, including those in this Circuit, have recognized conjoint analysis . . . as [an] effective and 'well-established damages model[].'" (quotation omitted) (collecting cases)). But the statutes also authorize recovery of statutory damages, and it is "well established that 'statutory damages under section 349(h) are available on a class basis in federal court,'" *Rodriguez v. It's Just Lunch Int'l*, 2018 WL 3733944, at *9 (S.D.N.Y. Aug. 6, 2018) (quoting *Kurtz*, 321 F.R.D. at 502)); *accord Famular v. Whirlpool Corp.*, 2019 WL 1254882, at *11 (S.D.N.Y. Mar. 19, 2019); *Guido v. L'Oreal, USA, Inc.*, 2013 WL 3353857, at *16-17 (C.D. Cal. July 1, 2013). "Once an injury is established, statutory damages can be precisely calculated," *Kurtz*, 321 F.R.D. at 551, and are equal to "the number of units sold in New York [ ] multiplied by the $50 statutory minimum for GBL Section 349 violations and $500 statutory minimum for GBL Section 350 violations," *Famular*, 2019 WL 1254882, at

24

*11. Here, Mr. Weir will "use[] [ ] sales data numbers . . . and total retail sales for the number of 'violations' and multipl[y] that by the statutory amounts of $50 (for the New York GBL Section 349 claim) and $500 (for the New York GBL Section 350 claim)." *See In re Scotts EZ Seed Litig.*, 2017 WL 3396433, at *11 (S.D.N.Y. Aug. 8, 2017); Weir Decl. ¶ 62. "Accordingly, plaintiff[s'] statutory damages model is consistent with the proposed theory of liability," *Famular*, 2019 WL 1254882, at *11.

### B.   Superiority

Whether "a class action is superior .  .  . for fairly and efficiently adjudicating the controversy" depends on "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3).

Here, because the products at issue cost less than $50, Dennis Decl. ¶ 88, Class Members have no interest in controlling individual actions, which is often considered enough to satisfy superiority. *See Tait*, 289 F.R.D. at 486 (Superiority "is met '[w]here recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis.'" (quotation omitted)). In addition, Plaintiffs are unaware of any other related litigation. Mr. Testone is a resident of this district, and Barlean's purposely availed itself of the benefits of conducting business in this district, making it a preferable location. Finally, this case focuses on Barlean's labeling practices, minimizing manageability concerns, which in any event cannot scuttle class certification "if no realistic alternative exists." *See Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234-35 (9th Cir. 1996). Thus, superiority is satisfied.

### <u>CONCLUSION</u>

The Court should grant the motion.

Dated: March 1, 2021                Respectfully submitted,

/s/ Paul K. Joseph

25

**THE LAW OFFICE OF PAUL K. JOSEPH, PC**
PAUL K. JOSEPH
*paul@pauljosephlaw.com*
3150 Cabrillo Bay Lane
San Diego, CA 92110
Phone: (619) 767-0356
Fax: (619) 331-2943

**THE LAW OFFICE OF JACK FITZGERALD, PC**
JACK FITZGERALD
*jack@jackfitzgeraldlaw.com*
TREVOR M. FLYNN
*trevor@jackfitzgeraldlaw.com*
MELANIE PERSINGER
*melanie@jackfitzgeraldlaw.com*
Hillcrest Professional Building
3636 Fourth Avenue, Suite 202
San Diego, California 92103
Phone: (619) 692-3840
Fax: (619) 353-0404

***Counsel for Plaintiffs and the Proposed Class***