**FITZGERALD JOSEPH LLP**
JACK FITZGERALD (SBN 257370)
*jack@fitzgeraldjoseph.com*
PAUL K. JOSEPH (SBN 287057)
*paul@fitzgeraldjoseph.com*
TREVOR M. FLYNN (SBN 253362)
*trevor@fitzgeraldjoseph.com*
MELANIE PERSINGER (SBN 275423)
*melanie@fitzgeraldjoseph.com*
RICHELLE KEMLER (SBN 232712)
*richelle@fitzgerealdjoseph.com*
2341 Jefferson Street, Suite 200
San Diego, CA 92110
Phone: (619) 215-1741
Fax: (619) 331-2943
***Counsel for Plaintiffs***

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

MICHAEL TESTONE, COLLIN SHANKS, and LAMARTINE PIERRE, on behalf of themselves, all others similarly situated, and the general public,

Plaintiffs,

v.

BARLEAN'S ORGANIC OILS, LLC

Defendant.

Case No. 19-cv-0169-JLS-BGS

**PLAINTIFFS' MOTION TO STRIKE THE TESTIMONY OF SARAH BUTLER**

| | |
|---|---|
| Judge: | Hon. Janis L. Sammartino |
| Hearing Date: | June 24, 2021 |
| Time: | 1:30 p.m. |
| Location: | 4D, 4th Floor |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .......... ii

NOTICE OF MOTION .......... 1

MEMORANDUM OF POINTS AND AUTHORITIES .......... 1

I. INTRODUCTION .......... 1

II. FACTS .......... 1

III. LEGAL STANDARD .......... 2

IV. ARGUMENT .......... 3

A. Ms. Butler's Testimony is Irrelevant Because Plaintiffs' Claims Do Not Require Proof of Absent Class Members' Reliance or Injury .......... 3

B. Ms. Butler's Testimony is Irrelevant to Whether Plaintiffs Have Satisfied the Class Certification Requirements .......... 5

C. Ms. Butler's Questions and Opinions Regarding How Consumers First Learned About Coconut Oil are Unreliable and Irrelevant .......... 6

D. Ms. Butler's Criticism of Dr. Dennis's Survey Universe Should be Stricken Because it is Based on a Misreading of Dr. Dennis's Declaration .......... 8

E. Because Ms. Butler is Not an Economist She is Not Qualified to Offer Supply-Side Opinions .......... 10

V. CONCLUSION .......... 11

# TABLE OF AUTHORITIES

## Cases

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
568 U.S. 455 (2013) ....... 6

*Bradach v. Pharmavite, LLC*,
735 Fed. Appx. 251 (9th Cir. 2018) ....... 4

*Broomfield v. Craft Brew All., Inc.*,
2018 WL 4952519 (N.D. Cal. Sept. 25, 2018) ....... 5

*Cabrera v. Cordis Corp.*,
134 F.3d 1418 (9th Cir. 1998) ....... 11

*Chamberlan v. Ford Motor Co.*,
369 F. Supp. 2d 1138 (N.D. Cal. 2005) ....... 10

*Chen-Oster v. Goldman, Sachs & Co.*,
114 F. Supp. 3d 110 (S.D.N.Y. 2015) ....... 3

*Colgan v. Leatherman Tool Group, Inc.*,
135 Cal. App. 4th 663 (2006) ....... 4

*Contreras v. City of Los Angeles*,
2012 WL 12893417 (C.D. Cal. Sept. 11, 2012) ....... 8

*Cover v. Windsor Surry Co.*,
2017 WL 9837932 (N.D. Cal. July 24, 2017) ....... 10

*Daubert v. Merrell Dow Pharms., Inc.*,
43 F.3d 1311 (9th Cir. 1995) ....... 3

*Daubert v. Merrell Dow Pharms., Inc.*,
509 U.S. 579 (1993) ....... 2, 3

*Dukes v. Wal-Mart, Inc.*,
222 F.R.D. 189 (N.D. Cal. 2004) ....... 3

*Ebner v. Fresh, Inc.*,
838 F.3d 958 (9th Cir. 2016)....4

*Ellis v. Costco Wholesale Corp.*,
240 F.R.D. 627 (N.D. Cal. 2007)....3

*Gen. Elec. v. Joiner*,
522 U.S. 136 (1997)....8

*Hadley v. Kellogg Sales Co.*,
324 F. Supp. 3d 1084 (N.D. Cal. 2018)....5

*Hasemann v. Gerber Prod. Co.*,
331 F.R.D. 239 (E.D.N.Y. 2019)....5

*In re Tobacco II Cases*,
46 Cal. 4th 298 (2009)....4, 5, 7

*Krommenhock v. Post Foods, LLC*,
334 F.R.D. 552 (N.D. Cal. 2020)....7

*Lavie v. Procter & Gamble Co.*,
105 Cal. App. 4th 496 (2003)....4

*Lovette v. Zale Del., Inc.*,
2019 WL 2492503 (S.D. Cal. June 13, 2019)....4

*Maldonado v. Apple, Inc.*,
2021 WL 1947512 (N.D. Cal. May 14, 2021)....11

*Mullins v. Premier Nutrition Corp.*,
2016 WL 1535057 (N.D. Cal. Apr. 15, 2016)....7

*Nebraska Plastics, Inc. v. Holland Colors Americas, Inc.*,
408 F.3d 410 (8th Cir. 2005)....8

*Pulaski Middleman, LLC v. Google, Inc.*,
802 F.3d 979 (9th Cir. 2015)....4

*Pyramid Techs., Inc. v. Hartford Cas. Ins. Co.*,
752 F.3d 807 (9th Cir. 2014)....10

*Racies v. Quincy Bioscience, LLC*,
2016 WL 5725079 (N.D. Cal. Sept. 30, 2016) ....................10

*Rikos v. P&G*,
799 F.3d 497 (6th Cir. 2015)....................7

*State Farm v. Super. Ct.*,
45 Cal. App. 4th 1093 (1996) ....................5

*Steroid Hormone Prod. Cases*,
181 Cal. App. 4th 145 (2010) ....................5

*Tait v. BSH Home Appliances Corp.*,
289 F.R.D. 466 (C.D. Cal. 2012) ....................3, 4

*United Food & Comm. Part. Emp's Health & Welfare Fund v. Teikoku Phama USA*,
296 F. Supp. 3d 1142 (N.D. Cal. 2017) ....................5, 6

*United States Equal Emp. Opportunity Comm'n v. Placer ARC*,
147 F. Supp. 3d 1053 (E.D. Cal. 2015)....................8

*United States v. Hankey*,
203 F.3d 1160 (9th Cir. 2000)....................10

*Waller v. Hewlett-Packard Co.*,
295 F.R.D. 472 (S.D. Cal.2013)....................5

*Williams v. Gerber Prod. Co.*,
552 F.3d 934 (9th Cir. 2008)....................4

*Wolf v. Hewlett-Packard Co.*,
2016 WL 7743692 (C.D. Cal. Sept. 1, 2016) ....................11

**Statutes**

Cal. Bus. & Prof. Code § 17203 ....................4

**Rules**

Fed. R. Evid. 702....................10

Fed. R. Evid. 702(b) ....................8

**NOTICE OF MOTION**

TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD: PLEASE TAKE NOTICE, that on June 24, 2021 at 1:30 p.m., or as soon thereafter as may be heard, Plaintiffs Michael Testone, Collin Shanks, and Lamartine Pierre will and hereby do move the Court, the Honorable Janis Sammartino presiding, for an Order striking the testimony of defendant's expert, Sarah Butler.

This Motion is based on this Notice of Motion, the concurrently-filed Memorandum of Points and Authorities; Declaration of Paul K. Joseph ("Joseph Decl.") and all exhibits thereto; and all relevant pleadings, evidence, and argument offered in support of the Motion.

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

Barlean's offers the testimony of Ms. Sarah Butler to argue that the challenged claims are immaterial and Plaintiff's damages model unreliable. Ms. Butler, however, is unqualified to make some of her opinions and makes mistakes of fact in rendering others. Most importantly, her survey and results are legally irrelevant. As a result, her testimony should be stricken.

## II. FACTS

Ms. Butler is the Managing Director at NERA Economic Consulting ("NERA") where she "conduct[s] survey research and market research, and design[s] and implement[s] statistical samples for matters involving business and consumer decision making, consumer choice, and consumer behavior." Dkt. No. 81-1, Decl. of Gabriel Hedrick, Ex. D, Expert Report of Sarah Butler ("Butler Report") ¶¶ 1-2. Barlean's hired her to "conduct a survey of consumers to understand their perceptions of coconut oil and what features of the product or information may have influenced their decisions to purchase this type of oil." *Id.* ¶ 8. She was also tasked with "revie[wing] the proposal put forward by Dr. Dennis" and opining on his proposed methodology. *Id.* ¶ 11.

Based on her survey, Ms. Butler offers three separate but related opinions: (1) neither a product label nor a brand's website has a significant impact on purchasers of coconut oil;

(2) consumers purchase and use coconut oil for many reasons, including reasons unrelated to ingestion, such as hair or skincare, teeth, or pet health; and (3) consumers learned about coconut oil from sources other than product labels, including family and friends, health care professionals, third-party articles, blogs, magazines, social media, and reading about the oil in a cookbook or recipe. *See id.* ¶ 71.

Ms. Butler also offer three criticisms of Dr. Dennis' proposed methodology. First, she opines that the "Dennis Survey would not establish Barlean's is the source of information." *Id.* at p.33 (header capitalization omitted); *see also id.* ¶¶ 62-65. Second, she asserts Dr. Dennis' survey population is underinclusive and "incorrectly restricts the population," based on her understanding that Dr. Dennis "plans to include only coconut oil purchases that were made at health food stores" and "exclude[e] people who purchase coconut oil from other types of stores," which she says "would remove a large portion of the relevant population." *Id.* ¶ 66. Third, she opines that Dr. Dennis' survey "will not provide an estimate of the classwide 'price premium' consumers purportedly paid," because he "does not account for any other factors that determine the prices consumers actually pay in the marketplace," *id.* ¶ 68. Specifically, she claims "Dr. Dennis' proposed 'market simulation' does not address or ameliorate the omitted supply-side problem," since "many factors can affect market share and prices, and Dr. Dennis does not appear to take any of these potential factors into account." *Id.* ¶ 69.

## III. LEGAL STANDARD

Federal Rule of Evidence 702 permits a witness "qualified as an expert by knowledge, skill, experience, training, or education" to offer opinion testimony only if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based upon sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert witness has reliably applied the principles and methods to the facts of the case. *See* Fed. R. Evid. 702; *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).

Under Rule 702, for expert testimony to be admissible, the Court must first determine

whether that evidence is relevant to the pertinent dispute. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 591–92 (1993) ("Rule 702's 'helpfulness' standard requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility."). Here, "the scope of the *Daubert* analysis is cabined by its purpose at this stage: the inquiry is limited to whether or not the expert reports are admissible to establish the requirements of Rule 23." *Chen-Oster v. Goldman, Sachs & Co.*, 114 F. Supp. 3d 110, 115 (S.D.N.Y. 2015) (internal quotation and citation omitted); *Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 489-98 (C.D. Cal. 2012). "[T]he court should ask only if expert evidence is 'useful in evaluating whether class certification requirements have been met.'" *Ellis v. Costco Wholesale Corp.*, 240 F.R.D. 627, 635 (N.D. Cal. 2007) (quoting *Dukes v. Wal-Mart, Inc.*, 222 F.R.D. 189, 191 (N.D. Cal. 2004)).

Reliable testimony must be grounded in the methods and procedures of science and signify something beyond "subjective belief or unsupported speculation." *Daubert*, 509 U.S. at 590. The inferences or assertions drawn by the expert must be derived by the scientific method. *Id*. In essence, the court must determine whether the expert's work product amounts to "'good science.'" *Daubert v. Merrell Dow Pharms., Inc*., 43 F.3d 1311, 1315 (9th Cir. 1995) ["*Daubert II*"] (quoting *Daubert*, 509 U.S. at 593).

## IV. ARGUMENT

### A. Ms. Butler's Testimony is Irrelevant Because Plaintiffs' Claims Do Not Require Proof of Absent Class Members' Reliance or Injury

In opposing class certification, Barlean's relies on Ms. Butler's survey to argue Plaintiffs have failed to demonstrate the predominance of common questions since, according to Barlean's, "Butler's survey establishes that the challenged label claims are not material to consumers of Barlean's Products, consumers do not rely on Barlean's label claims in purchasing its Products, and otherwise do not purchase Barlean's Products because of the claims on the label." Opp. at 20; *see also id.* at 3 ("Butler found, based on her survey, that consumers are highly unlikely to purchase coconut oil products based on product labels and even fewer are likely to buy coconut oil products based on any health claims contained on

the label," and that "a majority of coconut oil purchasers typically use their products for purposes other than internal consumption, including for hair and skincare use or for pets." (citing Butler Report ¶¶ 39-43)).

Barlean's reliance on Ms. Butler's survey results is misguided, however, because as a matter of law, Plaintiffs' claims do not depend on "class members' individual interaction with the product." *See Bradach v. Pharmavite, LLC*, 735 Fed. Appx. 251, 255 (9th Cir. 2018) (quoting *Tait*, 289 F.R.D. at 480). Rather, to prevail on their claims under the UCL, FAL, and CLRA (as well as NY GBL), "[i]t is only necessary to demonstrate that consumers 'are likely to be deceived.'" *Lovette v. Zale Del., Inc.*, 2019 WL 2492503, at *2 (S.D. Cal. June 13, 2019) (quoting *In re Tobacco II Cases*, 46 Cal. 4th 298, 312 (2009)); *accord Pulaski Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 985 (9th Cir. 2015). Whether a representation or omission is deceptive is "judged by the effect it would have on a reasonable consumer," who is the "ordinary consumer within the target population," *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 506-507, 510 (2003), is "not versed in the art of inspecting and judging a product, in the process of its preparation or manufacture," *Colgan v. Leatherman Tool Group, Inc.*, 135 Cal. App. 4th 663, 682 (2006), and is not "expected to look beyond misleading representations on the front of the box to discover the truth from the . . . small print," *Williams v. Gerber Prod. Co.*, 552 F.3d 934, 939 (9th Cir. 2008).

Satisfying the reasonable consumer test "requires more than a mere possibility that [defendant's] label 'might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner.'" *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016) (quoting *Lavie*, 105 Cal. App. 4th at 496). But the reasonable consumer test does *not* require proof of actual deception. "[T]he language of section 17203 with respect to those entitled to restitution—'to restore to any person in interest any money or property, real or personal, which *may have been acquired*' [] by means of the unfair practice—is patently less stringent than the standing requirement for the class representative," *Tobacco II Cases*, 46 Cal. 4th at 320 (quoting Cal. Bus. & Prof. Code § 17203 and adding emphasis). "This language, construed in light of the 'concern that wrongdoers not retain the benefits of their misconduct'

has led courts repeatedly and consistently to hold that relief under the UCL is available without individualized proof of deception, reliance and injury." *Id.* (citations omitted); *accord State Farm v. Super. Ct.*, 45 Cal. App. 4th 1093, 1105 (1996) (UCL violation "can be shown even if no one was actually deceived, relied upon the fraudulent practice, or sustained any damage"); *Waller v. Hewlett-Packard Co.*, 295 F.R.D. 472, 476 (S.D. Cal. 2013) ("there are no reliance and causation elements to a UCL claim in the first instance"); *Steroid Hormone Prod. Cases*, 181 Cal. App. 4th 145, 154 (2010) ("once the named plaintiff" shows injury, "no further individualized proof of injury or causation is required").

Because Ms. Butler's opinions concern whether absent class members *actually* saw, relied on, or found the challenged claims material, they go to issues that are not even elements of Plaintiffs' claims. "[E]xclusion of opinions that are irrelevant as a matter of law or contrary to the law is appropriate through the *Daubert* process." *United Food & Commercial Participating Employers Health & Welfare Fund v. Teikoku Phama USA*, 296 F. Supp. 3d 1142, 1183 (N.D. Cal. 2017) (citation omitted). Because Ms. Butler's opinions are legally irrelevant to the elements of Plaintiffs' causes of action, they should be stricken.

**B. Ms. Butler's Testimony is Irrelevant to Whether Plaintiffs Have Satisfied the Class Certification Requirements**

Barlean's reliance on Ms. Butler's survey results to oppose class certification is further misguided because the question at this stage is not whether Plaintiffs have *proven* materiality and deception, but whether they are *common* questions. *See Broomfield v. Craft Brew All., Inc.*, 2018 WL 4952519, at *11 (N.D. Cal. Sept. 25, 2018) (citing *Hadley v. Kellogg Sales Co.*, 324 F. Supp. 3d 1084, 1115 (N.D. Cal. 2018)). Because the California and New York statutes Plaintiffs invoke apply objective standards, that is clearly the case. *See* Dkt. No. 70-1, Motion for Class Cert. at 15-21; Class Cert. Reply at 6-9; *cf. Hadley*, 324 F. Supp. 3d at 1116 ("deception and materiality under the FAL, CLRA, and UCL are governed by an objective 'reasonable consumer' test"); *Hasemann v. Gerber Prod. Co.*, 331 F.R.D. 239, 273-74 (E.D.N.Y. 2019) (New York GBL has "adopted an objective definition of 'misleading,' under which the alleged act must be 'likely to mislead a reasonable consumer acting

reasonably under the circumstances.'" (quotation omitted))

This law dictates that because materiality and deception are judged using objective standards, they are necessarily common questions for the purposes of class certification since even if plaintiffs fail to establish materiality or deception, the issues will *never* devolve into individual inquiries since the entire classes' claims will fail. *See Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 468 (2013) (

> A failure of proof on the *common* question of materiality ends the litigation and thus will never cause individual questions of reliance or anything else to overwhelm questions common to the class. Therefore, under the plain language of Rule 23(b)(3), plaintiffs are not required to prove materiality at the class-certification stage. In other words, they need not, at that threshold, prove that the predominating question will be answered in their favor.)

As a result, Ms. Butler's survey at most goes to the *merits* of whether the reasonable consumer would find the challenged claims material and deceptive. No matter what her survey shows, it cannot transform the objective tests of materiality and deception into individualize inquiries. Accordingly, her survey is irrelevant for the purposes of determining whether common questions predominate. At this stage, Ms. Butler's merits opinions are irrelevant and should be stricken. *See United Food*, 296 F. Supp. 3d at 1183.

### C. Ms. Butler's Questions and Opinions Regarding How Consumers First Learned About Coconut Oil are Unreliable and Irrelevant

Ms. Butler's survey twice asked respondents "how did you first learn about coconut oil?" Butler Report at Tables 4, 5 (questions 6 (open-ended) & 7 (close-ended)). The Court should strike these questions and Ms. Butler's testimony relying on these questions as irrelevant and unreliable.

Plaintiffs' claims depend on whether the challenged claims are material and misleading as judged by an objective reasonable consumers standard. As noted above, how respondents first learned about coconut oil has no bearing on whether the Barlean's labeling is objectively material or misleading. Even if Butler had asked respondents how they first learned about *Barlean's* coconut oil, this would still have no bearing on whether or not the challenged

claims are material or misleading. *See Mullins v. Premier Nutrition Corp.*, 2016 WL 1535057, at *3 (N.D. Cal. Apr. 15, 2016) ("How consumers first learned about Joint Juice—from a doctor, parent, Joe Montana, or the packaging—does not matter if 'they nonetheless decided to purchase the product only for its purported health benefits.'" (quoting *Rikos v. P&G*, 799 F.3d 497, 512 (6th Cir. 2015))).

The underlying rationale for these questions appears to be that if consumers first learned about coconut oil from a source other than the Barlean's label, the Barlean's label could not possibly have influenced their purchasing decision. That makes no sense. May 27, 2021 Reply Expert Declaration of J. Michael Dennis, Ph.D. ["Dennis Reply Decl."] at ¶¶ 45-49, 81, 83. That one statement in one forum (whether an online article or a competing brand's product) "might be material to a reasonable consumer . . . does not mean that a Challenged Statement cannot also be material and, therefore, actionable. A statement need not be the 'sole or even the predominant or decisive factor influencing' the class members' decisions to buy the challenged products." *Krommenhock v. Post Foods, LLC*, 334 F.R.D. 552, 566 (N.D. Cal. 2020) (quoting *In re Tobacco II Cases*, 46 Cal. 4th at 326).

Trying to draw inferences about why consumers purchased the Barlean's coconut oil based on how one *first* learned about coconut oil is fundamentally unreliable.[1] First, *how* someone learned about coconut oil does not reveal *what* they learned, nor whether and in what manner that information affected a subsequent purchase, much less of Barlean's coconut oil specifically. Second, even knowing this information would not reveal the extent to which someone making a subsequent purchase of Barlean's coconut oil relied on its label. For example, if someone reads an article saying coconut oil is "heart healthy," that does not logically preclude them from relying on a "heart healthy" claim on the label of a specific coconut oil product; rather, the label would likely reinforce the belief giving the purchaser

[1] In addition to making numerous unsupported inferences, Ms. Butler is relying on respondents being able to *accurately* recall how they first learned about coconut oil, which is highly unlikely since most respondents first purchased coconut oil years ago. *See* Dennis Reply Decl. ¶¶ 66-71.

reassurance, and thus be a substantial factor influencing their purchase decision. *See* Dennis Reply Decl. ¶¶ 46-48. Finally, consumers can be influenced by multiple factors, including information they subsequently learn about a product. For example, if someone first learned coconut oil was healthy from a friend and wanted to purchase a healthy oil, that does not preclude that person from relying on a labeling claim like, "Healthy Alternative to Butter" in deciding to purchase a specific product, like Barlean's coconut oil. Because drawing relevant, reliable conclusions from a series of speculative inferential leaps is impossible, Ms. Butler's opinions based on these questions and responses should be stricken. *See Gen. Elec. v. Joiner*, 522 U.S. 136, 146 (1997) ("[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered.").

**D. Ms. Butler's Criticism of Dr. Dennis's Survey Universe Should be Stricken Because it is Based on a Misreading of Dr. Dennis's Declaration**

An expert "may testify in the form of an opinion or otherwise" only "if the testimony is based on sufficient facts or data." *See* Fed. R. Evid. 702(b). Because the proper question for exclusion is "whether the testimony would be helpful" to the jury, the Court "must screen out 'unreliable nonsense opinions'" that would be unhelpful. *United States Equal Emp. Opportunity Comm'n v. Placer ARC*, 147 F. Supp. 3d 1053, 1059 (E.D. Cal. 2015); *see also Contreras v. City of Los Angeles*, 2012 WL 12893417, at *6 (C.D. Cal. Sept. 11, 2012) ("if the expert's opinion is so fundamentally unsupported that it can offer no assistance to the jury, it must be excluded.") (citing *Nebraska Plastics, Inc. v. Holland Colors Americas, Inc.*, 408 F.3d 410, 416 (8th Cir. 2005)).

Butler opines that "Dr. Dennis's proposed survey incorrectly restricts the population and underrepresents the relevant market of consumers" because he supposedly "plans to include only coconut oil purchases that were made at health food stores." Butler Report at ¶ 66. "[B]y excluding these relevant purchasers," she opines, "Dr. Dennis' proposed survey would potentially increase the value associated with any label claims tested." *Id.* ¶ 67.

But Ms. Butler misread Dr. Dennis's Declaration: his proposed survey universe is *not* restricted to consumers that made "coconut oil purchases . . . at health food stores." *See id.* ¶ 66. Rather, "[t]o qualify for the price premium survey, the respondents will need to meet all of the following conditions: be a U.S. resident; be at least age 18; did not take a survey about cooking oil products (including coconut oil) in the past 30 days; purchased relevant coconut oil products in the past 12 months; and purchased either the Defendant's Products or a competing brand." *See* Dkt. No. 70-14, March 1, 2021 Declaration and Expert Report of J. Michael Dennis, Ph.D ["Dennis Declaration"] at ¶ 54. *See also* Dennis Reply Decl. ¶ 27 n.11 ("Contrary to [Ms. Butler's] assertion, my survey universe will not be *restricted* to coconut oil purchases from health food stores, but will also *include* such purchasers.")

Butler's error stemmed from her failure to review Dr. Dennis's express definition of his survey universe, instead misunderstanding a statement in his report, that he "expect[s] to include coconut oil purchasers who purchased coconut oil in health food stores." Dennis Declaration ¶ 51;[2] *compare* Ex. 1,[3] Butler Dep. Tr. at 161:15-162:25 (explaining basis of belief). In any event, the survey will not be limited to include only those who purchased the products from health food stores, as Butler incorrectly believes." *Id.* at ¶ 27, n. 11. Confronted with this during her deposition, Ms. Butler testified that "if [Paragraph 41] were to read that [Dr. Dennis is only] talking about a sub-portion of the survey universe . . . as including purchasers who purchased coconut oil in health food stores," that would "alleviate [her] concern over his survey universe," Ex. 1, Butler Dep. Tr. 163:1-11. When asked if she had any other concerns, Butler responded "not that I recall, no. I think my main concern was that the population, as described, appear to be limited to those who've purchased in health food stores." *Id.* at 163:12-18. Given the factual error and the withdrawal of her opinion, the Court

---

[2] Dr. Dennis made this clear because Barlean's testified it sells its coconut oils primarily in the "natural" channel, which includes health food stores like Sprouts, Whole Foods, and Vitamin Shoppe. *See* Dkt. No. 70-3, Ex. 1, Puckett 30(b)(6) Dep. Tr. at 149:15-150:4; 154:3-7.

[3] Unless otherwise specified, references to "Ex.__" are to the concurrently-filed Declaration of Paul Joseph.

should strike ¶¶ 66-67 of the Butler Report.

### E. Because Ms. Butler is Not an Economist She is Not Qualified to Offer Supply-Side Opinions

Federal Rule of Evidence 702 requires experts to have "specialized knowledge," which may be acquired by "knowledge, skill, experience, training, or education." Fed. R. Evid. 702. "When evaluating qualifications, courts should consider a purported expert's knowledge, skill, experience, training, and education in the subject matter of his asserted expertise." *Racies v. Quincy Bioscience, LLC*, 2016 WL 5725079, at *3 (N.D. Cal. Sept. 30, 2016) (citing *United States v. Hankey*, 203 F.3d 1160, 1168 (9th Cir. 2000)). Expert witnesses' "expertise and experience" must be "relevant to the issues on which [the expert] opine[s]," *Pyramid Techs., Inc. v. Hartford Cas. Ins. Co.*, 752 F.3d 807, 814 (9th Cir. 2014), and their "opinions must be rooted in their relevant expertise" *Cover v. Windsor Surry Co.*, 2017 WL 9837932, at *17 (N.D. Cal. July 24, 2017) (citing *Chamberlan v. Ford Motor Co.*, 369 F. Supp. 2d 1138, 1145 n.3 (N.D. Cal. 2005)).

Although she has experience "as a market researcher" and has "worked as an independent consultant conducting research" and taught courses "involving research methodologies in both the United States and Europe," Ms. Butler is not an economist and has no academic or professional background or training in economics. *See*, *e.g.*, Butler Report ¶ 3; Ex. 1, Butler Dep. Tr. at 13:9-10 ("I am not an economist."); *id.* at 13:16-19 ("I have never held myself out to be an economist."). She is also not relying on any other expert economist. *See id.* at 43:3-6 ("Q. Okay. And so you're not strictly relying on [Dr. Stephanie Plancich's] report for any of your opinions, are you? A. I did not review Dr. Plancich's report, and I'm certainly not relying on it, no."). As a result, Ms. Butler has never calculated a supply curve, "ha[s] not analyzed the factors or offered up factors [that should be considered in calculating a supply curve]" in this matter, and is "not offering a specific opinion as to what supply factors should be taken into consideration for this specific matter." *Id.* at 15:3-25. She also testified she is "not offering an opinion as to the method or the input that should go into a supply-side curve." *Id.* at 16:25-17:5.

Butler opines that Dr. Dennis' survey does "not address supply side issues" in that it "does not account for the market response or supply side constraints a company may face," the market simulation does not "address or ameliorate the omitted supply-side problem[,] and simply using real world prices does not change the fact that a conjoint survey is measuring consumer demand." Butler Report ¶¶ 11, 69. Butler further opines that "many factors can affect market share and prices, and Dr. Dennis does not appear to take any of these potential factors into account." *Id*. Because these opinions rely on economics expertise Butler lacks, they should be stricken. *See Maldonado v. Apple, Inc*., 2021 WL 1947512, at *25 (N.D. Cal. May 14, 2021) (Striking Ms. Butler's rebuttal opinions because "she is not qualified to offer opinions about economics.")

In striking Butler's opinion, the court in *Maldonado* reasoned that "[w]hile she may offer opinions about flaws in the survey design," where she opines that "measuring consumer willingness to pay is an inadequate measure of market price because it fails to account for changes in supply" was beyond her expertise. *Id*. at *26. "That opinion may be right, wrong, or debatable as a matter of economic theory, but it is a matter of economic theory. Butler is not an economist nor does she purport to be. She has no training, education, skill, or experience in economics, nor does she purport to." *Id*. Like Apple in the *Maldonado* case, here Barlean's "tries to couch the opinion as pointing out flaws in the survey, it is not," and the Court should reject its attempt to "slide in opinions within the ken of an economist under the guise of faulting the survey design." *Id*.; *see also Wolf v. Hewlett-Packard Co*., 2016 WL 7743692, at *6 (C.D. Cal. Sept. 1, 2016) (holding expert's "impressive credentials" and experience in related statistical fields were insufficient under *Daubert* when he had "no background in consumer psychology, nor in statistical methods for predicting consumer behavior"); *Cabrera v. Cordis Corp*., 134 F.3d 1418, 1422-23 (9th Cir. 1998) (barring medical doctor who specialized in kidney disease from offering testimony about injuries caused by exposure to silicone).

## V. CONCLUSION

The Court should grant the motion and strike the testimony of Sarah Butler.

Dated: May 27, 2021

Respectfully Submitted,

/s/ Paul K. Joseph
**FITZGERALD JOSEPH LLP**
JACK FITZGERALD
*jack@fitzgeraldjoseph.com*
PAUL K. JOSEPH
*paul@fitzgeraldjoseph.com*
TREVOR M. FLYNN
*trevor@fitzgeraldjoseph.com*
MELANIE PERSINGER
*melanie@fitzgeraldjoseph.com*
RICHELLE KEMLER
*richelle@fitzgerealdjoseph.com*
2341 Jefferson Street, Suite 200
San Diego, CA 92110
Phone: (619) 215-1741
Fax: (619) 331-2943
***Counsel for Plaintiffs***