1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT
9                  SOUTHERN DISTRICT OF CALIFORNIA
10

| | |
|---|---|
| 11  MICHAEL TESTONE, COLLIN SHANKS, and LAMARTINE PIERRE, on behalf of themselves, all others similarly situated, and the general public, | Case No.:  19-CV-169 JLS (BGS)  **ORDER (1) GRANTING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION, (2) GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION TO STRIKE THE TESTIMONY OF SARAH BUTLER, AND (3) OVERRULING DEFENDANT'S EVIDENTIARY OBJECTIONS TO THE REPLY DECLARATIONS OF COLIN B. WEIR AND J. MICHAEL DENNIS, PH.D**  (ECF Nos. 70, 86, 88, 89) |
| 12  |
| 13  |
| 14                                    Plaintiffs, |
| 15  v. |
| 16  BARLEAN'S ORGANIC OILS, LLC, |
| 17                                    Defendant. |
| 18  |
| 19  |
| 20  |
| 21  |
| 22  |

23          Presently before the Court are Plaintiffs Michael Testone, Collin Shanks, and
24   Lamartine Pierre's (collectively, "Plaintiffs") Motion for Class Certification ("Mot.," ECF
25   No. 70) and Motion to Strike the Testimony of Sarah Butler ("MTS," ECF No. 86).  Also
26   before the Court are Defendant Barlean's Organic Oils, LLC's ("Defendant") Opposition
27   to Plaintiffs' Motion ("Opp'n," ECF No. 81), Plaintiffs' Reply in Support of the Motion
28   ("Reply," ECF No. 85), Defendant's Evidentiary Objections to the Reply Declarations of

Colin B. Weir ("Weir Objs.," ECF No. 88) and J. Michael Dennis, Ph.D. ("Dennis Objs.," ECF No. 89), Defendant's Opposition to the MTS ("MTS Opp'n," ECF No. 87), Plaintiffs' Reply in Support of the MTS ("MTS Reply," ECF No. 93), and Plaintiffs' Response to Defendant's Evidentiary Objections ("Evid. Resp.," ECF No. 92).  The Court heard oral argument on June 28, 2021.  *See* ECF No. 94.

After considering the Parties' arguments and the law, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiffs' Motion to Strike, as set forth below; **OVERRULES** Defendant's evidentiary objections; and **GRANTS** Plaintiffs' Motion.

## BACKGROUND

Plaintiffs allege that "Defendant has manufactured, distributed, marketed, and sold various Barlean's brand coconut oil Products beginning in or around May 2008."  First Amended Complaint ("FAC," ECF No. 35) ¶ 48.  Defendant sells its coconut oil products nationally at major retailers.  *Id.* ¶ 49.  Plaintiffs contend that Defendant "misleadingly markets its coconut oil Products as inherently healthy, and a healthy alternative to butter and various cooking oils, despite that coconut oil is actually inherently *unhealthy*, and a *less healthy* option to these alternatives."  *Id.* ¶ 1 (emphasis in original).

Specifically, Plaintiffs contend that coconut oil is high in saturated fat, which increases the risk of cardiovascular disease and other morbidities.  *Id.* ¶ 37.  In fact, one serving of Defendant's coconut oil contains twelve grams of saturated fat, which is over half of the daily recommended value of saturated fat.  *Id.* ¶¶ 54–57.  Three of Defendant's products are challenged in this putative class action: its "Organic Virgin Coconut Oil," "Organic Culinary Coconut Oil," and "Organic Butter Flavored Coconut Oil" (collectively, the "Products" or the "Coconut Oils").  *Id.* ¶ 50.  Plaintiffs contend that Defendant "has employed[] a strategic marketing campaign intended to convince consumers that the Barlean's Coconut Oil products are healthy."  *Id.* ¶ 59.  Plaintiffs claim this is done both through statements on Defendant's website as well as statements made directly on the labels of the Coconut Oils.  *Id.* ¶¶ 60–61.

/ / /

Plaintiffs take exception to several of the statements on the labels of Defendant's Products.  *See generally id*.  As to Defendant's Organic Virgin Coconut Oil, Plaintiffs question, among others, the following statements: "Nature's Most Versatile Superfood"; "RAW WHOLE FOOD"; "Harvested at the Peak of Flavor and Nutrition/nutritional value"; "COCONUT OIL: A SMART FAT"; "NON-HYDROGENATED"; and various statements concerning the presence of medium chain triglycerides.  *Id.* ¶¶ 62–70.  As to Defendant's Organic Culinary Coconut Oil, Plaintiffs identify as misleading the following label statements: "The ultimate cooking oil for health-conscious gourmets.  As versatile as it is delicious, Barlean's Organic Culinary Coconut Oil is ideal for sauteing, stir-frying and baking, or as a dairy-free butter substitute"; and "NO TRANS FAT."  *Id.* ¶¶ 72–73.  Finally, as to Defendant's Organic Butter Flavored Coconut Oil, Plaintiffs suggest that the following statements, among others, are misleading: "THE HEALTH BENEFITS OF COCONUT OIL, THE RICH TASTE OF BUTTER"; "SUB 1:1 FOR BUTTER"; "HEALTHY ALTERNATIVE TO BUTTER"; and "All the health benefits of coconut oil, now with the rich flavor of butter."  *Id.* ¶ 74.  Plaintiffs further contend that Defendant intentionally omits from its Products' labeling and marketing the negative health effects of its coconut oils.  *Id.* ¶ 76.  In addition, Plaintiffs argue that the Products are misbranded.  *See id.* ¶ 84.

Plaintiff Testone alleges he would purchase Defendant's Organic Virgin Coconut Oil on a regular basis, relying on some of the challenged label claims in believing the product was healthy.  *Id.* ¶¶ 124–26.  Plaintiff Shanks alleges similar injury from purchasing both Defendant's Organic Virgin Coconut Oil and its Butter Flavored Coconut Oil.  *Id.* ¶¶ 128–31.  Lastly, Plaintiff Pierre claims he was injured in a similar manner by purchasing Defendant's Organic Virgin Coconut Oil.  *Id.* ¶¶ 133–35.

/ / /
/ / /
/ / /
/ / /

Plaintiffs propose a class of California consumers and a class of New York consumers.[1]  *See id.* ¶ 154.  As to the California class, Plaintiffs allege violations of California Business & Professions Code §§ 17200 *et seq.* (the "UCL"), California Business & Professions Code §§ 17500 *et seq.* (the "FAL"), and California Civil Code §§ 1750 *et seq.* (the "CLRA");[2] breach of express warranty pursuant to California Commercial Code § 2313(1); and breach of the implied warranty of merchantability pursuant to California Commercial Code § 2314.  *See* Compl. ¶¶ 164, 178, 187, 197, 205.  As to the New York class, Plaintiffs allege violations of New York General Business Law §§ 349 (the "UDBP") and 350 (the "NY FAL"), as well as breach of express warranty pursuant to New York Uniform Commercial Code § 2-313.  *See* Compl. ¶¶ 210, 219, 224.

On September 4, 2019, Plaintiffs filed the operative FAC.  *See* ECF No. 35.  Defendant answered on September 10, 2019.  *See* ECF No. 36.  Defendant subsequently filed its Motion to Disqualify Counsel and Named Plaintiffs as Class Representatives on May 18, 2020.  *See* ECF No. 50.  Shortly thereafter, Defendant also filed an *ex parte* motion to stay, *see* ECF No. 52, which, following briefing, the Court granted, *see* ECF No. 55.  On January 4, 2021, this Court denied Defendant's motion to disqualify as premature.  *See* ECF No. 64; *see also Testone v. Barlean's Organic Oils, LLC*, No. 19-cv-169 JLS (BGS), 2021 WL 22611 (S.D. Cal. Jan. 4, 2021).  The present Motion, MTS, and evidentiary objections followed.

**MOTION TO STRIKE AND EVIDENTIARY OBJECTIONS**

Plaintiffs move to strike the testimony of Defendant's expert, Sarah Butler (Expert Report of Sarah Butler ("Butler Report"), Opp'n Ex. D).  *See generally* MTS.  Defendant, meanwhile, submitted evidentiary objections to portions of two declarations submitted by

---

[1] Plaintiffs Testone and Shanks allege they are citizens of the State of California, and Plaintiff Pierre alleges he is a citizen of the State of New York.  *See* FAC ¶¶ 5–7.

[2] For purposes of the UCL, FAL, and CLRA, courts repeatedly have held they are materially the same. *See, e.g.*, *Townsend v. Monster Beverage Corp.*, 303 F. Supp. 3d 1010, 1043 (C.D. Cal. 2018).  Each statute prohibits the use of untrue or misleading statements to sell a product.

Plaintiffs to support their Reply, one by Mr. Colin B. Weir and one by Dr. J. Michael Dennis (Reply Declaration of J. Michael Dennis, Ph.D. ("Reply Dennis Report," ECF No. 85-1), Reply Declaration of Colin B. Weir ("Reply Weir Report," ECF No. 85-2)).  *See generally* ECF Nos. 88, 89.

## I.    Legal Standards

### A.    *Daubert Motion*

The Ninth Circuit has held that expert evidence offered at the class certification stage must meet the standard of relevance and reliability articulated in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).  *See Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 982 (9th Cir. 2011) (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 354 (2011)). Pursuant to that standard:

> Faced with a proffer of expert scientific testimony . . . the trial judge must determine . . . whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue.  This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue.

*Id.* at 592–93; *see also* Fed. R. Evid. 702 (permitting expert to testify only if "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods and (3) the witness has applied the principles and methods reliably to the facts of the case."); Fed. R. Evid. 703 (requiring the facts or data upon which the expert relies to be "of a type reasonably relied upon by experts in the particular field").

The Court has a gatekeeping responsibility to determine whether expert testimony complies with Rules 702 and 703.  *Daubert*, 509 U.S. at 592; *see also Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 148–49 (1999).  The burden of establishing satisfaction of Rule 702's requirements lies with the offering party.  *Sundance Image Tech., Inc. v. Cone Editions Press, Ltd.*, No. 02 CV 2258 JM (AJB), 2007 WL 935703, at *4 (S.D. Cal. Mar. 7, 2007) (citations omitted).  Ultimately, "[a] trial court has broad latitude not only in

determining whether an expert's testimony is reliable, but also in deciding how to determine the testimony's reliability." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 982 (9th Cir. 2011) (citing *Kumho Tire*, 526 U.S. at 152).

Courts consider *Daubert*'s non-exhaustive list of factors when determining the admissibility of scientific experts' testimony. *Elsayed Mukhtar v. Cal. State Univ., Hayward*, 299 F.3d 1053, 1064 (9th Cir. 2002) (citing *Daubert*, 509 U.S. at 593–94; *Kumho Tire*, 526 U.S. at 141). However, "the *Daubert* factors . . . simply are not applicable to [non-scientific] testimony, whose reliability depends heavily on the *knowledge and experience* of the expert, rather than the methodology behind it." *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1017 (9th Cir. 2004) (emphasis in original) (internal quotation marks and citations omitted). In such situations, Rule 702 should be "construed liberally." *United States v. Hankey*, 203 F.3d 1160, 1168 (9th Cir. 2000) (citation omitted). Appropriate considerations include:

- Whether the opinion is based on scientific, technical, or other specialized knowledge;
- Whether the expert's opinion would assist the trier of fact in understanding the evidence or determining a fact in issue;
- Whether the expert has appropriate qualifications—i.e., some special knowledge, skill, experience, training or education on that subject matter[;]
- Whether the testimony is relevant and reliable[;]
- Whether the methodology or technique the expert uses "fits" the conclusions (the expert's credibility is for the jury)[; and]
- Whether its probative value is substantially outweighed by the risk of unfair prejudice, confusion of the issues, or undue consumption of time.

*Id.* (citations omitted).

This inquiry is designed to be a flexible one, and "[s]haky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion." *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1044 (9th Cir. 2014). "[R]ejection of expert testimony is the exception rather than the rule." *Frye v.*

*Ayers*, No. CIVS990628LKKKJM, 2009 WL 1312924, at *4 (E.D. Cal. May 12, 2009) (quoting Advisory Committee Notes to 2000 Amendments to Fed. R. Evid. 702).

### B.   Evidentiary Objections

Since a motion to certify a class is a preliminary procedure, courts do not require strict adherence to the Federal Rules of Civil Procedure or the Federal Rules of Evidence. *See Eisen*, 417 U.S. at 178 (stating the class certification procedure "is not accompanied by the traditional rules and procedures applicable to civil trials").  Therefore, the Court may consider inadmissible evidence.  *Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1005 (9th Cir. 2018) ("[A] district court is not limited to considering only admissible evidence in evaluating whether Rule 23's requirements are met.") (citation omitted); *see also Keilholtz v. Lennox Hearth Prods., Inc.*, 268 F.R.D. 330, 337 n.3 (N.D. Cal. 2010).  "The court need not address the ultimate admissibility of the parties' proffered exhibits, documents and testimony at this stage, and may consider them where necessary for resolution of the [Motion for Class Certification]." *Alonzo v. Maximus, Inc.*, 275 F.R.D. 513, 519 (C.D. Cal. 2011); *Waine–Golston v. Time Warner Entm't–Advance/New House P'ship*, No. 11cv1057-GPB (RBB), 2012 WL 6591610, at *9 (S.D. Cal. Dec. 18, 2012). Post-*Wal-Mart*, the Ninth Circuit has affirmed that, while the *Daubert* standard applies to expert testimony, "[i]nadmissibility alone is not a proper basis to reject evidence submitted in support of class certification."  *Sali*, 909 F.3d at 1004 (footnote omitted).

## II.   Analysis

### A.   Plaintiffs' Motion to Strike

Plaintiffs challenge the admissibility of the testimony of Defendant's expert, Ms. Butler, on the grounds that (1) her testimony is irrelevant because Plaintiffs' claims do not require absent class members to have seen, relied on, or found material the at-issue claims on the Products' labels, *see* MTS at 3–5; (2) her testimony is irrelevant because the germane question at this stage is whether common questions predominate, not whether Plaintiffs have proven materiality, which is a merits issue, *see id.* at 5–6; (3) her questions and testimony concerning how consumers first learned about coconut oil are unreliable and

irrelevant, *see id.* at 6–8; (4) her criticisms of Dr. Dennis's survey population are based on a mistake of fact, *see id.* at 8–10; and (5) she is not qualified to offer testimony about supply-side issues, *see id.* at 10–11.  The Court will address each of these issues in turn.

        *1.    Relevancy and Reliability*

        a.    General Relevance to Plaintiffs' Claims and Class Certification

Plaintiffs claim that Ms. Butler's entire report is irrelevant and should be stricken because her opinions concern issues that are irrelevant as a matter of law.  MTS at 5.  Specifically, Plaintiffs claim that Defendant relies on the Butler Report to show that the challenged claims are not material and that consumers do not rely on them, but that these issues are irrelevant under the reasonable consumer test that applies to their claims.  *Id.* at 3–4.  Plaintiffs further argue that the Butler Report goes to the merits of whether the reasonable consumer would find the Products' labels material and/or deceptive, issues irrelevant at the class certification stage.  *Id.* at 6.

Defendant argues that, if the alleged misrepresentations are not material to all class members, then the reliance of individual class members is at issue and the class should not be certified.  MTS Opp'n at 3–4 (citing, *inter alia*, *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1022 (9th Cir. 2011), *abrogated on other grounds by Comcast Corp. v. Behrend*, 569 U.S. 27 (2013)).  Thus, "numerous courts have found survey evidence of the type offered by Butler highly probative of materiality across the putative class and admissible – and in some cases essential – at the class certification stage."  *Id.* at 4 (citations omitted).  Defendant argues that the court in *Shanks v. Jarrow Formulas, Inc.*, Case No. CV 18-09437 PA (AFMx), 2019 WL 4398506 (C.D. Cal. Aug. 27, 2019), not only found a nearly identical survey conducted by Ms. Butler relevant, but also relied on that survey in denying certification to a similar proposed class.  *Id.* (citations omitted).

In reply, Plaintiffs cite *Bradach v. Pharmavite, LLC*, 735 F. App'x 251 (9th Cir. 2018), and *In re McCormick & Co.*, 422 F. Supp. 3d 194 (D.D.C. 2019) (applying California law), MTS Reply at 1, and reassert that Ms. Butler's survey is irrelevant given that "'materiality is necessarily a common question.'"  *Id.* at 2 (citation omitted).

Ms. Butler's survey effectively amounts to an argument that consumers purchase Defendant's Products for a variety of reasons.  However, this "is a merits dispute as to materiality, and is therefore a dispute that can be resolved classwide." *Hadley v. Kellogg Sales Co.*, 324 F. Supp. 3d 1084, 1117 (N.D. Cal. 2018) (internal quotation marks omitted). Indeed, it is an error of law for a court to inquire into the motives of each individual class member at the class certification stage.  *See Bradach*, 735 F. App'x at 255.  And, in any event, "it is clear under California law that . . . materiality to a reasonable consumer does not mean it has to be material to every consumer." *In re McCormick*, 422 F. Supp. 3d at 255.  However, Ms. Butler's survey may be probative of materiality at later stages in this litigation, as it may show the alleged misstatements would not be material to a reasonable consumer.  Accordingly, the Court **DENIES** Plaintiffs' Motion to Strike on this ground.

### b.   How Consumers First Learned About Coconut Oil

Relying on the same arguments made *supra*, Plaintiffs also claim that how consumers first learned about coconut oil has no bearing on whether the Products' labels are objectively material or misleading.  MTS at 6–7 (citing *Mullins v. Premier Nutrition Corp.*, Case No. 13-cv-01271-RS, 2016 WL 1535057, at *3 (N.D. Cal. Apr. 15, 2016)). Plaintiffs challenge these survey questions' apparent premise "that if consumers first learned about coconut oil from a source other than the Barlean's label, the Barlean's label could not possibly have influenced their purchasing decision." *Id.* at 7 (citing Reply Dennis Report ¶¶ 45–49, 81, 83).  Further, Plaintiffs argue that these questions are fundamentally unreliable, as consumers are unlikely to accurately recall how they first learned of a product they likely first purchased years ago.  *Id.* at 7 n.1 (citing Reply Dennis Report ¶¶ 66–71).

Defendant responds that these survey questions and their responses are probative to the issue of materiality, because, when viewed in conjunction with the other survey responses, they show that consumers do not rely on the claims on coconut oil labels in deciding whether to make a purchase.  MTS Opp'n at 5 (citing Butler Report ¶ 55). Defendant argues that the cases cited by Plaintiffs are inapt, *id.* at 5–6 (citations omitted); claims that Dr. Dennis's opinions about "recall bias" lack foundation; and contends that

criticisms of recall over the survey's period of five years are "disingenuous" given that the class period is approximately the same and the Plaintiffs Testone claim to recall their reasons for purchasing the Products even longer ago. *Id.* at 6 (citations omitted).

In reply, Plaintiffs claim that there is no logical connection between how a person first learned about coconut oil and the materiality of the Products' labels and that Defendant fails to explain how the other survey responses bridge this gap. MTS Reply at 3. Plaintiffs also argue that analogizing between the survey questions and Plaintiffs' testimony about why they purchased Defendant's Products is inapt, as Plaintiffs' testimony establishes their reliance, which is required for standing. *Id.* at 4.

For the reasons provided *supra* at 9, this again effectively amounts to "a merits dispute as to materiality, and is therefore a dispute that can be resolved classwide." *Hadley*, 324 F. Supp. 3d at 1117. And, again, portions of Ms. Butler's survey may be probative of materiality at later stages in this litigation. Finally, while the Court appreciates the "recall bias" issue raised by Defendant, the Court is not prepared to say that this issue renders the questions at issue so fundamentally flawed that they are completely unreliable and must be stricken. Accordingly, the Court **DENIES** the Motion to Strike on this ground as well.

c.   Criticisms of Dr. Dennis's Survey Population

Plaintiffs also contend that the portions of the Butler Report opining that Dr. Dennis's survey improperly restricts the relevant population to consumers who purchased coconut oil at health food stores should be stricken, as Dr. Dennis's proposed survey is not limited to such a sub-population of purchasers. MTS at 8–9 (citing Butler Report ¶¶ 66–67; Reply Dennis Report ¶ 27 n.11). During her deposition, Ms. Butler clarified that her concerns would be alleviated should the survey population not be so limited. *Id.* at 9 (citing Butler Dep. Tr. 163:1–11). In its Opposition, "[Defendant] disagrees that Butler misread Dennis' declaration . . . but does not dispute that Dennis has clarified the scope of his survey universe in his reply declaration." MTS Opp'n at 7 (citation omitted). Nonetheless, Defendant contends that Dr. Dennis's subsequent clarification does not mean that Ms. Butler's criticism of the original declaration should be stricken. *Id.* at 7–8.

A reading of the paragraph at issue in Dr. Dennis's report supports Plaintiffs' position that Dr. Dennis's survey population was never limited to consumers who purchased coconut oil from health food stores. Instead, he is clear that "[his] survey will target a population of non-institutionalized adults age 18 and over, who have purchased coconut oils in the last 12 months . . ." Declaration and Expert Report of J. Michael Dennis, Ph.D. ("Dennis Report," ECF No. 70-14) ¶ 51. Dr. Dennis goes on to clarify that his survey population will "include[e] those residing in either the state of California or New York," as well as "coconut oil purchasers who purchased coconut oil in health food stores." *Id.* However, nowhere does he say that he will limit the survey population to such purchasers. Accordingly, the Court finds that Ms. Butler's critiques of Dr. Dennis's survey population were based on a mistake of fact; they are therefore irrelevant and unlikely to assist the trier of fact. *See Viasat, Inc. v. Space Sys./Loral, Inc.*, No. 312CV00260HWVG, 2014 WL 11889468, at *1 (S.D. Cal. Feb. 4, 2014) (noting that expert opinion predicated on mistake is irrelevant). Thus, the Court **STRIKES** the portions of the Butler Report pertaining to Dr. Dennis's survey population.

### 2. Ms. Butler's Qualifications

Finally, Plaintiffs argue that Ms. Butler is not an economist and is therefore unqualified to opine on whether Dr. Dennis's survey addresses supply-side issues. *See* MTS at 11 (citing Butler Report ¶¶ 11, 69). Plaintiffs rely heavily on the striking of similar opinions offered by Ms. Butler in *Maldonado v. Apple, Inc.*, Case No. 3:16-cv-04067-WHO, 2021 WL 1947512 (N.D. Cal. May 14, 2021). *See id.*; *see also Maldonado*, 2021 WL 1947512, at *26 ("Butler is not qualified to render the challenged opinion. While she may offer opinions about flaws in the survey design, and though Apple tries to couch the opinion as pointing out flaws in the survey, it is not. Boiled down, it is that a method for measuring consumer willingness to pay is an inadequate measure of market price because it fails to account for changes in supply. That opinion may be right, wrong, or debatable as a matter of economic theory, but it is a matter *of economic theory*. Butler is not an economist nor does she purport to be. She has no training, education, skill, or experience

in economics, nor does she purport to.  Apple cannot slide in opinions within the ken of an economist under the guise of faulting the survey design.") (emphasis in original). Defendant counters that, "as a survey expert, [Ms. Butler] is indisputably qualified to testify as to survey design, including what components are included or excluded from a particular survey design, which is precisely the nature of the challenged testimony."  MTS Opp'n at 7.  Defendant argues that *Maldonado* is inapposite, as there Ms. Butler specifically was offering opinions in rebuttal to Mr. Weir's economics testimony.  *Id.* (citing *Maldonado*, 2021 WL 1947512, at *26).  While the Butler Report is not a rebuttal report, it does, in fact, critique and respond to the Dennis Report and ultimately contends that his model cannot accurately account for market share and prices.  The Court agrees that, as in *Maldonado*, these are economic issues as to which Ms. Butler is not qualified to testify.  Accordingly, the Court **STRIKES** those portions of the Butler Report opining as to the adequacy of Dr. Dennis's conjoint survey to account for changes in supply.

### B.    Defendant's Evidentiary Objections

Defendant's evidentiary objections to portions of the Reply Dennis Report and Reply Weir Report mostly argue that the paragraphs in question are irrelevant, lack foundation, and/or are improper legal opinions.  *See generally* ECF Nos. 88, 89.  Thus, Defendant does not object to these portions of Plaintiffs' reply reports on the basis of *Daubert* concerns, but rather on the basis of general admissibility issues.  At this stage, the Court can, and should, afford such testimony the proper weight rather than exclude it outright.  *See Smith v. Microsoft Corp.*, 297 F.R.D. 464, 474 (S.D. Cal. 2014) (overruling objections at class certification stage that did not concern *Daubert* issues); *Sarmiento v. Sealy, Inc.*, No. 18-CV-01990-JST, 2020 WL 4458915, at *2 (N.D. Cal. May 27, 2020). Accordingly, the Court **OVERRULES** Defendant's evidentiary objections.

## MOTION FOR CLASS CERTIFICATION

## I.    Legal Standard

Motions for class certification proceed under Rule 23(a) of the Federal Rules of Civil Procedure.  Rule 23(a) provides four prerequisites to a class action: (1) the class is so

numerous that joinder of all members is impracticable ("numerosity"); (2) there are questions of law or fact common to the class ("commonality"); (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class ("typicality"); and (4) the representative parties will fairly and adequately protect the interests of the class ("adequate representation").  Fed. R. Civ. P. 23(a).

A proposed class must also satisfy one of the subdivisions of Rule 23(b).  Here, Plaintiffs seek to proceed under Rule 23(b)(3), which requires that "the court find[ ] that the [common questions] predominate over any questions affecting only individual members ['predominance'], and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy ['superiority'']."  Factors relevant to this inquiry include the class members' interest in individually controlling the litigation, other litigation already commenced, the desirability (or not) of consolidating the litigation in this forum, and manageability.  *Id.* 23(b)(3)(A)–(D).

"In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met."  *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974) (internal quotations omitted).  "Rule 23 does not set forth a mere pleading standard."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).  Rather, "[a] party seeking class certification must affirmatively demonstrate his compliance with the Rule— that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc."  *Id.*  The court is "at liberty to consider evidence which goes to the requirements of Rule 23 even though the evidence may also relate to the underlying merits of the case."  *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 509 (9th Cir. 1992).  However, a weighing of competing evidence is inappropriate at this stage of the litigation.  *Staton v. Boeing Co.*, 327 F.3d 938, 954 (9th Cir. 2003); *Wang v. Chinese Daily News, Inc.*, 231 F.R.D. 602, 605 (C.D. Cal. 2005).

/ / /

/ / /

## II.     Analysis

### A.     Rule 23(a) Requirements

As noted previously, Plaintiffs seek certification of two classes, the California Class and the New York Class (collectively, the "Classes").  The proposed California Class comprises "[a]ll persons in California who, between January 24, 2015 and the date the Class is notified of certification, purchased any of the Barlean's Coconut Oils for household use and not for resale."  Mot. Mem. at 1.  The proposed New York Class comprises "[a]ll persons in New York who, between January 24, 2016 and the date the Class is notified of certification, purchased any of the Barlean's Coconut Oils for household use and not for resale."  *Id.*

Plaintiffs must establish that the Classes satisfy the four requirements of Rule 23(a). Defendant does not contest that Plaintiffs' Classes meet the Rule 23(a) requirements of numerosity and commonality.  Thus, the Court analyzes these requirements briefly and focuses its analysis on the contested elements of typicality and adequacy.

### 1.     Numerosity

"[A] proposed class must be 'so numerous that joinder of all members is impracticable.'"  *Rannis v. Recchia*, 380 F. App'x 646, 650 (9th Cir. 2010) (quoting Fed. R. Civ. P. 23(a)(1)).  While "[t]he numerosity requirement is not tied to any fixed numerical threshold[,] . . . [i]n general, courts find the numerosity requirement satisfied when a class includes at least 40 members."  *Id.* at 651; *see also Nunez v. BAE Sys. San Diego Ship Repair Inc.*, 292 F. Supp. 3d 1018, 1032 (S.D. Cal. 2017).  Defendant admits that it has sold thousands of units of the Coconut Oils in California and New York.  Mot. Mem. at 10 (citing *id.* Ex. 2; *Nunez*, 292 F. Supp. 3d at 1032).  Based on this admission and the fact that Defendant does not contest the numerosity element, the Court finds that it can infer that the likely class members are sufficiently numerous that joinder is impracticable, thus fulfilling this requirement for each of the Classes.  *See Astiana v. Kashi Co.*, 291 F.R.D. 493, 501 (S.D. Cal. 2013) ("In ruling on a class action a judge may consider reasonable inferences drawn from facts before [her] at that stage of the proceedings.").

## 2. Commonality

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "All questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). However, the common contention "must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350.

Plaintiffs assert that there are common questions here, such as what the at-issue label statements would mean to a reasonable consumer and whether they would be deceptive to a reasonable consumer. Mot. Mem. at 11. In prior mislabeling cases such as this, courts have found the commonality requirement satisfied "because [the litigation] raises the common question of whether the packaging would mislead a reasonable consumer." *See, e.g.*, *Broomfield v. Craft Brew Alliance, Inc.*, No. 17-cv-01027-BLF, 2018 WL 4952519, at *5 (N.D. Cal. Sept. 25, 2018); *In re NJOY, Inc. Consumer Class Action Litig.*, 120 F. Supp. 3d, 1050, 1096–97 (C.D. Cal. 2015); *In re ConAgra Foods, Inc.*, 302 F.R.D. 537, 569 (C.D. Cal. 2014). Similarly, a reasonable consumer standard is used in New York for UDBP and FAL claims. *See, e.g.*, *In re 5-Hour Energy Mktg. & Sales Practices Litig.*, No. ML 13-2438 PSG (PLAx), 2017 WL 2559615, at *6 (C.D. Cal. June 7, 2017) (collecting cases from New York). Moreover, Defendant does not dispute commonality. *See generally* Opp'n. Thus, the Court finds the commonality requirement satisfied here.

## 3. Typicality

The Ninth Circuit has explained that "representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Staton*, 327 F.3d at 957; *Hanlon*, 150 F.3d at 1019. The test of typicality "is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have

been injured by the same course of conduct." *Schwartz v. Harp*, 108 F.R.D. 279, 282 (C.D. Cal. 1985).

Plaintiffs claim typicality is satisfied because Defendant "labeled all Coconut Oils with claims it intended to convey that they are healthy, which constitutes a common scheme." Mot. Mem. at 12. Plaintiffs further argue that all class members were exposed to the same messaging and were "injured in the same manner when they purchased the oils at a price higher than what they would have paid had the labeling not been misleading or unlawful." *Id.* Defendant, meanwhile, contends that Plaintiffs' claims are atypical of the Classes' claims for several reasons. Opp'n at 21. First, Defendant argues that Ms. Butler's survey demonstrates that most purchasers of coconut oil are not motivated by the label; second, Defendant asserts that Plaintiffs have not shown that they or the class members paid a higher price than they would have but for the challenged claims. *Id.* Third, Defendant contends that Plaintiffs cannot credibly claim reliance on any of the challenged statements appearing on Defendant's labels. *Id.* at 22.[3]

As to Defendant's first argument that Ms. Butler's survey demonstrates that most purchasers of coconut oil are not motivated by statements appearing on the label, this contention is off base. As far as Plaintiffs' CLRA and UCL claims are concerned, there is an inference of reliance where the allegedly material misrepresentations were made to all class members. *See In re ConAgra*, 302 F.R.D. at 571. Nothing in the record would suggest that all class members did not receive the same messaging from Defendant, nor does Defendant contest that its messaging was uniform across the Classes. *See Reply* at 3. Moreover, "the fact that the . . . label[s] may not have been a significant purchasing decision of all class members, as it purportedly was in [Plaintiffs'] purchasing decision, does not make [P]laintiffs' claims atypical of the class." *In re ConAgra*, 302 F.R.D. at 571. In any

---

[3] Defendant does not cite any authority specifically in support of its argument that Plaintiffs cannot satisfy the requirements of Rule 23(a)(3). Throughout its Opposition, Defendant principally relies on *Shanks*, 2019 WL 4398506; however, that decision did not address the requirements of Rule 23(a)(3) because the court found the dispute could be resolved based on Rule 23(b)(3) concerns. *See id.* at *3.

event, it is immaterial what motivated the class members to purchase Defendant's Coconut Oils. "[C]lass members in CLRA and UCL actions are not required to prove their individual reliance on the allegedly misleading statements." *Bradach*, 735 F. App'x at 254. Rather, "the standard in actions under both the CLRA and the UCL is whether 'members of the public are likely to be deceived.'" *Id.* (quoting *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 951 (2002), *as modified* (May 22, 2002). And, as noted *supra* at 15, the standard for the New York claims is the same. *See In re 5-Hour Energy*, 2017 WL 2559615, at *6.

Defendant's second argument, that Plaintiffs have not shown that they or the class members paid a higher price than they would have but for the challenged claim, is similarly meritless. It does not matter what Plaintiffs' reasons for purchasing Defendant's Products were, as "all potential class members were exposed to the same alleged misrepresentation." *Alvarez v. NBTY, Inc.*, 331 F.R.D. 416, 422 (S.D. Cal. 2019). "Plaintiff[s] therefore allege[] the same injury as the class members: monetary loss from purchasing a product based on alleged misrepresentations." *Id.* Additionally, even if the challenged labels were not a reason for Plaintiffs to pay more money for the product, "a plaintiffs' individual experience with the product is irrelevant where . . . the injury under the UCL, FAL, and CLRA is established by an objective test." *Bruno v. Quten Research Inst., LLC*, 280 F.R.D. 524, 534 (C.D. Cal. 2011). Thus, the only relevant question, both for Plaintiffs and the members of the Classes, is whether "members of the public are likely to be deceived," *id.*, not their reasons for purchasing the product. Typicality does not turn on the "specific facts from which [the claim] arose." *Hanon*, 976 F.2d at 508.

Defendant's third and final argument—that Plaintiffs cannot claim reliance on any of Defendant's statements—likewise lacks merit. "[T]he defense of non-reliance is not a basis for denial of class certification," *id.* at 509; rather, it goes to the merits of the case and is inappropriate for a court to consider during class certification. *See In re Pizza Time Theatre Sec. Litig.*, 112 F.R.D. 15, 22 (N.D. Cal. 1986). Moreover, reliance is not an element of the New York claims. *See Hasemann v. Gerber Prods. Co.*, 331 F.R.D. 239, 257 (E.D.N.Y. 2019).

"At bottom, plaintiffs are typical if they possess the same injury as the class they seek to represent and were injured by the same course of conduct." *Longest v. Green Tree Servicing LLC*, 308 F.R.D. 310 (C.D. Cal. 2015). Here, Plaintiffs allege the same injury as the members of the Classes they seek to represent and allege they were injured by the same course of conduct—Defendant's alleged mislabeling. *See generally* Mot. Mem. It is true that Plaintiffs did not purchase every size and type of the Coconut Oils. *Id.* at 12. However, Rule 23(a)(3) only requires that the unnamed plaintiffs have injuries like those of the class representatives and that those injuries resulted from the same course of conduct. *See Des Roches v. Cal. Physicians' Serv.*, 320 F.R.D. 486, 504 (N.D. Cal. 2017); *see also In re TFT–LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. 583, 593 (N.D. Cal. Mar. 28, 2010) ("The typicality requirement does not mandate that the products purchased . . . be the same as those of absent class members."). Such is the case here.

Additionally, several courts have recognized that when a defendant engages in a "common scheme" towards all class members—as Plaintiffs allege, *see* Mot. Mem. at 12, and Defendant does not rebut, *see generally* Reply—there is a strong presumption of typicality. *See, e.g.*, *Willis v. Big Lots, Inc.*, 242 F. Supp. 3d 634, 645 (S.D. Ohio 2017); *In re Catfish Antitrust Litig.*, 826 F. Supp. 1019, 1035 (N.D. Miss. 1993); *In re Linerboard Antitrust Litig.*, 203 F.R.D. 197, 207 (E.D. Pa. 2001); *In re Commercial Tissue Products*, 183 F.R.D. 589, 593 (N.D. Fla. 1998); *Weisfeld v. Sun Chem. Corp.*, 210 F.R.D. 136, 140 (D.N.J. 2002). In sum, the Court finds that Plaintiffs have established typicality. *See generally Martin v. Monsanto Co.*, No. ED CV 16-2168-JFW (SPx), 2017 WL 1115167, at *4 (C.D. Cal. Mar. 24, 2017) (finding typicality satisfied on similar mislabeling claims).

### 4. Adequacy

Finally, Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." In making this determination, "[courts] ask two questions: (1) Do the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Staton*, 327 F.3d at 957.

Plaintiffs contend that they are adequate class representatives "because they are *bona fide* purchasers with standing who relied on the challenged claims in purchasing the Coconut Oils, have no conflicts, are aware of their obligations, and will continue to vigorously prosecute the case for the Class." Mot. Mem. at 14. However, Defendant maintains that the Plaintiffs are not credible and therefore inadequate representatives. Opp'n at 23. Specifically, Defendant contends that (1) each Plaintiff participated in a class settlement for BetterBody coconut oil; (2) the deposition testimony of two Plaintiffs failed to disclose that they had purchased BetterBody coconut oil; (3) one Plaintiff falsely testified about where he purchased Defendant's product; and (4) one Plaintiff falsely testified that he was not a participant in any other coconut oil litigation. Opp'n at 23–25. In reply, Plaintiffs argue that these allegations do not render them inadequate class representatives, and, at any rate, Defendant mischaracterizes their testimony. Reply at 5.

"[T]he honesty and credibility of a class representative is a relevant consideration when performing the adequacy inquiry 'because an untrustworthy plaintiff could reduce the likelihood of prevailing on the class claims.'" *Harris v. Vector Mktg. Corp.*, 753 F. Supp. 2d 996, 1015 (N.D. Cal. 2010) (citation omitted). "[A] plaintiff with credibility problems may be considered to have interests antagonistic to the class." *Id.* (citation omitted). However, "credibility problems do not automatically render a proposed class representative inadequate." *Del Valle v. Global Exch. Vacation Club*, 320 F.R.D. 50, 59 (C.D. Cal. 2017) (quoting *Harris*, 753 F. Supp. 2d at 1015). "Only when attacks on the credibility of the representative party are so sharp as to jeopardize the interests of absent class members should such attacks render a putative class representative inadequate." *Nunez*, 292 F. Supp. 3d at 1035 (quoting *Harris*, 753 F. Supp. 2d at 1015). Further, "a finding of inadequacy based on the representative['s] . . . credibility problems is only appropriate where the representative's credibility is seriously questioned on issues directly relevant to the litigation or there are confirmed examples of dishonesty, such as a criminal conviction for fraud." *Del Valle*, 320 F.R.D. at 59 (quoting *Harris*, 753 F. Supp. 2d at 1015).

The question, then, is whether the alleged inconsistent statements render Plaintiffs not credible to such an extent that they are inadequate class representatives. It is possible, as Plaintiffs argue, that Plaintiffs' alleged misrepresentations were due to faulty memory. *See, e.g.,* Reply at 5. But even assuming *arguendo* that Plaintiffs' testimony contains intentional falsehoods, the purported misrepresentations are not sufficient to render Plaintiffs incredible to such an extent that they are inadequate representatives. Defendant points to one alleged inconsistency in each Plaintiff's testimony (and, in the case of Plaintiff Pierre, two). *See* Opp'n at 23–25. However, this Court has previously recognized that a single inconsistency in testimony is not sufficient to render a putative class representative inadequate due to a lack of credibility. *See Nunez*, 292 F. Supp. 3d at 1035.[4] Moreover, as in *Nunez*, Plaintiffs are "at some level engaged with the litigation," *id.*, as they have given depositions and—in the case of Plaintiff Pierre—explained the misstatements. Reply at 5. Furthermore, that Plaintiff Shanks previously served as a Class Representative in a different coconut oil class action lawsuit, *see Shanks*, 2019 WL 4398506, at *1, may in fact *boost* his adequacy as a class representative. "[R]epeat litigants may be better able to monitor the conduct of counsel, who as a practical matter are the class's real champions." *Bruno*, 280 F.R.D. at 534 (quoting *Holloway v. Full Spectrum Lending*, No. CV 06–5975 DOC (RNBx), 2007 WL 7698843 (C.D. Cal. June 26, 2007)).

In any event, none of Plaintiffs' alleged misstatements are "directly relevant to the litigation." *Del Valle*, 320 F.R.D. at 59 (quoting *Harris*, 753 F. Supp. 2d. at 1015). As to the California claims, "[f]or purposes of class certification, the UCL, FAL, and CLRA are materially indistinguishable." *Townsend*, 303 F. Supp. 3d at 1043. To prove their claims under the UCL, FAL, and CLRA, Plaintiffs must demonstrate that "that the challenged statements are material and likely to mislead or deceive consumers on a classwide basis."

---

[4] The specific issue in *Nunez* was that the putative class representative claimed not to have been told when the date of mediation was, despite prior testimony that he had been told the date. *Nunez*, 292 F. Supp. 3d at 1034–35. The Court finds that the alleged inconsistent testimony of Plaintiffs here to be similar to that of the plaintiff in *Nunez*.

*Id.* (citing *In re 5-Hour Energy*, 2017 WL 2559615, at *6).  Similarly, for the New York UDBP and FAL claims, "a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice."  *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015) (quoting *Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 944 (2012)).  Based on what is directly relevant to this litigation—*i.e.*, the elements that Plaintiffs must prove—it is immaterial that Plaintiffs claim they did not buy BetterBody coconut oil, or that Plaintiff Pierre claims he bought Defendant's Products from Walmart.  In other words, what matters is whether Plaintiffs' credibility undermines their California and New York claims, not whether they lied about purchasing a brand of coconut oil not at issue here.  *See Harris*, 753 F. Supp. 2d at 1015 ("[A]ny issues of the Plaintiff's credibility should be tied to his claims in this action." (citation omitted); *see also Del Campo v. Am. Corr. Counseling Servs., Inc.*, No. C 01-21151 JW (PVT), 2008 WL 2038047, at *4 (N.D. Cal. May 12, 2008) ("[G]enerally, unsavory character or credibility problems will not justify a finding of inadequacy unless related to the issues in the litigation.") (citation omitted).

The only two authorities Defendant cites in support of its argument are *Del Valle v. Global Exchange Vacation Club* and *Harris v. Vector Marketing Corporation*.  *See* Opp'n at 23–25.  However, these cases do not help Defendant.  In *Del Valle*, as here, the putative class representative gave inconsistent testimony, but the court found that this "[did] not rise to the requisite level of dishonesty" to render her an inadequate class representative.  320 F.R.D. at 59.  Meanwhile, in *Harris*, the court found that the putative class representative's statements were not relevant to the claims in the litigation.  753 F. Supp. 2d at 1015–16.  Consequently, relying on the very authorities cited by Defendant, the Court finds that Plaintiffs can adequately represent the members of the proposed Classes.

Finally, Defendant does not argue that Plaintiffs' counsel are inadequate.  *See generally* Opp'n.  Plaintiffs, meanwhile, assert that their counsel are adequate, having no conflicts and extensive experience prosecuting consumer fraud class actions.  *See* Mot.

21

19-CV-169 JLS (BGS)

Mem. at 14.  Where counsel have vigorously represented the class, have experience with class action litigation, and "are knowledgeable about the applicable law," they are generally adequate.  *Nunez*, 292 F. Supp. 3d at 1035.  Plaintiff's counsel have experience litigating consumer class actions, including "several similar actions involving deceptive healthy labeling practices on coconut oils."  Mot. Mem. at 14.  Consequently, the Court finds that Plaintiffs' counsel are able to represent the Classes adequately.

In sum, the Court finds that Plaintiffs are adequate class representatives and that class counsel are also adequate.  Thus, the adequacy requirement is satisfied.  Plaintiffs therefore have satisfied the four requirements of Rule 23(a), and the Court proceeds to analyze the requirements of Rule 23(b)(3).

### B.     Rule 23(b)(3) Requirements

Rule 23(b)(3) states that a class may be maintained if the requirements of Rule 23(a) are fulfilled and if "the court finds that the questions of law or fact common to the class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  The Court will address each of these requirements in turn.

### 1.     Predominance of Common Issues

The predominance analysis focuses on "the legal or factual questions that qualify each class member's case as a genuine controversy" to determine "whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 623 (1997); *see also* Fed. R. Civ. P. 23(b)(3) (stating that, to certify a class, the court must find that "questions of law or fact common to class members predominate over any questions affecting only individual members").  "Considering whether questions of law or fact common to class members predominate begins . . . with the elements of the underlying cause of action."  *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011) (quotation marks omitted).  A court must analyze these elements to "determine which are subject to common proof and which are

subject to individualized proof." *In re TFT–LCD I*, 267 F.R.D. at 310–11.  At least one district court within the Ninth Circuit has applied a preponderance of the evidence standard to the Rule 23 requirements, including the requirement of predominance of common questions.  *See Shanks*, 2019 WL 4398506, at *3 ("Although neither the Ninth Circuit nor the Supreme Court has decisively attached a standard of proof to Rule 23's requirements, many courts apply the preponderance of the evidence standard.  The Court finds that this is the appropriate burden of proof.") (citations omitted).

Defendant contends that Plaintiffs cannot satisfy the requirements of Rule 23(b)(3) for several reasons, *see generally* Opp'n, which the Court addresses below.

a.    The Applicability of Plaintiffs' Case Law

Defendant first takes aim at Plaintiffs' claim that a violation under the UCL and the FAL can be shown without proof of deception, reliance, and damage.  Opp'n at 12.  Defendant cites to the California Supreme Court case *In re Tobacco II Cases*, 46 Cal. 4th 298 (2009), in support of its argument.  *Id.*[5]  In *In re Tobacco II*, the plaintiff sued various tobacco companies alleging, among other claims, violations of the UCL, FAL, and CLRA.  46 Cal. 4th at 299.  Defendant cites to the statement that "a class representative proceeding on a claim of misrepresentation as the basis of his or her UCL action must demonstrate actual reliance on the allegedly deceptive or misleading statements."  Opp'n at 12 (citing *In re Tobacco II*, 46 Cal. 4th at 306).  However, Defendant omits what the California Supreme Court says later in the very same opinion: "a presumption, or at least an inference, of reliance arises wherever there is a showing that a misrepresentation was material."  *In re Tobacco II*, 46 Cal. 4th at 327 (citations omitted).

Here, Plaintiffs contend, and the Court agrees, that the deposition testimony of Defendant's Rule 30(b)(6) representative and the existence of Food and Drug Administration regulations prohibiting certain of the challenged statements on the

---

[5] Defendant further claims that "the applicability of the case law cited by Plaintiffs is questionable, at best," Opp'n at 12; however, Plaintiffs cite to *Steroid Hormone Prod. Cases*, 181 Cal. App. 4th 145, 154 (2010), which was decided after *In re Tobacco II*, *see* Mot. Mem. at 16.

Products' labels evidence materiality. *See* Mot. Mem. at 17 (citations omitted). Accordingly, an inference of reliance on the contested statements arises, and thus Defendant's contention that Plaintiffs misstate the case law is without merit.

> b.    Evidence of Materiality and Likelihood of Deception

Defendant next contends that Plaintiffs must put forth evidence of materiality and likelihood of deception for the Court to certify the Classes. Opp'n at 12. Defendant relies on *Shanks*, *supra*, to support its argument. Opp'n at 12. In *Shanks*, the court denied a motion for class certification on the ground that the plaintiff had not put forth evidence that the challenged statements were material. 2019 WL 4398506, at *5. *Shanks* is like the present litigation—right down to the putative class representative (Plaintiff Shanks) and the product at issue (coconut oil). *Id.* at *1. Determinative to the court's analysis in *Shanks* was the fact that the "[p]laintiff . . . demonstrated no evidence to show that a reasonable consumer would look at the challenged statements and determine that these statements meant Defendant's coconut oil products are healthy, or otherwise rely in any way on those statements in deciding whether to purchase Defendant's coconut oil." *Id.* at *7.

The Court notes that there is a split of authority among district courts within the Ninth Circuit as to what evidence of materiality and deception under the UCL, FAL, and CLRA is sufficient to satisfy Rule 23(b)(3). *Compare id.* at *5 (finding Rule 23(b)(3) not satisfied where the plaintiff did not conduct any type of survey to determine whether the challenged statements were material), *Townsend*, 303 F. Supp. 3d at 1044 (finding Rule 23(b)(3) not satisfied because plaintiff's expert's report "[did] not provide insight into consumers' purchasing decisions"), *In re 5-Hour Energy*, 2017 WL 2559615, at *8 (finding Rule 23(b)(3) not satisfied because the plaintiffs had not conducted any type of consumer survey or market research), *and In re ConAgra*, 302 F.R.D. at 577 (finding Rule 23(b)(3) not satisfied because expert reports had not been submitted to the court, so "the court ha[d] difficulty according them great weight"), *with Krommenhock v. Post Foods, LLC*, 334 F.R.D. 552, 563 (N.D. Cal. 2020) (finding Rule 23(b)(3) satisfied when plaintiffs relied on

/ / /

similar evidence as Plaintiffs here), *and Hadley*, 324 F. Supp. 3d at 1115 (finding Rule 23(b)(3) satisfied even though plaintiff had not presented any survey evidence to the court).

Notwithstanding, in *Amgen Inc. v. Connecticut Retirement Plans & Trust Funds*, 568 U.S. 455 (2013)—which admittedly involved securities fraud rather than consumer misrepresentations—the U.S. Supreme Court specifically addressed Rule 23(b)(3)'s predominance requirement. *Id.* at 458–59. As relevant here, the Supreme Court noted that "Rule 23(b)(3) requires a showing that questions common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." *Id.* at 459 (emphasis removed). According to the Supreme Court, materiality, when judged by an objective standard, is a common question for purposes of Rule 23(b)(3). *Id.* The Supreme Court further added that "[a] failure of proof on the *common* question of materiality ends the litigation and thus will never cause individual questions of reliance or anything else to overwhelm questions common to the class." *Id.* at 468. As with the securities fraud claims at issue in *Amgen*, materiality and deception under the CLRA, FAL, and UCL is governed by an objective standard, *see Bruno*, 280 F.R.D. at 534, and the standard for the New York claims is the same, *see Hasemann*, 331 F.R.D. at 257.

Thus, in light of *Amgen*, the Court finds more persuasive those cases requiring proof only of a common question of materiality and reliance rather than proof of those issues on the merits at the class certification stage. This conclusion is further reinforced by the Ninth Circuit's unpublished opinion in *Bradach*, 735 F. App'x 251, where the Ninth Circuit held that a district court's conclusion that a proposed class failed the ascertainability, commonality, predominance, and superiority requirements in a putative class action asserting false and misleading labeling claims under the UCL and CLRA because "it would need to inquire into the motives of each individual class member" was an error of law and abuse of discretion. *Id.* at 254–55.

The Court finds Plaintiffs have satisfied that burden here. But even assuming Defendant's position were correct, the Court finds that Plaintiffs have provided sufficient evidence of materiality and likelihood of deception. Plaintiffs have put forth the testimony

of Dr. Greger, opining on the health effects of Defendant's Products.  *See* Mot. Mem. at 18; *see also* Report of Dr. Michael Greger, M.D. FACLM (ECF No. 70-13).  Courts have recognized that testimony such as this can be sufficient to establish a likelihood of deception for purposes of Rule 23(b)(3).  *See, e.g.*, *Hadley*, 324 F. Supp. 3d at 1115; *Krommenhock*, 334 F.R.D. at 569.  Plaintiffs also have produced materials that show that the materiality standard purportedly is met, including Defendant's own Rule 30(b)(6) testimony and internal documents.  *See* Mot. Mem. at 9, 17 (citations omitted).  Again, such evidence can be sufficient to establish materiality.  *See Hadley*, 324 F. Supp. 3d at 1115 (recognizing, in part, that materiality can be established via internal documents that show the defendant "deliberately crafted and displayed . . . challenged health statements" to boost sales); *see also Hinojos v. Kohls Corp.*, 718 F.3d 1089, 1107 (9th Cir. 2013) (holding a misrepresentation can be material where its maker "knows or has reason to know that its recipient regards or is likely to regard the matter as important in determining his course of action") (emphasis removed).  Thus, Plaintiffs have put forth sufficient evidence of materiality and likelihood of deception to satisfy the predominance requirement.

*Shanks*, the case Defendant principally relies on in its Opposition, is distinguishable. The at-issue statements in *Shanks* were, according to the court, "scientific terms . . . unlikely to be understood by an average consumer."  2019 WL 4398506, at *5.  However, the court noted that "a label that says 'Helps Maintain a Healthy Heart' could be considered material and likely to lead a significant portion of the public to believe that the product does in fact maintain a healthy heart."  *Id.* (citing *Bradach*, 735 F. App'x at 252).  Unlike *Shanks*, the challenged statements here include phrases such as "HEALTHY ALTERNATIVE TO BUTTER" and "Nature's Most Versatile Superfood."  *See generally* Compl.  The Court finds that these statements would be likely to lead a significant portion of consumers to believe that Defendant's Coconut Oils are healthy.

Defendant further contends that Ms. Butler's survey "rebuts any presumption that the challenged statements were material and that a significant portion of consumers relied on, and were likely to be deceived by, the challenged statements."  Opp'n at 20 (quoting

1    *Shanks*, 2019 WL 4398506, at *6).  Again, the Court disagrees.  According to Defendant,

2    Ms. Butler's survey demonstrates that most consumers do not buy Defendant's Coconut

3    Oils because of the claims on their labels.  *Id.* at 19.  However, "[t]o establish materiality,

4    a plaintiff is not required to show that the challenged statement is the 'sole or even the

5    decisive cause' influencing the class members' decisions to buy the challenged product."

6    *Bailey*, 2021 WL 1668003, at *8 (quoting *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 327

7    (2010)).  Similarly, Defendant's claim that Ms. Butler's survey shows that consumers

8    purchase its Coconut Oils for a variety of reasons has no bearing on whether common

9    issues predominate.  The question of whether Defendant's statements were material

10   "focuses on [Defendant's] representations about the product and applies a single, objective,

11   'reasonable consumer' standard—not, as Defendant[] urge[s], a subjective test that inquires

12   into each class members' experience with the product."  *Bruno*, 280 F.R.D. at 537; *see also*

13   *Bradach*, 735 F. App'x at 254 (holding it is an error of law for a district court to "inquire

14   into the motives of each individual class member" at the class certification stage).

15         Defendant further contends that Plaintiffs must show materiality for their express

16   warranty claims, and materiality and likelihood of deception for their UDBP and NY FAL

17   claims.  *See* Mot. Mem. at 12, 14.  However, for the reasons already stated, the Court finds

18   that Plaintiffs have shown these issues can be resolved through common proof.  Defendant

19   further argues that for Plaintiffs' misbranding claims under the UCL, there must be proof

20   of reliance.  Mot. Mem. at 13.  Yet Plaintiffs need not prove reliance for UCL claims.  *See*

21   *Martin*, 2017 WL 1115167, at *7.

22         As a final note, the Court recognizes that, even though the question of likelihood of

23   deception uses a reasonable consumer standard, the Ninth Circuit has held that common

24   evidence cannot show the likelihood of deception where every consumer was not exposed

25   to the product.  *See Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 596 (9th Cir.

26   2012).  However, where there is a high likelihood that the consumer would have been

27   exposed to the misleading statements in buying the product, courts may infer the consumer

28   had been exposed to the misleading statements.  *See Bailey*, 2021 WL 1668003, at *6

(citing *Ehret v. Uber Techs., Inc.*, 148 F. Supp. 3d 884, 895 (N.D. Cal. 2015)).  The statements at issue in this litigation appear on the containers in which Defendant's Coconut Oils are sold.  *See* FAC ¶¶ 54–57.  Thus, the Court can, and does, infer class-wide exposure to the allegedly misleading statements here, particularly given that Defendant "does not contest that its coconut oils were *consistently labeled* with the challenged claims."  Reply at 3 (emphasis added).

c.    Damages

To satisfy Rule 23(b)(3), Plaintiffs must also provide the Court with a model of damages that measures "only those damages attributable to [Plaintiffs'] theory."  *Comcast*, 569 U.S. at 35.  "Calculations need not be exact, but at the class-certification stage . . . any model supporting a 'plaintiff's damages case must be consistent with its liability case.'"  *Id.* (citations omitted).  "[F]or purposes of Rule 23, courts must conduct a 'rigorous analysis' to determine whether that is so."  *Id.* (quoting *Dukes*, 564 U.S. at 350).

The Ninth Circuit has recognized that, "[u]nder California consumer protection laws, plaintiffs can measure class-wide damages using methods that evaluate what a consumer would have been willing to pay for the product had it been labeled accurately."  *Zakaria v. Gerber Prods. Co.*, 755 F. App'x 623, 624 (9th Cir. 2018) (citing *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 989 (9th Cir. 2015)).  This "conjoint analysis" is generally accepted as a means of measuring damages under *Comcast*.  *See Odyssey Wireless, Inc. v. Apple, Inc.*, No. 15-cv001735-H-RBB, 2016 WL 7644790, at *9 (S.D. Cal. Sept. 14, 2016).  However, this analysis "must . . . reflect supply-side considerations and marketplace realities that would affect product pricing."  *Zakaria*, 755 F. App'x at 624.  "Where . . . the proposed damages model seeks to measure the price premium, class certification can be denied under *Comcast* 'when the proposed price premium (i.e., overpayment) methodology fails to isolate the premium attributable only to the alleged misleading marketing statement.'"  *McMorrow v. Mondelez Int'l, Inc.*, No. 17-cv-2327-BAS-JLB, 2021 WL 859137, at *11 (S.D. Cal. Mar. 8, 2021) (citation omitted).

/ / /

Here, Defendant does not seem to challenge Plaintiffs' proposed calculation of damages for the breach of warranty claims and the UDBP and NY FAL claims.[6]  *See generally* Opp'n.  Instead, Defendant takes aim at Plaintiffs' proposed CLRA, UCL, and FAL damages methodology.[7]

"The damages and restitution owed to a plaintiff pursuant to the CLRA, and UCL and FAL, respectively, is based on the difference between the price the consumer paid and the price a consumer would have been willing to pay for the product had it been labeled accurately." *Bailey*, 2021 WL 1668003, at *14 (citing *Pulaski & Middleman*, 802 F.3d at 988–89).  Plaintiffs contend that Dr. Dennis's survey will "isolate and quantify the market price premium associated with the Challenged Claims."  Mot. Mem. at 23.  Plaintiffs further contend that Dr. Dennis will account for supply-side considerations, as the survey will reflect real-world prices and "'the quantity used' in the market simulator will 'reflect the actual quantity of products supplied during the Class Period.'"  *Id.* at 23–24.

Defendant, however, argues that Dr. Dennis's survey is flawed because it is not designed to determine whether a significant portion of the public would read Defendant's labels, conclude the Products are healthy, and purchase the Products on that basis.  Opp'n at 16.  Defendant further argues that its expert, Ms. Butler, proves Dr. Dennis's survey is flawed in two ways: (1) it "assumes that consumers' awareness and perceptions of the at issue health claims would be the result of their exposure to [Defendant's] product label," and (2) the survey "is likely to only measure consumers' preferences for actual attributes of coconut oil, not perceptions about coconut oil based on the label's claims."  *Id.*

---

[6] The calculation of damages under the UDBP and NY FAL is provided by statute, thus providing an easy way for conjoint analysis to measure damages, *see Famular v. Whirlpool Corp.*, 16 CV 944 (VB), 2019 WL 1254882, at *11 (S.D.N.Y. Mar. 19, 2019); further, Plaintiffs contend that Dr. Weir's analysis will accurately measure these damages, *see* Mot. Mem. at 25, thus satisfying *Comcast*.

[7] Specifically, Defendant contends that the proposed damages methodology is "substantially the same as, and in most cases identical to, the report submitted in [*Shanks*]."  Opp'n at 16.  However, the *Shanks* court rested its decision not to certify the class at issue on Rule 23(b)(3)'s predominance requirement and did not reach the issue of whether the damages methodology was sound.  *See generally* 2019 WL 4398506.

Defendant also argues that Dr. Weir's proposed conjoint analysis is flawed because it considers neither demand-side factors nor the fact that purchasers of Defendant's Products have other uses for the Products besides ingestion. *Id.* at 18. Finally, Defendant points out that Dr. Dennis has not actually conducted the survey, which it claims to be "fatal" to Plaintiff's Motion. *Id.* at 16. The Court addresses each of these arguments in turn.

Plaintiffs seek restitution for their claims under the UCL, FAL, and CLRA. Mot. Mem. at 22. "The proper measure of restitution in a mislabeling case is the amount necessary to compensate the purchaser for the difference between the product as labeled and the product as received." *In re 5-Hour Energy*, 2017 WL 2559615, at *10 (quoting *Colgan v. Leatherman Tool Grp., Inc.*, 135 Cal. App. 4th 663, 700 (2006)).

Defendant's first argument is that Dr. Dennis's survey is flawed because it will not determine whether a significant portion of the public would read Defendant's labels, conclude the Products are healthy, and purchase the Products based on the labels. Opp'n at 16. Plaintiffs contend that it is not their burden to establish this. Reply at 10 (citing *Hadley*, 324 F. Supp. 3d at 1116; *Krommenhock*, 334 F.R.D. at 375). However, Plaintiffs still must show that Dr. Dennis's model is consistent with their theory of liability in this case to satisfy *Comcast*. Thus, Dr. Dennis's model must be able to determine the price premium that is attributable to Defendant's alleged misleading statements. *See Townsend*, 303 F. Supp. 3d at 1048 (citing *In re 5-Hour Energy*, 2017 WL 2559615, at *10).

Dr. Dennis's survey seeks to measure what consumers paid based on the allegedly misleading statements. Mot. Mem. at 23. Dr. Dennis's survey will also consider consumers' purchasing habits, such as whether they read the label and what they understand label claims to mean. Reply Dennis Decl. ¶¶ 27–28. Thus, the survey is "directly tied to the theory of liability in the case." *Bailey*, 2021 WL 1668003, at *15. Indeed, "[i]n mislabeling cases where the injury suffered by consumers was in the form of an overpayment resulting from the alleged misrepresentation . . . courts routinely hold that choice-based conjoint models that are designed to measure the amount of overpayment satisfy *Comcast*." *Id.* (citing *Zakaria v. Gerber Products*, No. LACV1500200JAKEX,

2017 WL 9512587, at *17 (C.D. Cal. Aug. 9, 2017), *aff'd*, 755 F. App'x 623 (9th Cir. 2018); *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 514 (9th Cir. 2013)).

Defendant nonetheless argues that Ms. Butler proves that Dr. Dennis's survey is flawed in two ways.  First, although Defendant argues that Dr. Dennis's survey "assumes that consumers' awareness and perceptions of the at issue health claims would be the result of their exposure to the Barlean's product label," Opp'n at 16, Dr. Dennis not only includes the contested phrases in his conjoint analysis, *see* Dennis Decl. ¶ 31, but also includes non-health-related "distractor" claims such as "Ideal for Cooking" and "Rich & Full Coconut Flavor," *id.* ¶ 85.  Moreover, Dr. Dennis includes other attributes, such as nutrition facts, to analyze and control for consumers' buying preferences.  *Id.* ¶ 83.  Most crucially, however, Dr. Dennis provides survey respondents with four brand names other than Defendant's—Nature's Way, Nutiva, Spectrum, and Jarrow Formulas.  *Id.*  Thus, it cannot be said that Dr. Dennis assumes consumers' awareness of the at-issue claims would be the result of exposure to Defendant's Products, as survey respondents are provided with other brands from which to choose in measuring and analyzing their purchasing preferences.

Second, Defendant contends that the survey "is likely to only measure consumers' preferences for actual attributes of coconut oil, not perceptions about coconut oil based on the label's claims" and cites *Townsend v. Monster Beverage Corp.*, *supra*, in support of this argument.  Opp'n at 16.  But the main issue with the conjoint analysis in *Townsend* was that the analysis suffered from "focalism bias."  *See* 303 F. Supp. 3d at 1049–50.  Focalism bias occurs where "attributes are displayed in a way that draws undue attention or omits information that would have been potentially salient in the marketplace, [which] can lead to inflated or unrealistic results."  *Id.* at 1050 (citations omitted).  In *Townsend*, the survey gave respondents the option to select attributes that were not highly visible on the challenged product.  *See id.*  Here, however, the challenged labels are readily visible on Defendant's Products.  *See, e.g.*, FAC ¶ 52.

Even assuming, *arguendo*, that Plaintiffs' survey fails to consider the individual perceptions of consumers, an argument about consumers' perceptions of Defendant's

labels reflects a dispute about materiality—whether "members of the public are likely to be deceived." *Hadley*, 324 F. Supp. 3d at 1095 (quoting *In re Tobacco II*, 46 Cal. 4th at 312). A dispute about the scope of Defendant's liability "is not appropriate for resolution at the class certification stage of this proceeding." *Bailey*, 2021 WL 1668003, at *16 (citing *Ruiz Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1137 (9th Cir. 2016)). Rather, "[t]he Court's task at the class certification stage is to ensure that the class is not defined so broadly as to include a great number of members who for some reason *could not have been harmed* by the defendant's allegedly unlawful conduct." *Id.* (quoting *Ruiz Torres*, 835 F.3d at 1138) (internal quotation marks omitted). Because Defendant's alleged misrepresentations were made consistently on its labels, all members of the proposed Classes necessarily would be harmed if the alleged misrepresentations were material.

Defendant also argues that the conjoint analysis that will be conducted by Dr. Weir is flawed because it does not consider demand-side factors or the fact that purchasers of Defendant's Products have other uses for the Products besides ingestion. However, Plaintiffs' model controls for demand-side factors like whether the products are used for ingestion. *See* Reply Dennis Report ¶ 29. Thus, the value (or lack thereof) placed on Defendant's Products by consumers who do not ingest them will be reflected in the ultimate results of the survey. *See id.* In sum, the Court finds Defendant's arguments unpersuasive. Dr. Dennis's and Dr. Weir's proposed analyses effectively capture both supply-side and demand-side factors. The proposed damages methodology is thus consistent with Plaintiffs' theory of liability. *See Comcast*, 569 U.S. at 35.

Finally, Defendant claims that it is "fatal" to certification that Plaintiffs' experts have not actually conducted their proposed survey and conjoint analysis. Opp'n at 16. There is a divide among district courts within the Ninth Circuit as to whether a proposed conjoint analysis must be performed at the class certification stage to satisfy the requirements of *Comcast*. *Compare Bailey*, 2021 WL 159208, at *14 n.14 ("A plaintiff is not required to actually execute a proposed conjoint analysis to show that damages are capable of determination on a class-wide basis with common proof."), *and Hadley*, 324 F. Supp. 3d

at 1103 (holding a *proposed* damage model sufficient to satisfy *Comcast*), *with In re ConAgra*, 302 F.R.D. at 577–78 ("[The expert] does not report that he has actually employed [conjoint analysis] to identify the price premium he believes will provide the classwide measure of relief.  This alone suffices to support a finding that plaintiffs have not shown that damages can be calculated on a classwide basis.").  However, in resolving this divide, the Court finds determinative the U.S. Supreme Court's statement in *Comcast* that a plaintiff need only show that "damages are *capable* of measurement."  *Comcast*, 569 U.S. at 34 (emphasis added).  There is nothing in the opinion to suggest that the damages calculation must be performed at the class certification stage.  *See generally id.*  Accordingly, the Court concludes that the fact that Plaintiffs have not conducted the conjoint analysis is not "fatal" to their ability to satisfy Rule 23(b)(3).

The Court therefore concludes that common questions of law or fact predominate over individual issues and that Plaintiffs' proposed damages model satisfies the requirements of *Comcast*.  Accordingly, the Court finds that Plaintiffs have satisfied the predominance requirement of Rule 23(b)(3).

### 2.      Superiority

The final requirement for class certification is "that a class action [be] superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed R. Civ. P. 23(b)(3).  "In determining superiority, courts must consider the four factors of Rule 23(b)(3)."  *Zinser v. Accufix Research Inst.*, 253 F.3d 1180, 1190 (9th Cir. 2001).  Those factors are:

> (A) [T]he class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).  The superiority inquiry focuses "on the efficiency and economy elements of the class action so that cases allowed under [Rule 23(b)(3)] are those that can

be adjudicated most profitably on a representative basis." *Zinser*, 253 F.3d at 1190 (internal quotation marks omitted).  A district court has "broad discretion" in determining whether class treatment is superior.  *Kamm v. Cal. City Dev. Co.*, 509 F.2d 205, 210 (9th Cir. 1975).

Plaintiffs devote only one-half of a page of their Motion to the issue of superiority, *see* Mot. Mem. at 25, and Defendant does not address the issue at all in its Opposition, *see generally* Opp'n.  Thus, the Court only briefly addresses each of the four factors.

First, Plaintiffs argue that the proposed class members have no interest in controlling individual actions, as the Products are inexpensive.  Mot. Mem. at 25.  "Where damages suffered by each putative class member are not large, th[e first] factor weighs in favor of certifying a class action."  *In re ConAgra*, 302 F.R.D. at 579 (quoting *Zinser*, 253 F.3d at 1190).  None of the proposed class members would likely have any interest in litigating these claims by themselves, "because the cost of litigating a single case would undoubtedly exceed the potential return."  *Martin*, 2017 WL 1115167, at *9; *see also Astiana*, 291 F.R.D. at 507 (citation omitted); *cf. Hawkins v. Kroger Co.*, 337 F.R.D. 518, 543 (S.D. Cal. 2020) ("[G]iven the relative inexpensiveness of . . . breadcrumbs, the monetary damages suffered by each putative class member are not large.").  Thus, this factor weighs in favor of certification.

Second, Plaintiffs state they are not aware of any related litigation.  Mot. Mem. at 25.  Neither is the Court.  While Defendant points out that Plaintiffs were involved in a class settlement for BetterBody coconut oil, and that Plaintiff Shanks was a putative class representative in *Shanks*, *see* Mot. Mem. at 12, 23, Defendant does not contest that there is no litigation regarding *its own* Coconut Oils, *see generally* Opp'n.  Accordingly, this factor, too, favors certification.  Third, Plaintiffs argue that the Southern District of California is a desirable forum in part because Plaintiff Testone is a resident of the forum.  Mot. Mem. at 25.  The Court further notes that, "[g]iven the small recovery any individual plaintiff might expect, . . . concentrating the litigation in a single forum is appropriate." *In re NJOY*, 120 F. Supp. 3d at 1123.  Thus, this factor also favors certification.

Lastly, Plaintiffs argue that this case is about Defendant's labeling practices, thus making this class action manageable. Mot. Mem. at 25. The Ninth Circuit has indicated that, where the complexities associated with a class action outweigh the benefits of a regular trial, "class action treatment is not the 'superior' method of adjudication." *Zinser*, 253 F.3d at 1192 (citing *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234–35 (9th Cir. 1996)). However, there is no indication, nor does Defendant contend, that there is any characteristic of this litigation that would make it more difficult to manage than other class action litigations routinely decided by district courts. *See Hawkins*, 337 F.R.D. at 544 ("[T]he likely difficulties in managing this class appear no greater than in multiple other cases in which the class consisted of persons who purchased a product years prior to litigation."). Accordingly, the final factor also weighs in favor of certification.

Thus, all the factors favor certification, and the Court finds that the superiority requirement of Rule 23(b)(3) has been met.

## CONCLUSION

In light of the foregoing, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiffs' Motion to Strike (ECF No. 86), **OVERRULES** Defendant's evidentiary objections (ECF Nos. 88, 89), **GRANTS** Plaintiffs' Motion for Class Certification (ECF No. 70), **CERTIFIES** the two proposed Classes, and **APPOINTS** Plaintiffs Michael Testone, Collin Shanks, and Lamartine Pierre as class representatives and The Law Office of Paul K. Joseph, PC, and The Law Office of Jack Fitzgerald, PC, as class counsel.

**IT IS SO ORDERED.**

Dated:  September 28, 2021

Hon. Janis L. Sammartino
United States District Judge