**FITZGERALD JOSEPH LLP**
JACK FITZGERALD (SBN 257370)
*jack@fitzgeraldjoseph.com*
PAUL K. JOSEPH (SBN 287057)
*paul@fitzgeraldjoseph.com*
MELANIE PERSINGER (SBN 275423)
*melanie@fitzgeraldjoseph.com*
TREVOR M. FLYNN (SBN 253362)
*trevor@fitzgeraldjoseph.com*
2341 Jefferson Street, Suite 200
San Diego, California 92110
Phone: (619) 215-1741

***Class Counsel***

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL TESTONE, COLLIN SHANKS, and LAMARTINE PIERRE, on behalf of themselves, all others similarly situated, and the general public,<br><br>      Plaintiffs,<br><br>vs.<br><br>BARLEAN'S ORGANIC OILS, LLC,<br><br>      Defendant. | Case No: 3:19-cv-00169-JLS-BGS<br><br>**PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>[Fed. R. Civ. P. 56]<br><br>Judge:   Hon. Janis L. Sammartino<br>Date:    April 21, 2022<br>Time:    1:30 p.m.<br>Court:   4D – 4th Floor |

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................. iii

NOTICE OF MOTION ......................................................................1

RELIEF SOUGHT ...........................................................................1

MEMORANDUM OF POINTS & AUTHORITIES...............................2

   I.     ISSUE TO BE DECIDED ..........................................................2

   II.    INTRODUCTION ...................................................................2

   III.   FACTS................................................................................2

        A.   The Barlean's Virgin Coconut Oil Labels ................................3

        B.   The Barlean's Culinary Coconut Oil Labels..............................3

        C.   The Barlean's Butter Flavor Coconut Oil Labels .......................3

   IV.   APPLICABLE LAWS & REGULATIONS .......................................4

        A.   The Federal Food, Drug, and Cosmetic Act .............................4

        B.   Statutory & Regulatory Requirements for Nutrient Content
           Claims................................................................................4

           1.   General Principles..........................................................4

           2.   Regulations Applicable to the Instant Motion ...............6

                a.   21 C.F.R. § 101.13 General Principles................6

                b.   21 C.F.R. § 101.62.........................................8

                c.   21 C.F.R. § 101.65.........................................8

C. California's Sherman Food, Drug, and Cosmetic Law .............................. 9

V. LEGAL STANDARDS ................................................................................ 10

A. Partial Summary Judgment ................................................................ 10

B. California's Unfair Competition Law ............................................... 11

VI. ARGUMENT .............................................................................................. 12

A. The Barlean's Coconut Oils Were (and Still Are) Misbranded ............. 12

1. The Cholesterol Misbranded Statements ................................. 12

2. The Trans Fat Misbranded Statements ................................... 14

a. No Trans Fat ................................................................ 14

b. "Non-Hydrogenated" ................................................... 16

3. The MCT Misbranded Statements ........................................... 17

4. The Healthy Misbranded Statements ...................................... 17

B. Because the Barlean's Coconut Oil Labels are Misbranded,
Barlean's is Liable for Violating the UCL's "Unlawful" Prong ............ 20

VII. CONCLUSION .......................................................................................... 20

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ...................................................................................10

*Backus v. Conagra Brands, Inc.*,
    2019 WL 1046025 (N.D. Cal. Mar. 5, 2019).................................................15

*Backus v. Nestle USA, Inc.*,
    167 F. Supp. 3d 1068 (N.D. Cal. 2016) ..................................................15, 16

*Bishop v. 7-Eleven, Inc.*,
    651 Fed. App'x 657 (9th Cir. 2016)..............................................................15

*Brown v. Hain Celestial Group, Inc.*,
    2015 WL 3398415 (N.D. Cal., May 26, 2015) ...............................................2

*Bruton v. Gerber Prods. Co.*,
    703 Fed. App'x. 468 (9th Cir. 2017)...............................................11, 12, 20

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*,
    20 Cal. 4th 163 (1999) ................................................................................11

*Chacanaca v. Quaker Oats Co.*,
    752 F. Supp. 2d 1111 (N.D. Cal. 2010) ..............................................5, 7, 16

*Farm Raised Salmon Cases*,
    42 Cal. 4th 1077 (2008) ..............................................................................10

*Freeman v. Arpaio*,
    125 F.3d 732 (9th Cir. 1997).......................................................................10

*Gustavson v. Mars, Inc.*,
    2014 WL 2604774 (N.D. Cal. June 10, 2014)................................................7

*Hadley v. Kellogg Sales Co.*,
    2019 WL 3804661 (N.D. Cal. Aug. 13, 2019) ......................................passim

*Hadley v. Kellogg Sales Co.*,
    273 F. Supp. 3d 1052 (N.D. Cal. 2017) ......................................................12

*Hawkins v. Kroger Co.*,
   906 F.3d 763 (9th Cir. 2018)............................................................................15

*Jordan v. Paul Fin., LLC*,
   745 F. Supp. 2d 1084 (N.D. Cal. 2010) .........................................................11

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986).......................................................................................10

*Plascencia v. Lending 1st Mortg.*,
   259 F.R.D. 437 (N.D. Cal. 2009)...................................................................11

*Rahman v. Mott's LLP*,
   2014 WL 6815779 (N.D. Cal. Dec. 3, 2014) .................................................11

*Reid v. Johnson & Johnson*,
   780 F.3d 952 (9th Cir. 2015)...................................................................passim

*Rezner v. Bayerishe Hypo-Und Vereinsbank AG*,
   2011 WL 6329854 (N.D. Cal. Nov. 8, 2011) ................................................11

*Saunders v. Super. Ct.*,
   27 Cal. App. 4th 832 (1994) .........................................................................11

*United States v. Dotterweich*,
   320 U.S. 277 (1943) ........................................................................................4

*United States v. Watkins*,
   278 F.3d 961 (9th Cir. 2002)...........................................................................4

*United States v. Woods*,
   335 F.3d 993 (9th Cir. 2003)...........................................................................5

**Rules**

Fed. R. Civ. P. 56(a)............................................................................................10

**Statutes**

21 U.S.C. § 331(a)................................................................................................4

21 U.S.C. § 331(b) .................................................................................................. 4

21 U.S.C. § 331(c) .................................................................................................. 4

21 U.S.C. § 331(g) .................................................................................................. 4

21 U.S.C. § 331(k) .................................................................................................. 4

21 U.S.C. § 334(r) .................................................................................................. 4

21 U.S.C. § 343(r)(1) .............................................................................................. 5

21 U.S.C. § 343(r)(2)(A) ...................................................................................... 5, 6

21 U.S.C. § 393(b)(2)(A) ......................................................................................... 4

44 U.S.C. § 1507 .................................................................................................... 5

Cal. Bus. & Prof. Code § 17200 ........................................................................... 11

Cal. Evid. Code § 451(b) ......................................................................................... 5

Cal. Health & Safety Code § 110100(a) ................................................................ 9

Cal. Health & Safety Code § 110670 .................................................................... 9

Cal. Health & Safety Code § 110765 .................................................................. 10

**Regulations**

21 C.F.R § 101.65(d)(2)(i)(F) ............................................................................. 9, 19

21 C.F.R. § 101.12(b) ............................................................................................ 12

21 C.F.R. § 101.13(b) ............................................................................... 4, 6, 15, 16

21 C.F.R. § 101.13(b)(1) ..................................................................................... 6, 15

21 C.F.R. § 101.13(b)(2) ......................................................................................... 6

21 C.F.R. § 101.13(b)(2)(i) ..................................................................................16, 17

21 C.F.R. § 101.13(b)(3) .............................................................................................12

21 C.F.R. § 101.13(b)(i)(1) .........................................................................................16

21 C.F.R. § 101.13(h)(1) ....................................................................................passim

21 C.F.R. § 101.13(h)(4)(ii) .................................................................14, 16, 17, 19

21 C.F.R. § 101.13(i)(1) ..............................................................................................15

21 C.F.R. § 101.13(i)(3) ..............................................................................................15

21 C.F.R. § 101.60(c)(2)(v) ........................................................................................12

21 C.F.R. § 101.62 ........................................................................................................8

21 C.F.R. § 101.62(a) ..............................................................................................8, 12

21 C.F.R. § 101.62(a)(2) .......................................................................................12, 13

21 C.F.R. § 101.62(b) ...................................................................................................8

21 C.F.R. § 101.62(b)(2)(i)(B) ....................................................................................9

21 C.F.R. § 101.62(c) ...................................................................................................8

21 C.F.R. § 101.62(d) ...................................................................................................8

21 C.F.R. § 101.62(d)(1)(ii) ......................................................................................12

21 C.F.R. § 101.62(d)(1)(ii)(C) .................................................................................13

21 C.F.R. § 101.62(d)(4)(ii) ......................................................................................12

21 C.F.R. § 101.65(a)(2) .......................................................................................17, 19

21 C.F.R. § 101.65(d) .................................................................................................17

21 C.F.R. § 101.65(d)(1) ..............................................................................................8

21 C.F.R. § 101.65(d)(1)(ii) ........................................................................................9

21 C.F.R. § 101.65(d)(2) .............................................................................................9

21 C.F.R. § 101.65(d)(2)(i)(F) ...............................................................................9, 18

21 C.F.R. §§ 101.13(h)(1) ..........................................................................................19

**Other Authorities**

56 Fed. Reg. 60421 (Nov. 27, 1991) ........................................................................5, 7

56 Fed. Reg. 60478 (Nov. 27, 1991) ...........................................................................13

58 Fed. Reg. 2302 (Jan. 6, 1993) ..........................................................................13, 14

68 Fed. Reg. 41,434 (July 11, 2003) .............................................................................8

## NOTICE OF MOTION

TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT, on April 21, 2022, at 1:30 p.m., or as soon thereafter as may be heard, in the Courtroom of the Honorable Janis L. Sammartino, United States District Judge, Southern District of California, located at the Edward J. Schwartz United States Courthouse, 221 West Broadway, San Diego, California 92101, Courtroom 4D, Fourth Floor, Plaintiffs Michael Testone, Collin Shanks, and Lamartine Pierre will, and hereby do, move for an Order, pursuant to Fed. R. Civ. P. 56(a) and S.D. Cal. Civ. L.R. 7.1, for partial summary judgment. This Motion is based on this Notice of Motion, the below Memorandum of Points & Authorities, the concurrently-filed Declaration of Paul Joseph in Support of Plaintiffs' Motion for Partial Summary Judgment ("Joseph Decl.") and all exhibits thereto (referred to herein as "Ex. __"), all pleadings and proceedings had in the action, and all written and oral argument offered in support of the Motion.

## RELIEF SOUGHT

Plaintiffs seek partial summary judgment finding Barlean's liable for violating the "unlawful" prong of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.* ("UCL"), by misbranding its (i) Virgin, (ii) Culinary (or Gourmet), and (iii) Butter Flavored Coconut Oils with the following labeling claims (the "Misbranded Statements"):

(1)  The "Cholesterol Misbranded Statements":
- "Cholesterol Free"
- "No Cholesterol"

(2)  The Trans Fat Misbranded Statements":
- "No Trans Fat"
- "Non-Hydrogenated"
- "No Trans or Hydrogenated Fats"
- "No . . . Trans Fats or Hydrogenated Fats"

(3)  The "MCT Misbranded Statements":
- "Coconut Oil Nutrition[:] Rich In [or Contains] Lauric Acid, Caprylic

1

Acid & Capric Acid"

• "Great [or Natural] Source of Medium Chain Triglycerides (MCTs)"

(4)  The "<u>Healthy Misbranded Statements</u>":

• "For [the] Health-Conscious Gourmet[s]"

• "Healthy Alternative To Butter"

• "The Health Benefits Of Coconut Oil"

• "The Healthy MCTs of our Regular Organic Coconut Oil"

• "The Perfect Combination of Healthy Fat"

• "The Health Benefits of Medium Chain Triglycerides  (MCTs)"

## MEMORANDUM OF POINTS & AUTHORITIES

## I.  ISSUE TO BE DECIDED

Whether Plaintiffs are entitled to partial summary judgment finding Barlean's liable for violating the UCL's "unlawful" prong because the labeling of its Coconut Oils were misbranded in violation of state and federal food labeling laws and regulations. *See*, *e.g. Hadley v. Kellogg Sales Co.*, 2019 WL 3804661, at *17-24 (N.D. Cal. Aug. 13, 2019) ["*Hadley V*"] (granting plaintiffs partial summary judgment on misbranding claims); *Brown v. Hain Celestial Group, Inc.*, 2015 WL 3398415, at *5 (N.D. Cal., May 26, 2015) ("The court has no difficulty concluding that COPA violations of the sort alleged here are predicate acts under the UCL's unlawful prong.").

## II.   INTRODUCTION

Plaintiffs are entitled to partial summary judgment because, on the undisputed and incontrovertible facts, the Barlean's Coconut Oil labels violated, and continue to violate, applicable food labeling laws and regulations, and thereby, the UCL's "unlawful" prong.

## III.  FACTS

Barlean's markets three varieties of coconut oil that are at issue in this case: Virgin, Culinary (or Gourmet), and Butter Flavored. *See* Exs. 1-7 (labels for each product used during the Class Period); *see also* Ex. 8 (Excerpts from Barlean's Supplemental Response to Plaintiffs' First Set of Interrogatories). Although they bear different names, each product's

2

macronutrient composition is materially the same and has been during the entire Class Period. *See id*. All three varieties contain 14 grams of total fat, and 12 grams of saturated fat, in a 14-gram (1 tablespoon) serving. *Id*.

### A. The Barlean's Virgin Coconut Oil Labels

Since at least January 2014, Barlean's has sold Virgin Coconut Oil in California in 16 oz. and 32 oz. jars. Exs. 1-2; *see also* Ex. 8. During a portion of the Class Period, Barlean's also sold a 60 oz. version in Sam's Club. *See* Ex. 3; *see also* Ex. 9, Puckett 30(b)(6) Dep. Tr. at 19:19-20:4, 21:17-22:19, 166:3-167:25. The record indicates that:

- All jar sizes said "Non-Hydrogenated," and the 60 oz. jar additionally said "No Trans Fat" (*see* Exs. 1-3);
- All 16 and 32 oz. jar sizes contain the MCT Misbranded Statements (*see* Exs. 1-2); and
- "Cholesterol Free" was added to the 16 oz. jar in October 2016 and the 32 oz. jar in February 2017 (*see id.*).

Thus, at least one Misbranded Statement appeared on every Virgin Coconut Oil label at issue.

### B. The Barlean's Culinary Coconut Oil Labels

In March 2015, Barlean's began selling Culinary Coconut Oil in 32 oz. and 60 oz. sizes. *See* Exs. 4-5; see also Ex. 8; Ex. 9, Puckett 30(b)(6) Dep. Tr. at 21:25-22:19. The record indicates that:

- The 32 oz. jar said "For Health-Conscious Gourmets" and "No Trans Fat or Cholesterol" (see Ex. 4);
- The 60 oz. jar said "ideal for the health conscious gourmet," "No Trans Fat" and "Non-Hydrogenated" (*see* Ex. 5).

Thus, at least one Misbranded Statement appeared on every Culinary Coconut Oil label at issue.

### C. The Barlean's Butter Flavor Coconut Oil Labels

In July 2016, Barlean's began selling Butter-Flavored Coconut Oil in 16 oz. and 32 oz. jars. *See* Exs. 6-7; *see also* Ex. 8. The record indicates that:

3

- From June 2016 to May 2017, the 16 oz. jar said "The Health Benefits of Coconut Oil," "Healthy Alternative to Butter," "No Trans or Hydrogenated Fats," and "Cholesterol Free" (*see* Ex. 6);

- In May 2017, Barlean's refreshed the 16 oz. jar's label, which then said, "The Health Benefits of Coconut Oil," "All the Healthy MCTs of our Regular Coconut Oil," and "No cholesterol, trans fats or hydrogenated fats" (*see id.*); and

- The 32 oz. always said "Healthy fat," "The Health Benefits of Medium Chain Triglycerides (MCTs)," "Healthy Alternative to Butter" and "No Trans Fat or Cholesterol" (*see* Ex. 7).

Thus, at least one Misbranded Statement appeared on every Butter Flavored Coconut Oil label at issue.

## IV.    APPLICABLE LAWS & REGULATIONS

### A.    The Federal Food, Drug, and Cosmetic Act

The Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§ 301 *et seq*. ("FDCA") empowers the FDA to protect public health by ensuring that "foods are safe, wholesome, sanitary, and properly labeled," *id.* § 393(b)(2)(A). The Act prohibits the distribution and sale of misbranded foods. *Id*. §§ 331(a)-(c), (g), (k). Foods are misbranded when they meet one of the definitions for misbranding under § 343, including where their labels make nutrient content claims—statements that expressly or by implication characterize the level of a nutrient in a food—in violation of the Act and its implementing regulations, *see id.* § 343(r); 21 C.F.R. § 101.13(b); *see also Hadley V*, 2019 WL 3804661, at *18 (discussing FDCA). "An article may be misbranded . . . 'without any conscious fraud at all,'" *United States v. Watkins*, 278 F.3d 961, 964 (9th Cir. 2002) (quoting *United States v. Dotterweich*, 320 U.S. 277, 281 (1943)).

### B.    Statutory & Regulatory Requirements for Nutrient Content Claims

#### 1.    General Principles

In 1990, Congress amended the FDCA by enacting the Nutrition Labeling and Education Act of 1990, Pub. L. 101-535, 104 Stat. 2353 (1990) ("NLEA"), which

4

"strengthen[ed] the Secretary's food labeling initiative . . . by defining the circumstances under which claims may be made about the nutrients in foods." 56 Fed. Reg. 60421, 60422 (Nov. 27, 1991).[1] Among other provisions, the NLEA "added section 403(r)(1)(A) to the act," *i.e.*, 21 U.S.C. § 343(r)(1)(A), which states that "a food is misbranded if it bears a claim in its label or labeling that either expressly or implicitly characterizes the level of any nutrient of the type required to be declared as part of the nutrition labeling, unless such claim has been specifically defined (or otherwise exempted) by regulation." 56 Fed. Reg. at 60422. Thus, "the general rule is that 'nutrient content claims' are not permitted on food labels." *Reid v. Johnson & Johnson*, 780 F.3d 952, 959 (9th Cir. 2015). Specifically, under § 343(r)(1):

> A food shall be deemed to be misbranded [ . . . ] if it is a food intended for human consumption which is offered for sale and for which a claim is made in the label or labeling of the food which expressly or by implication[ ] (A) characterizes the level of any nutrient which is of the type required . . . . to be in the label or labeling of the food unless the claim is made in accordance with subparagraph (2)[.]

21 U.S.C. § 343(r)(1); *see generally Chacanaca v. Quaker Oats Co*., 752 F. Supp. 2d 1111, 1117 (N.D. Cal. 2010) (discussing § 343(r) and its implementing regulations).

Subparagraph 2 of § 343(r) prescribes the limited conditions under which nutrient content claims may be made. For example, "a claim described in subparagraph (1)(A)"—that is, a nutrient content claim—"(i) may be made only if the characterization of the level made in the claim uses terms which are defined in regulations of the Secretary," 21 U.S.C. § 343(r)(2)(A).[2] Further, such a claim:

> (ii) may not state the *absence* of a nutrient unless[] (I) the nutrient is usually present in the food or in a food which substitutes for the food as defined by the

---

[1] The Federal Register Act provides that "[t]he contents of the Federal Register shall be judicially noticed," 44 U.S.C. § 1507; *see also United States v. Woods*, 335 F.3d 993, 1001 (9th Cir. 2003); Cal. Evid. Code § 451(b) ("Judicial notice shall be taken of . . . [a]ny matter made subject of judicial notice by . . . Section 1507 of Title 44 of the United States Code.").

[2] Although there are certain exceptions, none apply to this matter.

Secretary by regulation, or (II) the Secretary by regulation permits such a statement on the basis of a finding that such a statement would assist consumers in maintaining healthy dietary practices and the statement discloses that the nutrient is not usually present in the food[.]

*Id.* (emphasis added).

### 2. Regulations Applicable to the Instant Motion

Regulations implementing the FDCA appear in part 101 of title 21 of the Code of Federal Regulations. Section 101.13 sets out the "general principles" and requirements governing nutrient content claims, while Subpart D prescribes additional requirements for specific types of nutrient content claims, which are set forth in 21 C.F.R. §§ 101.54-101.69.

### a. 21 C.F.R. § 101.13 General Principles

Nutrient content claims can be express or implied. An express nutrient content claim is "any direct statement about the level (or range) of a nutrient in the food, e.g., 'low sodium' or 'contains 100 calories,'" *id.* § 101.13(b)(1), while an implied nutrient content claim "(i) Describes the food or an ingredient therein in a manner that suggests that a nutrient is absent or present in a certain amount (e.g., 'high in oat bran')," or "(ii) Suggests that the food, because of its nutrient content, may be useful in maintaining healthy dietary practices and is made in association with an explicit claim or statement about a nutrient (e.g., 'healthy, contains 3 grams (g) of fat')," *id.* § 101.13(b)(2). Any claim:

that expressly or implicitly characterizes the level of a nutrient of the type required to be in nutrition labeling under 101.9 or 101.36 (that is, a nutrient content claim) may not be made on the label or in labeling of foods unless the claim is made in accordance with this regulation and with the applicable regulations in subpart D of this part . . . .

*Id.* § 101.13(b). Thus, all nutrient content claims are prohibited, unless they comply with the requirements of § 101.13 and any applicable provisions of Subpart D. *Accord Reid*, 780 F.3d at 959.

Among the provisions of § 101.13 with which a food manufacturer, to make a nutrient

6

content claim, must comply is § 101.13(h)(1), which requires a disclosure statement when a food label bears a nutrient content claim while exceeding the prescribed levels for either total fat, saturated fat, cholesterol, or sodium. Specifically, § 101.13(h)(1) provides that:

> If a food . . . contains more than ***13.0 g of fat***, ***4.0 g of saturated fat***, 60 milligrams (mg) of cholesterol, or 480 mg of sodium per reference amount customarily consumed, per labeled serving, or, for a food with a reference amount customarily consumed of 30 g or less or 2 tablespoons or less, per 50 g . . . then that food must bear a statement disclosing that the nutrient exceeding the specified level is present in the food as follows: "See nutrition information for ___ content" with the blank filled in with the identity of the nutrient exceeding the specified level, e.g., "See nutrition information for fat content."

*Id.* § 101.13(h)(1) (emphasis added); *see also* 56 Fed. Reg. at 60425 (

> Section 403(r)(2)(B)(ii) of the act states that if a food that bears a nutrient content claim "contains a nutrient at a level which increases to persons in the general population the risk of a disease or health-related condition which is diet related, taking into account the significance of the food in the total daily diet, the required referral statement shall also identify such nutrient." FDA is referring to this level as the "disclosure level.").

Further:

> It is important to note how disqualifying claims work. A disqualifying level of, say, saturated fat is four grams per "reference amount customarily consumed." 21 C.F.R. § 101.13(h)(1). If this level is exceeded, a food purveyor is *prohibited* from making an unqualified claim touting the health benefits of another nutrient in the food. This is because the Agency has reasoned that the beneficent claim, standing alone, would be misleading.

*Chacanaca*, 752 F. Supp. at 1122; *see generally Gustavson v. Mars, Inc*., 2014 WL 2604774, at *11 (N.D. Cal. June 10, 2014) (Discussing § 101.13(h) and noting that "the FDA has already spoken as to at least one of the reasons why Defendants' product labels are allegedly

7

misleading—namely, Defendants' failure to accompany their front-of-package calorie statements with a disclosure directing consumers to consult the nutrition information panel for information about fat and/or saturated fat.").

### b.   21 C.F.R. § 101.62

Section 101.62 is the bit of Subpart D that governs "Nutrient content claims for fat, fatty acid, and cholesterol content of foods." *See* 21 C.F.R. § 101.62. It first sets forth general requirements for making such claims. *Id.* § 101.62(a). Under this provision, such claims "may only be made . . . if," as is relevant here, "(1) The claim uses one of the terms defined in this section in accordance with the definition for the term; [and] (2) The claim is made in accordance with the general requirements for nutrient content claims in 101.13[.]" *Id.*

Although Section 101.62 provides definitions for fat content, fatty acid content, and cholesterol content claims, *see* 21 C.F.R. §§ 101.62(b)-(d), it does *not* authorize *any* nutrient content claim regarding artificial trans fat. *See generally id.* § 101.62. As the Ninth Circuit has explained:

> Outside the label, claimants may make nutrient content claims such as "fat free,"
> "no fat," "zero fat," or "negligible source of fat" on labels where the food contains
> less than 0.5 grams of fat per serving and certain other conditions are met. [21
> C.F.R.] § 101.62(b). There is a parallel regulation permitting similar claims about
> "saturated fat," *see id.* § 101.62(c), but not about "trans fat." The FDA considered
> authorizing a "trans fat free" claim but decided not to enact the regulation in light
> of "insufficient scientific information.".

*Reid*, 780 F.3d at 960 (citing 68 Fed. Reg. 41,434, 41,464-65 (July 11, 2003)).

### c.   21 C.F.R. § 101.65

The provisions set forth in 21 C.F.R. § 101.65(d) "[c]over[] labeling claims that are implied nutrient content claims because they: (i) Suggest that a food because of its nutrient content may help consumers maintain healthy dietary practices; *and* (ii) Are made in connection with an explicit or implicit claim or statement about a nutrient (e.g., 'healthy, contains 3 grams of fat')." 21 C.F.R. § 101.65(d)(1) (emphasis added). Under these

8

circumstances, a manufacturer "may use the term 'healthy,' or related terms" like "'health,'" only if "[t]he food meets [certain] conditions for fat, saturated fat, cholesterol, and other nutrients," *id.* § 101.65(d)(2).

For foods such as coconut oils,[3] "healthy" implied nutrient content claims may only be made if the food is "[l]ow fat as defined in § 101.62(b)(2)"[4]; is "[l]ow [in] saturated fat as defined in § 101.62(c)(2)"; contains the "disclosure level for cholesterol specified in § 101.13(h) or less"; and contributes "[a]t least 10 percent of the [Recommended Dietary Intake] or the [Daily Reference Value] per [Recommended Amount], of one or more of vitamin A, vitamin C, calcium, iron, protein, or fiber." *Id.* § 101.65(d)(2)(i)(F).

Thus, in order to use "health" or "healthy" on a coconut oil label, the claim must be made in connection with an explicit or implicit statement about a nutrient in the oil, *id.* § 101.65(d)(1)(ii); *see also id.* § 101.13(b)(2)(ii); the oil must contain "3 g[rams] or less of fat per reference amount customarily consumed," *id.* § 101.62(b)(2)(i)(B), "1 g[ram] or less of saturated fatty acids . . . and not more than 15 percent of calories from saturated fatty acids," *id.* § 101.62(c)(2); and 10 percent or more of the recommended intake amount for vitamin A, vitamin C, calcium, iron, protein, or fiber, *id.* § 101.65(d)(2)(i)(F).

## C. California's Sherman Food, Drug, and Cosmetic Law

California's Sherman Food, Drug, and Cosmetic Law, Cal. Health & Safety Code §§ 109875 *et seq.* ("Sherman Law"), incorporates the federal food labeling laws and regulations into state law. *See id.* §§ 110100(a) ("All food labeling regulations . . . adopted pursuant to the federal fact . . . shall be the food labeling regulations in this state."), 110670 ("Any food is misbranded if its labeling does not conform with the requirements for nutrient content or

---

[3] Because Barlean's Coconut Oils are "not specifically listed" in the table contained in 21 C.F.R § 101.65(d)(2)(i), they are governed by section (F) of the table. *See* 21 C.F.R § 101.65(d)(2)(i)(F).

[4] Section 101.62(b)(2)(i)(B) provides the applicable definition of "low fat" for the Barlean's Coconut Oils because they have RACCs (reference amounts customarily consumed) and labeled servings of less than 30 grams.

health claims set forth in Section 403(r) (21 U.S.C. Sec. 343(r)) of the federal act and the regulations adopted pursuant thereto."), 110765 ("It is unlawful for any person to misbrand any food."); *see also Farm Raised Salmon Cases*, 42 Cal. 4th 1077, 1086-87, 1090 (2008); *cf. Hadley V*, 2019 WL 3804661, at *17 ("Plaintiff asserts that the predicate laws for his UCL unlawful prong violation are the [FDCA] and California's Sherman . . . Law . . . . Because the Sherman Law finds food misbranded only to the extent the FDCA finds food misbranded, both parties focus their arguments on whether Kellogg violated the FDCA.").

## V.   LEGAL STANDARDS

### A.   Partial Summary Judgment

Under Rule 56, "[t]he court shall grant summary judgment if movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). A dispute is "genuine" if there is evidence in the record sufficient for a reasonable trier of fact to decide in favor of the nonmoving party. *Id*.

Although, in deciding whether a dispute is genuine, the court must view the inferences reasonably drawn from the record in light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 587-88 (1986), and "may not weigh the evidence or make credibility determinations," *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997), to show a genuine dispute the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co., Ltd*., 475 U.S. at 586. As a result, "[i]f the evidence [of a dispute] is merely colorable, or is not significantly probative, summary judgment may be granted," *Anderson*, 477 U.S. at 249 (internal citations omitted).

Where there is no genuine dispute of material fact as to only a single claim or defense, or as to part of a claim or defense, partial summary judgment is proper. Fed. R. Civ. P. 56(a).

10

### B.     California's Unfair Competition Law

California's Unfair Competition Law prohibits "any unlawful, unfair or fraudulent business act or practice," *see* Cal. Bus. & Prof. Code § 17200. The UCL's "unlawful" prong "incorporates other laws to make them actionable." *Jordan v. Paul Fin., LLC*, 745 F. Supp. 2d 1084, 1098 (N.D. Cal. 2010); *see also Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999) ("By proscribing 'any unlawful' business practice, section 17200 borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." (internal quotations and citations omitted)). Thus, "violation of almost any . . . law may serve as a basis for a UCL claim." *Plascencia v. Lending 1st Mortg.*, 259 F.R.D. 437, 448 (N.D. Cal. 2009) (citing *Saunders v. Super. Ct.*, 27 Cal. App. 4th 832, 838-39 (1994)). This includes laws, like the FDCA, that do not provide for a private right of action. *See Rezner v. Bayerishe Hypo-Und Vereinsbank AG*, 2011 WL 6329854, at *5 (N.D. Cal. Nov. 8, 2011) ("California courts have consistently held that where a business act or practice violates any law, that violation is actionable under the UCL, regardless of whether the predicate law itself contains a private right of action." (citations omitted)). Accordingly, violations of the FDCA and its implementing regulations, as well as violations of California's parallel Sherman Law, are predicate acts under the UCL's "unlawful" prong. *See*, *e.g.*, *Hadley V*, 2019 WL 3804661, at *24 ("[T]he Court finds that Kellogg[] . . . violates the FDCA. . . . Kellogg's Statement[s] . . . are therefore also in violation of California's Sherman Law. Accordingly, Kellogg violated and is liable under the UCL's 'unlawful' prong . . . ." (internal citation omitted)); *cf. Rahman v. Mott's LLP*, 2014 WL 6815779, at *7 (N.D. Cal. Dec. 3, 2014) ("Plaintiff has made a prima facie showing that the 'No Sugar Added' statement constitutes a violation of California's Sherman Law, and is thus independently actionable under the unlawful prong of the UCL.").

Moreover, "the reasonable consumer test is a requirement under the UCL's unlawful prong *only* when it is an element of the predicate violation." *Bruton v. Gerber Prods. Co.*, 703 Fed. App'x. 468, 472 (9th Cir. 2017) (citations omitted) (emphasis added). Where "[t]he predicate violation . . . is of California's Sherman Law . . . which itself incorporates standards

11

set by FDA regulations," the reasonable consumer test is not a requirement because "[t]hese FDA regulations include no requirement that the public be likely to experience deception." *Id.* (citing inter alia 21 C.F.R. §§ 101.13(b)(3) and 101.60(c)(2)(v)). Thus, misbranded labeling claims are actionable under the UCL's "unlawful" prong based on even "a bare technical violation," *see Hadley v. Kellogg Sales Co.*, 273 F. Supp. 3d 1052, 1098 (N.D. Cal. 2017); *see also Hadley V*, 2019 WL 3804661, at *23 ("again reject[ing] Kellogg's argument that Plaintiff needs to offer evidence that Kellogg's statements are 'likely to deceive reasonable consumers' to prove Plaintiff's UCL unlawful prong claim").

## VI.  ARGUMENT

### A.  The Barlean's Coconut Oils Were (and Still Are) Misbranded

#### 1.  The Cholesterol Misbranded Statements

Barlean's statements that its Coconut Oils are "Cholesterol Free" or contain "No Cholesterol" violate 21 C.F.R. § 101.62(a) because they are "claim[s] about the level of . . . cholesterol in a food," *id.*, but they are not "made in accordance with the general requirements for nutrient content claims in 101.13," *id.* § 101.62(a)(2).

Barlean's Coconut Oils violate § 101.62(a) because they do not satisfy the requirements of § 101.62(d)(1)(ii) for making a "cholesterol free" or "no cholesterol" claim.[5] Under § 101.62(d)(1)(ii), a food cannot make a "cholesterol free" or "no cholesterol" claim unless it satisfies several criteria. Barlean's Coconut Oils, however, fails to satisfy all criteria.

To make a "cholesterol free" or "no cholesterol" claim, the food must "contain[] 2 g or less of saturated fatty acids per [RACC]," *id.* § 101.62(d)(1)(ii)(C). This is because "it would be misleading for a food that contains significant amounts of saturated fatty acids to make

---

[5] This section applies because Barlean's Coconut Oils "contain more than 13 g of total fat per [RACC], per labeled serving, or per 50 g," since "the [RACC] is 30 g or less or 2 tablespoons or less." *Id.* § 101.62(d)(1)(ii). Specifically, the RACC for Barlean's Coconut Oils is 1 tablespoon, equivalent to 14 grams. *See id.* § 101.12(b). This amount contains 14 grams of total fat, which is "more than 13 g of total fat per [RACC]," *id.* § 101.62(d)(1)(ii). Similarly, § 101.62(d)(4)(ii) applies because Barlean's Coconut Oils contain 14 grams of total fat "per labeled serving," and 50 grams of total fat per 50 grams.

claims regarding cholesterol content and, thereby, to encourage consumers to buy the product for the purpose of reducing the risk of heart disease." 56 Fed. Reg. 60478, 60495 (Nov. 27, 1991).[6] Each of Barlean's Coconut Oils contained 12g of saturated fatty acids per RACC (1 tbsp), *see* Exs. 1-7, which is not "2 g or less of saturated fatty acids per [RACC]." 21 C.F.R. § 101.62(d)(1)(ii)(C).

In addition to violating § 101.62(a)(1) because the statements "cholesterol free" and "no cholesterol" are not "use[d] . . . in accordance with the definition for that term" set forth in § 101.62(d)(1)(ii), Barlean's use of the Cholesterol Misbranded Statements also violated § 101.62(a)(2) because the claims were not "made in accordance with the general requirements for nutrient content claims in 101.13." *Id.* § 101.62(a)(2). Specifically, Barlean's Coconut Oil labels violated § 101.13(h)(1), which requires that a food "contain[ing] more than 13.0 g of fat, [or] 4.0 g of saturated fat . . . per [RACC], per labeled serving, or" per 50 g, if the RACC is "30 g or less or 2 tablespoons or less . . . must bear a statement disclosing that the nutrient exceeding the specified level is present in the food as follows: 'See nutrition information for __ content' with the blank filled in with the identity of the nutrient exceeding the specified level . . . ." *Id.* § 101.13(h)(1). This mandatory disclosure must "be immediately adjacent to

---

[6] *See also* 58 Fed. Reg. 2302, 2333-34 (Jan. 6, 1993) (

> The agency is not persuaded that the saturated fat threshold should be eliminated or changed. FDA finds that there is general scientific agreement on the relationship between saturated fat and cholesterol and serum cholesterol levels. In the general principles proposal (56 FR 60421 at 60426), the agency noted that under section 403(r)(2)(A)(vi) of the act, it can by regulation prohibit a nutrient content claim if the claim is misleading in light of the level of another nutrient in the food. Further, FDA stated that it has tentatively made such a finding with regard to cholesterol claims and the presence of saturated fat, as fully discussed in the fat/cholesterol proposal (56 FR 60478 at 60495). . . . FDA continues to believe that to ensure that cholesterol claims do not mislead consumers it is necessary to permit their use only when the foods also contain levels of saturated fat that are below a specified threshold level. Accordingly, the agency is denying the requests to eliminate the threshold. This decision applies to "cholesterol free," "low cholesterol," and comparative cholesterol claims.).

the nutrient content claim," *id.* § 101.13(h)(4)(ii).

All of Barlean's Coconut Oils exceed the disclosure levels, containing both "more than 13.0 g of fat" and "more than . . . 4.0 g of saturated fat" per RACC, labeled serving, and 50g. Accordingly, to make the nutrient content claims "cholesterol free" or "no cholesterol," Barlean's must have included, immediately adjacent to the claims, the disclosure statement, "See nutrition information for fat and saturated fat content." *See id.* §§ 101.13(h)(1), (4)(ii).[7] The labels of Barlean's Coconut Oils, however, never bore the disclosure statement. *See* Exs. 1-7; *see also* Ex. 10, FDA Warning Letter to Spectrum Organic Products, Inc. at 1-2 ("Your 'Organic All Vegetable Shortening' product is misbranded because its label bears the claims '[c]holesterol free' and 'naturally cholesterol free,' but fails to meet the requirements to make these claims" because "your product contains more than 13 g of total fat per 50 g" and "contains 6 g of saturated fat per 1 tablespoon" which "exceeds the limit of 2 g or less").[8]

### 2. The Trans Fat Misbranded Statements

#### a. No Trans Fat

The Ninth Circuit has repeatedly held that misbranding claims based on unauthorized trans fat statements, and the omission of the required 21 C.F.R. § 101.13(h) disclosure are actionable. *See Reid* 780 F.3d at 962-63 ("No Trans Fat" is an unauthorized nutrient content

---

[7] The *absolute prohibition* of beneficial claims about the cholesterol content for foods containing more than 2 grams of saturated fat under § 101.62(d)(4)(ii)(B), however, moots this requirement of § 101.13. *See* 58 Fed. Reg. at 2334 (

> The agency does not agree that disclosure of the amount of saturated fat in proximity to a cholesterol claim is sufficient to prevent consumers from being misled. As stated above, consumers expect foods with cholesterol claims to affect blood cholesterol levels, and saturated fat is the major dietary determinant of blood cholesterol levels. These expectations are not met if disclosure of saturated fat is permitted because the saturated fat is still present. Therefore, the agency is also denying the request to allow disclosure of saturated fat instead of a threshold.).

[8] "Judicial notice . . . is unnecessary for materials establishing legal principles governing a case," and thus it is "not necessary . . . to take judicial notice of the [FDA] warning letters in order to consider them." *Reid*, 780 F.3d at 962 n.4 (citations omitted).

14

claim); *Hawkins v. Kroger Co.*, 906 F.3d 763, 771 (9th Cir. 2018) ("0g trans fat per serving" is an unauthorized nutrient content claim); *Bishop v. 7-Eleven, Inc.*, 651 Fed. App'x 657, 658 (9th Cir. 2016) (reversing dismissal of misbranded "0g trans fat" statement since "California's consumer protection statutes render statements actionable which, although not technically false, have a tendency to mislead consumers because the statements fail to disclose or direct the consumer's attention to other relevant information"); *see also Backus v. Conagra Brands, Inc.*, 2019 WL 1046025, at *3 (N.D. Cal. Mar. 5, 2019) (Interpreting *Hawkins* and holding that the defendant's "reporting that there was zero trans fat or no trans fat anywhere else [other than the Nutritional Facts Panel] on the packaging was misleading.").

Barlean's "No Trans Fat" statements are express nutrient content claims because they are "direct statement[s] about the level . . . of [trans fat] in the food." 21 C.F.R. § 101.13(b)(1); *see also Reid*, 780 F.3d at 962 ("The 'No Trans Fat' claim is an expressed claim because it 'is [a] direct statement about the level . . . of [trans fat] in the food.'" (citing 21 C.F.R. § 101.13(b)(1))). Section 101.13 provides that a food may contain an express nutrient content claim if it "does not in any way implicitly characterize the level of the nutrient in the food and it is not false or misleading in any respect (e.g., '100 calories' or '5 grams of fat')," 21 C.F.R. § 101.13(i)(3). Express nutrient content claims that "*characterize* the level of the nutrient," *id.* (emphasis added), however, may only be made where they are defined in Subpart D of title 21 of the Code of Federal Regulations. *See id.* §§ 101.13(b), (i)(1).

The FDA has made clear that any statement about the amount of trans fat in a product, other than "0g trans fat per serving," implicitly characterizes the level of trans fat in the product. *See Reid*, 780 F.3d at 962 ("the FDA indicated that 'No Trans Fat' is 'an unauthorized nutrient content claim . . . which has not been defined by FDA'" and "the FDA similarly indicated that 'trans fat-free' is an 'unauthorized nutrient content claim.'"); *see also Backus v. Nestle USA, Inc.*, 167 F. Supp. 3d 1068, 1076 (N.D. Cal. 2016) (distinguishing "No Trans Fat" claim from "0g trans fat"); *but see Hawkins*, 906 F.3d at 771-72 (rejecting even this distinction between "0g trans fat" and "no trans fat").

*Testone v. Barlean's Organic Oils, LLC*, No. 19-cv-00169-JLS-BGS
MOTION FOR PARTIAL SUMMARY JUDGMENT

Because Barlean's "No Trans Fat" statements implicitly characterize the amount of trans fat in the product, they may only be made if defined in Subpart D. *See* 21 C.F.R. §§ 101.13(b), (i)(1). But Subpart D does not define any "no trans fat(s)" claims, and each Barlean's "No Trans Fat" statement is therefore an unauthorized nutrient content claim. *See Reid*, 780 F.3d at 962-63; *see also Backus*, 167 F. Supp. 3d at 1076. Accordingly, Barlean's use of "No Trans Fat" statements violates 21 C.F.R. §§ 101.13(b) and (i)(1), rendering the Coconut Oils misbranded in violation of the UCL's unlawful prong.

Barlean's "No Trans Fat" statements render the coconut oils misbranded for the additional, independent reason that the labels further violate § 101.13(h) because Barlean's Coconut Oils all contain "more than 13.0 g of fat" and "more than . . . 4.0 g of saturated fat" per RACC, per labeled serving, and per 50g, but fail to make, immediately adjacent to the claim, the mandatory disclosure statement, "See nutrition information for fat and saturated fat content." *See* 21 C.F.R. §§ 101.13(h)(1), (4)(ii).

### b.    "Non-Hydrogenated"

In oils, trans fat is created through the industrial process of hydrogenation, in which hydrogen atoms are added to normal vegetable oil by heating it in the presence of an ion donor catalyst metal, like nickel. *See Chacanaca*, 752 F. Supp. 2d at 1115. If an oil is not hydrogenated, then by definition it cannot contain artificial trans fat. As a result, the statements "Non-Hydrogenated" and "No . . . Hydrogenated Fats" are implied nutrient content claims because they "suggest[] that a nutrient" that must be labeled pursuant to 21 C.F.R. § 101.9—trans fat—"is absent" from the Barlean's Coconut Oils. *See* 21 C.F.R. § 101.13(b)(2)(i). Barlean's use of "Non-Hydrogenated" implied nutrient content claims violates § 101.13(h) because the Coconut Oils exceed the disclosure levels, containing both "more than 13.0 g of fat" and "more than . . . 4.0 g of saturated fat" per RACC, labeled serving, and 50 grams, but fail to make, immediately adjacent to the claim, the disclosure statement, "See nutrition information for fat and saturated fat content." *See* 21 C.F.R. §§ 101.13(h)(1), (h)(4)(ii). This further renders the Coconut Oils misbranded in violation of §

101.65(a), which prohibits implied nutrient content claims that are not made "in accordance with the general requirements . . . in 101.13." *Id.* § 101.65(a)(2).

### 3.    The MCT Misbranded Statements

Barlean's Virgin Coconut Oil is further misbranded because of it use of the claims, "Coconut Oil Nutrition[:] Rich in [or -Contains] Lauric Acid, Caprylic Acid & Capric Acid" or "Great[or Natural] Source of Medium Chain Triglycerides (MCTs)." *See* Exs. 1-2. These MCT Misbranded Statements meet the definition of a nutrient content claim because they characterize the level of fatty acids in the coconut oil, which are nutrients of the type required to be in nutrition labeling. *See* 21 C.F.R. § 101.13(b)(2)(i) (An implied nutrient content claim "[d]escribes the food or an ingredient therein in a manner that suggests that a nutrient is absent or present in a certain amount."). Under 21 C.F.R. § 101.13(h), a food that bears an express or implied nutrient content claim, and which contains more than 13 grams of total fat or 4 grams of saturated fat per serving or RACC, must also bear a disclosure statement, immediately adjacent to the claim, referring the consumer to nutrition information for that nutrient, e.g., "See nutrition information for total fat and saturated fat content." 21 C.F.R. § 101.13(h)(1). Barlean's claims that its Virgin Coconut Oil is rich in lauric acid, caprylic acid, and capric acid, and a great source of medium chain triglycerides, violate § 101.13(h) because the Virgin Coconut Oil exceeds the disclosure levels, containing both "more than 13.0 g of fat" and "more than . . . 4.0 g of saturated fat" per RACC, labeled serving, and 50g, but fails to make, immediately adjacent to the claim, the disclosure statement, "See nutrition information for fat and saturated fat content." *See* 21 C.F.R. §§ 101.13(h)(1), (h)(4)(ii).

### 4.    The Healthy Misbranded Statements

Barlean's Culinary and Butter Flavored Coconut Oils are further misbranded because their labels use unauthorized implied nutrient content claims in violation of 21 C.F.R. § 101.65(d). Specifically, the Healthy Misbranded Statements suggest that the Culinary and Butter Flavored Coconut Oils, because of their fatty acid and cholesterol content, may help consumers maintain healthy dietary practices. *See* Puckett 30(b)(6) Dep. Tr. at 138:15 - 139:9 (discussing Butter Flavored labeling statement "Healthy Alternative to Butter" and agreeing

17

"Yes, sir" that "no trans fat" is one of the "reasons that this product is a healthy alternative to butter"); *id.* at 139:10 - 139:21 (explaining that the "health benefits [that] are being referred to" in the Butter Flavored labeling statement "All the health benefits of coconut oil" include label statements about being "cholesterol-free" and "[No] trans fats,").

The Culinary Coconut Oils are touted as being "for health-conscious" consumers, below which, in bold red print, is the statement either "No Trans Fat or Cholesterol" or "Non-Hydrogenated." The Butter Flavored Coconut Oils are labeled as: (1) having "All the health benefits of coconut oil," below which Barlean's prominently claims the product has "No Trans Fats or Hydrogenated Fats" and is "Cholesterol Free"; (2) being "the perfect combination of health fat . . . . while supplying you with the health benefits of Medium Chain Triglycerides (MCTS)," below which Barlean's prominently claims the product has "No Trans Fat or Cholesterol"; or (3) being "healthy eating" and having "all the healthy MCTs of our regular organic coconut oil," below which Barlean's claims the product has "No cholesterol, trans fats or hydrogenated oils." Barlean's agreed there is a clear connection being made between the "healthy" statements and fatty acid nutrient content claims. *See* Ex. 9, Puckett 30(b)(6) Dep. Tr. at 165:2-13 (admitting labeling statement "Barlean's culinary coconut oil is the ultimate cooking oil for health-conscious gourmets" is "intended to convey" that the product is "Healthy to cook with, yes"); *id.* at 165:14-18 ("Q. And the reasons that [Barlean's Culinary Coconut Oil] is healthy to cook with include that it's  . . . no trans fat or cholesterol . . . ? A. Yes.").

Because each of these claims suggests Barlean's Culinary and Butter Flavored Coconut Oils are useful in maintaining healthy dietary practices in connection with their lack of trans fat and cholesterol, Barlean's was required to, but did not comply with the provisions for making "healthy" nutrient content claims under § 101.65(d)(2)(ii). Barlean's Culinary (or Gourmet) and Butter Flavored Coconut Oils contain 14 grams of total fat and 12 grams of saturated fat—well over the 3 grams of total fat and 1 gram of saturated fat permitted for making "healthy" claims. *See* 21 C.F.R. § 101.65(d)(2)(i)(F). Nor do the Coconut Oils contain *any* "vitamins A, vitamin C, calcium, iron, protein, or fiber," much less "[a]t least 10 percent

18

of the" recommended intake. *Id.* Accordingly, they are misbranded. *See also* Ex. 11 FDA Warning Letters to Premier Organics;[9] Ex. 12 FDA Warning Letters to Carrington.[10]

Moreover, under 21 C.F.R. § 101.13(h), a food that bears an express or implied nutrient content claim, and which contains more than 13 grams of total fat or 4 grams of saturated fat per serving or RACC, must also bear a disclosure statement on the label, immediately adjacent to the claim, referring the consumer to nutrition information for that nutrient, e.g., "See nutrition information for total fat and saturated fat content." 21 C.F.R. § 101.13(h)(1). Barlean's Healthy Misbranded Statements violate § 101.13(h) because the Coconut Oils exceed the disclosure levels, containing both "more than 13.0 g of fat" and "more than . . . 4.0 g of saturated fat" per RACC, labeled serving, and 50g, but fail to make, immediately adjacent to the claim, the disclosure statement, "See nutrition information for fat and saturated fat content." *See* 21 C.F.R. §§ 101.13(h)(1), (h)(4)(ii). Moreover, these violations render the Culinary (or Gourmet) and Butter Flavored Coconut Oils misbranded in violation of § 101.65(a), which prohibits implied nutrient content claims that are not made "in accordance with the general requirements . . . in 101.13." 21 C.F.R. § 101.65(a)(2).

---

[9] "Your Artisana Coconut Butter Whole Coconut Flesh 16 oz. product is misbranded within the meaning of section 403(r)(1)(A) of the Act [21 U.S.C. § 343(r)(1)(A)] because the product label and labeling bear nutrient content claims but do not meet the requirements to make the claims. . . . Specifically, the label of your Artisana Coconut Butter product bears the claims "The Art of Healthy Foods" and "healthy…food…" in connection with the statement "preserves the life-essential fatty acids, enzymes, vitamins and minerals" and "exceeds the maximum of 1 g of saturated fat per RACC . . . ."

[10] "Your Carrington Farms Coconut Oil product is misbranded under section 403(r)(1)(A) of the Act because the product label and labeling bear the following nutrient content claims but fail to meet the requirements to make such claims as follows: 1. . . . The label of your Carrington Farms Coconut Oil product bears the claims "Healthy Foods," "The healthiest oil on earth," "Perfect for healthy . . . cooking," and "Use as a healthy . . . replacement for butter or fat" in connection with the statement "Our unrefined . . . coconut oil is simply pressed and bottled so it retains its original nutrient content . . . No Trans & Hydrogenated Fats." . . . . According to the Nutrition Facts label, this product contains 12 g of saturated fat per tablespoon (14 g) serving of food which is calculated as 83 percent of calories from saturated fat and thus far exceeds the maximum of 1 g of saturated fat per RACC . . . ."

**B.    Because the Barlean's Coconut Oil Labels are Misbranded, Barlean's is Liable for Violating the UCL's "Unlawful" Prong**

A UCL "unlawful" prong claim has just one element: the violation of any predicate law or regulation. *See Bruton*, 703 Fed. Appx. at 472. Plaintiffs have demonstrated Barlean's violations of the FDCA and its implementing regulations, which by extension are also violations of California's Sherman Law. Barlean's cannot genuinely dispute these violations. Accordingly, Plaintiffs are entitled to partial summary judgment finding Barlean's liable for violating the UCL's "unlawful" prong. *See Hadley V*, 2019 WL 3804661, at *23-24.

## VII.   CONCLUSION

For the foregoing reasons, the Court should grant partial summary judgment in favor of Plaintiffs and hold that:

(A)    Barlean's Virgin, Culinary (or Gourmet), and Butter Flavor Coconut Oil labels were in violation of 21 C.F.R. §§ 101.13, 101.62, and 101.65, and thereby in violation of 21 U.S.C. §§ 321(n), 343(a) , and 343(r)(1)(A), rendering the products misbranded;

(B)    Barlean's labels were therefore also in violation of California's Sherman Law, including Cal. Health & Safety Code §§ 110100(a), 110670, and 110765; and

(C)    Accordingly, Barlean's violated the UCL's "unlawful" prong.

Dated: December 14, 2021

Respectfully submitted,

/s/ Paul K. Joseph
**FITZGERALD JOSEPH LLP**
JACK FITZGERALD
*jack@fitzgeraldjoseph.com*
PAUL K. JOSEPH
*paul@fitzgeraldjoseph.com*
MELANIE PERSINGER  )
*melanie@fitzgeraldjoseph.com*
TREVOR M. FLYNN
*trevor@fitzgeraldjoseph.com*
2341 Jefferson Street, Suite 200
San Diego, California 92110
Phone: (619) 215-1741

***Class Counsel***

20