**FITZGERALD JOSEPH LLP**
JACK FITZGERALD (SBN 257370)
*jack@fitzgeraldjoseph.com*
PAUL K. JOSEPH (SBN 287057)
*paul@fitzgeraldjoseph.com*
MELANIE PERSINGER (SBN 275423)
*melanie@fitzgeraldjoseph.com*
TREVOR M. FLYNN (SBN 253362)
*trevor@fitzgeraldjoseph.com*
CAROLINE S. EMHARDT (SBN 321222)
*caroline@fitzgeraldjoseph.com*
2341 Jefferson Street, Suite 200
San Diego, California 92110
Phone: (619) 215-1741
*Class Counsel*

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL TESTONE, COLLIN SHANKS, and LAMARTINE PIERRE, on behalf of themselves, all others similarly situated, and the general public,<br><br>Plaintiffs,<br><br>v.<br><br>BARLEAN'S ORGANIC OILS, LLC,<br><br>Defendant. | Case No. 3:19-cv-00169-RBM-BGS<br><br>**PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT**<br><br>Judge:   Hon. Ruth Bermudez Montenegro<br>Hearing Date:   November 21, 2022<br><br>NO ORAL ARGUMENT UNLESS ORDERED BY THE COURT |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................... iii

NOTICE OF MOTION ........................................................................................ 1

MEMORANDUM OF POINTS & AUTHORITIES ............................................ 1

    I.     INTRODUCTION ......................................................................... 1

    II.    PROCEDURAL HISTORY ............................................................ 2

    III.   THE SETTLEMENT ..................................................................... 3

         A.    The Settlement Class .......................................................... 3

         B.    Benefits of the Settlement .................................................. 3

             1.    $1,612,500 Non-Reversionary Common Fund............ 3

             2.    Changes to Barlean's Labeling ................................. 4

         C.    Class Notice and Claims Administration ............................ 5

         D.    The Settlement's Release .................................................... 5

         E.    Procedures for Opting Out .................................................. 6

         F.    Procedures for Objecting...................................................... 6

         G.    Attorneys' Fees, Costs, and Service Awards ...................... 7

         H.    Timeline ............................................................................ 8

    IV.   ARGUMENT.................................................................................. 9

         A.    The Court Should Certify the Settlement Class.................... 9

         B.    The Court Should Approve the Proposed Settlement ........... 11

             1.    The Settlement is the Product of Serious, Informed, Non-Collusive Negotiations............................................... 12

             2.    The Settlement Falls within the Range of Possible Approval ............................................................... 15

i

a.    The *Churchill Village* Factors Favor Preliminary Approval ............................................................. 16

b.    The Monetary Relief is Fair in Relation to Potential Damages ...................................................... 21

c.    The Injunctive Relief is Appropriate and Meaningful.................................................................. 22

C.    The Court Should Approve the Class Notice Plan and Full Class Notice ............................................................. 23

V.    CONCLUSION ............................................................. 25

*Testone et al. v. Barlean's Organic Oils, LLC*, Case No. 3:19-cv-00169-RBM-BGS
PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT

1

# <u>TABLE OF AUTHORITIES</u>

2

3  **Cases**

*Allen v. Similasan Corp.*,
4       2017 WL 1346404 (S.D. Cal. Apr. 12, 2017).................................................passim

5

6  *Amchem Prods., Inc. v. Windsor*,
        521 U.S. 591 (1997) ...............................................................................................10

7

8  *Boyd v. Bechtel Corp.*,
        485 F. Supp. 610 (N.D. Cal. 1979) ......................................................................20

9

10 *Broomfield v. Craft Brew Alliance, Inc.*,
        2018 WL 4952519 (N.D. Cal. Sept. 25, 2018) ....................................................11

11

12 *Broomfield v. Craft Brew Alliance, Inc.*,
        2020 WL 1972505 (N.D. Cal. Feb. 5, 2020) .......................................................11

13

14 *Bruno v. Quten Research Inst., LLC*,
        2013 WL 990495 (C.D. Cal. Mar. 13, 2013)......................................................23

15

16 *Campbell v. Facebook, Inc.*,
        951 F.3d 1106 (9th Cir. 2020)...............................................................................13

17

18 *Carr v. Tadin*, Inc.,
        2014 WL 7497152 (S.D. Cal. Apr. 18, 2014)......................................................24

19

20 *Carr v. Tadin, Inc.*,
        51 F. Supp. 3d 970 (S.D. Cal. 2014) ....................................................................15

21

22 *Chevron Envt'l. Mgmt. Co. v. BKK Corp.*,
        2013 WL 5587363 (E.D. Cal. Oct. 10, 2013) ......................................................22

23

24 *Churchill Vill., L.L.C. v. Gen. Elec.*,
        361 F.3d 566 (9th Cir. 2004)...............................................................12, 16, 24

25

26 *City of Detroit v. Grinnell Corp.*,
        495 F.2d 448 (2d Cir. 1974)..................................................................................21

27

28

iii

*Class Plaintiffs v. City of Seattle*,
   955 F.2d 1268 (9th Cir. 1992)................................................................12

*Edwards v. Andrews*,
   846 F. App'x 538 (9th Cir. 2021)...........................................................24

*Edwards v. Nat'l Milk Producers Fed'n*,
   2017 WL 3623734 (N.D. Cal. June 26, 2017)........................................24

*Farar v. Bayer AG*,
   No. 14-cv-4601 (N.D. Cal.).....................................................................17

*Hadley v. Kellogg Sales Co.*,
   2021 WL 5706967 (N.D. Cal. Nov. 23, 2021).................................11, 23

*Hadley v. Kellogg Sales Co.*,
   324 F. Supp. 3d 1084 (N.D. Cal. 2018)..................................................11

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998).....................................................10, 11, 12

*Harmsen v. Smith*,
   693 F.2d 932 (9th Cir. 1981)....................................................................9

*Harris v. Vector Mktg. Corp.*,
   2011 WL 1627973 (N.D. Cal. Apr. 29, 2011).................................15, 16

*Heim v. Heim*,
   2014 WL 1340063 (N.D. Cal. Apr. 2, 2014)..........................................22

*Hesse v. Sprint Corp.*,
   598 F.3d 581 (9th Cir. 2010).....................................................................5

*Hilsley v. Ocean Spray Cranberries, Inc.*,
   2020 WL 520616 (S.D. Cal. Jan. 31, 2020)...........................................22

*In re Apple Inc. Device Performance Litig.*,
   --- F.4th ----, 2022 WL 4492078 (9th Cir. Sept. 28, 2022)...................15

*In re Bluetooth Headset Prods. Liability Litig.*,
   654 F.3d 935 (9th Cir. 2011)............................................................13, 14

iv

*In re Chinese-Manufactured Drywall Prods. Liability Litig.*,
   424 F. Supp. 3d 456 (E.D. La. 2020)..................................................................13, 14

*In re Hyundai & Kia Fuel Economy Litig.*,
   926 F.3d 539 (9th Cir. 2019).........................................................................9, 10, 11

*In re Linkedin User Privacy Litig.*,
   309 F.R.D. 573 (N.D. Cal. 2015)..........................................................................21

*In re Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg., Sales Practices & Prod. Liab. Litig.*,
   952 F.3d 471 (4th Cir. 2020)..................................................................................7

*In re Mego Fin. Corp. Sec. Litig.*,
   213 F.3d 454 (9th Cir. 2000), *as amended* (June 19, 2000) .............................22

*In re Mercury Interactive Corp. Secs. Litig.*,
   618 F.3d 988 (9th Cir. 2010)..................................................................................8

*In re Nissan Motor Corp. Antitrust Litig.*,
   552 F.2d 1088 (5th Cir. 1977)..............................................................................25

*In re Pac. Enters. Sec. Litig.*,
   47 F.3d 373 (9th Cir.1995)...................................................................................20

*In re Packaged Seafood Prod. Antitrust Litig.*,
   2022 WL 2803110 (S.D. Cal. July 15, 2022) ......................................................25

*In re Pharm. Indus. Average Wholesale Price Litig.*,
   252 F.R.D. 83 (D. Mass. 2008)............................................................................18

*In re Tableware Antitrust Litig.*,
   484 F. Supp. 2d 1078 (N.D. Cal. 2007) ..............................................................12

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
   2011 WL 7575004 (N.D. Cal. Dec. 27, 2011)......................................................7

*In re Wells Fargo & Co. S'holder Derivative Litig.*,
   445 F. Supp. 3d 508 (N.D. Cal. 2020) ................................................................15

*Testone et al. v. Barlean's Organic Oils, LLC*, Case No. 3:19-cv-00169-RBM-BGS
PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT

*Kaupelis v. Harbor Freight Tools*,
  2021 WL 4816833 (C.D. Cal. Aug. 11, 2021)...................................................10

*Krommenhock v. Post Foods, LLC*,
  2021 WL 2910205 (N.D. Cal. June 25, 2021) ...............................................11

*Krommenhock v. Post Foods, LLC*,
  334 F.R.D. 552 (N.D. Cal. 2020).....................................................................11

*Linney v. Cellular Alaska P'ship*,
  151 F.3d 1234 (9th Cir. 1998)..........................................................................20

*Makaeff v. Trump Univ., LLC*,
  309 F.RD. 631 (S.D. Cal. 2015).......................................................................19

*Manner v. Gucci Am., Inc.*,
  2016 WL 1045961 (S.D. Cal. Mar. 16, 2016) ......................................12, 20, 21

*Mazza v. Am. Honda Motor Co., Inc.*,
  666 F.3d 581 (9th Cir. 2012)............................................................................18

*McCabe v. Six Continents Hotels, Inc.*,
  2015 WL 3990915 (N.D. Cal. June 30, 2015) ...............................................22

*McMorrow v. Mondelez Int'l, Inc.*,
  2022 WL 1056098 (S.D. Cal. Apr. 8, 2022)...................................................10

*Medellin v. Ikea U.S.A. W., Inc.*,
  672 Fed. App'x 782 (9th Cir. 2017).................................................................18

*Mendoza v. Tucson Sch. Dist. No. 1*,
  623 F.2d 1338 (9th Cir.1980)...........................................................................24

*NEI Contracting & Eng'g, Inc. v. Hanson Aggregates, Inc.*,
  2016 WL 2610107 (S.D. Cal. May 6, 2016)...................................................18

*NEI Contracting & Eng'g, Inc. v. Hanson Aggregates, Inc.*,
  926 F.3d 528 (9th Cir. 2019)............................................................................18

*Pelzer v. Vassalle*,
  655 F. App'x 352 (6th Cir. 2016) ......................................................................7

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985) ...................................................................................9

*Racies v. Quincy Bioscience, LLC*,
    No. 15-cv-292 (N.D. Cal.) .....................................................................17, 19

*Rodriguez v. Bumble Bee Foods, LLC*,
    2018 WL 1920256 (S.D. Cal. Apr. 24, 2018) ...........................................18

*Rodriguez v. W. Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) ................................................15, 18, 20, 24

*Romero v. Securus Techs., Inc.*,
    2020 WL 3250599 (S.D. Cal. June 16, 2020) ..........................................25

*Schneider v. Chipotle Mexican Grill, Inc.*,
    2020 WL 511953 (N.D. Cal. Jan. 31, 2020) ............................................11

*Shannon v. Sherwood Mgmt. Co.*,
    2020 WL 2394932 (S.D. Cal. May 12, 2020) ..........................................7, 8

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) ..................................................................16

*Stull v. Baker*,
    410 F. Supp. 1326 (S.D.N.Y. 1976) .........................................................20

*Testone v. Barlean's Organic Oils, LLC*,
    2021 WL 4438391 (S.D. Cal. Sept. 28, 2021) ........................................2, 9

*Tschudy v. J.C. Penney Corp., Inc.*,
    2015 WL 8484530 (S.D. Cal. Dec. 9, 2015) ............................................18

*Uschold v. NSMG Shared Servs., LLC*,
    333 F.R.D. 157 (N.D. Cal. 2019) .............................................................15

*Vasquez v. Coast Valley Roofing, Inc.*,
    670 F. Supp. 2d 1114 (E.D. Cal. 2009) ...................................................16

*Warner v. Toyota Motor Sales, U.S.A., Inc.*,
    2016 WL 8578913 (C.D. Cal. Dec. 2, 2016) ...........................................18

*Wash. Mut. Bank, FA v. Super. Ct.*,
  24 Cal. 4th 906 (2001) ..................................................................................10

*Watkins v. Hireright, Inc.*,
  2016 WL 1732652 (S.D. Cal. May 2, 2016)..................................11, 12, 17, 18

*Winters v. Two Towns Ciderhouse, Inc.*,
  2021 WL 1889734 (S.D. Cal. May 11, 2021)......................................................8

*Yeoman v. Ikea U.S.A. W., Inc.*,
  2014 WL 7176401 (S.D. Cal. Dec. 4, 2014)......................................................18

**Other Authorities**

87 Fed. Reg. 5063, 5064 (Jan. 31, 2022) .................................................................23

Fed. R. Civ. P. 23(e), advisory committee note (2003 amendment) ......................14

**Rules**

Fed. R. Civ. P. 23(c)(2)(B)......................................................................................23

Fed. R. Civ. P. 23(h) .................................................................................................7

*Testone et al. v. Barlean's Organic Oils, LLC*, Case No. 3:19-cv-00169-RBM-BGS
PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT

## NOTICE OF MOTION

TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD: PLEASE TAKE NOTICE THAT, pursuant to Fed. R. Civ. P. 23(e), Plaintiffs hereby move the Court, the Honorable Ruth Bermudez Montenegro presiding, for an Order preliminarily approving a proposed settlement on behalf of a nationwide class (the "Settlement"); certifying the settlement class; approving the proposed notice plan; setting schedules for notice, claims, opting out, objecting; and for the Court to conduct a fairness hearing. The Motion is based upon this Notice of Motion, the below Memorandum, the concurrently-filed Declarations of Paul K. Joseph ("Joseph Decl.") and Jeanne C. Finegan ("Finegan Decl.") and all exhibits thereto, including the Settlement Agreement attached to the Joseph Declaration as Exhibit 1 ("Settlement Agreement" or "SA"), all prior pleadings and proceedings in this action, and any additional evidence and argument submitted in support of the Motion.

This Motion is made following the conference of counsel that took place on October 6, 2022. Barlean's has indicated it does not oppose the Motion.

## MEMORANDUM OF POINTS & AUTHORITIES

### I.    INTRODUCTION

Filed on January 24, 2019, this consumer fraud class action has been litigated for over three and a half years. During the litigation there was substantial fact and expert discovery, including written discovery and depositions, on both merits and class certification issues. There was also considerable motion practice, including Plaintiffs' motion for class certification that was granted on September 28, 2021 (Dkt. No. 98). Only after obtaining certification—and with their motion for partial summary judgement pending and the pretrial conference about one month away—were Plaintiffs able to secure the sizable relief embodied in the present settlement. *See* Joseph Decl. ¶¶ 11-17. The settlement provides a $1,612,500 all-cash, non-reversionary common fund, and prohibits Barlean's from using the labeling statements, as challenged in this case, on its Coconut Oil Products. *See* SA ¶¶ 1.12, 2.2 (defining Coconut Oil Products and identifying injunctive relief regarding the challenged claims). This relief is substantial considering the potential recovery and the risks associated

1

*Testone et al. v. Barlean's Organic Oils, LLC*, Case No. 3:19-cv-00169-RBM-BGS
PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT

with trial. *See* Joseph Decl. ¶¶ 19-31. Accordingly, the Court should find that the proposed Settlement falls within the range of reasonableness and grant preliminary approval.

## II.    PROCEDURAL HISTORY

On January 24, 2019, Plaintiffs filed this action alleging Barlean's breached warranties and violated other California and New York consumer protection laws, because Barlean's "misleadingly markets its coconut oil Products as inherently healthy . . . despite that coconut oil is actually inherently *unhealthy*," *Testone v. Barlean's Organic Oils, LLC*, 2021 WL 4438391 at \*1-2 (S.D. Cal. Sept. 28, 2021) (record citations omitted).

On July 24, 2019, the parties attended an Early Neutral Evaluation Conference with Magistrate Bernard G. Skomal (*see* Dkt. No. 27), but the parties were unable to reach a resolution.

On September 4, 2019, Plaintiffs filed a First Amended Complaint (Dkt. No. 35, hereafter "FAC"), adding claims for damages under the CLRA (*see* Dkt. No. 31). Barlean's answered on September 10. (Dkt. No. 36.)

Discovery proceeded with the parties serving written discovery requests and taking depositions of fact witnesses and the parties' six total expert witnesses (three each). Joseph Decl. ¶¶ 4-10. In response to Plaintiffs' written discovery requests, Barlean's produced nearly 60,000 pages of documents comprising, among other things, consumer research, labels and off-label marketing, pricing, sales, and internal email communications regarding the Coconut Oil Products. *See id.* ¶ 5. Barlean's also produced literature regarding the health effects of consuming coconut oil, and materials related to its experts and their opinions. *See id.*

In March 2021, Plaintiffs moved for class certification (Dkt. No. 70). In connection with Plaintiffs' class certification motion, the Parties raised various *Daubert* and evidentiary challenges to the other parties' expert materials. (*See* Dkt. Nos. 86, 88, 89). In September 2021, the Court granted Plaintiffs' certification motion, certifying California and New York Classes. *See Testone*, 2021 WL 4438391.

On December 6, 2021, the parties attended a Mandatory Settlement Conference with Judge Skomal—but the case did not settle (Dkt. No. 106), and the Court issued a scheduling

2

order setting expert disclosure and discovery and pretrial deadlines (Dkt. No. 107).

On December 14, 2021, Plaintiffs filed a motion for partial summary judgment. (Dkt. No. 108.)

In March of 2022, with Plaintiffs' partial summary judgment motion pending and trial looming, the parties resumed settlement negotiations. *See* Joseph Decl. ¶ 16. Over the next several months, the parties continued to negotiate, trading dozens of offers and counteroffers. *Id.* Finally, in late July, the parties reached an agreement in principle of which they notified the Court. *See id.* ¶ 17.

## III.    THE SETTLEMENT

### A.    The Settlement Class

The Settlement Class is comprised of all persons who, between January 24, 2015 and the date the Court grants preliminary approval (the "Class Period"), purchased in the United States, for personal or household use and not for resale or distribution, one of the "Coconut Oil Products." *See* SA ¶¶ 1.3, 1.6, 1.12, and 1.24 (defining Class or Class Members, Class Period, Coconut Oil Products, and Settlement Class).

### B.    Benefits of the Settlement

#### 1.    $1,612,500 Non-Reversionary Common Fund

Barlean's will establish a $1,612,500 all-cash, non-reversionary common fund (the "Common Fund"). This fund will be used to pay all settlement expenses, including: Full Class Notice (SA ¶¶ 1.16, 3.2) and claims administration; Class Member claims; and any Court-approved attorneys' fees, expenses, and service awards. *See* SA ¶¶ 2.3, 2.5, 2.6.

*Class Member Claim Payments.*

Class Members can make a claim by completing and submitting a short form directly through the Settlement Website, SA ¶ 1.25, or by downloading it and mailing it to the Claims Administrator. SA ¶ 2.3 & Ex. 3, Finegan Decl. ¶ 48.

Class Members who have their claims validated by the Claims Administrator will be reimbursed for each unit of the Coconut Oil Products purchase as follows:

| Estimated *Per Unit* Reimbursement Without Proof of Purchase | | | |
|---|---|---|---|
| | **Virgin** | **Culinary/Refined** | **Butter Flavored** |
| **16oz.** | $ 4 | N/A | $3 |
| **32oz.** | $ 7 | $5 | $3 |
| **60oz.** | $ 7 | $5 | N/A |

Class Members who submit valid proof of purchase, as determined by the Claims Administrator, can claim as many units (single containers) of the Coconut Oil Products for which they have, and submit, valid proof of purchase. SA ¶ 2.3. Class Members without valid proof of purchase can claim up to five units. *Id.*

*Pro Rata Adjustments and Cy Pres.*

If the total amount of funds claimed by Class Members is greater or less than the total amount of the Common Fund that is available to Class Members (after costs, fees, and service awards), then the amount paid to Class Members will be adjusted on a pro rata basis. For example, if the total amount of funds claimed by Class Members is less than the funds available for claims, the excess funds will be distributed to Class Members on a pro-rata basis that is proportional to the value of each valid Claim. The excess pro-rata distribution, if any, will be made concurrently with the distribution of the base claim amount. On the other hand, if the total amount of funds claimed by Class Members is greater than the funds available for claims, each claim will be reduced on a pro-rata basis that is proportional to the value of each Claim.

Any amounts remaining uncleared after one hundred eighty (180) days following distribution will be donated *cy pres* to the Tufts University Friedman School of Nutrition, subject to the Court's approval. *See id.* ¶ 2.3.

**2.    Changes to Barlean's Labeling**

For five years from the date the Court issues a final approval order, the Settlement prohibits Barlean's from using any labeling representations challenged in this lawsuit on the Coconut Oil Products. (*Compare* FAC ¶ 197, *with* SA ¶ 2.2). The only exception is that if Barlean's modifies a claim to conform with the requirements for nutrient content or health

4

*Testone et al. v. Barlean's Organic Oils, LLC*, Case No. 3:19-cv-00169-RBM-BGS
PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT

claims that are, at that point in time, applicable under federal and state law, it may use such authorized claims. SA ¶ 2.2.

### C.    Class Notice and Claims Administration

Subject to the Court's approval, the parties have retained Kroll Settlement Administration ("Kroll") as the Claims Administrator to effect Full Class Notice and claims administration. *See* SA ¶ 3.3 (listing duties of Claims Administrator). Kroll is an experienced administrator that numerous courts have praised for its excellent work in claims administration. *See* Finegan Decl. ¶¶ 1-11. Class Counsel requested bids from Kroll, epIQ Global, and CPT Group. *See* Joseph Decl. ¶ 26. After evaluating the competing bids, Kroll was selected as the best fit. *See id.* ¶¶ 28-29.

The Settlement provides that Full Class Notice will be effectuated through a Notice Plan, SA ¶ 1.18, designed by the Claims Administrator to comply with the requirements of Rule 23 and due process, and approved by the parties and Court. SA ¶ 3.3. The Notice Plan proposed by Kroll meets these requirements. *See* Finegan Decl. ¶¶ 13-51. On behalf of Barlean's, Kroll will also serve CAFA notice upon the appropriate officials within ten (10) days after the filing of this motion, as required by 28 U.S.C. § 1715(b). *See* SA ¶ 3.6.

### D.    The Settlement's Release

Upon the Final Effective Settlement Date, *see* SA ¶ 1.15 (five days after the judgement in the Action becomes final and non-appealable), each Class Member who has not opted out will be deemed to have released the Barlean's Released Parties from any and all claims, which have, or which could have been asserted in the Action, that are based on the identical factual predicate, or depend on the same set of facts alleged in the Action regarding the Coconut Oil Products, consistent with *Hesse v. Sprint Corp.*, 598 F.3d 581 (9th Cir. 2010), *see* SA ¶ 4.3. The release includes a waiver of California Civil Code Section 1542 or any other state provision that is similar, comparable, or equivalent in substance or intent to Section 1542. *Id.*

Barlean's will also release any claims against Plaintiffs and Class Counsel arising from or in connection with the filing and conduct of the Action. SA ¶ 4.4.

5

*Testone et al. v. Barlean's Organic Oils, LLC*, Case No. 3:19-cv-00169-RBM-BGS
Plaintiffs' Motion for Preliminary Approval of Class Settlement

### E.   Procedures for Opting Out

Class Members who wish to opt out of and be excluded from the Settlement must submit a Request for Exclusion/Opt-Out to the Claims Administrator, postmarked or submitted online no later than the Opt-Out Deadline. *See id*.; S.A. ¶ 3.5. The Request for Exclusion/Opt-Out must be personally completed and submitted by the Class Member or his or her attorney. S.A. ¶ 3.5. So-called "mass" or "class" opt-outs shall not be permitted. *Id*.

All Class Members who submit a timely, valid Request from Exclusion/Opt-Out will be excluded from the Settlement and will not be bound by the terms of this Agreement, and all Class Members who do not submit a timely, valid Request for Exclusion/Opt-Out will be bound by this Agreement and the Judgment, including the release in paragraph 4.3. *See id*.

### F.   Procedures for Objecting

Settlement Class Members wishing to object must, by the Objection Deadline, file or mail their written objections to the Court. *See* SA ¶¶ 1.19 (defining Objection Deadline), 3.4 (Procedures for Objecting to the Settlement), 3.4.1 (Timely Written Objection Required). If a Class Member submits both a Request for Exclusion/Opt-Out and files an Objection, the Class Member will be deemed to have opted out of the Settlement, and thus be ineligible to object. *Id.* ¶ 3.4.4. Any objecting Class Member will be bound by the terms of the Agreement upon the Court's final approval of the Settlement. *Id.*

Class Notice and the Settlement Website will include instructions on how to object and provide notice of intent to appear at the Fairness Hearing, if an objector wishes to appear. Any objection must contain (i) a caption or title that clearly identifies the Action and that the document is an objection, (ii) information sufficient to identify and contact the objecting Class Member or his or her attorney if represented, (iii) information sufficient to establish the person's standing as a Settlement Class Member, (iv) a clear and concise statement of the Class Member's objection, as well as any facts and law supporting the objection, (v) the objector's signature, and (vi) the signature of the objector's counsel, if any. *Id.* ¶ 3.4.2.

Class Members may object either on their own or through an attorney hired at their own expense, but a Class Member represented by an attorney must sign either the Objection

6

*Testone et al. v. Barlean's Organic Oils, LLC*, Case No. 3:19-cv-00169-RBM-BGS
PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT

itself or execute a separate declaration stating that the Class Member authorizes the filing of the Objection. *Id.* ¶ 3.4.3. Objecting Class Members may appear at the Fairness Hearing and be heard. SA ¶ 3.4.5. Such Class Members are requested, but not required, in advance of the Fairness Hearing, to file with the Court a Notice of Intent to Appear. *Id.*

The parties may respond to any objection, with a written response due the same day as the Motion for Final Approval, or as otherwise ordered by the Court. *Id.* ¶ 3.4.7. Upon Court order, the parties will have the right to obtain document discovery from and take depositions of any Objecting Class Member on topics relevant to the Objection. *Id.* ¶ 3.4.6.

### G.    Attorneys' Fees, Costs, and Service Awards

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." *Shannon v. Sherwood Mgmt. Co.*, 2020 WL 2394932, at *10 (S.D. Cal. May 12, 2020) (quoting Fed. R. Civ. P. 23(h)). The Settlement Agreement provides that Plaintiffs and Class Counsel will seek Court approval for service awards and attorneys' fees and costs, to be paid from the Common Fund. SA ¶¶ 2.3, 2.5.[1] The Settlement, however, "is not dependent or conditioned upon the Court's approving Class Counsel's and Class Representatives' requests . . . or awarding the particular amounts sought," and if the "Court declines Class Counsel's or Class Representatives' requests or awards less than the amounts sought, this Settlement will continue to be effective and enforceable," *see id.* ¶ 2.5. *Cf. Shannon* 2020 WL 2394932, at

---

[1] The Settlement Agreement includes a "quick pay" provision for attorneys' fees. SA ¶ 2.4. These help deter meritless objections and are routinely approved in the Ninth and other Circuits. *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2011 WL 7575004, at *1 (N.D. Cal. Dec. 27, 2011) (collecting cases); *Pelzer v. Vassalle*, 655 Fed. App'x 352, 365 (6th Cir. 2016) ("over one-third of federal class action settlement agreements in 2006 included quick-pay provisions" and they do "not harm the class members in any discernible way, as the size of the settlement fund available to the class will be the same regardless of when the attorneys get paid."); *In re Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg., Sales Practices & Prod. Liab. Litig.*, 952 F.3d 471, 487 (4th Cir. 2020) ("we observe that quick-pay provisions have generally been approved by other federal courts.").

7

*Testone et al. v. Barlean's Organic Oils, LLC*, Case No. 3:19-cv-00169-RBM-BGS
Plaintiffs' Motion for Preliminary Approval of Class Settlement

\*11 (the Court may "further scrutinize the reasonableness of the fee award at the final approval stage.").

Here, Plaintiffs will likely request service awards of $7,500 each, and Class Counsel will request fees of no more than one-third (33.3%) of the Common Fund, or up to $537,500.[2]

Based on a preliminary tally of counsel's raw billing records (*i.e.*, before making cuts), at the time this motion was submitted Class Counsel has spent over 1,489 hours working on the case, for a lodestar of approximately $947,000. Joseph Decl. ¶ 43. The maximum fee request of one-third (33.3%) of the Common Fund thus represents a *negative* multiplier. *Compare Winters v. Two Towns Ciderhouse, Inc.*, 2021 WL 1889734, at *3 (S.D. Cal. May 11, 2021) (Approving fees representing 1.675 lodestar multiplier "because of the contingent nature of the litigation and the fact that counsel assumed the risk, including fronting the costs, of the litigation," and "achieved the ultimate goal of getting Defendant to omit artificial DL-Malic Acid from its drink products as well as getting Defendant to change the packaging labels, which the Court finds to be a superior result.").

In its anticipated fee motion, Class Counsel will show that the requests for service awards, fees, and costs are justified in this case. *See* Joseph Decl. ¶ 43.

## H. Timeline

Assuming the Court grants preliminary approval, the schedule proposed below gives Class Members sufficient time to receive Notice, and to make a claim, opt out, or object after reviewing Plaintiffs' Motion for Attorneys' Fees, Costs, and Service Awards. *See In re Mercury Interactive Corp. Secs. Litig.*, 618 F.3d 988, 993-95 (9th Cir. 2010).

| Event | Day | Weeks After Preliminary Approval | Example Assuming PA Granted November 21, 2022 |
|---|---|---|---|
| Date Court grants preliminary approval | 0 | - | November 21, 2022 |

---

[2] Plaintiffs will also seek reimbursement of $161,818 in costs. *See* Joseph Decl. ¶ 43.

| Event | Day | Weeks After Preliminary Approval | Example Assuming PA Granted November 21, 2022 |
|---|---|---|---|
| Deadline to commence 70-day notice period | 14 | 2 weeks | December 5, 2022 |
| Deadline for Plaintiffs to file Motion for Attorneys' Fees, Costs, and Service Awards | 56 | 8 weeks | January 16, 2023 |
| Notice completion date, and deadline to make a claim, opt out, and object | 70 | 10 weeks | January 30, 2023 |
| Deadline for Plaintiffs to file Motion for Final Approval | 84 | 12 weeks | February 13, 2023 |
| Fairness Hearing | 112 | 16 weeks | March 13, 2023 |

## IV.  ARGUMENT

### A.  The Court Should Certify the Settlement Class

The Court has already found the requirements of Rules 23(a) and (b)(3) satisfied as to California and New York Classes. *See Testone*, 2021 WL 4438391. The proposed Settlement Class differs from the certified litigation classes only in that it is a single nationwide class. The Ninth Circuit held it is proper for a district court to apply California's consumer protection laws to a nationwide settlement class in *In re Hyundai & Kia Fuel Economy Litig.*, 926 F.3d 539, 561-66 (9th Cir. 2019) (en banc) ["*Hyundai*"]. "Subject to constitutional limitations and the forum state's choice-of-law rules," the Ninth Circuit explained, "a court adjudicating a multistate class action is free to apply the substantive law of a single state to the entire class." *Id.* at 561 (citing *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 823 (1985)). "[A] district court sitting in diversity must 'apply the substantive law of the state in which it sits, including choice-of-law rules,'" *id.* (quoting *Harmsen v. Smith*, 693 F.2d 932, 946-47 (9th Cir. 1981)). "By default, California courts apply California law 'unless a *party litigant* timely invokes the law of a foreign state,' in which case it is 'the foreign law proponent' who must 'shoulder the burden of demonstrating that foreign law, rather than California law,

9

should apply to class claims.'" *Id.* (emphasis added) (quoting *Wash. Mut. Bank, FA v. Super. Ct.*, 24 Cal. 4th 906, 921 (2001) (citations omitted)).

And, as in *Hyundai*, "no party [has] argued that California's choice-of-law rules should not apply to this class settlement arising . . . in a California court." *See id.* Thus, at this preliminary approval stage, "neither the district court nor class counsel [a]re obligated to address choice-of-law issues beyond those raised . . . ." *See id.* at 562. Thus, while the Settlement anticipates certification of a nationwide Class, "[e]xpansion of the class to include all purchasers nationwide . . . does not change the class certification analysis," *McMorrow v. Mondelez Int'l, Inc.*, 2022 WL 1056098, at *3 (S.D. Cal. Apr. 8, 2022) (citing *Allen v. Similasan Corp.*, 2017 WL 1346404, at *3 (S.D. Cal. Apr. 12, 2017)).

Moreover, while manageability is a factor for predominance, "manageability is not a concern in certifying a settlement class where, by definition, there will be no trial." *Hyundai*, 926 F.3d at 556-57; *accord Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial."); s*ee also Kaupelis v. Harbor Freight Tools*, 2021 WL 4816833, at *7 (C.D. Cal. Aug. 11, 2021) (while the court previously rejected a Nationwide UCL Class, that was only "because conflicts of law required that different states' laws be applied to different portions of the proposed classes, making the classes unmanageable for litigation. (citation). This concern need not be considered . . . where the Court is only inquiring into whether the proposed classes are sufficiently cohesive and warranted to justify settlement." (citing *Hyundai*, 926 F.3d at 558)).

This reasoning "applies with even greater force . . . where"—as here—"the class claims turn on the [defendant's] common course of conduct . . . and no objector [has] established that the law of any other states applie[s]." *Hyundai*, 926 F.3d at 563-64. But even if an objector "adequately raise[s] and convincingly argue[s] the distinctions between California and [foreign] law under the governmental interest test," a court may, without abusing its discretion and "entirely consistent with [the Ninth Circuit's] analysis in *Hanlon*" "f[i]nd that

10

the potential differences in [foreign] law [a]re not so substantial as to predominate over other common issues or to preclude certification." *Id*. at 564 n.8.

Accordingly, the Court should certify the Settlement Class. *See Schneider v. Chipotle Mexican Grill, Inc.*, 2020 WL 511953, at *2, *5-6 & n.5 (N.D. Cal. Jan. 31, 2020) (after having certified California, Maryland, and New York classes for litigation, concluding predominance was satisfied for nationwide settlement class "because the Settlement Class Members were exposed to uniform representations concerning Chipotle's non-GMO claims and suffered the same injuries"; and noting that, under *Hyundai*, "the Court at this stage need not analyze whether any differences in state laws prevent provisional class certification"); *Hameed-Bolden v. Forever 21 Retail, Inc.*, 2021 WL 5107729, at *2 n.4 (C.D. Cal. Sept. 27, 2021) ("As the en banc Ninth Circuit made clear recently in [*Hyundai*], the predominance/manageability concerns presented by unknown or potential conflicts amongst the laws of 50 states do not arise in the context of certification for settlement purposes. . . . As such, there is no need – at least at this point in time – for the Court to engage in any conflicts-of-law analysis . . . [and] the Court has no hesitation in concluding that California's laws may be applied in this action, to a nationwide class, without raising any due process concerns."); *Krommenhock v. Post Foods, LLC*, 2021 WL 2910205 (N.D. Cal. June 25, 2021) (granting final approval to nationwide settlement class after certifying only California classes[3]); *Hadley v. Kellogg Sales Co.*, 2021 WL 5706967 (N.D. Cal. Nov. 23, 2021) (same[4]); *Broomfield v. Craft Brew Alliance, Inc.*, 2020 WL 1972505 (N.D. Cal. Feb. 5, 2020) (same[5]).

## B.    The Court Should Approve the Proposed Settlement

"The Ninth Circuit maintains a 'strong judicial policy' that favors the settlement of class actions." *Watkins v. Hireright, Inc.*, 2016 WL 1732652, at *3 (S.D. Cal. May 2, 2016)

---

[3] *See Krommenhock v. Post Foods, LLC*, 334 F.R.D. 552, 567 (N.D. Cal. 2020).

[4] *See Hadley v. Kellogg Sales Co.*, 324 F. Supp. 3d 1084, 1121 (N.D. Cal. 2018).

[5] *See Broomfield v. Craft Brew Alliance, Inc.*, 2018 WL 4952519, at *1 (N.D. Cal. Sept. 25, 2018).

11

(quoting *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)). At this stage, the Court must make "a preliminary determination of whether the class-action settlement is 'fair, reasonable, and adequate' pursuant to Rule 23(e)(2)." *Id.*, at *6. "It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). Factors relevant to this determination include, among others, "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement." *Id.* at 1026; *see also Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).

"Preliminary approval of a settlement and notice to the proposed class is appropriate if 'the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval.'" *Manner v. Gucci Am., Inc.*, 2016 WL 1045961, at *6 (S.D. Cal. Mar. 16, 2016) ["*Gucci*"] (quoting *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (internal quotation marks and citations omitted)).

## 1.    The Settlement is the Product of Serious, Informed, Non-Collusive Negotiations

The Settlement is the result of well-informed, non-collusive and arms'-length negotiations and the agreement was only reached after fact and expert discovery closed, the Court granted Plaintiffs' certification motion, and Plaintiffs filed for partial summary judgment. Joseph Decl. ¶ 18. The parties first seriously discussed settlement at the July 24, 2019 Early Neutral Evaluation Conference, but the parties were far apart. *Id.* ¶ 12. Over the next year and a half, two settlement offers were made but neither resulted in serious discussions. *Id*. ¶¶ 12-14. On December 6, 2021, Magistrate Judge Skomal held a Mandatory

12

Settlement Conference, which was again unsuccessful. *Id.* ¶ 15. Only with both fact and expert discovery closed, Plaintiffs' partial summary judgment motion pending, and trial looming, were the parties able to reach a compromise to resolve this matter. *Id.* ¶¶ 16-17. These negotiations spanned several months and involved exchanging dozens of offers between the parties. *Id.* And even after an agreement in principle was reached, negotiations about the details of certain material terms were hard fought and delayed filing of this motion seeking preliminary approval. *See id.* ¶ 17; Dkt. No. 125 ("The Parties had hoped to have finalized the settlement agreement and file for preliminary approval by now but, during their continued negotiations, the Parties had a disagreement on one issue that was only resolved on October 4, 2022.").

Thus, the manner in which the Settlement was reached demonstrates it was the product of well-informed, non-collusive, and arms'-length negotiations. *See Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1122, 1127 (9th Cir. 2020) (case being "nearly [at] the close of discovery" indicated "the settlement's substantive fairness"); *In re Chinese-Manufactured Drywall Prods. Liability Litig.*, 424 F. Supp. 3d 456, 486 (E.D. La. 2020) (

> Counsel on both sides have zealously advocated for their clients for . . . years, as evidenced by the extensive discovery, motions practice, and significant resources expended in this case. The parties entered the negotiation with the experience and institutional knowledge necessary to successfully negotiate on behalf of their clients, and the settlement was accordingly achieved as a result of the adversarial process.).

In *In re Bluetooth Headset Prods. Liability Litig.*, the Ninth Circuit identified "subtle signs" of collusion, including (1) "when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded"; "(2) when the parties negotiate a 'clear sailing' arrangement"; or "(3) when the parties arrange for fees not awarded to revert to defendants[.]" 654 F.3d 935, 947 (9th Cir. 2011) (citations omitted).

No such subtle signs of collusion are present here. Following deductions for costs of

13

notice and administration, expenses, fees, and services awards, Class Members will receive monetary payments distributed on a pro-rata basis according to the number and kind of Coconut Oil Products that they purchased. And because all settlement costs—including fees—will be paid from the common fund, nothing in the Agreement purports to entitle counsel to a disproportionate distribution of the settlement. Further, the Settlement Agreement includes no "clear sailing" agreement, instead providing only that counsel will apply to the Court for fees, imposing no conditions on Barlean's response, SA ¶ 2.5, demonstrating Class Counsel did not subvert the Class's interests to Barlean's "in exchange for red-carpet treatment on fees," *In re Bluetooth Headset Prods. Liability Litig.*, 654 F.3d at 947 (quotation omitted). *See also In re Chinese-Manufactured Drywall Prods. Liability Litig.*, 424 F. Supp. 3d at 486 ("[T]he prospect of fraud or collusion is substantially lessened where, as here, the settlement agreement leaves the determination and allocation of attorney fees to the sole discretion of the trial court."). In short, "[b]ecause the parties have not agreed to an amount of attorney fees and instead [will] merely petition[] the Court for an award they believe is appropriate, there is no threat of the issue tainting the fairness of the settlement negotiations." *See id.*[6] Moreover, an award of fees that is less than requested "shall not be a basis for rendering the entire Settlement null, void or unenforceable," although "Class Counsel retain[s] the right to appeal any decision by the Court regarding the Court's award of attorneys' fees and costs." *See* SA ¶ 2.5.

In addition, the Settlement does not treat the Class Representatives or any Class Members preferentially, since every Class Member who makes a claim, including the Class Representatives, will be subject to the same claims process that provides the same remedy based on the claimant's purchase history. *See* SA ¶ 2.3. Specifically, each Class Members will receive the same amount for a given type of unit validly claimed, and any pro-rata

---

[6] Similarly, no other agreements have been made in connection with the settlement, Joseph Decl. ¶ 3, so there is no possibility such an agreement "may have influenced the terms of the settlement by trading away possible advantages for the class in return for advantages for others," Fed. R. Civ. P. 23(e), advisory committee note (2003 amendment).

14

*Testone et al. v. Barlean's Organic Oils, LLC*, Case No. 3:19-cv-00169-RBM-BGS
PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT

adjustments will be applied in an equal manner to all valid Class Member claims. *Id.*

That Class Representatives will move for service awards does not change this analysis. "It is well-established in this circuit that named plaintiffs in a class action are eligible for reasonable incentive payments, also known as service awards." *In re Wells Fargo & Co. S'holder Derivative Litig.*, 445 F. Supp. 3d 508, 534 (N.D. Cal. 2020) (internal quotation marks and citation omitted), *aff'd*, 845 F. App'x 563 (9th Cir. 2021) ["*Wells Fargo*"]. Very recently the Ninth Circuit reaffirmed that service awards to named plaintiffs in a class action are permissible and do not render a settlement unfair or unreasonable. *See In re Apple Inc. Device Performance Litig.*, --- F.4th ----, 2022 WL 4492078, at *11–13 (9th Cir. Sept. 28, 2022). "Incentive awards are payments to class representatives for their service to the class in bringing the lawsuit." *Wells Fargo*, 445 F. Supp. 3d at 534 (internal quotation marks and citation omitted).[7] *See also Carr v. Tadin, Inc.*, 51 F. Supp. 3d 970, 986 (S.D. Cal. 2014) ("Incentive awards are 'fairly typical' discretionary awards 'intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general.'" (quoting *Rodriguez,* 563 F.3d at 958–59)).

In short, although Class Representatives will apply for service awards for their service in this matter, this does not constitute preferential treatment since the settlement "provides equal relief to all class members" and "distributions to each class member—including Plaintiff—are calculated in the same way," *see Harris v. Vector Mktg. Corp.*, 2011 WL 1627973, at *9 (N.D. Cal. Apr. 29, 2011).

## 2. The Settlement Falls Within the Range of Possible Approval

"To evaluate the range of possible approval criterion, which focuses on substantive

---

[7] "[I]ncentive *awards* [are distinguishable] from incentive *agreements*, the latter of which are 'entered into as part of the initial retention of counsel' and 'put class counsel and the contracting class representatives into a conflict position from day one.'" *Uschold v. NSMG Shared Servs., LLC*, 333 F.R.D. 157, 171 (N.D. Cal. 2019) (quoting *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009) (emphasis in original)).

fairness and adequacy, courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer." *Harris*, 2011 WL 1627973, at *9 (quoting *Vasquez v. Coast Valley Roofing, Inc.*, 670 F. Supp. 2d 1114, 1125 (E.D. Cal. 2009) (citation omitted)).

Additionally, to determine whether a settlement is fundamentally fair, adequate, and reasonable, the Court may preview the factors that ultimately inform final approval: (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of class members to the proposed settlement.

*Id.* (citing *Churchill Village*, 361 F.3d at 575); *accord Winters v. Two Towns Ciderhouse, Inc.*, 2020 WL 5642754, at *3 (citing *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003)) ["*Winters I*"].

### a.    The *Churchill Village* Factors Favor Preliminary Approval

Analysis of the *Churchill Village* factors favors preliminary approval.

***The Strength of Plaintiffs' Case*** and ***the Risk, Expense, Complexity, and Duration of Further Litigation.*** Plaintiffs and Class Counsel believe the theory underlying this case was and is strong on the merits. Although Barlean's expert Dr. Catherine Adams Hutt, disputed that consuming coconut oil is unhealthy, *see* Dkt. No. 116-3, February 25, 2022 Rebuttal Expert Report of Catherine Adams Hutt, Ph.D., R.D., C.F.S, coconut oil is over 90% saturated fat, and its consumption significantly increases risk of cardiovascular disease by raising "bad" LDL- and total-cholesterol levels, causing inflammation, and impairing arterial endothelial function. *See* Dkt. No. 70-13, February 23, 2021 Report of Dr. Michael Greger, M.D., FACLM. This is not just the conclusion of Dr. Greger's rigorous analysis. The American Heart Association has expressly warned that, "because coconut oil increases LDL cholesterol, a cause of [cardiovascular disease], and has no known offsetting favorable effects, we advise against the use of coconut oil." *See* FAC ¶ 68. Further, many of the

16

challenged labeling statements are unauthorized nutrient content claims, meaning they violate FDA regulations and, in turn, violate the "unlawful" prong of California's Unfair Competition Law. *See* FAC ¶¶ 89-123, 168; *see* Dkt. No. 108, Plaintiffs' Partial Summary Judgement Mot.

Nevertheless, Barlean's raised numerous defenses, including expert testimony from Sarah Butler that the challenged claims on the labels of Barlean's Coconut Oil Products are not material. *See* Dkt. No. 81-1 Ex. D, April 20, 2021, Expert Report of Sarah Butler, and Dkt. No. 116-2, February 10, 2022 Expert Report of Sarah Butler, Barlean's also challenged Plaintiffs' damages model through the expert testimony of Stephanie Plancich, Ph.D., who opined Plaintiffs' conjoint analysis would not, and could not, measure any alleged "price premium" or class wide damages. *See* Dkt. No. 81-1 Ex. L, April 22, 2021 Expert Report of Stephanie Plancich, Ph.D.

Thus, despite believing in the merits of their case, these defenses created real risk for Plaintiffs. There was a risk that Plaintiffs could lose at trial—as has happened in several seemingly meritorious consumer fraud class actions that have recently gone to trial in California with judgments returned for defendants. *See Farar v. Bayer AG*, No. 14-cv-4601 (N.D. Cal.); *Allen v. Hyland's, Inc.*, No. 12-cv-1150 DMG (MANx) (C.D. Cal.); *cf. Racies v. Quincy Bioscience, LLC*, No. 15-cv-292 (N.D. Cal.) (declaring mistrial and decertifying class). And, especially because of the need for expert scientific testimony from both sides, trial would have been complex and expensive. "[C]ontinued litigation of this matter would include motions for summary judgment, trial and appeal" and "further litigation would have significantly delayed any relief to Class Members." *Watkins*, 2016 WL 1732652, at *7 (record citations and internal quotation marks omitted).

Even if Plaintiffs prevailed in establishing liability, they also faced the risk that the jury would find fault with their damages model and award little or no monetary relief at all. Further, even complete success at trial would leave Class Members outside California and New York uncompensated. For even the possibility of obtaining the nationwide relief conferred by the Settlement, Class Counsel or other attorneys would have to file and prosecute actions in all other states since—given existing precedent—it is virtually

17

impossible that the claims of the nationwide Settlement Class could ever be adjudicated in a single forum and trial. *See*, *e.g.*, *Warner v. Toyota Motor Sales, U.S.A., Inc.*, 2016 WL 8578913, at *12 (C.D. Cal. Dec. 2, 2016) ("Nationwide class certification under the laws of multiple states can be very difficult for plaintiffs' counsel." (citing *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 590-94 (9th Cir. 2012); *In re Pharm. Indus. Average Wholesale Price Litig.*, 252 F.R.D. 83, 94 (D. Mass. 2008) (noting that "[w]hile numerous courts have talked-the-talk that grouping of multiple state laws is lawful and possible, very few courts have walked the grouping walk"))); *Rodriguez v. Bumble Bee Foods, LLC*, 2018 WL 1920256, at *3 (S.D. Cal. Apr. 24, 2018) (That "[t]he parties acknowledge[d] that obtaining a nationwide class may be difficult in light of recent case law . . . . weigh[ed] in favor of settlement."). Such litigation would cost the respective state classes millions of dollars to prosecute, be inherently risky, and continue for years, not including any appeals. *See* Joseph Decl. ¶ 25.

These factors thus weigh in favor of preliminary approval. *See Watkins*, 2016 WL 1732652, at *7 ("The Court agrees with the parties that the proposed Settlement eliminates the litigation risks and ensures that the Class Members receive some compensation for their claims. Therefore, on balance, the strength of Plaintiff's case and risk of further litigation favor approving the proposed Settlement."); *Allen*, 2017 WL 1346404, at *4 (holding the same where "the litigation involve[d] complex issues requiring extensive resources, expert testimony and a likely appeal, if [it went] to trial"); *Winters I*, 2020 WL 5642754, at *3.

***The Risk of Maintaining Class Action Status Through Trial.*** "A district court may decertify a class at any time." *Rodriguez*, 563 F.3d at 966. Decertification happens with some regularity, including in this district. *See NEI Contracting & Eng'g, Inc. v. Hanson Aggregates, Inc.*, 2016 WL 2610107, at *5-8 (S.D. Cal. May 6, 2016), *aff'd* 926 F.3d 528 (9th Cir. 2019); *Yeoman v. Ikea U.S.A. W., Inc.*, 2014 WL 7176401, at *7 (S.D. Cal. Dec. 4, 2014), *vacated and remanded sub nom.* on other grounds in *Medellin v. Ikea U.S.A. W., Inc.*, 672 Fed. App'x 782 (9th Cir. 2017); *see also Tschudy v. J.C. Penney Corp., Inc.*, 2015 WL 8484530, at *6 (S.D. Cal. Dec. 9, 2015); *Makaeff v. Trump Univ., LLC*, 309 F.R.D. 631, 643

18

*Testone et al. v. Barlean's Organic Oils, LLC*, Case No. 3:19-cv-00169-RBM-BGS
PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT

(S.D. Cal. 2015) (partially granting "motion to decertify the subclasses on the issue of damages"). Indeed, Classes have been decertified at or following trial. *See Racies v. Quincy Bioscience, LLC*, No. 15-cv-292 (N.D. Cal.) (declaring mistrial and decertifying class).

Thus, Plaintiffs faced further risk if they proceeded to trial, and this factor weighs in favor of preliminary approval.

***The Settlement Amount.***

The amount of the settlement is an important factor in evaluating the reasonableness of a settlement. Here, the settlement provides $1,612,500 in all cash and none of it reverts to Barlean's. This amount is reasonable both when compared to the Class's potential recovery at trial and when compared to other settlements regarding misleading health claims on coconut oils products. *See* Joseph Decl. ¶¶ 19-27.

Comparing this Settlement to other coconut oil settlements, as demonstrated below, this Settlement provides the highest recovery, by far, as a percentage of sales.

| Case | Cash Common Fund | Estimated Retail Sales | Settlement as % of Sales |
|---|---|---|---|
| *Testone v. Barlean's Org. Oils LLC* | $1,612,500 | $16,030,927 | 10.0% |
| *Ducorsky v. Premier Organics* | $312,500 | $5,700,000 | 5.5% |
| *Hunter v. Nature's Way LLC* | $1,850,000 | $98,400,000 | 1.9% |
| *Boswell v. Costco* | $775,000 | $70,000,000 | 1.1% |

Joseph Decl. ¶ 26.

As explained below, the amount is also reasonable in relation to the Settlement Class's potential recovery at trial. *See id*. ¶¶ 23-25; *infra* Point IV(B)(2)(b).

Thus, the settlement amount is reasonable, and this factor favors approval.

***The Extent of Discovery Completed and Procedural Posture.***

Here, discovery was robust, with Barlean's producing nearly 60,000 pages of documents and supplementing its interrogatory responses five times. Joseph Decl. ¶ 5. Plaintiffs also took depositions of Barlean's key corporate witnesses and all of its experts. *Id.* ¶¶ 7, 9. Because fact and expert discovery were complete, the litigation class was certified,

19

and only a ruling on partial summary judgment and trial remained, "the parties ha[d] sufficient information to make an informed decision about settlement." *See Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998) (citation omitted). This factor thus favors preliminary approval. *See Allen*, 2017 WL 1346404 at \*4 (factor favored approval where "Plaintiffs engaged in substantial discovery and negotiations" and "briefed, and the Court has ruled on, [] motions to dismiss . . . [and] a motion for class certification").

*The Experience and Views of Counsel.* The Ninth Circuit has "held that '[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation.'" *Rodriguez*, 563 F.3d at 967 (quoting *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir.1995)). "Generally, '[t]he recommendations of plaintiffs' counsel should be given a presumption of reasonableness.'" *Allen*, 2017 WL 1346404 at \*5 (quoting *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979)); *cf. Stull v. Baker*, 410 F. Supp. 1326, 1332 (S.D.N.Y. 1976) (holding that the court should consider the recommendation of counsel, and weight it according to counsel's caliber and experience).

Class Counsel has considerable experience in consumer class actions involving the false advertising of foods. This includes multiple class actions involving false advertising of coconut oils, as this case is one of a line of cases that Class Counsel has prosecuted against coconut oil manufacturers. *See* Joseph Decl. ¶¶ 27, 40. In this and other coconut oil class actions, Class Counsel has been exposed to a wide variety of information about coconut oil claims and manufacturers' defenses, and ultimately the potential upside and risks attendant to this case. *See id*. ¶¶ 40-41. Counsel strongly endorses this Settlement, as it achieves an excellent result, especially when compared to similar coconut oil settlements. *See id.* ¶ 27.

Accordingly, this factor favors preliminary approval. *See Gucci*, 2016 WL 1045961, at \*7 ("[G]iving the appropriate weight to class counsel's recommendation, the Court concludes that this factor also weighs in favor of approval." (internal citation omitted)).

*Governmental Participation.* "There is no governmental participant in this case, so this factor is neutral." *Allen*, 2017 WL 1346404, at \*5.

20

1

2      ***Class Member Reaction.*** Because "Class Members will have an opportunity to object

3  or opt out of the Settlement [,] at this time, this factor weighs in favor of approving the

4  Settlement," *see Gucci*, 2016 WL 1045961, at *7.

5              **b.    The Monetary Relief is Fair in Relation to Potential Damages**

6      Here, Plaintiffs and Class Counsel secured for the Settlement Class direct monetary

7  benefits of $1,612,500. This is reasonable in relation to the maximum recovery at trial for

8  both the California and New York Classes and based on hypothetical price premium recovery

9  by a nationwide class.

10      At trial, the California Class could recover a maximum of $1,132,374 in price premium

11  damages. Joseph Decl. ¶ 23. And if awarded $50 in statutory damages per unit, which are

12  only available for units sold in New York (*see* N.Y. G.B.L. § 349), this would add $1,712,800

13  in trial damages, for a combined total of $2,845,174. *See id*. Thus, the settlement amount of

14  $1,612,500 is 54% of potential trial damages, which is more than reasonable given the risks

15  attendant to trial. *See In re Linkedin User Privacy Litig.*, 309 F.R.D. 573, 587 (N.D. Cal.

16  2015) ("Immediate receipt of money through settlement, even if lower than what could

17  potentially be achieved through ultimate success on the merits, has value to a class, especially

18  when compared to risky and costly continued litigation." (internal citation omitted)); *City of

19  Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 n.2 (2d Cir. 1974) ("[T]here is no reason, at least

20  in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth

21  part of a single percent of the potential recovery.").

22      Given that the Settlement class is nationwide, it makes sense to compare the settlement

23  amount to the hypothetical price premium recovery on a nationwide basis. Here, by applying

24  the price premiums calculated by Plaintiffs' experts in this matter to the estimated total

25  nationwide sales figures, the *maximum* nationwide price premium damages would be $3.4

26  million. Joseph Decl. ¶ 24. This means that the Settlement amounts to 47% of hypothetical

27  nationwide price premium damages. *Id.* This is an excellent result. *See Winters I*, 2020 WL

28  5642754, at *4 (where "Class Members who file for monetary relief are likely on average to

21

*Testone et al. v. Barlean's Organic Oils, LLC*, Case No. 3:19-cv-00169-RBM-BGS
PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT

receive approximately $17.70, which represents a 31% refund on the purchase price of the product," concluding that "monetary compensation and the stipulated injunctive relief offered in the Settlement Agreement is sufficient for approval"); *Hilsley v. Ocean Spray Cranberries, Inc.*, 2020 WL 520616, at *6 (S.D. Cal. Jan. 31, 2020) ($1.00 recovery per purchase "is an excellent result" considering the fraction of purchase price recoverable at trial and in light of expert opinion that price premium was 19%); *cf. In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000), *as amended* (June 19, 2000) ("It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair." (quotation omitted)).

In reality, however, because only California and New York Classes were certified, there would be no practical way to recover price premium damages on a nationwide basis in a single trial. Rather, for even the possibility of obtaining the nationwide relief conferred by the Settlement, Class Counsel or other attorneys would have to file and prosecute actions in all other states since, given the existing legal precedents, it is virtually impossible that the claims of the nationwide Settlement Class could ever be adjudicated in a single forum and trial. Such litigation would cost the respective state classes millions of dollars to prosecute, be inherently risky, and continue for years, not including any appeals. *See* Joseph Decl. ¶ 25.

This confirms the "reasonableness of the Settlement," since "[d]istrict courts have approved settlements as being in good faith for payment of 3% of an alleged tortfeasor's potential liability." *Heim v. Heim*, 2014 WL 1340063, at *5, *6 (N.D. Cal. Apr. 2, 2014) (citing *Chevron Envt'l. Mgmt. Co. v. BKK Corp.*, 2013 WL 5587363, at *3 n.2 (E.D. Cal. Oct. 10, 2013) (approving settlement representing less than 3% of total clean-up costs)); *see also McCabe v. Six Continents Hotels, Inc.*, 2015 WL 3990915, at *10 (N.D. Cal. June 30, 2015) (approving settlement representing between 0.3% and 2% of potential recovery).

### c.    The Injunctive Relief is Appropriate and Meaningful

In this lawsuit, "Plaintiffs primarily s[ought] an order compelling Barlean's to cease marketing its coconut oil Products using the misleading and unlawful tactics," FAC ¶ 3. And the Settlement's injunctive relief prohibits Barlean's from using any of the claims challenged

22

in this lawsuit for at least five years, SA ¶ 2.2. Therefore, the Settlement provides exactly what was sought. Further, because many of the labeling statements challenged in this case are alleged to be unauthorized nutrient content claims, meaning they violate FDA regulations, *see* FAC ¶¶ 89-123, 168, the injunctive relief obtained here is especially noteworthy because it conforms Barlean's labels with FDA regulations. SA ¶ 2.2.

"[T]here is a high value to the injunctive relief obtained" in consumer class actions resulting in labeling changes. *See Bruno v. Quten Research Inst., LLC*, 2013 WL 990495, at *4 (C.D. Cal. Mar. 13, 2013). It benefits not just Class Members, but also "the marketplace, and competitors who do not mislabel their products." *Id*. ("[n]ew labeling practices affect[ ] hundreds of thousands of bottles per year"). Similar "injunctive relief"—the cessation or revision of health and wellness claims on sugary cereals—has "provide[d] health benefits to all purchasers of Defendant's products." *See Hadley v. Kellogg Sales Co.*, 2021 WL 5706967, at *2 (N.D. Cal. Nov. 23, 2021). Similarly, the FDA recently concluded that limiting manufacturers' use of "healthy" claims on sugary foods would result in healthcare savings of up to $700 million over 20 years. *See* 87 Fed. Reg. 5063, 5064 (Jan. 31, 2022) ("Updating the definition of 'healthy' to align with current dietary recommendations can help consumers build more healthful diets to help reduce their risk of diet-related chronic diseases. Discounted at seven percent over 20 years, the mean present value of benefits of the proposed rule is $260 million, with a lower bound estimate of $17 million and an upper bound estimate of $700 million.").

## C.    The Court Should Approve the Class Notice Plan and Full Class Notice

"Under Rule 23(c)(2)(B), 'the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort.'" *Allen*, 2017 WL 1346404, at *5. "[T]he mechanics of the notice process are left to the discretion of the court subject only to the broad 'reasonableness' standards imposed by due process." *Id*. (quotation and citation omitted). Here, Barlean's is a manufacturer of various food and dietary supplement products, which it primarily sells to distributors and retailers, who then sell those products directly to consumers.

23

Because of Barlean's business structure and processes, individual purchasers or class members cannot be identified through reasonable effort. Joseph Decl. ¶ 32. Accordingly, notice by publication is the best practicable notice under the circumstances. *See Carr v. Tadin*, Inc., 2014 WL 7497152, at *8-9 (S.D. Cal. Apr. 18, 2014), *amended in part*, 2014 WL 7499453 (S.D. Cal. May 2, 2014) ("find[ing] that the method and content of the Notice comply with Rule 23" where "[t]he parties assert[ed] that notice by publication is 'the best notice practicable under the circumstances,' because Defendant sells its products directly to third-party retailers, not individual consumers, and hence 'individual notice is not possible'" (citations omitted)).

Given this, Kroll's proposed Notice Plan by publication constitutes the best practicable form of notice and conforms with due process. The Notice Plan includes targeted print and online ads and will reach an estimated minimum 70% of Class Members, and more than twice each. *See* Finegan Decl. ¶¶ 3, 21 n.21, 51. Such notices that reach 70% of the target audience comply with due process. *See, e.g.*, *Edwards v. Nat'l Milk Producers Fed'n*, 2017 WL 3623734, at *4 (N.D. Cal. June 26, 2017), *aff'd sub nom. Edwards v. Andrews*, 846 Fed. App'x 538 (9th Cir. 2021) ("[N]otice plans estimated to reach a minimum of 70 percent are constitutional and comply with Rule 23.").

The contents of a "'[n]otice is satisfactory if it "generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard."'" *Rodriguez*, 563 F.3d at 962 (quoting *Churchill*, 361 F.3d at 575) (quoting *Mendoza v. Tucson Sch. Dist. No. 1*, 623 F.2d 1338, 1352 (9th Cir.1980)). Here, the proposed notice informs Class Members of (1) the nature of the litigation, the Settlement Class, and the identity of Class Counsel, (2) the essential terms of the Settlement, including the gross settlement award and net settlement payments class members can expect to receive, (3) how notice and administration costs, court-approved attorneys' fees, costs, and service awards will be paid from the Common Fund, (4) how to make a claim, opt out, or object to the Settlement, (5) procedures and schedules relating to final approval, and (6) how to obtain further information. *See* SA Exs. 1-2, Full Class and Short Form Notices. Thus, the proposed

1  notice is sufficient because it contains "information that a reasonable person would consider
2  to be material in making an informed, intelligent decision of whether to opt out or remain a
3  member of the class and be bound by the final judgment." *See In re Nissan Motor Corp.*
4  *Antitrust Litig.*, 552 F.2d 1088, 1105 (5th Cir. 1977). *See also Romero v. Securus Techs., Inc.*,
5  2020 WL 3250599, at *7 (S.D. Cal. June 16, 2020) (finding proposed class notice was
6  sufficient since it "appear[ed] plain and easily understood because the notice describe[d] the
7  claims, the class members, the relief provided under the settlement, and class members' rights
8  and option to appear at the final approval hearing personally or through counsel."). Not only
9  does the notice provide sufficient information to Class Members, it directs Class Members to
10  the Settlement Website where they will be able to review the settlement agreement and other
11  key documents case documents, and learn additional information about the case.

12      Thus, the Court should approve the Class Notice Plan and Full Class Notice. *See In re*
13  *Packaged Seafood Prod. Antitrust Litig.*, 2022 WL 2803110, at *2, *8 (S.D. Cal. July 15,
14  2022) (granting final approval and "find[ing] due process was satisfied and the Notice
15  Program provided adequate notice to settlement class members" where the notice explained
16  "the benefit of the COSI Settlement," "how to get payment, how to be excluded from
17  settlement, and how to object," and "what happens if the settlement class member does
18  nothing.").

19  **V.    CONCLUSION**

20      For the foregoing reasons, Plaintiffs respectfully request the Court grant preliminary
21  approval to the settlement, authorize Class Notice, appoint Plaintiffs as Class
22  Representatives and their counsel as Class Counsel, set deadlines for making claims, opting
23  out, and objecting, and schedule a Final Approval Hearing and related deadlines.

24

25

26

27

28

*Testone et al. v. Barlean's Organic Oils, LLC*, Case No. 3:19-cv-00169-RBM-BGS
PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT

Dated: October 21, 2022                     Respectfully Submitted,

                                            /s/ Paul K. Joseph

                                            **FITZGERALD JOSEPH LLP**
                                            JACK FITZGERALD
                                            *jack@fitzgeraldjoseph.com*
                                            PAUL K. JOSEPH
                                            *paul@fitzgeraldjoseph.com*
                                            MELANIE PERSINGER
                                            *melanie@fitzgeraldjoseph.com*
                                            TREVOR M. FLYNN
                                            *trevor@fitzgeraldjoseph.com*
                                            CAROLINE S. EMHARDT
                                            *caroline@fitzgeraldjoseph.com*
                                            2341 Jefferson Street, Suite 200
                                            San Diego, California 92110
                                            Phone: (619) 215-1741

                                            ***Class Counsel***

*Testone et al. v. Barlean's Organic Oils, LLC*, Case No. 3:19-cv-00169-RBM-BGS
PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT