**FITZGERALD JOSEPH LLP**
JACK FITZGERALD (SBN 257370)
*jack@fitzgeraldjoseph.com*
PAUL K. JOSEPH (SBN 287057)
*paul@fitzgeraldjoseph.com*
MELANIE PERSINGER (SBN 275423)
*melanie@fitzgeraldjoseph.com*
TREVOR M. FLYNN (SBN 253362)
*trevor@fitzgeraldjoseph.com*
CAROLINE S. EMHARDT (SBN 321222)
*caroline@fitzgeraldjoseph.com*
2341 Jefferson Street, Suite 200
San Diego, California 92110
Phone: (619) 215-1741
*Class Counsel*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL TESTONE, COLLIN SHANKS, and LAMARTINE PIERRE, on behalf of themselves, all others similarly situated, and the general public, <br><br> Plaintiffs, <br><br> v. <br><br> BARLEAN'S ORGANIC OILS, LLC, <br><br> Defendant. | Case No.: 3:19-cv-00169-RBM-BGS <br><br> **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS SETTLMENT** <br><br> Judge: Hon. Ruth Bermudez Montenegro <br> Date: March 3, 2023 <br> Time: 3:00 p.m. <br> Location: Courtroom 5B |

# <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ...................................................................................... ii

NOTICE OF MOTION ............................................................................................ 1

MEMORANDUM OF POINTS & AUTHORITIES ................................................ 2

I.    INTRODUCTION ....................................................................................... 2

II.   LEGAL STANDARD ................................................................................. 4

III.  THE COURT SHOULD GRANT FINAL APPROVAL BECAUSE THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE ............. 5

    A.   The Strength of the Case, and the Risk, Expense, Complexity, and Likely Duration of Further Litigation ................................. 5

    B.   The Amount of the Settlement ................................................... 8

    C.   Extent of Discovery Completed and Stage of Proceedings ................... 10

    D.   The Experience and Views of Class Counsel ......................................... 11

    E.   The Presence of a Governmental Participant ......................................... 12

    F.   The Reactions of Class Members ............................................................ 12

    G.   The Risk of Maintaining Class Action Status Through Trial ................. 14

IV.  CONCLUSION .......................................................................................... 14

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Arellano v. Kellermeyer Bldg. Servs., LLC*,
 2014 WL 7176463 (S.D. Cal. Dec. 5, 2014)................................................................6

*Boyd v. Bechtel Corp.*,
 485 F. Supp. 610 (N.D. Cal. 1979) ........................................................................11

*Brazil v. Dole Packaged Foods, LLC*,
 660 F. App'x 531 (9th Cir. 2016) ..........................................................................9

*Bruno v. Quten Research Inst., LLC*,
 2013 WL 990495 (C.D. Cal. Mar. 13, 2013)..........................................................9

*Churchill Village LLC v. Gen. Elec.*,
 361 F.3d 566, (9th Cir. 2004).............................................................................3, 5

*Class Plaintiffs v. City of Seattle*,
 955 F.2d 1268 (9th Cir. 1992)................................................................................4

*Custom LED LLC v. eBay, Inc.*,
 2013 WL 6114379 (N.D. Cal. Nov. 20, 2013) .......................................................13

*Custom LED, LLC v. eBay, Inc*,
 2014 WL 2916871 (N.D. Cal. June 24, 2014) ........................................................3

*Dennis v. Kellogg Co.*,
 2013 WL 6055326 (S.D. Cal. Nov. 14, 2013) ........................................................8

*Dickey v. Advanced Micro Devices, Inc.*,
 2020 WL 870928 (N.D. Cal. Feb. 21, 2020) .........................................................12

*Donald v. Xanitos, Inc.*,
 2017 WL 1508675 (N.D. Cal. Apr. 27, 2017) ........................................................7

*Edwards v. Nat'l Milk Producers Fed'n*,
 2017 WL 3623734 (N.D. Cal. June 26, 2027) .......................................................14

*Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*,
 2017 WL 4685536 (C.D. Cal. May 8, 2017) ........................................................14

*Gaudin v. Saxon Mortg. Servs., Inc.*,
2015 WL 7454183 (N.D. Cal. Nov. 23, 2015) ...................................................11

*Hadley v. Kellogg Sales Co.*,
2021 WL 5706967 (N.D. Cal. Nov. 23, 2021) ............................................9, 10

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998)...................................................................4, 12

*Hilsley v. Ocean Spray Cranberries, Inc.*,
2020 WL 520616 (S.D. Cal. Jan. 31, 2020)......................................................9

*Hunter v. Nature's Way Prods., LLC*,
2020 WL 71160 (S.D. Cal. Jan. 6, 2020) ........................................................5

*In re Beef Indus. Antitrust Litig.*,
607 F.2d 167 (5th Cir. 1979).........................................................................5

*In re Bluetooth Headset Prods. Liab. Litig.*,
654 F.3d 935 (9th Cir. 2011)...........................................................................5

*In re Mego Fin. Corp. Sec. Litig.*,
213 F.3d 454 (9th Cir. 2000)....................................................................4, 8

*In re Nexus 6P Prod. Liab. Litig.*,
2019 WL 6622842 (N.D. Cal. Nov. 12, 2019) ...............................................13

*In re Pac. Enters. Sec. Litig.*,
47 F.3d 373 (9th Cir.1995)..........................................................................11

*In re TracFone Unlimited Serv. Plan Litig.*,
112 F. Supp. 3d 993 (N.D. Cal. 2015) ...........................................................12

*Kim v. Allison*,
8 F.4th 1170 (9th Cir. 2021) .........................................................................5

*Krommenhock v. Post Foods, LLC*,
2020 WL 2322993 (N.D. Cal. May 11, 2020) ..................................................7

*Lane v. Brown*,
166 F. Supp. 3d 1180 (D. Or. 2016) ........................................................10, 11

*Larsen v. Trader Joe's Co.*,
  2014 WL 3404531 (N.D. Cal. July 11, 2014)......................................................6

*Linney v. Cellular Alaska P'ship*,
  151 F.3d 1234 (9th Cir. 1998)..............................................................8, 10

*Linney v. Cellular Alaska P'ship*,
  1997 WL 450064 (N.D. Cal. 1997) .......................................................11

*Lloyd v. Navy Fed. Credit Union*,
  2019 WL 2269958 (S.D. Cal. May 28, 2019)...............................passim

*Loomis v. Slendertone Distribution, Inc.*,
  2021 WL 873340 (S.D. Cal. Mar. 9, 2021) ..........................................5

*M. Berenson Co. v. Faneuil Hall Marketplace, Inc.*,
  671 F. Supp. 819 (D. Mass 1987) .........................................................11

*Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*,
  221 F.R.D. 523 (C.D. Cal. 2004) .................................................6, 8, 13

*Nguyen v. Radient Pharms. Corp.*,
  2014 WL 1802293 (C.D. Cal. May 6, 2014) .......................................7

*Noll v. eBay, Inc.*,
  309 F.R.D. 593 (N.D. Cal. 2015)....................................................12, 13

*Officers for Justice v. Civil Serv. Comm'n*,
  688 F.2d 615 (9th Cir. 1982)..................................................................5

*Pemberton v. Nationstar Mortg., LLC*,
  2020 WL 230015 (S.D. Cal. Jan. 15, 2020).....................................8, 13

*Rodriguez v. Bumble Bee Foods, LLC*,
  2018 WL 1920256 (S.D. Cal. Apr. 24, 2018) .....................................8

*Rodriguez v. West Publ'g Corp.*,
  563 F.3d 948 (9th Cir. 2009)................................................................11

*Rojas v. Zaninovich*,
  2015 WL 3657172 (E.D. Cal. June 11, 2015) .....................................5

iv

*Selk v. Pioneers Mem'l Healthcare Dist.*,
   159 F. Supp. 3d 1164 (S.D. Cal. 2016) .......................................................11, 12

*Shannon v. Sherwood Mgmt. Co.*,
   2020 WL 5968650 (S.D. Cal. Oct. 8, 2020) ...........................................................4

*Thomas v. Dun & Bradstreet Credibility Corp.*,
   2017 WL 11633508 (C.D. Cal. Mar. 22, 2017) ....................................................13

*Torrisi v. Tucson Elec. Power Co.*,
   8 F.3d 1370 (9th Cir. 1993) ....................................................................................5

*White v. Experian Info. Sols., Inc.*,
   2009 WL 10670553 (C.D. Cal. May 7, 2009) .....................................................11

**Other Authorities**

87 Fed. Reg. 5063 (Jan. 31, 2022) ........................................................................ 10

**Rules**

Fed. R. Civ. P. 23(c)(1)(C) .................................................................................... 14

Fed. R. Civ. P. 23(e) ................................................................................................ 4

### **NOTICE OF MOTION**

TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD: PLEASE TAKE NOTICE THAT, on March 3, 2023, or as soon thereafter as may be heard, Plaintiffs will move the Court, the Honorable Ruth Bermudez Montenegro presiding, for an Order: (1) finally certifying the Settlement Class; (2) finally approving the Settlement as fair, reasonable, and adequate to the Class; (3) directing the parties to undertake the obligations set forth in the Settlement Agreement that arise out of the Court's final approval; (4) entering Judgment;[1] and (5) maintaining jurisdiction over this matter for purpose of enforcing the Judgment.

The Motion is based upon this Notice of Motion, the below Memorandum, the Declarations of Paul K. Joseph ("Joseph Decl.") and Jeanne C. Finegan ("Finegan Decl."); Plaintiffs' Motion for Preliminary Approval (Dkt. No. 126, "PA Mot."), including the Declaration of Paul K. Joseph in Support of Plaintiffs' Motion for Preliminary Approval (Dkt. No. 126-1, "PA Joseph Decl.") and the Settlement Agreement attached thereto as Exhibit 1 (Dkt. No. 126-2, "SA"); Plaintiffs' Motion for Attorneys' Fees, Costs, and Service Awards (Dkt. No. 130), including the Declaration of Paul K. Joseph in Support of Plaintiffs' Motion for Attorneys' Fees, Costs, and Service Awards (Dkt. No. 130-1, "Award Request Joseph Decl."); all pleadings and proceedings had to date; and any additional evidence and argument submitted in support of the Motion.

---

[1] Plaintiffs have separately moved for an award of attorneys' fees, costs, and service awards, Dkt. No. 130, and request that the relief requested therein be made part of the final judgment.

## MEMORANDUM OF POINTS & AUTHORITIES

### I.    INTRODUCTION

On November 10, 2022, the Court preliminarily approved a nationwide class settlement agreement between Class Representatives Michael Testone, Collin Shanks, and Lamartine Pierre, and Defendant Barlean's Organic Oils, LLC regarding three coconut oil products (the "Products"). *See* Dkt. No. 129 ("PA Order"). The Court found the "[a]greement is fair, reasonable, adequate," "within the range of possible approval considering the possible damages at issue and defenses to overcome," "the result of serious, informed, non-collusive, arms-length negotiations, involving experienced counsel familiar with the legal and factual issues of this case," and "meets all applicable requirements of law." *Id.* at 2.[2] The Settlement resolves allegations that the Products' labeling violates federal, California, and New York state food labeling regulations because "Barlean's misleadingly markets its coconut oil Products as inherently healthy . . . despite that coconut oil is actually inherently *unhealthy*," Dkt. No. 35, First Amended Complaint, ¶ 1 (emphasis in original).

Following preliminary approval, Kroll Settlement Administration ("Kroll") executed the Court-approved Notice Plan. *See* Finegan Decl. ¶¶ 3-22 (detailing compliance with Court-approved notice plan). Notice was provided to Class Members via newspaper, a press release, and most notably, numerous digital means. *See id.* ¶ 5. Digital notice included online display banner advertising, keyword search online advertising, and social media advertising through Facebook, Instagram, YouTube and Pinterest—which delivered over 50 million targeted impressions. *See id.* ¶ 12. As a result of the notice plan, over 705,700 users visited the

---

[2] Having found that the proposed Settlement Class meet the requirements for class certification, the Court may finally certify the Settlement Class for the same reasons set forth in its Preliminary Approval Order. *See Lloyd v. Navy Fed. Credit Union*, 2019 WL 2269958, at *8 (S.D. Cal. May 28, 2019) ("The Court previously certified the Settlement Class under Rule 23(a) and 23(b)(3) in its order granting Plaintiffs' unopposed motion for preliminary approval" and "[t]he Settlement Class remains the same for the purposes of the present motion for final approval. Accordingly, the Court affirms its prior determination that the Settlement Class satisfies Rule 23's class certification requirements." (citation omitted)).

Settlement Website (as of January 30, 2023), *id.* ¶ 20, indicating the that notice plan was highly effective in reaching potential Class Members. Thus, "[t]he Notice Plan employed best-in-class tools and technology and optimizations to obtain a 71% reach of the Settlement Class Members nationwide with an average frequency of 2.7 times." *Id.* ¶ 4. And its implementation was "consistent with best practicable Court-approved notice programs in similar matters and the Federal Judicial Center's guidelines concerning appropriate reach." *Id.* ¶ 29.

Further, the response from the Class was overwhelmingly positive. Of the over 700,000 visitors to the Settlement Website, not a single objection was filed and the claims rate far exceeded expectations. *See id.* ¶ 23. Further there were only "156 requests for exclusion" *see id.*, which is only 0.03% of the number of total claims filed, *see id.* ¶ 24. This highly favorable reaction by the class strongly favors granting approval. *See Custom LED, LLC v. eBay, Inc*, 2014 WL 2916871, at \*5 (N.D. Cal. June 24, 2014) (granting final approval and noting the 0.04% exclusion rate, with one objection, was an "overwhelming[ly] positive" reaction); *Churchill Village LLC v. Gen. Elec.*, 361 F.3d 566, 577 (9th Cir. 2004) (affirming approval of settlement that received 45 objections (.05%) and 500 opt-outs (.56%) out of 90,000 class members).

Due to a higher than anticipated submission of claim forms, 468,980, efforts are still ongoing to determine the total number of those claims that are valid. *See* Finegan Decl. ¶¶ 25-27. Prior to the final approval hearing, Class Counsel or the administrator will provide the Court with the number of claims it has determined are valid as well as estimated adjustments to the pro-rata distribution per claimant. *See id*. ¶ 28. And while amount each individual claimant may receive will decrease from prior estimates, that is only because more Class Members than anticipated will be compensated—which does not diminish the fairness or adequacy of the Settlement. Rather, the strong response is evidence that the Class by and large enthusiastically approves of the Settlement, and the Settlement provides a significant recovery to the Class amounting to 57% of potential trial damages. PA Joseph Decl. ¶ 23.

In addition, the Settlement also provides meaningful injunctive relief that addresses

3

Plaintiffs' allegations by mandating that, for at least five years from the date of final approval, Barlean's refrain from using the challenged claims on the Product's labeling. SA ¶ 2.2.

In sum, the Settlement—which was reached after years of hard-fought litigation and with Plaintiffs' partial summary judgment motion pending and trial looming[3]—provides an excellent result for the Class. It simultaneously secures meaningful financial and injunctive relief and eliminates the risks attendant to trial. Class Counsel and Class Representatives believe Settlement is fair, reasonable, and adequate. The lack of objections, strong claims rate and few exclusions further indicate the Class considers the Settlement fair, reasonable, and adequate. Accordingly, the Court should grant the Settlement final approval.

## II. LEGAL STANDARD

"The Ninth Circuit maintains a 'strong judicial policy' that favors the settlement of class actions." *Shannon v. Sherwood Mgmt. Co.*, 2020 WL 5968650, at *2 (S.D. Cal. Oct. 8, 2020) (citing *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)). "Federal Rule of Civil Procedure 23(e) first 'require[s] the district court to determine whether a proposed settlement is fundamentally fair, adequate, and reasonable.'" *Id.* (citing *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998))). "In this Circuit, a district court examining whether a proposed settlement comports with Rule 23(e) is guided by the eight '*Churchill* factors'":

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement.

---

[3] The full procedural, litigation, and settlement history is detailed in Plaintiffs' Motion for Preliminary Approval. *See* PA Mot. at 1-3. *See also* PA Joseph Decl. ¶¶ 4-18.

*Kim v. Allison*, 8 F.4th 1170, 1178 (9th Cir. 2021) (quoting *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (citing *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, (9th Cir. 2004))). Courts need not weigh all factors, "and different factors may predominate in different factual contexts." *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993). Further while considering all these interests:

> [T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned.

*Loomis v. Slendertone Distribution, Inc.*, 2021 WL 873340, at *3 (S.D. Cal. Mar. 9, 2021) (quoting *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982)).

## III.    THE COURT SHOULD GRANT FINAL APPROVAL BECAUSE THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE

### A.    The Strength of the Case, and the Risk, Expense, Complexity, and Likely Duration of Further Litigation

"To determine whether the proposed settlement is fair, reasonable, and adequate, the Court" first "must balance against the risks of continued litigation (including the strengths and weaknesses of Plaintiff's case)," *Hunter v. Nature's Way Prods., LLC*, 2020 WL 71160, at *5 (S.D. Cal. Jan. 6, 2020) (citations omitted); *see also Rojas v. Zaninovich*, 2015 WL 3657172, at *12 (E.D. Cal. June 11, 2015) (Courts consider, among other things, the "normal perils of litigation, including the merits of the affirmative defenses asserted by Defendant, the difficulties of complex litigation, [and] the lengthy process of establishing specific damages"). Given "all the normal perils of litigation as well as the additional uncertainties inherent in complex class action," *In re Beef Indus. Antitrust Litig.*, 607 F.2d 167, 179-80 (5th Cir. 1979), "unless [a proposed] settlement is clearly inadequate," a court should normally find "'its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results,'" *Arellano v. Kellermeyer Bldg. Servs., LLC*, 2014 WL 7176463, at *9 (S.D.

5

Cal. Dec. 5, 2014) (quoting *Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) (citation omitted)).

Here, while "plaintiffs . . . believe their claims are strong, they acknowledge," as detailed in their Motion for Preliminary Approval, "that they would face significant risks should the case proceed through litigation," *see Larsen v. Trader Joe's Co.*, 2014 WL 3404531, at *4 (N.D. Cal. July 11, 2014) (record citation omitted); *compare* PA Mot. at 16-19.

For example, Barlean's argued that Plaintiffs' expert Michael Greger, M.D. "(1) present[ed] selected scientific papers to support his opinion that consuming coconut oil is unhealthy without representing the universe of scientific opinion on the matter, (2) present[ed] conclusions out of context of the scientific papers, and (3) inaccurately present[ed] the results and conclusions as stated by authors . . . ." *See* Dkt. No. 116-3, Rebuttal Expert Report of Catherine Adams Hutt, Ph.D., R.D., C.F.S. at 3. Dr. Hutt thus argued Dr. Greger "fail[ed] to substantiate his opinion that Barlean's coconut oil products are unhealthy and therefore, mislabeled" and "fail[ed] to substantiate that coconut oil is less healthy as a cooking oil than alternatives, specifically butter." *Id*. Barlean's also contended "Dr. Greger provide[d] no opinions on the relevant inquiry [of] 'whether a significant portion of the general public would read the challenged labels, understand the statements on the label to mean Defendant's coconut oil products are healthy, and subsequently purchase Defendant's coconut oil based on this mistaken belief.'" *See* Dkt. No. 81, Opp. to Class Cert. Mot. at 15 (internal citation omitted).

Although Plaintiffs adduced evidence challenging these assertions, there was a risk Barlean's could persuade a jury the evidence demonstrates the Products are healthier than Plaintiffs alleged. Thus, while Plaintiffs disagree with Barlean's characterization of Dr. Greger's opinion, and do not believe Dr. Hutt would ultimately be a persuasive expert witness, a vital component of this case would nevertheless turn on an expensive and risky battle of the experts. *Cf. Krommenhock v. Post Foods, LLC*, 2020 WL 2322993, at *3 (N.D.

Cal. May 11, 2020) (noting "that the expert work and trial in this case will be extensive and complex" (record citation omitted)).

Barlean's also vigorously opposed Plaintiffs' damages model, arguing Plaintiffs' expert Dr. Michael Dennis' price premium survey "[wa]s not designed to determine whether a significant portion of the general public would read Barlean's coconut oil labels, understand the statements on the label to mean Barlean's Products are healthy, and subsequently purchase the product based on the alleged mistaken belief" and "[wa]s likely to only measure consumers' preferences for actual attributes of coconut oil, not perceptions about coconut oil based on the label's claims." *See* Opp. to Class Cert. Mot. 16 (internal citations omitted). Barlean's also argued that "Weir's and Dennis' joint methodology [could] not be used to determine whether a label claim would have an impact on market price." *Id*. at 18. (internal citation omitted).

Although the Court ultimately found Plaintiffs' conjoint damages model satisfied *Comcast*, *see* Dkt. No. 98, Order Granting Class Cert. at 28-30, 32-33, Barlean's would still be free to argue to a jury that the model is unreliable, presenting another substantial trial risk.

The Settlement, in contrast to all these risk, "achieves a definite and certain result for the benefit of the Settlement Class[]," making it "preferable to continuing litigation in which the Settlement Class would necessarily confront substantial risk, uncertainty, delay, and cost." *See Donald v. Xanitos, Inc.*, 2017 WL 1508675, at *2 (N.D. Cal. Apr. 27, 2017). Thus, given "the significant risks that lie ahead . . . [at] trial, it is reasonable for the parties at this stage to agree that the actual recovery realized and risks avoided here outweigh the opportunity to pursue potentially more favorable results." *Larsen*, 2014 WL 3404531, at *4. Because "[t]he settlement avoids the risks that the [P]laintiffs would not succeed in demonstrating that [Barlean's] failed to comply with state consumer protection laws," "this factor weighs in favor of final approval of the settlement." *See id.*; *see also Nguyen v. Radient Pharms. Corp.*, 2014 WL 1802293, at *2 (C.D. Cal. May 6, 2014) (first two *Churchill* factors met where, "although [the plaintiffs'] claims were quite strong," there were factual challenges facing them at trial, including "challenges [with] [ ] damages"). "Against these

7

considerations, 'it is plainly reasonable for the parties at this stage to agree that the actual recovery realized and risks avoided here outweigh the opportunity to pursue potentially more favorable results through full adjudication.'" *Lloyd*, 2019 WL 2269958, at *11 (quoting *Dennis v. Kellogg Co.*, 2013 WL 6055326, at *3 (S.D. Cal. Nov. 14, 2013)).

## B.    The Amount of the Settlement

"To assess whether the amount offered is fair, the Court may compare the settlement amount to the parties' estimates of the maximum amount of damages recoverable in a successful litigation." *Id.* (citing *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000)). "Although Plaintiffs recognize that they would have received greater compensation if they had been successful in trial, this does not mean that the settlement is inadequate." *Pemberton v. Nationstar Mortg., LLC*, 2020 WL 230015, at *3 (S.D. Cal. Jan. 15, 2020) (citing *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998)). "'It is well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial.'" *Rodriguez v. Bumble Bee Foods, LLC*, 2018 WL 1920256, at *4 (S.D. Cal. Apr. 24, 2018) (brackets omitted) (quotation omitted). Finally, that the "Settlement Agreement also provides for injunctive relief" is an important consideration in evaluating its benefit, since "class members that choose to continue doing business with [the defendant] will benefit from this aspect as well." *See Knapp v. Art.com, Inc.*, 283 F. Supp. 3d 823, 833 (N.D. Cal. 2017).

Here, Plaintiffs and Class Counsel secured for the Settlement Class a direct monetary benefit of over $1.6 million, which is 57% of the certified Classes' potential trail damages of $2.8 million and is 47% of the Settlement Class's potential price premium damages of $3.4 million. *See* PA Joseph Decl. ¶¶ 23-24; *cf. Lloyd*, 2019 WL 2269958, at *11 (approving a $24.5 million fund which was 40% of potential damages of $60 million). Securing this relief is particularly notable since there would have been significant challenges in proving up this amount of damages as Plaintiffs would have to show "the difference between the prices customers paid and the value of the [products] they bought—in other words, the 'price premium' attributable to [Defendant's advertising misrepresentations]." *See Brazil v. Dole*

8

*Packaged Foods, LLC*, 660 F. App'x 531, 534 (9th Cir. 2016).

Because the number of submitted claims far exceeded expectations, the Claims Administrator is still in the process of validating those claims to help ensure only legitimate claims are paid. Joseph Decl. ¶¶ 2-3. Therefore, while Class Counsel and the Claims Administrator cannot provide estimated payouts to Class Members at this time, they will provide estimates of the final numbers prior to the fairness hearing. *See id.* ¶ 4. Regardless, that more Class Members submitted claims such that the proverbial pie will be divided into a larger number of smaller pieces does not diminish the strength of the Settlement as it constitutes 57% of potential trial damages, which is a strong result. *See* PA Mot. at 21-22; *cf.* *Hilsley v. Ocean Spray Cranberries, Inc.*, 2020 WL 520616, at *6 (S.D. Cal. Jan. 31, 2020) (finding $1.00 recovery per bottled purchased to be "an excellent result" considering that the price premium model means only a fraction of the purchase price of a low-cost consumer good was recoverable by each class member at trial).

The Class Representatives and Class Counsel also secured valuable injunctive relief for the Class as well as the public at large. The Settlement's injunctive relief, which prohibits Barlean's from using the challenged health and wellness claims, is particularly meaningful considering that by reducing or eliminating the suggestion that the Products are healthy, it "provides health benefits to all purchasers," *see Hadley v. Kellogg Sales Co.*, 2021 WL 5706967, at *2 (N.D. Cal. Nov. 23, 2021). Further, because many of the labeling statements challenged in this case are alleged to be unauthorized nutrient content claims, meaning they violate FDA regulations, *see* PA Mot. at 23 (citing FAC ¶¶ 89-123, 168), the injunctive relief obtained here is especially noteworthy because it conforms Barlean's labels with FDA regulations. *Id.* (citing SA ¶ 2.2).

"[T]here is a high value to the injunctive relief obtained" in consumer class actions resulting in labeling changes. *See Bruno v. Quten Research Inst., LLC*, 2013 WL 990495, at *4 (C.D. Cal. Mar. 13, 2013). It benefits not just Class Members, but also "the marketplace, and competitors who do not mislabel their products." *Id.* ("[n]ew labeling practices affect[ ] hundreds of thousands of bottles per year"). Similar "injunctive relief"—the cessation or

9

revision of health and wellness claims on coconut oil—has "provide[d] health benefits to all purchasers of Defendant's products." *See Hadley*, 2021 WL 5706967. The FDA recently concluded that limiting manufacturers' use of "healthy" claims on foods that do not align with current dietary recommendations—such as those high in saturated fat—would result in healthcare savings of up to $700 million over 20 years. *See* 87 Fed. Reg. 5063, 5064 (Jan. 31, 2022) ("Updating the definition of 'healthy' to align with current dietary recommendations can help consumers build more healthful diets to help reduce their risk of diet-related chronic diseases. Discounted at seven percent over 20 years, the mean present value of benefits of the proposed rule is $260 million, with a lower bound estimate of $17 million and an upper bound estimate of $700 million.").

Given the benefits of the injunctive relief, and that "[t]he Court already determined in the preliminary approval order that the [$1,612,500 Barlean's] has agreed to provide is fair and reasonable," it should find "this factor weighs in favor of final approval." *Lloyd*, 2019 WL 2269958, at *11.

### C.    Extent of Discovery Completed and Stage of Proceedings

"This factor evaluates whether 'the parties have sufficient information to make an informed decision about settlement,'" *Knapp*, 283 F. Supp. 3d at 833 (quoting *Linney*, 151 F.3d 1234, 1239). "The extent of discovery completed and the state of the proceedings at the time of settlement is a strong indicator of whether the parties have sufficient understanding of each other's cases to make an informed judgment about their likelihood of prevailing." *Lane v. Brown*, 166 F. Supp. 3d 1180, 1190 (D. Or. 2016). Thus, "[a] court is more likely to approve a settlement if most of the discovery is completed because it suggests that the parties arrived at a compromise based on a full understanding of the legal and factual issues surrounding the case." *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 527 (internal quotation marks and citation omitted).

When the Settlement was reach in this case, the parties had litigated for several years, fact and expert discovery were closed, and the parties were preparing for trial. Discovery was substantial with Barlean's producing over 60,000 pages of documents and the parties taking

10

10 depositions, including a Rule 30(b)(6) deposition that covered 17 topics. *See* PA Joseph Decl. ¶¶ 4-10. There was also substantial motion practice regarding discovery, class certification, expert reports, and summary judgment.

Because of the "late stage of the litigation" at which the Settlement was reached, "both sides had a strong understanding of the strengths and weaknesses of each other's case," and therefore this factor "strongly favors approval." *See Lane*, 166 F. Supp. 3d at 1185, 1190 (granting final approval where "[a]fter almost four years of litigation, extensive fact and expert discovery, and prior unsuccessful efforts to resolve the dispute, the parties engaged in lengthy settlement negotiations a few months before trial and signed a Proposed Settlement Agreement"); *see also Gaudin v. Saxon Mortg. Servs., Inc.*, 2015 WL 7454183, at *6 (N.D. Cal. Nov. 23, 2015) (factor supported final approval where plaintiff "conduct[ed] extensive discovery and investigation (before and after class certification), reviewing approximately 25,000 pages of [Defendant's] documents, and participating in three separate rounds of settlement negotiations" (internal quotation marks and record citations omitted)).

### D. The Experience and Views of Class Counsel

"As the Ninth Circuit has emphasized, '[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation.'" *Selk v. Pioneers Mem'l Healthcare Dist.*, 159 F. Supp. 3d 1164, 1176 (S.D. Cal. 2016) (quoting *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 967 (9th Cir. 2009) (citing *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995)). In determining whether a settlement is fair and reasonable, "[t]he judgment of experienced counsel regarding the settlement is [therefore] entitled to great weight." *White v. Experian Info. Sols., Inc.*, 2009 WL 10670553, at *12 (C.D. Cal. May 7, 2009) (citing *M. Berenson Co. v. Faneuil Hall Marketplace, Inc.*, 671 F. Supp. 819, 822 (D. Mass 1987); *Linney v. Cellular Alaska P'ship*, 1997 WL 450064, at *5 (N.D. Cal. July 18, 1997)). As a result, "[t]he recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *Id.* (quoting *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979)).

Class Counsel here has considerable experience in prosecuting consumer class actions,

11

and particularly those involving the false advertising of foods, especially coconut oil. PA *See* Joseph Decl. ¶¶ 40-42. Because Class Counsel has substantial experience with complex class actions and is intimately familiar with the issues present here, its strong endorsement of the Settlement, *see id.* ¶¶ 19-27, favors granting final approval. *See Larsen*, 2014 WL 3404531, at *5 (factor favored final approval where "Plaintiffs' counsel ha[d] successfully represented consumers both as litigation class and settlement class counsel numerous times, including cases involving food mislabeling," and "believe[d] approval [wa]s in the best interests of the putative settlement class."); *Selk*, 159 F. Supp. 3d at 1176 (relying on *Larsen* and finding that the opinions of counsel should be given considerable weight).

### E.    The Presence of a Governmental Participant

Where, as here, the Claims Administrator notified officials of the proposed settlement pursuant to CAFA and no government entity has raised an objection, *see* Finegan Decl. ¶ 17, this factor "favors settlement," *see Knapp*, 283 F. Supp. 3d at 833 (citations omitted).

### F.    The Reactions of Class Members

When there is a "favorable reaction from class members to the Settlement, [this] weighs in favor of final approval." *Lloyd*, 2019 WL 2269958, at *12 (citation omitted). Courts often look to the claims rate and the number opt-outs and objections to gauge the reaction of the Class. *See Noll v. eBay, Inc.*, 309 F.R.D. 593, 608 (N.D. Cal. 2015) ("A low number of opt-outs and objections in comparison to class size is typically a factor that supports settlement approval." (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998))).

Here, while the validation process of claims is ongoing (and will be reported before the fairness hearing), *see* Finegan Decl. ¶ 28, the final claims rate will no doubt be very strong in comparison to that in other consumer goods class actions. *See Dickey v. Advanced Micro Devices, Inc.*, 2020 WL 870928, at *6 (N.D. Cal. Feb. 21, 2020) (finding "[t]he 27.4% claims rate is an excellent result in the Court's experience" and granting final approval); *In re TracFone Unlimited Serv. Plan Litig.*, 112 F. Supp. 3d 993, 1006 (N.D. Cal. 2015) (holding that a claims rate between 25-30% is "an excellent result that counsels in favor of settlement

approval"); *In re Nexus 6P Prod. Liab. Litig.*, 2019 WL 6622842, at *10 (N.D. Cal. Nov. 12, 2019) (a claims rate over 18% is "substantial"). The claims, which is expected to ultimately be over 20 percent after validation reflects the Class's enthusiasm and approval of the settlement. *See Thomas v. Dun & Bradstreet Credibility Corp.*, 2017 WL 11633508, at *15 (C.D. Cal. Mar. 22, 2017) ("finding that the overall reaction to the settlement has been positive as there is a high claims rate and a low number of exclusions and objectors; accordingly, this factor weighs in favor of approving the settlement").

Second, the low opt-out rate and absence of any objections "raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Lloyd*, 2019 WL 2269958, at *12 (citing *Nat'l Rural Telecommc'ns*, 221 F.R.D. at 529 (internal quotations marks omitted)); *see also Pemberton*, 2020 WL 230015, at *4 (Factor weighed in favor of approval where notice was "sent to approximately 64,000 class members yet the Claims Administrator received only 22 opt-out requests" and "only received two objections." (record citation omitted)).

In sum, the strong claims rate, lack of any objections, and low opt-out rate strongly favor final approval, since "[t]hese statistics indicate a favorable reaction by class members and their overall satisfaction with the Settlement." *See Noll*, 309 F.R.D. at 608 (factor favored approval where "of over 1,188,000 potential Class Members, only 97 [ ] opted out" and "only three objections were filed" (citing *Custom LED LLC v. eBay, Inc.*, 2013 WL 6114379, at *9 (N.D. Cal. Nov. 20, 2013) (granting final approval and characterizing 0.04% exclusion rate, with one objection, as "overwhelming[ly] positive" reaction); *see also Knapp*, 283 F. Supp. 3d at 833 (N.D. Cal. 2017) (factor favored final approval where "[t]he settlement administrator received valid opt-outs from 452 class members, which amount[ed] to less than .03 percent of the class members who received notice," making "[i]t [ ] apparent that the 'overwhelming majority of the class' had nothing to say about the fairness of the settlement." (quotation omitted)). Accordingly, the "Court [should] conclude[] that this factor weighs in favor of approval." *Lloyd*, 2019 WL 2269958, at *12.

13

### G.    The Risk of Maintaining Class Action Status Through Trial

"This factor, which concerns the risk of maintaining class certification, also favors settlement." *Larsen*, 2014 WL 3404531, at *4. While "[t]he Court already granted class certification," "and conditionally certified a class for settlement purposes only in granting preliminary approval," "[u]nder Federal Rule of Civil Procedure 23(c)(1)(C), an 'order that grants . . . class certification may be altered or amended before the final judgment.'" *See Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*, 2017 WL 4685536, at *4 (C.D. Cal. May 8, 2017) (quoting Fed. R. Civ. P. 23(c)(1)(C)). Thus, "[a]lthough Plaintiffs believe they would be successful in maintaining class action status through trial and appeal," because Barlean's "vigorously opposed class certification," "the risk that Defendant may prove successful in attacking class certification . . . favors final approval of the Settlement Agreement," *Flo & Eddie, Inc.*, 2017 WL 4685536, at *4; *see Edwards v. Nat'l Milk Producers Fed'n*, 2017 WL 3623734, at *7 (N.D. Cal. June 26, 2027) ("Although plaintiffs are confident the class would remain certified through trial, the risk 'was not so minimal that this factor could not weigh in favor of the settlement.'" (quotation and citation omitted)).

## IV.    CONCLUSION

In sum, each of the relevant *Churchill* factors favors approval. The Settlement Agreement was reached only after years of hard-fought litigation, and it secures both monetary and injunctive relief while eliminating risks with continued litigation. That this is a strong result for the Class is demonstrated by the overwhelmingly positive response. Accordingly, the Court should grant the Settlement final approval and enter Judgment.

Dated: February 2, 2023                   Respectfully Submitted,

/s/ Paul K. Joseph
**FITZGERALD JOSEPH LLP**
JACK FITZGERALD
*jack@fitzgeraldjoseph.com*
PAUL K. JOSEPH
*paul@fitzgeraldjoseph.com*
MELANIE PERSINGER

14

*melanie@fitzgeraldjoseph.com*
TREVOR M. FLYNN
*trevor@fitzgeraldjoseph.com*
CAROLINE S. EMHARDT
*caroline@fitzgeraldjoseph.com*
2341 Jefferson Street, Suite 200
San Diego, California 92110
Phone: (619) 215-1741

***Class Counsel***