**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MICHAEL TESTONE, COLLIN SHANKS, and LAMARTINE PIERRE, on behalf of themselves and all others similarly situated,<br><br>                                   Plaintiffs,<br><br>v.<br><br>BARLEAN'S ORGANIC OILS, LLC,<br><br>                                   Defendant. | Case No.: 3:19-cv-00169-RBM-BGS<br><br>**ORDER:**<br><br>**(1) GRANTING MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS (Doc. 130); and**<br><br>**(2) GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT (Doc. 131)** |

    Plaintiffs Michael Testone, Collin Shanks, and Lamartine Pierre ("Plaintiffs") filed this lawsuit against Defendant Barlean's Organic Oils, LLC ("Defendant") on January 24, 2019, alleging Defendant "misleadingly markets its coconut oil Products as inherently healthy, and a healthy alternative to butter and various cooking oils, despite that coconut oil is actually inherently unhealthy, and a less healthy option to these alternatives."  (Doc. 35, First Amended Compl. ¶ 1 (emphases omitted).)  The Court granted Plaintiffs' motion for class certification on September 28, 2021.  (Doc. 98.)  The parties negotiated a settlement, and the Court granted preliminary approval on November 10, 2022.  (Doc. 129.)

1

Currently pending before the Court is Plaintiffs' motion for attorneys' fees, costs, and service awards. (Doc. 130 ("Fee Motion").) Plaintiffs also filed a motion for final approval of class action settlement (Doc. 131 ("Final Approval Motion")) and a supplemental declaration in support of the Final Approval Motion (Doc. 132). The undersigned held a hearing on March 3, 2023. (Doc. 133.) For the reasons discussed below, the Court **GRANTS** Plaintiffs' motions for final approval of class action settlement and attorneys' fees.

## I. SETTLEMENT TERMS[1]

After nearly four years of litigation, Plaintiffs achieved a settlement with Defendant on behalf of the Proposed Class.[2] Although Defendant denies all allegations made against it and contends the claims in this lawsuit have no merit, Plaintiffs (on behalf of the Class) and Defendant wish to resolve any and all past, present, and future claims the Class has or may have against Defendant as they relate to the allegations in this lawsuit. (Doc. 126-2, Class Action Settlement Agreement ("Settlement Agreement") at 2.)

In consideration of the settlement, Defendant agreed to establish an all-cash, nonreversionary common fund of $1,612,500, used to pay all settlement expenses, including Class Notice (*see* Settlement Agreement ¶¶ 1.16, 3.2) and claims administration; Class Member claims; and any Court-approved attorneys' fees, expenses, and service awards. (*See id.* ¶¶ 2.3, 2.5, 2.6.) The Settlement Agreement allows Class Members to make a claim by completing and submitting a short form directly through the Settlement

---

[1] The terms of the parties' settlement are further discussed in the Court's November 10, 2022 order granting Plaintiffs' motion for preliminary approval of class action settlement. (Doc. 129.) A copy of the parties' negotiated settlement agreement is attached as Exhibit 1 to the Declaration of Paul K. Joseph in Support of Plaintiffs' Motion for Preliminary Approval. (*See* Doc. 126-2.)

[2] The Class Action Settlement Agreement defines "Class" or "Class Members" as all persons who in the United States, during the Class Period, purchased Coconut Oil Products (as defined in the Settlement Agreement), for personal or household use. (*See* Doc. 126-2, Class Action Settlement Agreement ("Settlement Agreement") at 3.)

Website, *id.* ¶ 1.25, or by downloading the form and mailing it to the Claims Administrator, Kroll Settlement Administration ("Kroll"). (*Id.* ¶ 2.3.) Class members who submit valid proof of purchase, as determined by Kroll, can claim as many single-container units of the coconut oil products for which they have, and submit, valid proof of purchase. (*Id.* ¶ 2.3.) Class members without valid proof of purchase can claim up to five units. (*Id.*)

Following preliminary approval, Kroll executed the Court-approved Notice Plan. (*See* Doc. 131-2, Decl. of Jeanne C. Finegan, APR ¶¶ 3–22 (detailing compliance with Court-approved notice plan).) "The Notice Plan employed best-in-class tools and technology and optimizations to obtain a 71% reach of the Settlement Class Members nationwide with an average frequency of 2.7 times." (*Id.* ¶ 4.) Notice was provided to Class Members via newspaper, a press release, and numerous digital means, including online media advertising, including display banner advertising, keyword search online advertising, and social media advertising through Facebook, Instagram, YouTube and Pinterest. (*See id.* ¶ 5.) As a result of the Notice Plan, over 705,700 users visited the Settlement Website (as of January 30, 2023), *id.* ¶ 20, indicating the that Notice Plan was effective in reaching potential Class Members.

At the time Plaintiffs filed their Final Approval Motion, Kroll noted it discovered "what appears to be suspicious claim filing activity." (*Id.* ¶ 25.) This activity included "various instances [where] multiple claims originated from a single IP address in short time periods (in one instance as many as 15,000 claims were received from one IP address)." (*Id.*) Kroll notified Class Counsel of this apparent anomaly and worked with Class Counsel to develop a process to verify such claims. (*Id.*)

On February 24, 2023, Plaintiffs filed the Declaration of Lori L. Castaneda, a Senior Director at Kroll, detailing additional steps taken to resolve suspicious claim filing activity. (*See* Doc. 132, Decl. of Lori L. Castaneda.) Ms. Castaneda reported that, as of February 23, 2023, Kroll had received 162 requests for exclusion from the settlement. (*Id.*

¶ 5.) Of the over 700,000 visitors to the Settlement Website, no objections were filed. (*See id.* ¶ 6.)

Because "Kroll detected suspicious claim filing activity" and "received a total volume of claims that significantly exceeded Kroll's original estimate," Kroll spent additional time reviewing the claims to confirm validity. (*Id.* ¶ 8.) At the time Plaintiffs filed their Final Approval Motion, Kroll received 468,980 unique timely claims and 16 late claims. (*Id.* ¶ 7.) Of the timely claims, 746 claims contained supporting documentation. (*Id.*) Kroll then "expended considerable efforts to validate the filed Claim Forms in order to preserve payment for valid Class Members," which included a review of multiple claims with the same payment account or similar designation and multiple claims coming from the same internet provider address. (*Id.* ¶¶ 9–10.) Kroll also undertook an email campaign, contacting claimants and requesting further information to substantiate their claim. (*Id.* ¶¶ 13–19.)

In total, following the above review process, "Kroll anticipates paying 183,253 timely claims and 16 late claims." (*Id.* ¶ 20.) Kroll has also requested that, "following lengthy negotiations with Class Counsel, Kroll has agreed for purposes of initial distributions to reduce its overall fees and costs for administering the settlement to approximately $398,565." (*Id.* ¶ 22.) "Kroll respectfully requests that it be permitted to reimburse itself for overages above $398,565 out of any residual funds following the initial distribution before distribution of such funds to *cy pres*." (*Id.* ¶ 23.)

## II.  FINAL APPROVAL OF CLASS ACTION SETTLEMENT

### A. Legal Standard

The Ninth Circuit maintains "a strong judicial policy" that favors the settlement of class actions. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). Federal Rule of Civil Procedure 23(e) "require[s] the district court to determine whether a proposed settlement is fundamentally fair, adequate, and reasonable." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)).

In the Ninth Circuit,

> a district court examining whether a proposed settlement comports with Rule 23(e)(2) is guided by the eight "*Churchill* factors," viz., "(1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement."

*Kim v. Allison*, 8 F.4th 1170, 1178 (9th Cir. 2021) (citation omitted). Courts need not weigh all factors, "and different factors may predominate in different factual contexts." *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993). "Judicial policy favors settlement in class actions and other complex litigation where substantial resources can be conserved by avoiding the time, cost, and rigors of formal litigation." *Loomis v. Slendertone Distribution, Inc.*, No. 19-CV-854-MMA (KSC), 2021 WL 873340, at *3 (S.D. Cal. Mar. 9, 2021) (citing *Class Plaintiffs*, 955 F.2d at 1276).

**B. Discussion**

The Court made an initial fairness determination in its preliminary approval order (Doc. 129), finding that

> [T]he proposed Settlement Agreement is fair, reasonable, adequate, and within the range of possible approval considering the possible damages at issue and defenses to overcome. The Court also finds that the Settlement Agreement: (a) is the result of serious, informed, non-collusive, arms-length negotiations, involving experienced counsel familiar with the legal and factual issues of this case; and (b) meets all applicable requirements of law, including Federal Rule of Civil Procedure 23, and the Class Action Fairness Act, 28 U.S.C. § 1715.

(*Id.* at 2.)

The Court will now consider the *Churchill* factors to ensure the fairness, reasonableness, and adequacy of the proposed settlement.

*1. Strength of Plaintiffs' Case and Risk of Further Litigation*

Here, while "plaintiffs . . . believe their claims are strong, they acknowledge," as detailed in Plaintiffs' Motion for Preliminary Approval, "that they would face significant

risks should the case proceed through litigation." *Larsen v. Trader Joe's Co.*, Case No. 11–cv–05188–WHO, 2014 WL 3404531, at *4 (N.D. Cal. July 11, 2014) (citation omitted). Some of these risks include Defendant's objections to Plaintiffs' experts' opinions and the risk of a "battle of the experts," the risk Defendant could persuade a jury that Defendant's coconut oil products are healthier than Plaintiffs alleged, and the parties' disputes about Plaintiffs' damages model, including whether such damages model is reliable. (Final Approval Motion at 12–13.) The Court agrees Plaintiffs face significant risks if this case proceeded to trial, while the parties' settlement achieves a definite result for the Class Members. Accordingly, the first two *Churhill* factors—strength of plaintiffs' case and litigation risk—weigh in favor of accepting the proposed settlement.

### 2. Consideration Offered

Plaintiffs and Class Counsel secured for the Class a monetary benefit of over $1.6 million, "which is 57% of the certified Classes' potential [trial] damages of $2.8 million and is 47% of the Settlement Class's potential price premium damages of $3.4 million." (*Id*. at 14.) Although the Class might obtain greater compensation if their allegations were proven at trial, this does not mean that the settlement is inadequate. *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998). Plaintiffs and Class Counsel also secured valuable injunctive relief which will benefit both the Class and the public at large. *Larsen*, 2014 WL 3404531, at *4 (considering injunctive relief in evaluating reasonableness of offered consideration). The Court finds the consideration offered by the settlement is fair and reasonable.

### 3. Extent of Discovery Completed and Stage of Proceedings

At the time the parties reached a settlement in this case, the parties had litigated for nearly four years, fact and expert discovery were closed, and the parties were preparing for trial. (Final Approval Motion at 16.) Discovery was substantial: Defendant produced over 60,000 pages of documents, and the parties took ten depositions (including a Rule 30(b)(6) deposition that covered 17 topics). (*Id*. at 16–17.) The duration of this litigation prior to settlement suggests "the parties have sufficient information to make an informed decision about settlement." *Linney*, 151 F.3d at 1239.

### 4. Experience and Views of Counsel

"[P]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 967 (9th Cir. 2009) (*In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995)). Here, given Class Counsel's experience in prosecuting consumer class actions, including cases involving the false advertising of foods (like coconut oil), Class Counsel's recommendations are presumed to be reasonable, and this factor accordingly favors approval.

### 5. Governmental Participant

Because there is no governmental participant in this case, this factor is neutral. *See Allen v. Similasan Corp.*, No. 12-CV-00376-BAS-JLB, 2017 WL 1346404, at *5 (S.D. Cal. Apr. 12, 2017).

### 6. Reaction of Class to Proposed Settlement

Here, notice to the Class Members achieved an overwhelmingly positive outcome. Kroll received only 162 requests for exclusion. (Doc. 132, Decl. of Lori L. Castaneda ¶ 5.) No objections were filed, and the claims rate far exceeded expectations. *See Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004) ("It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members."). The Court agrees that the strong claims rate, lack of objections, and low opt-out rate weigh in favor of final approval.

Additionally, in the Court's order granting preliminary approval of class action settlement, the Court approved the form and manner of notice to the Settlement Class Members. (Doc. 129 at 4.) The Court finds the method for distributing class notice was executed as detailed in the Court's order. (*See* Doc. 131-2, Decl. of Jeanne C. Finegan, APR ¶¶ 3–22 (detailing compliance with Court-approved notice plan); Doc. 132, Decl. of Lori L. Castaneda.) The Court therefore finds the notice provided to Class Members satisfies due process. *See* FED. R. CIV. P. 23(e)(1).

* * *

For the reasons discussed above, the Court finds: (1) class certification is appropriate for settlement purposes; (2) the settlement is fair, reasonable, and adequate; and (3) Kroll executed the notice program previously approved by the Court. Accordingly, final approval of the parties' settlement is warranted.

### III.   MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS

Having determined that final approval of the settlement is warranted, the Court will next consider Plaintiffs' motion for attorneys' fees, costs, and service awards. Class Counsel seeks an order from this Court granting their request for: (1) a fee award of one-third of the $1,612,500 all-cash, non-reversionary common fund, for a total fee award of $537,500; (2) costs in the amount of $159,411.09; and (3) service awards of $7,500 each to Plaintiffs Testone, Shanks, and Pierre. (Fee Motion at 13.) Defendant has filed no objection to Plaintiffs' fee motion.

**A. Attorneys' Fees**

Federal Rule of Civil Procedure 23(h) provides that, "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." FED. R. CIV. PRO. 23(h). "[C]ourts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011) (citations omitted). Where a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ a "percentage of recovery method." *Id*. at 942. "The use of the percentage-of-the-fund method in common-fund cases is the prevailing practice in the Ninth Circuit for awarding attorneys' fees and permits the Court to focus on a showing that a fund conferring benefits on a class was created through the efforts of plaintiffs' counsel." *In re Korean Air Lines Co., Ltd. Antitrust Litig.*, No. CV 07-05107 SJO AGRX, 2013 WL 7985367, at *1 (C.D. Cal. Dec. 23, 2013) (citations omitted).

The Ninth Circuit has "established a 25 percent 'benchmark' in percentage-of-the-fund cases that can be 'adjusted upward or downward to account for any unusual circumstances involved in [the] case.'" *Fischel v. Equitable Life Assur. Soc'y of U.S.*, 307 F.3d 997, 1006 (9th Cir. 2002) (quoting *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989)). The 25 percent benchmark is only the "starting point for analysis" and "may be inappropriate in some cases." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002). Accordingly, the court must show that "in arriving at its percentage it considered all the circumstances of the case and reached a reasonable percentage." *Id.* In determining whether a fee award is appropriate, district courts consider: "(1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; and (5) awards made in similar cases." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008) (citing *Vizcaino*, 290 F.3d at 1048–50).

Although a district court has discretion to choose how it calculates fees, courts applying a percentage of recovery analysis are encouraged to cross-check such calculation with a "lodestar" calculation. *In re Bluetooth*, 654 F.3d at 949. "The lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *Id.* at 941. The resulting lodestar figure is "presumptively reasonable," but may be adjusted upward or downward by an appropriate positive or negative multiplier reflecting a set of reasonableness factors. *Id.* at 941–42.

Applying the prevailing percentage-of-the-fund method, Plaintiffs request attorneys' fees equal to one-third of the common fund. (Fee Motion at 13.) Such amount represents an upward departure from Ninth Circuit's 25 percent benchmark fee award. *See Fischel*, 307 F.3d at 1006. "However, in most common fund cases, the award exceeds that benchmark." *In re Omnivision*, 559 F. Supp. 2d at 1047. Applying the *Vizcaino*

factors detailed above, the Court finds Plaintiffs' fee request appropriate under the circumstances.

### 1. Results Achieved

"The overall result and benefit to the class from the litigation is the most critical factor in granting a fee award." *Id*. at 1046. The Court agrees with Plaintiffs that the settlement in this case is an excellent result achieved by Class Counsel. The Class will receive monetary relief in the form of an all-cash, non-reversionary common fund, meaning the net settlement fund after deductions for fees and costs will be fully paid to the Class. *See Rodriguez*, 563 F.3d at 965 ("cash . . . is a good indicator of a beneficial settlement"). Kroll's notice program achieved an overwhelmingly positive reaction from the class, with only 162 exclusions and zero objections filed. Additionally, "the settlement amount of $1,612,500 is 57% of potential trial damages, which is more than reasonable given the risks attendant to trial." (Fee Motion at 16–17.)

Plaintiffs also achieved significant injunctive relief on behalf of the Class: for five years from the date of this order, the Settlement Agreement prohibits Defendant from using any labeling representations challenged in this lawsuit on the Coconut Oil Products." (*Id*. at 17; *see also* Settlement Agreement ¶ 2.2.) Such an injunction will undoubtedly "bring a benefit to class consumers, the marketplace, and competitors who do not mislabel their products." *Bruno v. Quten Rsch. Inst., LLC*, No. SACV 11-00173 DOC EX, 2013 WL 990495, at *4 (C.D. Cal. Mar. 13, 2013). Although the monetary value of such injunctive relief may be difficult to quantify, "courts should consider the value of the injunctive relief obtained as a 'relevant circumstance' in determining what percentage of the common fund class counsel should receive as attorneys' fees." *Staton v. Boeing Co.*, 327 F.3d 938, 974 (9th Cir. 2003) (citing *Vizcaino*, 290 F.3d at 1049).

### 2. Risk of Litigation

Plaintiffs point out, and the Court agrees, that this litigation involved significant risk. Plaintiffs argue "[s]uccess was far from certain" in part because, "in a similar coconut oil case, plaintiffs were denied class certification and the defendant coconut oil manufacturer prevailed on summary judgment." (Fee Motion at 12.) In *Shanks v. Jarrow*

*Formulas, Inc.*, Case No. CV 18-09437 PA (AFMx), 2019 WL 4398506 (C.D. Cal. Aug. 27, 2019) (*Jarrow I*), the court denied Plaintiff's motion for class certification in a case alleging substantially similar claims as the ones advanced by Plaintiffs in this case. The Court in *Shanks* later granted Defendant's motion for summary judgment in full. *See Shanks v. Jarrow Formulas, Inc.*, No. LACV1809437PAAFMX, 2019 WL 7905745, at *6 (C.D. Cal. Dec. 27, 2019).

Plaintiffs argue that "even if Class Counsel could maintain the classes to trial and avoid summary judg[]ment, proving liability at trial would also have been a challenging prospect, as demonstrated by recent examples of consumer fraud trials ending in defense verdicts." (Fee Motion at 21 (collecting cases).) Indeed, "these types of food labeling claims are difficult to maintain," and success at trial was far from certain. *Guttmann v. Ole Mexican Foods, Inc.*, No. 14-CV-04845-HSG, 2016 WL 9107426, at *3 (N.D. Cal. Aug. 1, 2016).

      3.  *Skill and Quality of Work*

Despite the risks faced by the Class—including the challenging theory alleged in Plaintiffs' complaint, class action procedural hurdles, and a technical subject matter necessitating expert testimony—Class Counsel managed to secure a favorable settlement for the Class, including significant monetary and injunctive relief. (*See* Fee Motion at 22–23.) Class Counsel points to strategic moves taken by Defendant's counsel to which Class Counsel had to respond effectively to ensure a favorable result for the Class. (*Id.* at 23.) For example, Defendant hired the same experts hired by the defendant in *Shanks*, who helped defeat plaintiff's motion for class certification. *Jarrow I*, 2019 WL 4398506, at *1. Additionally, "Class Counsel's experience in consumer fraud class actions enabled them to evaluate the strengths and weaknesses of the case against Defendant and the reasonableness of the settlement." *McMorrow v. Mondelez Int'l, Inc.*, No. 17-CV-02327-BAS-JLB, 2022 WL 1056098, at *7 (S.D. Cal. Apr. 8, 2022), *appeal dismissed sub nom. McMorrow v. Huang*, No. 22-55475, 2022 WL 3226187 (9th Cir. June 6, 2022) (awarding same counsel attorneys' fees in the amount of one-third of common fund).

      4.  *Contingent Nature of Fee and Financial Burden*

Class Counsel's prosecution of this action involved significant financial risk, as Class Counsel undertook the matter solely on a contingency basis, against a well-represented Defendant, and therefore risked no recovery. (*See* Fee Motion at 19–22; Doc. 130-1, Joseph Decl. ¶¶ 2–5.) Class Counsel worked on this matter for four years without compensation and advanced nearly $160,000 in out-of-pocket expenses. (Doc. 130-1, Joseph Decl. ¶ 5.) Class Counsel had no other financing or assistance in funding the litigation. (*Id.*) Class Counsel's ability to file and prosecute other cases was impacted by their representation of the Class in this action, as the firm consists of only five attorneys and accordingly has limited legal support. (*Id.* ¶¶ 2–4.) For these reasons, Class Counsel assumed significant financial risk by agreeing to prosecute this case without the guarantee of recovery of fees or costs.

### 5. Awards Made in Similar Cases

The Court agrees that an upward departure is warranted in this case and finds that similar cases justify the requested award of one-third of the common fund. Plaintiffs cite various food labeling cases where Class Counsel have been awarded fees in the amount of one-third of the common fund. *See*, *e.g.*, *Hunter v. Nature's Way Prod., LCC*, No. 3:16-CV-532-WQH-AGS, 2020 WL 71160, at *4 (S.D. Cal. Jan. 6, 2020) (awarding counsel in coconut oil mislabeling case one-third of common fund, finding such award reasonable and approximately 75% of Counsel's lodestar); *see also McMorrow*, 2022 WL 1056098, at *8 (awarding counsel in mislabeling case one-third of common fund where fees request was in line with awards in similar cases). Plaintiffs argue the result achieved in this case is better than the result achieved in similar cases, as "the common fund value of $1,612,500 is a greater percentage of the estimated products sales than any of these other coconut oil settlements." (Fee Motion at 25.)

### 6. Lodestar Cross-Check

Finally, the Court finds Plaintiffs' lodestar cross-check supports the requested 33.3% fee award. Plaintiffs calculated a lodestar of $972,456.50 based on 1,449.8 hours of work by the attorneys, such that Class Counsel's request for $537,500 in fees represents a 45% discount. (Fee Motion at 27.) Plaintiffs argue this "pales in comparison to

multipliers in the 3-4 range that are common in complex class actions—and is reasonable under the circumstances of this case." (*Id.*) (citing *Nitsch v. DreamWorks Animation SKG Inc.*, 2017 WL 2423161, at *10 (N.D. Cal. June 5, 2017)). Class Counsel "is not counting time spent after January 1, 2023, including drafting the motion for final approval, preparing for and participating in the Final Approval hearing, working with the Claims Administrator on notice and claims issues, responding to any objections, and post-judgment work, such as overseeing the post-distribution accounting and any supplemental distribution of unclaimed funds." (Fee Motion at 28.) While Class Counsel did not submit detailed billing records in support of their lodestar analysis, they submitted a "table[] summarizing the amount of work each timekeeper performed at different stages of this litigation" which is "sufficient for purposes of performing a lodestar cross-check." *Thomas v. MagnaChip Semiconductor Corp.*, Case No. 14-cv-01160-JST, 2018 WL 2234598, at *4 (N.D. Cal. May 15, 2018).

\* \* \*

Because the percentage-of-the-fund method as well as the lodestar cross-check support Plaintiffs' fee request, the Court orders, pursuant to Federal Rule of Civil Procedure 23(h), that Class Counsel is entitled to reasonable attorneys' fees in connection with the action in the amount $537,500, representing one-third of the common fund.

**B. Costs**

Class Counsel also seeks reimbursement of expenses in the amount of $159,411.09, "the vast majority of which . . . was for expert witness expenses." (Fee Motion at 33.) Plaintiffs submitted a detailed expense report, listing expenses by category and chronologically. (Doc. 130-1, Joseph Decl. ¶ 23; Doc. 130-3; Doc. 130-4.) "There is no doubt that an attorney who has created a common fund for the benefit of the class is entitled to reimbursement of reasonable litigation expenses from that fund." *Selk v. Pioneers Mem'l Healthcare Dist.*, 159 F. Supp. 3d 1164, 1181 (S.D. Cal. 2016) (citation omitted). Based on Plaintiffs' Fee Motion and the declaration submitted by Class Counsel, the Court finds that Class Counsel have incurred out-of-pocket litigation expenses in the

amount of $159,411.09.  (Doc. 130-1, Joseph Decl. ¶ 23.)  Accordingly, the Court awards Class Counsel $159,411.09 in litigation costs.

**C. Service Awards**

Plaintiffs also seek $7,500 for each of the three Class Representatives.  Incentive awards are "fairly typical" discretionary awards "intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general."  *Rodriguez*, 563 F.3d at 958–59 (citations omitted).  In deciding whether to approve an incentive award, courts consider factors including:

> 1) the risk to the class representative in commencing suit, both financial and otherwise; 2) the notoriety and personal difficulties encountered by the class representative; 3) the amount of time and effort spent by the class representative; 4) the duration of the litigation and; 5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation.

*Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995) (citations omitted).

The Class Representatives have actively participated in and assisted Class Counsel with this litigation for nearly four years.  (Fee Motion at 34.)  Each Class Representative "assisted in drafting the pleadings, reviewed and authorized the filing of the complaint, stayed abreast of the litigation, and were prepared to attend and testify at trial."  (*Id*.)  They also responded to discovery requests, were deposed by attorneys for the Defendant, and reviewed the settlement to ensure it was fair and reasonable for the class.  (*Id*. at 34–35; *see also* Doc. 130-1, Joseph Decl. ¶¶ 24–28; Doc. 130-2, Testone Decl.; Doc. 130-3, Shanks Decl.; Doc. 130-4, Pierre Decl.)

The Court finds the requested $7,500 service awards reasonable and within the range awarded in this District.  *See McMorrow*, 2022 WL 1056098, at *9 (awarding $7,500 incentive award to plaintiff who "reviewed material filings, sat for depositions,

communicated often with Class Counsel, reviewed and approved the Settlement Agreement, and committed to securing substantive relief on behalf of the Class"); *Winters v. Two Towns Ciderhouse, Inc.*, No. 20-CV-00468-BAS-BGS, 2021 WL 1889734, at *3 (S.D. Cal. May 11, 2021) (awarding $7,500 incentive award to plaintiff who "assisted with drafting pleadings, helped with informal discovery, sent the cans of product he had retained to the lab for testing, and attended the mediation that resulted in this settlement"). Accordingly, the Court awards the requested $7,500 award to each Class Representative for a total of $22,500.

## IV. CONCLUSION

For the reasons stated in this Order as well as in the Court's Preliminary Approval Order (Doc. 129), Plaintiffs' Final Approval Motion (Doc. 131) and Fee Motion (Doc. 130) are **GRANTED** and the Court **ORDERS** as follows:

1. The parties' Class Action Settlement Agreement (Doc. 126-2) and the definition of words and terms contained therein are incorporated by reference in this Order.

2. The Court has jurisdiction over the subject matter of this action and all parties to the action, including all Settlement Class members.

3. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, the Court certifies the following Class for settlement purposes: all persons who in the United States, during the Class Period, purchased Coconut Oil Products, for personal or household use.

4. Pursuant to Rule 23(c)(3) of the Federal Rules of Civil Procedure, all such persons who satisfy the Class definition above, except those Class Members who timely and validly excluded themselves from the Settlement Class, are Settlement Class Members bound by this judgment.

5. Pursuant to Rule 23(a) of the Federal Rules of Civil Procedure, the Court finds that the named plaintiffs in this action, Michael Testone, Collin Shanks, and Lamartine Pierre, are members of the Settlement Class, his/her claims are typical of the Settlement Class, and he/she fairly and adequately protected the interests of the Settlement Class throughout the proceedings in the action. Accordingly, the Court

appoints Michael Testone, Collin Shanks, and Lamartine Pierre as Class Representatives.

6. The Court finds that the Settlement Class meets all requirements of Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure for certification of the class claims alleged in the Amended Complaint, including: (a) numerosity; (b) commonality; (c) typicality; (d) adequacy of the Class Representatives and Class Counsel; (e) predominance of common questions of fact and law among the Class; and (f) superiority.

7. Having considered the factors set forth in Rule 23(g)(1) of the Federal Rules of Civil Procedure, the Court finds that Fitzgerald Joseph LLP has fairly and adequately represented the Class for purposes of entering into and implementing the Settlement, and thus appoints Fitzgerald Joseph LLP as Class Counsel for the Settlement Class.

8. In accordance with the Court's Preliminary Approval Order and the Court-approved notice program, the Claims Administrator caused the Class Notice to be disseminated as ordered. The Class Notice advised Class Members of the terms of the Settlement, of the Final Approval Hearing, and their right to appear at such hearing, of their rights to remain in or opt out of the Settlement Class and to object to the Settlement, procedures for exercising such rights, and the binding effect of this judgment to the Settlement Class.

9. The distribution of the Class Notice constituted the best notice practicable under the circumstances, and fully satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure, the requirements of due process, and any other applicable law.

10. The Settlement proposed by the parties is fair, reasonable, and adequate. The terms and provisions of the Settlement are the product of lengthy, arms-length negotiations conducted in good faith. Approval of the Settlement will result in substantial savings of time, money, and effort to the Court and the parties, and will further the interests of justice.

11. A total of 162 Settlement Class Members submitted timely and proper Requests for

Exclusion, as reported in the declaration of the Class Administrator submitted to this Court. The Court hereby orders that each of the individuals listed by the Class Administrator as having submitted a valid Request for Exclusion is excluded from the Settlement Class. Those individuals will not be bound by the Settlement Agreement, and neither will they be entitled to any of its benefits.

12. The Court awards attorneys' fees, costs, and incentive awards to Class Counsel and the named Plaintiffs as set forth in this Order, and approves payment to the Settlement Administrator in the amount of $398,565.

13. The Court dismisses with prejudice the action and all released claims set forth in the Settlement Agreement.

14. Without affecting the finality of this judgment, the Court reserves jurisdiction over the implementation, administration, and enforcement of this judgment and the Settlement.

15. The Clerk of the Court is directed to enter judgment and close the case. This judgment constitutes a final judgment pursuant to Federal Rule of Civil Procedure 54(a).

**IT IS SO ORDERED.**

DATE: March 6, 2023

_____
HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES DISTRICT JUDGE